UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | Case No. 18-CV-0361 |
| Plaintiff, | ECF Case |
| v. | **COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF AND FOR CIVIL MONETARY PENALTIES UNDER THE COMMODITY EXCHANGE ACT AND COMMISSION REGULATIONS** |
| PATRICK K. MCDONNELL, and CABBAGETECH, CORP. d/b/a COIN DROP MARKETS, | |
| Defendants. | **JURY TRIAL DEMANDED** |

## I.    INTRODUCTION

1.    Since at least in or around January 2017 to the present (the "Relevant Period"), Patrick Kerry ("PK") McDonnell ("McDonnell") and CabbageTech, Corp. d/b/a Coin Drop Markets ("CDM") (collectively, "Defendants"), operated a deceptive and fraudulent virtual currency scheme to induce customers ("CDM Customers") to send money and virtual currencies to Defendants in exchange for purported virtual currency trading advice concerning the trading of virtual currencies, including Bitcoin and Litecoin, and for virtual currency purchases and trading on behalf of customers under McDonnell's direction.  Defendants' solicitations were deceptive and fraudulent, and soon after obtaining the funds of CDM Customers, Defendants stopped communicating with their customers and simply misappropriated the funds.

2.    In an attempt to conceal the scheme, Defendants removed website and social media materials from the internet, and ceased communicating with CDM Customers, who lost most if not all of their invested funds due to Defendants' fraud and misappropriation.

3.      Through this conduct, Defendants were engaged, are engaging, or are about to engage in fraudulent acts and practices in violation of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 1–27f (2012), and Commission Regulations ("Regulations"), 17 C.F.R. pt. 1–190 (2017), specifically Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2012), and Regulation 180.1(a), 17 C.F.R. § 180.1(a) (2017).

4.      Accordingly, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), the Commission brings this action to enjoin such acts and practices and compel compliance with the Act.  In addition, the Commission seeks civil monetary penalties and remedial ancillary relief, including, but not limited to, trading bans, restitution, disgorgement, rescission, pre- and post-judgment interest, and such other relief as the Court may deem necessary and appropriate.

5.      Unless restrained and enjoined by this Court, Defendants are likely to continue to engage in the acts and practices alleged in this Complaint and similar acts and practices, as more fully described below.

## II.      JURISDICTION AND VENUE

6.      **Jurisdiction**.  This Court has jurisdiction over this action under 28 U.S.C. § 1331 (2012) (federal question jurisdiction) and 28 U.S.C. § 1345 (2012) (district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress).  Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a) (2012), authorizes the Commission to seek injunctive and other relief against any person whenever it appears to the Commission that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.

7.      **Venue**.  Venue properly lies with the Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e), because Defendants are found in, inhabit, or transact business in this

District, and because acts and practices in violation of the Act occurred, are occurring, or are about to occur, within this District.

### III.   THE PARTIES

8.      Plaintiff **Commodity Futures Trading Commission** ("Commission" or "CFTC") is an independent federal regulatory agency that is charged by Congress with the administration and enforcement of the Act and the Regulations.  The Commission maintains its principal office at Three Lafayette Centre, 1155 21st Street, N.W. Washington, D.C. 20581.

9.      Defendant **Patrick Kerry "PK" McDonnell** is a resident of Staten Island, New York.  McDonnell owned and controlled CabbageTech, Corp.  McDonnell has never been registered with the Commission.

10.      Defendant **CabbageTech, Corp.** is a New York corporation based in Staten Island, New York.  CabbageTech, Corp. was incorporated on May 6, 2016.  CabbageTech, Corp.'s last known address is 20 Rawson Place, Suite B, Staten Island, New York, 10314.  At times, CabbageTech, Corp. did business as **Coin Drop Markets**.  Neither CabbageTech, Corp. nor Coin Drop Markets has ever been registered with the Commission.

### IV.   FACTS

11.      A virtual currency is defined here as a digital representation of value that functions as a medium of exchange, a unit of account, and/or a store of value, but does not have legal tender status in any jurisdiction.  Bitcoin, Litecoin, and other virtual currencies are distinct from "real" currencies, which are the coin and paper money of the United States or another country that are designated as legal tender, circulate, and are customarily used and accepted as a medium of exchange in the country of issuance.

12.      During the Relevant Period, Defendants solicited and received fees and investments from CDM Customers in various states and countries for the purposes of receiving

expert trade signals and trading advice for virtual currencies like Bitcoin and Litecoin and for virtual currency purchasing and trading managed by Defendants.

