UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

COMMODITY FUTURES TRADING
COMMISSION,

                Plaintiff,

      v.

PATRICK K. MCDONNELL,
and CABBAGETECH, CORP. d/b/a COIN
DROP MARKETS,

                Defendants.

Case No. 18-CV-0361 (JBW)

ECF Case

# [PROPOSED] ORDER OF PRELIMINARY INJUNCTION AND OTHER RELIEF

## I.    INTRODUCTION

On January 18, 2018, Plaintiff Commodity Futures Trading Commission ("Plaintiff" or "Commission") filed a Complaint for Injunctive and Other Equitable Relief and for Civil Monetary Penalties Under the Commodity Exchange Act and Commission Regulations ("Complaint") against Defendants Patrick K. McDonnell ("McDonnell") and CabbageTech, Corp. d/b/a Coin Drop Markets ("CDM") (collectively, "Defendants") pursuant to Section 6c(a) of the Commodity Exchange Act ("Act"), 7 U.S.C. § 13a-1 (2012).

On January 30, 2018, the Court directed the parties to appear for an evidentiary hearing at which the Court would consider temporary relief and further administration of the action.  ECF No. 9.  Subsequent Orders directed the parties to address the Commission's authority to bring this action and notified the parties that the Court would hear the parties on jurisdictional,

standing, and other issues at the hearing, which was set for March 6, 2018. ECF No. 10, ECF No. 17.

On February 26, 2018, the Commission filed its briefs and supporting documents, including the Brief of Commodity Futures Trading Commission in Support of a Preliminary Injunction and Other Relief, the Declaration of Christopher Giglio, that set forth its arguments, including advocating for the issuance of an order (1) prohibiting Defendants from further violating Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2012), and Commission Regulation ("Regulation") 180.1(a), 17 C.F.R. § 180.1(a) (2017); (2) preserving the books and records of Defendants, and providing the Commission with access thereto; and (3) ordering Defendants to submit to an interim accounting on an expedited basis.

On March 6, 2018, the Court held a hearing on the Commission's motion.

The Court has considered the Preliminary Brief of Commodity Futures Trading Commission in Support of a Preliminary Injunction and Other Relief, the Complaint, the Declaration of Christopher Giglio, and all filings by Defendant McDonnell to date, and now, being fully advised in the premises, finds that there is good cause for the entry of this Order and that there is no just reason for delay. The Court therefore directs the entry of the following findings of fact, conclusions of law, and preliminary injunction and other equitable relief pursuant to Section 6c of the Act, as amended, 7 U.S.C. § 13a-1, as set forth herein.

## II.   FINDINGS AND CONCLUSIONS

**THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:**

**A.   FINDINGS OF FACT**

 **The Parties**

 1. Plaintiff **Commodity Futures Trading Commission** ("Commission" or "CFTC") is an independent federal regulatory agency that is charged by Congress with the

administration and enforcement of the Act, 7 U.S.C. §§ 1-27(f) (2012), and the Regulations promulgated thereunder, 17 C.F.R. pts. 1-190 (2017).

2. Defendant **CabbageTech, Corp.** is a New York corporation based in Staten Island, New York, that was incorporated on May 6, 2016. CabbageTech, Corp.'s last known address is 20 Rawson Place, Suite B, Staten Island, New York, 10314. At times, CabbageTech, Corp. did business as **Coin Drop Markets** (together with CabbageTech, Corp, "CDM"). CDM has never been registered with the Commission.

3. Defendant **Patrick K. McDonnell** ("McDonnell") is a resident of Staten Island, New York. McDonnell formed, owned, and controlled CabbageTech, Corp. McDonnell has never been registered with the Commission

### Defendants' Fraud Involving Advice About Trading Virtual Currencies

4. Defendants solicited customers in several of the United States as well as foreign countries to become members of groups supposedly receiving Defendants' virtual currency consulting services and trading advice.

5. In April 2017, Defendants advertised membership in trading groups such as RedliteGreenLite, BTC ("RLGLBTC"), relating to Bitcoin, and RedliteGreenLite, LTC ("RLGLLTC"), relating to Litecoin. These groups purported to provide trading advice and guidance, such as entry and exit prices for day trading of certain virtual currencies. Defendants also solicited membership or subscription to other groups and services, such as a "Turn-Key Annual Membership" providing access, for instance, to McDonnell's and CDM's supposed virtual currency trading expertise, mentorship, and guidance.

6. CDM's promotional materials made claims such as that a CDM membership in RLGLLTC would provide "real-time . . . reports [of] critical $LTC entry/exit points via

@RLGLLTC 24/7 including holidays/weekends." These promotional materials further made claims that this continuous, ongoing monitoring and trading signals "afford[ed] 'minute-to-minute' price arbitrage, exploitation, and opportunities for swing trading profits." These promotional materials also made claims such as a trading group was "a dedicated team of digital asset trading specialists trend spotting."

