1                        UNITED STATES DISTRICT COURT
                         EASTERN DISTRICT OF NEW YORK
2

3       ------------------------------------X
                                            :
4       COMMODITY FUTURES TRADING           :
        COMMISSION                          :    18-CV-00361 (JBW)
5                                           :
                        v.                  :    225 Cadman Plaza East
6                                           :    Brooklyn, New York
                                            :
7       McDONNELL, et al.,                  :    March 6, 2018
                                            :
8                        Defendant.         :
        ------------------------------------X
9

10           TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
                 BEFORE THE HONORABLE ROANNE L. MANN
11                  UNITED STATES MAGISTRATE JUDGE

12
        APPEARANCES:
13
        For the Plaintiff:          KENNETH B. TUMER, ESQ.
14                                  GATES SALYERS HURAND, ESQ.
                                    DAVID WILLIAM OAKLAND
15                                  Commodity Futures Trading
                                    Commission
16                                  140 Broadway, 19th Floor
                                    New York, New York 10005
17
                                    ALEJANDRA DE URIOSTE
18                                  Commodity Futures Trading
                                    Commission
19                                  Division Of Enforcement
                                    140 Broadway, 19th Floor
20                                  New York, New York 10005

21      For the Defendant:          PATRICK K. McDONNELL, Pro Se
                                    20 Rawson Place
22                                  Staten Island, New York 10315

23
        Court Transcriber:          SHARI RIEMER, CET-805
24                                  TypeWrite Word Processing Service
                                    211 N Milton Road
25                                  Saratoga Springs, New York 12866


        Proceedings recorded by electronic sound recording, transcript
        produced by transcription service

1  (Proceedings began 2:21 P.m.)

2          THE CLERK:  Civil cause for status conference, <u>CFTC</u>

3  <u>v. McDonnell</u>, docket number 18-CV-361.  Parties, please state

4  your appearances for the record.

5          MR. TOMER:  Brent Tomer from the Commodity Futures

6  Trading Commission for the plaintiff.

7          MR. HURAND:  Gates Hurand for the plaintiff.

8          MR. OAKLAND:  David Oakland for the plaintiff.

9          MS. De URIOSTE:  Alejandra de Urioste for the

10  plaintiff.

11          MS. SULTAN:  Manal Sultan for the plaintiff.

12          THE COURT:  Good afternoon.

13          MR. MCDONNELL:  Hi, I'm Patrick McDonnell,

14  Defendant, Pro se.

15          THE COURT:  All right.  Welcome to all of you.

16  Please be seated.  And I encourage you to remain seated during

17  the proceeding so you'll be closer to the microphones.

18          This is an unscheduled proceeding following a

19  hearing before Judge Weinstein.  What is it that you would

20  like me to do today?

21          UNIDENTIFIED SPEAKER:  Yes, Your Honor.  Judge

22  Weinstein sent us down here to help work out a expedited

23  discovery schedule and deadlines in advance of a June 5th

24  hearing.  At which time the Judge will consider both

25  preliminary and permanent injunctive relief for the

3

1  commission.

2          Judge Weinstein, also this morning, entered an order

3  granting expedited discovery of the defendant.  We have a list

4  of things that we have requested that we want -- would like to

5  request of the defendant relating to his business.  And we

6  think it would probably make sense to just put that on the

7  record today and resolve any disputes with respect to that

8  which may arise.

9          Finally, Judge Weinstein ordered that we do -- enter

10  into mediation as well.  You know, speaking from the

11  plaintiff's perspective, we're happy to do so.  The prospects

12  of that at this point I think, given Mr. McDonnell's

13  statements upstairs are unlikely, but we're happy to enter it

14  with an open mind.  We would propose to do that at an earlier

15  date given the expedited discovery schedule we're going to be

16  moving pretty quickly toward what will be a full blown

17  hearing.

18          THE COURT:  What date is the hearing?

19          UNIDENTIFIED SPEAKER:  June 5th, Your Honor.

20          THE COURT:  So there are -- you want to make a list

21  of discovery matters that you're seeking from the defendant?

22          UNIDENTIFIED SPEAKER:  That's correct, Your Honor.

23  We have a -- we have a list here that we've prepared.

24          THE COURT:  Have you served any discovery demands on

25  him?

4

1          UNIDENTIFIED SPEAKER:  Not as of yet.

2          THE COURT:  And you haven't talked with him about --

3    you indicate that there are disputes that you want resolved.

