|          |                                                                                                                                                                                                                           |
|----------|---------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| **From:**    | Patrick McDonnell                                                                                                                                                                                                         |
| **To:**      | Hurand, Gates                                                                                                                                                                                                             |
| **Cc:**      | de Urioste, Alejandra; Oakland, David W.; Tomer, K. Brent; Giglio, Christopher                                                                                                                                            |
| **Subject:** | DEFENDANT PATRICK K. MCDONNELL COMPLAINT RESPONSE: COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF AND FOR CIVIL MONETARY PENALTIES UNDER THE COMMODITY EXCHANGE ACT AND COMMISSION REGULATIONS |
| **Date:**    | Wednesday, April 25, 2018 11:28:55 AM                                                                                                                                                                                     |

Hi Gates,

Please file this email/answer to CFTC fabricated complaint with the Court via ECF as per Chief Magistrate Judge Roanne L. Mann instructions during initial hearing. Also, please let me know you are in receipt of the 4 signed authorizations mailed to your office via USPS Certified Mail.

Thank You,

Patrick K. McDonnell



Patrick K. McDonnell
Defendant/Pro Se
20 Rawson Place Staten Island, NY 10314



April 25, 2018



Chief Magistrate Judge Roanne L. Mann
United States District Court
Eastern District of New York
225 Cadman Plaza East
New York, New York 11201

Re: Commodity Futures Trading Commission v. Patrick K. McDonnell and
CabbageTech, Corp. d/b/a Coin Drop Markets, No. 18-CV-00361 (JBW)(RLM)



To The Court;


DEFENDANT PATRICK K. MCDONNELL COMPLAINT RESPONSE: COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF AND FOR CIVIL MONETARY PENALTIES UNDER THE COMMODITY EXCHANGE ACT AND COMMISSION REGULATIONS


1. Since at least in or around January 2017 to the present (the "Relevant Period"), Patrick Kerry ("PK") McDonnell ("McDonnell") and CabbageTech, Corp. d/b/a Coin Drop Markets ("CDM") (collectively, "Defendants"), operated a deceptive and fraudulent virtual currency scheme to induce customers ("CDM Customers") to send money and

virtual currencies to Defendants in exchange for purported virtual currency trading advice concerning the trading of virtual currencies, including Bitcoin and Litecoin, and for virtual currency purchases and trading on behalf of customers under McDonnell's direction. Defendants' solicitations were deceptive and fraudulent, and soon after obtaining the funds of CDM Customers, Defendants stopped communicating with their customers and simply misappropriated the funds.

DEFENDANT ANSWER: Plaintiff fabricated complaint lacks sufficient information and truth. Defendant firmly denies any/all wording and wrongdoing falsely claimed.

2. In an attempt to conceal the scheme, Defendants removed website and social media materials from the internet, and ceased communicating with CDM Customers, who lost most if not all of their invested funds due to Defendants' fraud and misappropriation.

DEFENDANT ANSWER: Plaintiff fabricated complaint lacks sufficient information and truth. Defendant firmly denies any/all wording and wrongdoing falsely claimed.

3. Through this conduct, Defendants were engaged, are engaging, or are about to engage in fraudulent acts and practices in violation of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 1–27f (2012), and Commission Regulations ("Regulations"), 17 C.F.R. pt. 1–190 (2017), specifically Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2012), and Regulation 180.1(a), 17 C.F.R. § 180.1(a) (2017).

DEFENDANT ANSWER: Plaintiff fabricated complaint lacks sufficient information and truth. Defendant firmly denies any/all wording and wrongdoing falsely claimed.

4. Accordingly, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), the Commission brings this action to enjoin such acts and practices and compel compliance with the Act. In addition, the Commission seeks civil monetary penalties and remedial ancillary relief, including, but not limited to, trading bans, restitution, disgorgement, rescission, pre- and post-judgment interest, and such other relief as the Court may deem necessary and appropriate.

DEFENDANT ANSWER: Plaintiff complaint improperly lies with the Court as the CFTC has no legal authority to regulate Bitcoin and/or Virtual Currency transactions.

5. Unless restrained and enjoined by this Court, Defendants are likely to continue to engage in the acts and practices alleged in this Complaint and similar acts and practices, as more fully described below.

DEFENDANT ANSWER: Plaintiff complaint improperly lies with the Court as the CFTC has no legal authority to regulate Bitcoin and/or Virtual Currency transactions

6. Jurisdiction. This Court has jurisdiction over this action under 28 U.S.C. § 1331 (2012) (federal question jurisdiction) and 28 U.S.C. § 1345 (2012) (district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress). Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a) (2012), authorizes the Commission to seek injunctive and other relief against any person

whenever it appears to the Commission that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.