**Fraud Involving Advice About Trading Virtual Currencies**

13.    During the Relevant Period, Defendants solicited customers in several of the United States as well as foreign countries to become members of groups supposedly receiving Defendants' virtual currency consulting services and trading advice.

14.    McDonnell identified himself as CDM's CTO (Chief Technology Officer), among other titles.

15.    In or around April 2017, for example, Defendants advertised membership in trading groups such as RedliteGreenLite, BTC ("RLGLBTC"), relating to Bitcoin, and RedliteGreenLite, LTC ("RLGLLTC"), relating to the virtual currency Litecoin.

16.    These groups purported to provide trading advice and guidance, such as entry and exit prices for day trading of certain virtual currencies.

17.    Defendants also solicited membership or subscription to other groups and services, such as a "Turn-Key Annual Membership" providing access, for instance, to McDonnell's and CDM's supposed virtual currency trading expertise, mentorship, and guidance.

18.    For example, in or around April and May 2017, CDM's promotional materials made claims such as that a CDM membership in RLGLLTC would provide "real-time . . . reports [of] critical $LTC entry/exit points via @RLGLLTC 24/7 including holidays/weekends."

19.    Such promotional materials further made claims such as that this continuous, ongoing monitoring and trading signals "afford[ed] 'minute-to-minute' price arbitrage, exploitation, and opportunities for swing trading profits."

20.     Such promotional materials also made claims such as a trading group was "a dedicated team of digital asset trading specialists trend spotting."

21.     These materials promised to provide the membership services on an annual basis in exchange for the up-front subscription fee.

22.     In or around May 2017, Defendants created one or more social media chatrooms, purportedly to provide the agreed-upon trading advice and services.

23.     In fact, however, after receiving subscription payments from multiple CDM Customers, Defendants never provided to such customers continuous, real-time trading signals, advice, or trading expertise through its social media chatrooms, through online communications such as via Twitter, or through its website.

24.     For example, Defendants never provided "real-time . . . reports [of] critical $LTC entry/exit points via @RLGLLTC 24/7 including holidays/weekends."  Similarly, Defendants' RLGLLTC never provided signals that "afford[ed] 'minute-to-minute' price arbitrage, exploitation, and opportunities for swing trading profits."

25.     In fact, Defendants misappropriated the CDM Customers' funds.

26.     In or around July 2017, shortly after Defendants had solicited and obtained payments from numerous CDM Customers for the purchase of annual subscriptions to various membership services, Defendants shut down the website and chatroom, deleted social media accounts, ceased communicating with customers, and kept the customers' funds.

27.     For example, in or around June 2017, one CDM Customer, responding to McDonnell's promotions online through social media such as Twitter, inquired into CDM's services.  In response, McDonnell solicited the customer to purchase the CDM trading advice

service and obtained the customer's payment.  Days later, Defendants ceased all communications with the customer and misappropriated the customer's funds.

28.     Defendants also solicited "lifetime" memberships in a more exclusive trading sector that would provide greater opportunities to profit from virtual currency trading.  For example, one such opportunity purported to offer profits as much as 300% return on an investment in less than a week.

29.     Defendants' solicitations included false and misleading representations, and omitted material facts, about among other things the ongoing, real-time features; the high profitability; and the annual or lifetime duration of services and trading advice provided by membership in CDM's trading groups.

30.     McDonnell solicited customers, and received and directed deposits, withdrawals, and transfers of CDM Customer funds on behalf of CDM.

31.     Defendants made these false and misleading representations and omissions of material facts to potential customers during the Relevant Period by telephone; by internet-based social media, chats, and e-mails; and by the CDM website.

32.     Defendants made these false and misleading representations and omissions of material facts to potential customers as well as existing CDM Customers knowingly or with reckless disregard for the truth.

**Defendants' Fraud Involving Management of Customer Investments in Virtual Currency**

33.     During the Relevant Period, Defendants also solicited CDM Customers and others in several of the United States as well as at least one foreign country to provide funds to Defendants, which Defendants would employ to purchase virtual currencies and/or engage in trading on the customers' behalf.

6

34.     Defendants' solicitations involved exaggerations of McDonnell's trading track record.

35.     For example, McDonnell described himself in solicitations as a "professional trader," and CDM's website included a purported example of a single virtual currency trade that had generated more than an approximately 1,000% return.

36.     These and other statements were false and misleading representations and omissions of material facts.

37.     In fact, after Defendants had solicited and obtained CDM Customer funds for trading by Defendants on behalf of customers, Defendants ceased communicating with the customers and misappropriated the customers' funds.

38.     For example, in or around January 2017 through June 2017, one CDM Customer, in response to multiple solicitations by Defendants to provide funds for trading in virtual currencies managed by Defendants, made a series of investments with Defendants.