7. These materials promised to provide the membership services on an annual basis in exchange for the up-front subscription fee. Defendants further solicited "lifetime" memberships, at a higher price, in a more exclusive trading sector that would provide greater opportunities to profit from virtual currency trading. One such opportunity purported to offer profits as much as 300% return on an investment in less than a week. In or around May 2017, Defendants created one or more social media chatrooms, purportedly to provide the agreed-upon trading advice and services.

8. After receiving subscription payments from multiple CDM Customers, Defendants never provided to such customers continuous, real-time trading signals, advice, or trading expertise through its social media chatrooms, through online communications such as via Twitter, or through its website. For example, Defendants never provided "real-time . . . reports [of] critical $LTC entry/exit points via @RLGLLTC 24/7 including holidays/weekends." Similarly, Defendants' RLGLLTC never provided signals that "afford[ed] 'minute-to-minute' price arbitrage, exploitation, and opportunities for swing trading profits."

9. Defendants misappropriated the CDM Customers' funds. By July 2017, Defendants shut down the website and chatroom, deleted social media accounts, ceased communicating with customers, and kept the customers' funds.

**Defendant's Fraud Involving Management of Customer Investments in Virtual Currency**

10. McDonnell described himself in solicitations as a "professional trader," and CDM's website included a purported example of a single virtual currency trade that had generated more than an approximately 1,000% return.

11. Rather than achieving enormous gains on behalf of CDM Customers, once Defendants had solicited and obtained CDM Customer funds for trading by Defendants on behalf of customers, Defendants ceased communicating with the customers and misappropriated the customers' funds.

12. In or around May 2017, after being solicited by McDonnell, one CDM Customer provided Litecoin to Defendants for trading by McDonnell on the customer's behalf. McDonnell told this customer that he would use the customer's funds to trade the "volatility" of Litecoin. In fact, however, Defendants misappropriated this customer's funds and ultimately ceased communicating with the customer.

**CDM's Controlling Person**

13. McDonnell founded and created CDM, and controlled the content on the CDM website and related social media. McDonnell controlled bank and virtual currency accounts to which he directed CDM Customers to send money for the purchase of CDM services and for Defendants-managed trading. McDonnell was responsible for developing and disseminating the false and misleading information about CDM to CDM Customers through CDMs solicitation materials.

5

### B. CONCLUSIONS OF LAW

#### Jurisdiction and Venue

14. The Court possesses jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 (2012) and 28 U.S.C. § 1345 (2012). Section 6c(a) of the Act, 7 U.S.C. § 13a-1 (2012), authorizes the Commission to seek injunctive and other relief against any person whenever it shall appear to the Commission that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act, or any rule, regulation, or order thereunder.

15. Venue properly lies in this District, pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2012), because Defendants are found in, inhabit, or transact business in this District, and because acts and practices in violation of the Act occurred within this District, among other places.

#### Injunctive Relief is Appropriate

16. The Commission has presented a prima facie case that Defendants have engaged or are engaging in violations the Act and Commission Regulations as set forth in the Complaint.

17. The Commission has also demonstrated a reasonable likelihood of future violations by the Defendants.

18. A preliminary injunction and other relief are warranted in light of the allegations set forth in the Complaint, the Commission's likelihood of success on the merits of its claims against the Defendants, and the reasonable likelihood of future violations by the Defendants.

### III.     RELIEF GRANTED

### A.     PRELIMINARY INJUNCTIVE RELIEF

**IT IS HEREBY ORDERED** that:

19.     Defendants, their officers, agents, servants, employees, successors, assigns, and/or attorneys, and all persons in active concert or participation with Defendants who receive actual notice of this Order by personal service or otherwise, are hereby restrained, enjoined, and prohibited until further order of the Court, from directly or indirectly, in connection with any swap, or contract of sale of any commodity in interstate commerce, or contract for future delivery on or subject to the rules of any registered entity, intentionally or recklessly:

      A.     using or employing, or attempting to use or employ, any manipulative device, scheme, or artifice to defraud;

      B.     making, or attempting to make, any untrue or misleading statement of a material fact or to omit to state a material fact necessary in order to make the statements made not untrue or misleading; and

      C.     engaging, or attempting to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit upon any person;

in violation of Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2012), and/or Commission Regulation 180.1(a), 17 C.F.R. § 180.1(a) (2017).

20.     Defendants, their officers, agents, servants, employees, successors, assigns, and/or attorneys, and all persons in active concert or participation with Defendants who receive actual notice of this Order by personal service or otherwise, are hereby restrained, enjoined, and prohibited until further order of the Court, from directly or indirectly:

      A.     Trading on or subject to the rules of any registered entity, as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40) (2012);

  B.  Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3(yy), 17 C.F.R. § 1.3(yy) (2017)) for their own personal account or for any account in which they have a direct or indirect interest;

  C.  Having any commodity interests traded on their behalf;

  D.  Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

  E.  Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

  F.  Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2017); and

  G.  Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2017)), agent, or any other officer or employee of any person (as that term is defined in Section 1a(38) of the Act, 7 U.S.C. § 1a(38) (2012)) registered, exempted from registration, or required to be registered with the Commission except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2017).