4    Have you attempted to resolve them with Mr. McDonnell?

5          UNIDENTIFIED SPEAKER:  With respect to the actual

6    discovery requests, we've not spoken one-on-one with Mr.

7    McDonnell upstairs.  We listed some of the things that we

8    want.  We did receive some dispute in response.  Given that

9    the Court has ordered ten days for this discovery to proceed

10   before we begin full blown discovery on a 90-day schedule,

11   we'd ask that the Court hear today any disputes that may arise

12   with respect to that listing of discovery requests.  Which is

13   a fairly short list for the expedited relief that was granted.

14         THE COURT:  All right.  I don't know that I'm going

15   to be able to  resolve discovery disputes today when I'm

16   hearing them for the first time.  And I haven't even reviewed

17   the entire record.  But why don't you tell me what it is

18   you're seeking.

19         UNIDENTIFIED SPEAKER:  Thank you, Your Honor.  I'm

20   going to pass the mic here to Mr. Hurand, my colleague.

21         MR. HURAND:  Thank you, Your Honor.  A list of

22   things that we would seek to be ordered by the Court for the

23   production on the ten day schedule that the Court outlined

24   upstairs.  The first thing would be all virtual currency

25   accounts.  Either in the defendant's names, that's Mr.

5

1  McDonnell or CabbageTech Corp. or under their control.

2          THE COURT:  When you say you want all virtual

3  currency accounts, am I -- you're talking about an

4  identification of them?

5          MR. HURAND:  Yes, Your Honor.  The location of those

6  accounts, the location of the wallets, either public or

7  private.  The addresses of those wallets, and accounts to the

8  extent that they exist on exchanges or wallet services.

9          THE COURT:  I'm sorry.  And the last thing you want

10  is what?

11          MR. HURAND:  Account information to the extent that

12  a third-party provider has that wallet account service that's

13  being provided to the defendants, either in their name or

14  under their control.

15          The second thing -- or second category would be all

16  U.S. and all foreign bank accounts held by in the name of the

17  defendants or under their control.

18          And the third thing would be all PayPal records

19  relating to the defendants.  And the fourth category would be

20  a list of all customer names, deposits and time periods of

21  dealings with the defendants.

22          THE COURT:  And when Judge Weinstein ordered

23  expedited discovery in the next ten days, did he define or

24  explain what discovery would be encompassed within the

25  expedited discovery?

6

1           UNIDENTIFIED SPEAKER:  The request for expedited

2    discovery were books and records of the defendant's business,

3    CabbageTech and Coin Drop Markets.  We think that these

4    requests are all encompassed within that.  But are

5    specifically tailored to ensure that the defendant knows

6    exactly what we're seeking.

7           THE COURT:  All right.  Mr. McDonnell?

8           MR. McDONNELL:  Yes, ma'am.

9           THE COURT:  Do you want to respond?

10          MR. McDONNELL:  I was -- I entered into complete

11   exploratory resolution with the plaintiffs.  We had -- both

12   parties had agreed to enter into communication where we would

13   try to resolve this prior to getting to this point.  I was

14   asked for this same information by the plaintiffs and I'm

15   finding it very hard to believe that with three witnesses and

16   approximately a couple hundred customers that are satisfied

17   with my company, that they're requesting information -- for a

18   defendant in a case like this, it's very  hard to be sitting

19   across the table from somebody that's asking you for your

20   customers when they're saying that I ran away with all my

21   company's money and all my customer's money.

22          So for me I object everything that they have said,

23   especially in reference to discovery because I came open forth

24   in terms of trying to resolve this with them.  And when I did

25   resolve it with them, they told me that they had no victims

7

1   and they had none of my customer records and that David

2   William Oakland, the attorney right here, he stated that the

3   CFTC can charge me up to $170,000 per customer that I have.

4          Now in the resolution, you know, things that we had

5   with them, they -- you know, I look at it like this.  You

6   know, you have three customers over a couple hundred

7   customers.  And the three particular customers actually happen

8   to be ex promoters of my company.  There's not one customer

9   complaint.  And therefore, I think the information that

10  they're requesting should already be in their hands to bring a

11  case like this.  Because if they don't have that type of

12  information, where are all these allegations coming from?