DEFENDANT ANSWER: Plaintiff complaint improperly lies with the Court as the CFTC has no legal authority to regulate Bitcoin and/or Virtual Currency transactions.

7. Venue. Venue properly lies with the Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e), because Defendants are found in, inhabit, or transact business in this District, and because acts and practices in violation of the Act occurred, are occurring, or are about to occur, within this District.

DEFENDANT ANSWER: Plaintiff complaint improperly lies with the Court as the CFTC has no legal authority to regulate Bitcoin and/or Virtual Currency transactions.

8. Plaintiff Commodity Futures Trading Commission ("Commission" or "CFTC") is an independent federal regulatory agency that is charged by Congress with the administration and enforcement of the Act and the Regulations. The Commission maintains its principal office at Three Lafayette Centre, 1155 21st Street, N.W. Washington, D.C. 20581

DEFENDANT ANSWER: Plaintiff fabricated complaint lacks sufficient information and truth to admit or deny.

9. Defendant Patrick Kerry "PK" McDonnell is a resident of Staten Island, New York. McDonnell owned and controlled CabbageTech, Corp. McDonnell has never been registered with the Commission.

DEFENDANT ANSWER: Plaintiff fabricated complaint lacks sufficient information and truth to admit or deny.

10. Defendant CabbageTech, Corp. is a New York corporation based in Staten Island, New York. CabbageTech, Corp. was incorporated on May 6, 2016. CabbageTech, Corp.'s last known address is 20 Rawson Place, Suite B, Staten Island, New York, 10314. At times, CabbageTech, Corp. did business as Coin Drop Markets. Neither CabbageTech, Corp. nor Coin Drop Markets has ever been registered with the Commission.

DEFENDANT ANSWER: Plaintiff fabricated complaint lacks sufficient information and truth to admit or deny.

11. A virtual currency is defined here as a digital representation of value that functions as a medium of exchange, a unit of account, and/or a store of value, but does not have legal tender status in any jurisdiction. Bitcoin, Litecoin, and other virtual currencies are distinct from "real" currencies, which are the coin and paper money of the United States or another country that are designated as legal tender, circulate, and are customarily used and accepted as a medium of exchange in the country of issuance.

DEFENDANT ANSWER: Plaintiff fabricated complaint lacks sufficient information and truth to admit or deny.

12. During the Relevant Period, Defendants solicited and received fees and investments from CDM Customers in various states and countries for the purposes of receiving expert trade signals and trading advice for virtual currencies like Bitcoin and Litecoin and for virtual currency purchasing and trading managed by Defendants.

DEFENDANT ANSWER: Plaintiff fabricated complaint lacks sufficient information and truth. Defendant firmly denies any/all wording and wrongdoing falsely claimed.

13. During the Relevant Period, Defendants solicited customers in several of the United States as well as foreign countries to become members of groups supposedly receiving Defendants' virtual currency consulting services and trading advice.

DEFENDANT ANSWER: Plaintiff fabricated complaint lacks sufficient information and truth. Defendant firmly denies any/all wording and wrongdoing falsely claimed.

14. McDonnell identified himself as CDM's CTO (Chief Technology Officer), among other titles.

DEFENDANT ANSWER: Plaintiff fabricated complaint lacks sufficient information and truth to admit or deny.

15. In or around April 2017, for example, Defendants advertised membership in trading groups such as RedliteGreenLite, BTC ("RLGLBTC"), relating to Bitcoin, and RedliteGreenLite, LTC ("RLGLLTC"), relating to the virtual currency Litecoin.

DEFENDANT ANSWER: Plaintiff fabricated complaint lacks sufficient information and truth to admit or deny.

16. These groups purported to provide trading advice and guidance, such as entry and exit prices for day trading of certain virtual currencies.

DEFENDANT ANSWER: Plaintiff fabricated complaint lacks sufficient information and truth to admit or deny.

17. Defendants also solicited membership or subscription to other groups and services, such as a "Turn-Key Annual Membership" providing access, for instance, to McDonnell's and CDM's supposed virtual currency trading expertise, mentorship, and guidance.

DEFENDANT ANSWER: Plaintiff fabricated complaint lacks sufficient information and truth to admit or deny.