39.     Defendants told this customer that Defendants would use the customer's funds to invest in Bitcoin.

40.     In fact, however, Defendants misappropriated this customer's funds.

41.     In or around June 2017, when the customer requested withdrawal of the investments after apparently profitable results, Defendants offered a series of excuses for delays in repayment before ceasing communications entirely and paying out no funds at all.

42.     For another example, in or around May 2017, after being solicited by McDonnell, one CDM Customer provided Litecoin to Defendants for trading by McDonnell on the customer's behalf.

**43.**     McDonnell told this customer that he would use the customer's funds to trade the "volatility" of Litecoin.

**44.**     Defendants misappropriated this customer's funds and ultimately ceased communicating with the customer.

**45.**     Defendants made these false and misleading representations and omissions of material facts to potential customers during the Relevant Period by telephone and online through e-mails, chats, and social media.

**46.**     Defendants made these false and misleading representations and omissions of material facts to potential customers as well as existing CDM Customers knowingly or with reckless disregard for the truth.

## V.    VIOLATIONS OF THE COMMODITY EXCHANGE ACT AND REGULATIONS

### Count I—Fraud by Deceptive Device or Contrivance

**Violations of Section 6(c)(1) of the Act and Regulation 180.1(a)
by McDonnell and CabbageTech, Corp. d/b/a Coin Drop Markets**

**47.**     Paragraphs 1 through 46 are re-alleged and incorporated herein by reference.

**48.**     Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2012), makes it unlawful for any person, directly or indirectly, to:

> use or employ, or attempt to use or employ, in connection with any swap, or a contract of sale of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, any manipulative or deceptive device or contrivance, in contravention of such rules and regulations as the Commission shall promulgate by not later than 1 year after [July 21, 2010, the date of enactment of the Dodd-Frank Wall Street Reform and Consumer Protection Act] . . . .

**49.**     Regulation 180.1(a), 17 C.F.R. § 180.1(a) (2017), provides:

> It shall be unlawful for any person, directly or indirectly, in connection with any swap, or contract of sale of any commodity in

interstate commerce, or contract for future delivery on or subject to
the rules of any registered entity, to intentionally or recklessly:

(1) Use or employ, or attempt to use or employ, any manipulative
device, scheme, or artifice to defraud;

(2) Make, or attempt to make, any untrue or misleading statement
of a material fact or to omit to state a material fact necessary in
order to make the statements made not untrue or misleading;

(3) Engage, or attempt to engage, in any act, practice, or course of
business, which operates or would operate as a fraud or deceit
upon any person . . . .

50.     During the Relevant Period, as described above, Defendants violated

Section 6(c)(1) of the Act and Regulation 180.1(a) by, among other things, in connection with

contracts of sale of commodities in interstate commerce, making or attempting to make untrue or

misleading statements of material fact or omitting to state or attempting to omit material facts

necessary in order to make statements made not untrue or misleading, such as the following:

A.  Purporting to offer ongoing monitoring and expert advice and profitable trading
    signals for one year or more;

B.  Failing to disclose, and omitting, that Defendants did not achieve the advertised
    performance and returns for CDM Customers; and

C.  Failing to disclose, and omitting, that Defendants were misappropriating CDM
    Customer funds.

51.     As described above, Defendants violated Section 6(c)(1) of the Act and

Regulation 180.1(a) by, among other things, in connection with contracts of sale of a commodity

in interstate commerce, soliciting customers with false and misleading performance statements

and promises of future performance; misrepresenting and omitting material facts on Defendants'

website and in other communications with customers regarding the quality, duration, and nature

of CDM's trading signals and trading advice; misrepresenting and omitting material facts on

Defendants' website and in other communications with customers concerning virtual currency

trading of customer funds managed by Defendants; and misappropriating CDM Customers' funds.

52.     Defendants engaged in the acts and practices described above willfully, intentionally, or recklessly.

53.     By this conduct, Defendants violated Section 6(c)(1) of the Act and Regulation 180.1(a).

54.     The acts, omissions, and failures of McDonnell described in this Complaint occurred within the scope of his agency, employment, and office at CabbageTech, Corp. Accordingly, CabbageTech, Corp. is liable under Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), and Regulation 1.2, 17 C.F.R. § 1.2 (2017), as principal for its agent's acts, omissions, or failures in violation of Section 6(c)(1) of the Act and Regulation 180.1(a).

55.     At all times relevant to this Complaint, McDonnell controlled CabbageTech, Corp., directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, CDM's conduct constituting the violations of CDM described in this Count. Accordingly, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2012), McDonnell is liable for CDM's violations of Section 6(c)(1) of the Act and Regulation 180.1(a).