B. **MAINTENANCE OF AND ACCESS TO BUSINESS RECORDS**

**IT IS FURTHER ORDERED** that:

 21. Defendants are restrained from directly or indirectly destroying, mutilating, erasing, altering, concealing or disposing of, in any manner, directly or indirectly, any documents that relate to the business practices or business or personal finances of any Defendant.

22. Any financial or brokerage institution, business entity, or person that receives actual notice of this Order by personal service or otherwise, shall not:

    A. directly or indirectly destroy, alter or dispose of, in any manner, any records relating to the business activities and business and personal finances of any Defendant; and

    B. deny a request by the Commission to inspect all records pertaining to every account or asset owned, controlled, managed or held by Defendants, or managed or held on behalf, or for the benefit, of Defendants, including, but not limited to, originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs. As an alternative to allowing inspection of records, a financial or brokerage institution, business entity or other person may provide copies of records requested by the Commission.

**C. ACCOUNTING AND PRODUCTION OF DOCUMENTS**

**IT IS FURTHER ORDERED** that:

23. Within five (5) business days following the service of this Order, Defendants shall submit in writing and serve upon the Commission an accounting identifying:

    **A.** all transfers or payments of funds to them or any other entity controlled by them from any individual or entity in connection with the misconduct described in the Complaint (the identification shall include the amount of each such transfer or payment, the date of the transfer or payment, and the name, address, account number and financial institution of the party making and the party receiving the transfer or payment);

9

    **B.** in detail, the precise disposition of each such transfer or payment and all assets derived therefrom;

    **C.** by name and address, all persons, entities and accounts currently holding funds or assets derived from such transfers or payments and the reason each received the funds or assets (the identification shall include the amount each received, the date received, the reason received, the institution and account number or location in which the funds or other assets are held and the name, address, account number and financial institution of the person or entity who provided each with the funds or other assets);

    **D.** assets of every type and description presently owned by or held for the direct or indirect benefit, or subject to the direct or indirect control, of Defendants, whether in the United States or elsewhere; and

    **E.** the identification number of each and every account or other asset controlled, managed, or held by, on behalf of, or for the benefit of Defendants, either individually or jointly; the balance of each such account, or a description of the nature and value of such asset as of the close of business on the day on which this Order is served, and, if the account or other asset has been closed or removed, the date closed or removed, the total funds removed in order to close the account, and the name of the person or entity to whom such account or other asset was remitted; and the identification of any safe deposit box that is owned controlled, managed, or held by, on behalf of, or for the benefit of Defendants, either individually or jointly, or is otherwise subject to access by Defendants.

  24. Upon request by the Commission, Defendants shall promptly provide the Commission with copies of all records or other documentation pertaining to any account or asset identified in response to Paragraph 25 above, including, but not limited to, originals or copies of

10

account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, Internal Revenue Service Forms 1099, and safe deposit box logs.

### IV. **MISCELLANEOUS PROVISIONS**

25. *Definitions*. For the purposes of this Order, the following definitions apply:

    A. "Assets" means any legal or equitable interest in, right to, or claim to, any real or personal property, whether individually or jointly, directly or indirectly controlled, and wherever located, including, but not limited to: chattels, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, mail or other deliveries, inventory, checks, notes, accounts (including, but not limited to, bank accounts and accounts at other financial institutions), credits, receivables, lines of credit, contracts (including spot, futures, options, or swaps contracts), insurance policies, and all cash, wherever located, whether within or outside the United States.

    B. The term "document" is synonymous in meaning and equal in scope to the broad usage of the term in Federal Rule of Civil Procedure 34(a).

26. *Service of this Order*. Copies of this Order may be served by any means, including electronic mail, facsimile transmission, and United Parcel Service, upon any financial institution or other entity or person that may have possession, custody, or control of any documents or assets of Defendants, or that may be subject to any provision of this Order.

27. *Bond Not Required of Plaintiff*. Plaintiff is an agency of the United States, and therefore pursuant to Section 6c(b) of the Act, 7 U.S.C. §13a-1(b) (2012), no bond is required prior to entry of this Order.

28. *Continuing Jurisdiction of this Court*. This Order shall remain in effect until further order of the Court, and the Court shall retain jurisdiction over this action to ensure compliance with this Order and for all other purposes related to this action.

**SO ORDERED.**

_____
**JACK B. WEINSTEIN**
Senior United States District Judge

Dated: March __, 2018
       Brooklyn, New York