13         So I really object to anything that they say because

14  I've -- I haven't done nothing wrong in relation to this case

15  and according to my motions -- I don't know if you've read

16  them -- this is a total --

17         THE COURT:  I have not -- I was not --

18         MR. McDONNELL:  It's a fabricated case, Your Honor.

19  And if you look at the facts, you'll clearly see it.

20         THE COURT:  Well there was a motion to dismiss that

21  was denied by the district court judge.

22         MR. McDONNELL:  Yes.

23         THE COURT:  And although you talk about exploratory

24  resolution, the case has not been resolved.  So the case is

25  proceeding.

8

1              MR. McDONNELL:  Yes.

2              THE COURT:  It's going forward.  Judge Weinstein has

3    ordered -- I'm told, and I haven't heard you dispute that --

4    that he's given you ten days to produce the books and records.

5              MR. McDONNELL:  Yes, he has.

6              THE COURT:  And now the issue is what -- among the

7    books and records you should be produced within ten days, it's

8    no answer to say that this is a bogus case.  We're beyond that

9    point.  That's been ruled on.  It's going to go forward.  And

10   the only question is the specifics --

11             MR. McDONNELL:  Okay.

12             THE COURT:  -- that you have to produce.  So other

13   than the fact that you tried to resolve the case and you

14   believe there are not real victims, do you have any other

15   objections?

16             MR. McDONNELL:  I object to the full request for the

17   information.

18             THE COURT:  On the grounds that you've already --

19             MR. McDONNELL:  On the --

20             THE COURT:  -- stated?

21             MR. McDONNELL:  -- on the grounds that I believe

22   that in order to bring a complaint or a case against any

23   defendant you should have this information.  Because they're

24   looking to take this information to turn satisfied customers

25   into victims that they can get $170,000 per customer if the

9

1    wording of this case isn't put together correctly.  And that's

2    the problem that I've had, is the wording is the problem.  I

3    was 100 percent willing -- I would bring my books in here

4    right now for you to inspect them, but I'm very, very --

5              THE COURT:  I'm not interested in --

6              MR. McDONNELL:  Yeah.

7              THE COURT:  -- inspecting them.

8              MR. McDONNELL:  I'm very -- I have problems with

9    handing information over to plaintiffs that told me I could

10   pay $170,000 per victim when they're satisfied customers.

11   That's the objection that I have.

12             I have no problem handing them over the information

13   to the three witnesses on the case that proclaim that I

14   created a fraud.  But I do not think that I -- there's also

15   privacy things that in my disclaimer on my website where I'm

16   not allowed to issue this information unless, you know, I have

17   a subpoena or something of that nature from a court.  And the

18   thing I'm saying is there's privacy factors for the customers

19   that are satisfied.  This will probably turn them into

20   unsatisfied customers if the CFTC calls when they are still

21   satisfied.  I'm still in contact with these people.  We're

22   friends outside of business and they only have three

23   witnesses.

24             THE COURT:  All right.  You've articulated a concern

25   about the privacy interests of your customers.  I assume the

1  CFTC would be prepared to enter into a confidentiality

2  stipulation to be so ordered by the court.

3          UNIDENTIFIED SPEAKER:  Absolutely, Your Honor.  And

4  we indicated as such upstairs as well.

5          MR. McDONNELL:  May I -- may I put a request in that

6  if they have any request for customers or any type of

7  information that I think that they should come bearing a name

8  for this particular customer.  Because there's no accusations

9  from these customers because they're satisfied.

10          I think therefore, in terms of the information that

11  they're requesting should be based on people they have

12  complaining.  Not customers that aren't.  I mean, if I went to

13  Macy's and if 3 people returned stuff and 100 people didn't,

14  and they were satisfied, we wouldn't go talk to the people

15  that were satisfied.  So I think that this should be cut down

16  to the three witness' information on this case.  Not all the

17  customers.  Because they're all satisfied.

18          What I will do is bring in over 100 and something

19  satisfied testimonials from my customers to prove that they're

20  satisfied.  But I have a problem handing it to these people

21  with the wording that they had said to me through the

22  exploratory hearings.  And I ask of the Court to allow them to

23  have the information request on the three witnesses in the

24  case.  Not the majority of the satisfied customers.  The

25  numbers don't work out, a couple hundred versus three.

1        I had a 99 percent customer service satisfaction

2   ratio.  And they want to contaminate my customers and turn

3   them from satisfied customers to victims.  Because this is

4   more than just -- this has nothing to do with the three

5   witnesses.  This has to do with the CFTC making 170,000 per

6   customer.  If you look at the news, their fiscal year was down

7   last year.