18. For example, in or around April and May 2017, CDM's promotional materials made claims such as that a CDM membership in RLGLLTC would provide "real-time . . . reports [of] critical $LTC entry/exit points via @RLGLLTC 24/7 including holidays/weekends."

DEFENDANT ANSWER: Plaintiff fabricated complaint lacks sufficient information and truth to admit or deny.

19. Such promotional materials further made claims such as that this continuous, ongoing monitoring and trading signals "afford[ed] 'minute-to-minute' price arbitrage, exploitation, and opportunities for swing trading profits."

DEFENDANT ANSWER: Plaintiff fabricated complaint lacks sufficient information and truth to admit or deny.

20. Such promotional materials also made claims such as a trading group was "a dedicated team of digital asset trading specialists trend spotting."

DEFENDANT ANSWER: Plaintiff fabricated complaint lacks sufficient information and truth to admit or deny.

21. These materials promised to provide the membership services on an annual basis in exchange for the up-front subscription fee.

DEFENDANT ANSWER: Plaintiff fabricated complaint lacks sufficient information and truth to admit or deny.

22. In or around May 2017, Defendants created one or more social media chatrooms, purportedly to provide the agreed-upon trading advice and services.

DEFENDANT ANSWER: Plaintiff fabricated complaint lacks sufficient information and truth to admit or deny.

23. In fact, however, after receiving subscription payments from multiple CDM Customers, Defendants never provided to such customers continuous, real-time trading signals, advice, or trading expertise through its social media chatrooms, through online communications such as via Twitter, or through its website.

DEFENDANT ANSWER: Plaintiff fabricated complaint lacks sufficient information and truth. Defendant firmly denies any/all wording and wrongdoing falsely claimed.

24. For example, Defendants never provided "real-time . . . reports [of] critical $LTC entry/exit points via @RLGLLTC 24/7 including holidays/weekends." Similarly, Defendants' RLGLLTC never provided signals that "afford[ed] 'minute-to-minute' price arbitrage, exploitation, and opportunities for swing trading profits."

DEFENDANT ANSWER: Plaintiff fabricated complaint lacks sufficient information and truth. Defendant firmly denies any/all wording and wrongdoing falsely claimed.

25. In fact, Defendants misappropriated the CDM Customers' funds.

DEFENDANT ANSWER: Plaintiff fabricated complaint lacks sufficient information and truth. Defendant firmly denies any/all wording and wrongdoing falsely claimed.

26. In or around July 2017, shortly after Defendants had solicited and obtained payments from numerous CDM Customers for the purchase of annual subscriptions to various membership services, Defendants shut down the website and chatroom, deleted social media accounts, ceased communicating with customers, and kept the customers' funds.

DEFENDANT ANSWER: Plaintiff fabricated complaint lacks sufficient information and truth. Defendant firmly denies any/all wording and wrongdoing falsely claimed.

27. For example, in or around June 2017, one CDM Customer, responding to McDonnell's promotions online through social media such as Twitter, inquired into CDM's services. In response, McDonnell solicited the customer to purchase the CDM trading advice service and obtained the customer's payment. Days later, Defendants ceased all communications with the customer and misappropriated the customer's funds.

DEFENDANT ANSWER: Plaintiff fabricated complaint lacks sufficient information and truth. Defendant firmly denies any/all wording and wrongdoing falsely claimed.

28. Defendants also solicited "lifetime" memberships in a more exclusive trading sector that would provide greater opportunities to profit from virtual currency trading. For example, one such opportunity purported to offer profits as much as 300% return on an investment in less than a week.

DEFENDANT ANSWER: Plaintiff fabricated complaint lacks sufficient information and truth to admit or deny.

29. Defendants' solicitations included false and misleading representations, and omitted material facts, about among other things the ongoing, real-time features; the high profitability; and the annual or lifetime duration of services and trading advice provided by membership in CDM's trading groups.

DEFENDANT ANSWER: Plaintiff fabricated complaint lacks sufficient information and truth to admit or deny.

30. McDonnell solicited customers, and received and directed deposits, withdrawals, and transfers of CDM Customer funds on behalf of CDM.

DEFENDANT ANSWER: Plaintiff fabricated complaint lacks sufficient information and truth to admit or deny.

31. Defendants made these false and misleading representations and omissions of material facts to potential customers during the Relevant Period by telephone; by internet-based social media, chats, and e-mails; and by the CDM website.

DEFENDANT ANSWER: Plaintiff fabricated complaint lacks sufficient information and truth. Defendant firmly denies any/all wording and wrongdoing falsely claimed.