56.     Each act of: (1) using or employing, or attempting to use or employ, a manipulative device, scheme, or artifice to defraud; (2) making, or attempting to make, untrue or misleading statements of material fact, or omitting to state material facts necessary to make the statements not untrue or misleading; and (3) engaging, or attempting to engage, in any act, practice, or course of business, which operated or would operate as a fraud or deceit upon any

person, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Section 6(c)(1) of the Act and Regulation 180.1.

## VI.     RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests that the Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), and pursuant to its own equitable powers, enter:

A. An order finding that Defendants violated Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2012), and Regulation 180.1(a), 17 C.F.R. § 180.1(a) (2017);

B. An order of permanent injunction enjoining each Defendant and any other person or entity associated with them, including but not limited to affiliates, agents, servants, employees, assigns, attorneys, and all persons in active concert or participation with any Defendant, including any successor thereof, from:

    i. Engaging, directly or indirectly, in conduct in violation of Section 6(c)(1) of the Act, or Regulation 180.1(a);

    ii. Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40) (2012));

    iii. Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3(yy), 17 C.F.R. § 1.3(yy) (2017)), for their own personal account(s) or for any account in which Defendants have a direct or indirect interest;

    iv. Having any commodity interests traded on Defendants' behalf;

    v. Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests; and/or

> **vi.** Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;
>
> **vii.** Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2017); and/or
>
> **viii.** Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2017)), agent, or any other officer or employee of any person (as that term is defined in Section 1a(38) of the Act, 7 U.S.C. § 1a(38) (2012)), registered, exempted from registration, or required to be registered with the Commission except as provided for in Regulation 4.14(a)(9)).

**C.** An order requiring Defendants to pay civil monetary penalties of not more than the civil monetary penalty prescribed by Section 6c(d)(1) of the Act, 7 U.S.C. § 13a-1(d)(1) (2012), as adjusted for inflation pursuant to the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. 114–74, 129 Stat. 584 (2015), title VII, Section 701, *see* Commission Regulation 143.8, 17 C.F.R. § 143.8 (2017), for each violation of the Act or Regulations, plus post-judgment interest;

**D.** An order directing Defendants, as well as any successors thereof, to disgorge, pursuant to such procedure as the Court may order, all benefits received including, but not limited to, trading profits, revenues, salaries, commissions,

fees, or loans derived directly or indirectly from acts or practices which constitute violations of the Act and Regulations, as described herein, and pre- and post-judgment interest thereon from the date of such violations;

E.  An order directing Defendants, as well as any successors thereof, to make full restitution, pursuant to such procedure as the Court may order, to every customer and investor whose funds any Defendant received, or caused another person or entity to receive, as a result of the acts and practices constituting violations of the Act and Regulations, as described herein, and pre- and post-judgment interest thereon from the date of such violations;

F.  An order directing Defendants, as well as any successors thereof, to rescind, pursuant to such procedure as the Court may order, all contracts and agreements, whether express or implied, entered into between, with, or among Defendants and any customer or investor whose funds were received by Defendants as a result of the acts and practices which constituted violations of the Act and the Regulations, as described herein;

G.  An order directing that Defendants, and any successors thereof, make an accounting to the Court of all of their assets and liabilities, together with all funds they received from and paid to investors and other persons in connection with commodity transactions and all disbursements for any purpose whatsoever of funds received from commodity transactions, including salaries, commissions, interest, fees, loans, and other disbursement of money or property of any kind from at least the beginning of the Relevant Period to the date of such accounting;

**H.**  An order requiring Defendants and any successors thereof to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2412(a)(2) (2012); and

**I.**  An order providing such other and further relief as the Court deems proper.

## VII.  DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial.


Dated:  January 18, 2018

COMMODITY FUTURES TRADING
COMMISSION

By: s/  Gates S. Hurand
Gates S. Hurand
Senior Trial Attorney
ghurand@cftc.gov
Phone: (646) 746-9700

David Oakland
Senior Trial Attorney
doakland@cftc.gov
Phone: (646) 746-9700

K. Brent Tomer
Chief Trial Attorney
ktomer@cftc.gov
Phone: (646) 746-9700

Manal M. Sultan
Deputy Director
msultan@cftc.gov
Phone: (646) 746-9700

Commodity Futures Trading Commission
Division of Enforcement
140 Broadway, 19th Floor
New York, NY 10005
Phone: (646) 746-9700
Fax: (646) 746-9940

ATTORNEYS FOR PLAINTIFF
COMMODITY FUTURES TRADING
COMMISSION

14