8        THE COURT:  I think we're -- I think we're going far

9   afield from --

10       MR. McDONNELL:  Yeah, but --

11       THE COURT:  -- the issue now.  We're not -- we're

12   not getting into the merits.  We're getting into discovery.

13       MR. McDONNELL:  Okay.  In short I'll say this and

14   I'll stop.  In short I think that they should only have access

15   to the three witnesses, not the satisfied customers.

16       THE COURT:  All right.  Would -- would either Mr.

17   Tomer or Mr. Hurand like to respond?

18       UNIDENTIFIED SPEAKER:  Your Honor, respectfully the

19   customers for which he used go to the heart of this matter

20   which is based in fraud on customers of his business Coin Drop

21   Markets.  For him to withhold information of, you know, his

22   customer list would clearly be outside the realm of relevance.

23   And additionally --

24       MR. McDONNELL:  I objection.

25       UNIDENTIFIED SPEAKER:  -- additionally the nature of

1   the [inaudible] chain itself makes it very difficult to

2   identify a customer based on financial records alone.

3   Therefore this is the entire reason we brought the injunction

4   and was granted preliminary injunction upstairs.

5            MR. McDONNELL:  Your Honor, may I address the Court?

6   99 percent of the payments that came in through my company

7   were through PayPal.  Not Bitcoin, Litecoin, or crypto

8   currency.  This case has gone from a membership based business

9   that provided services on an array of investments outside of

10  crypto currency.  They're spotlighting one thing and without

11  getting into everything, again, I ask that the Court just

12  grants them authority for the three witnesses not the

13  additional satisfied customers.  It's unfair to the defendant

14  and it's unfair to the customers themselves.

15           THE COURT:  All right.  Anything else?

16           MR. McDONNELL:  No, ma'am.

17           THE COURT:  All right.  The objections are overruled

18  but the production will be pursuant to a confidentiality

19  stipulation that should be signed by both sides and then will

20  be submitted to the Court to be so ordered.

21           UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

22           The next order of business then would be the

23  schedule.  Judge Weinstein already ordered the initial

24  discovery with respect to the preliminary injunction for ten

25  days from now.  We have set forth a schedule here that I'm

1    happy to describe to the Court of how we would proceed leading

2    up to the June 5th hearing.  Simultaneously the order of

3    mediation should proceed somewhere along those lines as well.

4    We would propose, if you'd like to hear it now, I can go

5    through that list.

6              THE COURT:  Or you have not discussed this with Mr.

7    McDonnell?

8              UNIDENTIFIED SPEAKER:  Have not.

9              THE COURT:  Why don't you very quickly since there's

10   less -- there's less urgency with this than with the

11   production.  But what are you proposing --

12             UNIDENTIFIED SPEAKER:  Sure.

13             THE COURT:  -- for the schedule?

14             UNIDENTIFIED SPEAKER:  So we would propose ten days

15   from today would be the 16th of March.  That would be the date

16   upon which Mr. McDonnell would produce the expedited business

17   records.  On the 23rd, which is the Friday following, we would

18   do initial disclosures.  We'd have a May 18th cutoff for

19   discovery.  And a May 22nd identification of witnesses and

20   evidence list.

21             THE COURT:  I'm sorry.  What date?

22             UNIDENTIFIED SPEAKER:  May 22nd.  And then the

23   hearing on the 5th.

24             THE COURT:  And why are the initial disclosures --

25   why is the deadline for that on March 23rd as opposed to

14

1   earlier?  While I recognize that Mr. McDonnell, if he's

2   focusing on -- he may need until that time if he's producing

3   expedited business records by the 16th, why can't the CFTC

4   provide its initial disclosures by the 16th?

5           UNIDENTIFIED SPEAKER:  We could provide initial

6   disclosures on the 16th.  We would obviously amend those

7   following the -- following the production from Mr. McDonnell

8   based on additional customers and information that's out

9   there.

10          THE COURT:  All right.  Mr. McDonnell, do you want

11  to respond?

12          MR. McDONNELL:  I'd like the same time that they

13  have.

14          THE COURT:  You want -- their -- I'm ordering them

15  to produce their initial disclosures before yours.  You want

16  me to shorten your time?