32. Defendants made these false and misleading representations and omissions of material facts to potential customers as well as existing CDM Customers knowingly or with reckless disregard for the truth.

DEFENDANT ANSWER: Plaintiff fabricated complaint lacks sufficient information and truth. Defendant firmly denies any/all wording and wrongdoing falsely claimed.

33. During the Relevant Period, Defendants also solicited CDM Customers and others in several of the United States as well as at least one foreign country to provide funds to Defendants, which Defendants would employ to purchase virtual currencies and/or engage in trading on the customers' behalf.

DEFENDANT ANSWER: Plaintiff fabricated complaint lacks sufficient information and truth. Defendant firmly denies any/all wording and wrongdoing falsely claimed.

34. Defendants' solicitations involved exaggerations of McDonnell's trading track record.

DEFENDANT ANSWER: Plaintiff fabricated complaint lacks sufficient information and truth. Defendant firmly denies any/all wording and wrongdoing falsely claimed.

35. For example, McDonnell described himself in solicitations as a "professional trader," and CDM's website included a purported example of a single virtual currency trade that had generated more than an approximately 1,000% return.

DEFENDANT ANSWER: Plaintiff fabricated complaint lacks sufficient information and truth. Defendant firmly denies any/all wording and wrongdoing falsely claimed.

36. These and other statements were false and misleading representations and omissions of material facts.

DEFENDANT ANSWER: Plaintiff fabricated complaint lacks sufficient information and truth. Defendant firmly denies any/all wording and wrongdoing falsely claimed.

37. In fact, after Defendants had solicited and obtained CDM Customer funds for trading by Defendants on behalf of customers, Defendants ceased communicating with the customers and misappropriated the customers' funds.

DEFENDANT ANSWER: Plaintiff fabricated complaint lacks sufficient information and truth. Defendant firmly denies any/all wording and wrongdoing falsely claimed.

38. For example, in or around January 2017 through June 2017, one CDM Customer, in response to multiple solicitations by Defendants to provide funds for trading in virtual currencies managed by Defendants, made a series of investments with Defendants.

DEFENDANT ANSWER: Plaintiff fabricated complaint lacks sufficient information and truth to admit or deny.

39. Defendants told this customer that Defendants would use the customer's funds to invest in Bitcoin.

DEFENDANT ANSWER: Plaintiff fabricated complaint lacks sufficient information and truth. Defendant firmly denies any/all wording and wrongdoing falsely claimed.

40. In fact, however, Defendants misappropriated this customer's funds.

DEFENDANT ANSWER: Plaintiff fabricated complaint lacks sufficient information and truth. Defendant firmly denies any/all wording and wrongdoing falsely claimed.

41. In or around June 2017, when the customer requested withdrawal of the investments after apparently profitable results, Defendants offered a series of excuses for delays in repayment before ceasing communications entirely and paying out no funds at all.

DEFENDANT ANSWER: Plaintiff fabricated complaint lacks sufficient information and truth to admit or deny.

42. For another example, in or around May 2017, after being solicited by McDonnell, one CDM Customer provided Litecoin to Defendants for trading by McDonnell on the customer's behalf.

DEFENDANT ANSWER: Plaintiff fabricated complaint lacks sufficient information and truth to admit or deny.

43. McDonnell told this customer that he would use the customer's funds to trade the "volatility" of Litecoin.

DEFENDANT ANSWER: Plaintiff fabricated complaint lacks sufficient information and truth to admit or deny.

44. Defendants misappropriated this customer's funds and ultimately ceased communicating with the customer.

DEFENDANT ANSWER: Plaintiff fabricated complaint lacks sufficient information and truth. Defendant firmly denies any/all wording and wrongdoing falsely claimed.

45. Defendants made these false and misleading representations and omissions of material facts to potential customers during the Relevant Period by telephone and online through e-mails, chats, and social media.

DEFENDANT ANSWER: Plaintiff fabricated complaint lacks sufficient information and truth to admit or deny.

46. Defendants made these false and misleading representations and omissions of material facts to potential customers as well as existing CDM Customers knowingly or with reckless disregard for the truth.

DEFENDANT ANSWER: Plaintiff fabricated complaint lacks sufficient information and truth. Defendant firmly denies any/all wording and wrongdoing falsely claimed.

47. Paragraphs 1 through 46 are re-alleged and incorporated herein by reference.

48. Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2012), makes it unlawful for any person, directly or indirectly, to: use or employ, or attempt to use or employ, in connection with any swap, or a contract of sale of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, any manipulative or deceptive device or contrivance, in contravention of such rules and regulations as the Commission shall promulgate by not later than 1 year after [July 21, 2010, the date of enactment of the Dodd-Frank Wall Street Reform and Consumer Protection Act] . . . .