17          MR. McDONNELL:  I don't understand.  I'm sorry.

18          THE COURT:  Initial disclosures are disclosures that

19  the parties have to produce to one another without a specific

20  request.  And these are set forth in Rule 26 of the Federal

21  Rules of Civil Procedure.  The CFTC has proposed a

22  simultaneous deadline for both sides of March 23rd.  I said

23  that while I'm prepared to give you an additional week beyond

24  the March 16th deadline for producing the expedited business

25  records --

15

1          MR. McDONNELL:  Okay.

2          THE COURT:  -- that I -- I was going to direct the

3     CFTC --

4          MR. McDONNELL:  Okay.

5          THE COURT:  -- to produce their initial disclosures

6     to you by the 16th.  You want me to move up that deadline for

7     you as well?

8          MR. McDONNELL:  No.  I agree with everything you

9     said.

10          THE COURT:  All right.  So I'm prepared to adopt the

11     schedule proposed by the CFTC with the one adjustment that

12     I've just identified.

13          UNIDENTIFIED SPEAKER:  And just for the -- to

14     clarify, we would have the 16th initial disclosures from the

15     CFTC as well as Mr. McDonnell's expedited business records?

16          THE COURT:  Right.  And by the 23rd, if you're going

17     to supplement or amend them based on the production of

18     business records on the 16th, you should do that by the 23rd.

19          UNIDENTIFIED SPEAKER:  Your Honor, we'd reserve the

20     right to move for additional time on that to the extent that

21     the production from the defendant is not fulsome.

22          THE COURT:  Well then you reserve the right to

23     further supplement or amend but by the 23rd you should

24     supplement and amend based on the March 16th production.

25          UNIDENTIFIED SPEAKER:  Understood, Your Honor.

16

1          THE COURT:  All right.  Anything else?

2          UNIDENTIFIED SPEAKER:  Judge Weinstein, Your Honor,

3   directed us to have mediation with the defendant.  To be

4   clear, we filed this case against both the defendant as well

5   as the entity that he controlled.  The entity has defaulted in

6   this matter.  So the mediation would proceed against the

7   individual defendant, Patrick McDonnell.

8          THE COURT:  And I assume that we're talking about

9   Court-annexed mediation?

10          UNIDENTIFIED SPEAKER:  I'm sorry?

11          THE COURT:  Court-annexed mediation or private

12   mediation?

13          UNIDENTIFIED SPEAKER:  Court.  Yes, Your Honor.

14   With you, Your Honor.

15          THE COURT:  No, I'm talking about Court-annexed

16   mediation.  We have -- there's an ADR department within the

17   Court.

18          UNIDENTIFIED SPEAKER:  Understood, Your Honor.  I

19   wasn't clear by Judge Weinstein's order whether he meant to

20   ask us to do that or to proceed with mediation with you.  It

21   was unclear.  We're happy to do either.

22          THE COURT:  Well what was the time -- what time

23   frame were you considering?

24          UNIDENTIFIED SPEAKER:  Merely earlier than later,

25   essentially, so that discovery wouldn't proceed too far to the

17

1    extent there is a chance of a successful resolution here.

2              THE COURT:  Earlier is all relative.  Are you

3    talking about April or are you talking about May?

4              UNIDENTIFIED SPEAKER:  April, Your Honor.

5              THE COURT:  All right.  If it's going to be before

6    May, we'll do it April 17th at 10:00.  Is there anything else?

7              UNIDENTIFIED SPEAKER:  Your Honor, the defendant

8    invoked his Fifth Amendment privilege during the hearing and

9    that was something Judge Weinstein wanted to make sure Your

10   Honor was aware of going forward with this.  And to the extent

11   that we would seek the deposition of the defendant, that's

12   something that may come up down the line.

13             THE COURT:  Well, Mr. McDonnell, you have the right

14   to invoke your Fifth Amendment privilege but you should

15   understand that in connection with a civil case in contrast to

16   a criminal case, the invocation of the privilege does give

17   rise to an adverse inference.  Or can -- I should say can --

18   may give rise to an adverse inference.  The finder of fact is

19   entitled to infer from the invocation of the privilege that

20   the -- that had the witness responded to the question that the

21   testimony would have been adverse to the invoking party.  So

22   you should be aware of that.  Can you -- let me ask you this.

23   Can you afford to retain counsel?

24             MR. McDONNELL:  No, or I would.  I'm honestly

25   sitting here struggling today and Judge Weinstein helped me

1  with that issue.