DEFENDANT ANSWER: Plaintiff in bad faith has introduced to the Court specific wording designed to deceive while filing a fabricated complaint under the above rule as a ploy for cause.

49. Regulation 180.1(a), 17 C.F.R. § 180.1(a) (2017), provides:

It shall be unlawful for any person, directly or indirectly, in connection with any swap, or contract of sale of any commodity in

interstate commerce, or contract for future delivery on or subject to the rules of any registered entity, to intentionally or recklessly:

(1) Use or employ, or attempt to use or employ, any manipulative device, scheme, or artifice to defraud;

(2) Make, or attempt to make, any untrue or misleading statement of a material fact or to omit to state a material fact necessary in order to make the statements made not untrue or misleading;

(3) Engage, or attempt to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit upon any person . . . .

DEFENDANT ANSWER: Plaintiff in bad faith has introduced to the Court specific wording designed to deceive while filing a fabricated complaint under the above rule as a ploy for cause.

50. During the Relevant Period, as described above, Defendants violated Section 6(c)(1) of the Act and Regulation 180.1(a) by, among other things, in connection with contracts of sale of commodities in interstate commerce, making or attempting to make untrue or misleading statements of material fact or omitting to state or attempting to omit material facts necessary in order to make statements made not untrue or misleading, such as the following: A. Purporting to offer ongoing monitoring and expert advice and profitable trading signals for one year or more;

B. Failing to disclose, and omitting, that Defendants did not achieve the advertised performance and returns for CDM Customers; and

C. Failing to disclose, and omitting, that Defendants were misappropriating CDM Customer funds.

DEFENDANT ANSWER: Plaintiff fabricated complaint lacks sufficient information and truth. Defendant firmly denies any/all wording and wrongdoing claimed.

51. As described above, Defendants violated Section 6(c)(1) of the Act and Regulation 180.1(a) by, among other things, in connection with contracts of sale of a commodity in interstate commerce, soliciting customers with false and misleading performance statements and promises of future performance; misrepresenting and omitting material facts on Defendants' website and in other communications with customers regarding the quality, duration, and nature of CDM's trading signals and trading advice; misrepresenting and omitting material facts on Defendants' website and in other communications with customers concerning virtual currency trading of customer funds managed by Defendants; and misappropriating CDM Customers' funds.

DEFENDANT ANSWER: Plaintiff in bad faith has introduced to the Court specific wording designed to deceive while filing a fabricated complaint under the above rule as a ploy for cause.

52. Defendants engaged in the acts and practices described above willfully, intentionally, or recklessly.

DEFENDANT ANSWER: Plaintiff fabricated complaint lacks sufficient information and truth. Defendant firmly denies any/all wording and wrongdoing claimed.

53. By this conduct, Defendants violated Section 6(c)(1) of the Act and Regulation 180.1(a).

DEFENDANT ANSWER: Plaintiff in bad faith has introduced to the Court specific wording designed to deceive while filing a fabricated complaint under the above rule as a ploy for cause.

54. The acts, omissions, and failures of McDonnell described in this Complaint occurred within the scope of his

agency, employment, and office at CabbageTech, Corp. Accordingly, CabbageTech, Corp. is liable under Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), and Regulation 1.2, 17 C.F.R. § 1.2 (2017), as principal for its agent's acts, omissions, or failures in violation of Section 6(c)(1) of the Act and Regulation 180.1(a).

DEFENDANT ANSWER: Plaintiff in bad faith has introduced to the Court specific wording designed to deceive while filing a fabricated complaint under the above rules as a ploy for cause.

55. At all times relevant to this Complaint, McDonnell controlled CabbageTech, Corp., directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, CDM's conduct constituting the violations of CDM described in this Count. Accordingly, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2012), McDonnell is liable for CDM's violations of Section 6(c)(1) of the Act and Regulation 180.1(a).

DEFENDANT ANSWER: Plaintiff in bad faith has introduced to the Court specific wording designed to deceive while filing a fabricated complaint under the above rules as a ploy for cause.

56. Each act of: (1) using or employing, or attempting to use or employ, a manipulative device, scheme, or artifice to defraud; (2) making, or attempting to make, untrue or misleading statements of material fact, or omitting to state material facts necessary to make the statements not untrue or misleading; and (3) engaging, or attempting to engage, in any act, practice, or course of business, which operated or would operate as a fraud or deceit upon any person, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Section 6(c)(1) of the Act and Regulation 180.1.