2          THE COURT:  He helped you with the issue of what?

3          MR. McDONNELL:  Well he just -- he explained it to

4  me in terms of, you know, do you wish, or wish not to invoke

5  your right and gave me a brush over of, you know, and I

6  invoked it.

7          THE COURT:  Well if in fact you truly cannot afford

8  to retain counsel, you know, I would -- I understand that he

9  urged you to visit the Federal Pro Se --

10          MR. McDONNELL:  Yes.

11          THE COURT:  -- Litigation Clinic which is on the

12  first floor of this courthouse.  They may not be able to see

13  you today, but you should go in and make an appointment.  And

14  if you -- but they only provide limited representation.  They

15  don't provide full representation.  You would be able to --

16  assuming that they didn't have a conflict and they felt you

17  qualified financially for their assistance, they could help

18  you if you wanted for example in responding to discovery

19  demands and making discovery demands.  But they wouldn't

20  appear on your behalf in Court or at a deposition.

21          And given the nature of the allegations in this case

22  and the potential criminal exposure you would be well-advised

23  to try to find counsel either to try and retain counsel or

24  perhaps the Federal Pro Se Litigation Clinic can help you

25  secure Pro Bono counsel if you truly cannot afford to retain

1    counsel.

2             MR. McDONNELL:  Thank you.  He gave me a brochure

3    that gives me the information.

4             THE COURT:  All right.  I would ask the CFTC to

5    submit a proposed order consistent with what the Court has

6    ruled today.  How much time do you need to submit that?

7             UNIDENTIFIED SPEAKER:  We should be able to do that

8    today, Your Honor.

9             THE COURT:  All right.  And in terms of the -- in

10   terms of the confidentiality stipulation -- and you should

11   share these things with Mr. McDonnell.  Do you have an email

12   address for him?

13            UNIDENTIFIED SPEAKER:  We do.  Mr. McDonnell

14   requested that we do everything through snail mail.  We're

15   happy to provide it by email as well so that he has the

16   stipulation and the full list and we can do this in a more

17   expedited manner.

18            THE COURT:  Mr. McDonnell, I would encourage you to

19   register for ECF, electronic court filing.  Although a Pro Se

20   is not permitted to file over the ECF system --

21            MR. McDONNELL:  That's why I didn't.

22            THE COURT:  -- to file electronically, you can

23   nevertheless register and receive electronic notices.  So if

24   there's a Court order you will then receive it over your email

25   address.  In addition, I would ask counsel for the CFTC if --

1           You're not going to communicate with them by email,

2    you haven't agreed to do that?

3           MR. McDONNELL:  Well from this point on they can

4    send the necessary documentation.  That was -- I --

5           THE COURT:  By email or by --

6           MR. McDONNELL:  By email.  They have my email,

7    cdm@gmx.us.

8           THE COURT:  And I would ask the CFTC since Mr.

9    McDonnell apparently is agreeing to electronic service, to --

10   if he wants to file something, if you would agree to enter it

11   into ECF on his behalf, if he emails it to you in order to

12   expedite the Courts getting any papers from him.

13          UNIDENTIFIED SPEAKER:  We'd be happy to do so, Your

14   Honor.

15          THE COURT:  All right.  Is there anything else?

16          UNIDENTIFIED SPEAKER:  I would just note that given

17   that Judge Weinstein did deny the motion to dismiss today,

18   that we'd request that the defense time to answer would be the

19   same under the federal rules giving him till the same date as

20   the expedited discovery is due to answer.

21          THE COURT:  Mr. McDonnell, is there any reason why

22   you couldn't do that?

23          MR. McDONNELL:  No, I will.

24          THE COURT:  All right.  And again, I encourage you

25   to try and secure counsel in this case.

21

1          MR. McDONNELL:  I will.

2          THE COURT:  Anything else?

3          UNIDENTIFIED SPEAKER:  No, Your Honor, from the

4  CFTC.

5          THE COURT:  All right.  Thank you all very much.

6        (Proceedings concluded at 1:05 p.m.)

7                        *  *  *  *  *

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

22

1        I certify that the foregoing is a court transcript from

2   an electronic sound recording of the proceedings in the above-

3   entitled matter.

4
                                    _____
5
6                                   Shari Riemer, CET-805

7   Dated:  March 14, 2018

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25