DEFENDANT ANSWER: Plaintiff in bad faith has introduced to the Court specific wording designed to deceive while filing a fabricated complaint under the above rule as a ploy for cause.

DEFENDANT STATEMENT: Defendant's position has not changed from a February 16, 2018 filing with the Court styled as; "Notice of Motion to Dismiss for Failure to State a Claim". Defendant further notes that Plaintiff complaint is financially and politically motivated created out of thin air to secure the U.S. regulatory sphere surrounding Bitcoin and Virtual Currency markets. Plaintiff complaint fails to state accurate information, truth, or any monetary claim which is the entire point of a civil court proceeding. Complaint contains nothing more than false 'fraud' allegations to get it into Court in an attempt to get CFTC regulatory authority. In a strategic move to limit company/investor liability and correct their mistake of relying on the CFTC's 2015 claim that Bitcoin and Virtual Currencies fall under their scope. The Chicago Mercantile Exchange ("CME") was financially motivated to join the case on March 05, 2018 filing a MOTION for Leave to File Letter as Amicus Curiae by Chicago Mercantile Exchange Inc. per Jonathan L. Marcus a CME attorney. On March 05, 2018 at approximately 2:38 PM Defendant received a phone call from Jonathan L. Marcus attorney for the CME where he misrepresented himself and said, "It was extreme importance that he know if Defendant believes Bitcoin is a commodity?" Defendant objected. Jonathan L. Marcus further stated, "That he was filing documentation with the Court regarding the case". At the initial Court hearing when asked the exact same question by Judge Jack B. Weinstein Defendant on record stated, "That he had been asked the identical question wording wise one day prior by the CME". Defendant also asked the Court if they knew of any such filing by the CME in which they replied no which struck as odd being the hearing was on March 06, 2018 and the CME had filed via ECF on March 05, 2018. Minutes into Defendant's first Court appearance "Bitcoin was declared a commodity" in a landmark ruling cleaning up the CFTC and CME's liability issues overshadowing WHY? the case was fraudulently filed in the first place.

The CME in it's correspondence/filings with the Court stated in desperation things such as:

"Warns the Court of the grave consequences if Bitcoin and its likes do not have the status of commodities under the CEA."

"If the Court rules that a virtual currency such as bitcoin is not a commodity, this would put in jeopardy CME's and its market participants' expectation to rely on the CEA and the CFTC's regulatory protections for commodity derivatives contracts based on virtual currencies."

"This legal uncertainty would substantially disrupt the settled expectations of CME and numerous market participants who are trading bitcoin futures for purposes of hedging cash market exposures or making a market in bitcoin futures by offering liquidity, in addition to market professionals that clear, broker or manage virtual currency futures trading activity."

"Such a ruling could be interpreted to reverse the CFTC's determination, and if followed ultimately could raise questions regarding whether CME's bitcoin futures contract is a valid and regulated futures contract under the CEA."

"If CME were forced to delist the bitcoin contract it listed late in 2017, it could lose the investment it made in developing the product. More importantly, holders of bitcoin futures contracts may be be forced to liquidate their positions unexpectedly—possibly at unfavorable prices—and thereby forced to terminate prematurely market making opportunities and hedging and investment strategies. The full financial implications of such consequences for many market participants are unknown, CME warned."

Proven in Court documents as well as CFTC and CME actions this case is not about the Defendant. This complaint was frivolously born/filed to protect all institutional monies invested in Bitcoin by the CME/Market Participants (Institutions) on a 2015 CFTC false claim. When Bitcoin started to decline from it's high of $20,000 USD+ in December 2017, CME executives saw cause for serious liability concerns. Defendant is a sacrificed pawn in a bigger game, this case in not about a "so-called" fraud or misappropriation of investor funds, it is about controlling Bitcoin which has become a threat to world financial systems. Defendant also believes certain CFTC and CME actors have profited off insider information on the Court ruling, "Bitcoin is a commodity". If not the entire futures operation of the CME, it's employees and/or attorney(s)/investigator(s).


Respectfully Submitted,

Patrick K. McDonnell

Defendant/Pro Se

<http://www.avg.com/email-signature?utm_medium=email&utm_source=link&utm_campaign=sig-email&utm_content=webmail>   Virus-free. www.avg.com <http://www.avg.com/email-signature?utm_medium=email&utm_source=link&utm_campaign=sig-email&utm_content=webmail>