| | |
|---|---|
| **From:** | Patrick McDonnell |
| **To:** | Hurand, Gates |
| **Cc:** | de Urioste, Alejandra; Oakland, David W.; Tomer, K. Brent; Giglio, Christopher |
| **Subject:** | Gates, Please file revised ECF #3, just 3 more to come. TY, Patrick [Docket #86 - Supporting Exhibit(s) 1h, 1i, 1j] -- NOTICE OF MOTION TO DISMISS |
| **Date:** | Tuesday, May 22, 2018 9:05:50 AM |

**RE: [Docket #86 - Supporting Exhibit(s) 1h, 1i, 1j] -- NOTICE OF MOTION TO DISMISS**

**[Docket #86 Supporting Exhibit 1h]**

Securities Regulation Daily CFTC's charges fail to deliver in Monex precious metals action News Wednesday, May 2, 2018

# CFTC's charges fail to deliver in Monex precious metals action

By John M. Jascob, J.D., LL.M.

A federal district court in California has dismissed the CFTC's charges that three Monex companies and two of their principals engaged in fraudulent, off-exchange precious metals transactions in violation of the Commodity Exchange Act ("CEA"). Judge James V. Selna ruled that Monex's practice of delivering precious metals to independent depositories within 28 days of their purchase by retail customers on margin fell within the "actual delivery exception" to the CFTC's authority. While the actual delivery exception did not divest the CFTC of jurisdiction over all the claims in the complaint, the only plausible interpretation of the applicable Dodd-Frank amendments to the CEA also foreclosed any claims for fraud under Section 6(c)(1) absent market manipulation (*CFTC v. Monex Credit Co.*, May 1, 2018, Selna, J.).

Labeled by Enforcement Director James McDonald as one of the biggest precious metals fraud cases in CFTC history, the Commission alleged that the Monex firms used high pressure sales tactics to deceptively pitch leveraged precious metals trades as safe, despite causing more than $290 million in losses to retail customers over the course of almost six years. The CFTC also claimed that Monex structured its Atlas program for leveraged precious metals trading using outsized price spreads, commissions, and fees so that customer losses were all but inevitable. Although the CFTC's action was originally filed in the Northern District of Illinois, the suit was transferred to the Central District of California on October 19, 2017.

**Actual delivery exception.** The court turned first to the defendants' contention that the CFTC lacked regulatory jurisdiction over the case pursuant to the "actual delivery exception" to the CEA. Dodd-Frank had amended the CEA to extend the agency's authority over financed retail commodity transactions unless the transactions result within 28 days in "actual delivery," a term undefined in the statute. Relying on the Eleventh Circuit's 2014

decision in *CFTC v. Hunter Wise Commodities*, the CFTC argued that "actual delivery" only occurs once there has been a transfer of possession of and control over the purchased commodities.

In the CFTC's view, the purported delivery in the Atlas program was a "sham" because, under Monex's agreements with the independent depositories, customer positions could be liquidated at any time and in Monex's sole discretion, without notice to customers.

The court disagreed with the CFTC, however, observing that all of the CFTC's allegations related to Monex's business model of selling commodities on a leveraged basis. The court further noted that CEA Sections 4(a), 4(b), and 4b only apply to covered retail commodity transactions, which must be entered into or offered on a leveraged or margined basis or financed by the offeror. If this conduct alone negated "actual delivery," then every financed transaction would violate the Dodd-Frank Act. If the court were to adopt the CFTC's construction, Judge Selna opined, the result would be to eliminate the actual delivery exception from the CEA. Moreover, the CFTC's own final interpretation regarding the meaning of "actual delivery" as well as the legislative history of the Dodd-Frank amendments to the CEA supported this position.

**Market manipulation claims.** Turning next to the CFTC's market manipulation claims, the court first ruled that the actual delivery exception did not bar an enforcement action against Monex under CEA Section 6(c)(1). By its plain language, Section 6(c)(1)'s prohibition against manipulative or deceptive conduct applies broadly "to any swap, or a contract of sale of any commodity in interstate commerce." Nevertheless, the Commission's claims failed because read in its entirety, the CEA unambiguously forecloses the application of Section 6(c)(1) in the absence of actual or potential market manipulation. Moreover, the court observed, nowhere does the legislative history of Dodd-Frank contemplate extending CFTC's authority under Section 6(c)(1) to allow it to combat fraud absent market manipulation. Accordingly, the court granted the defendants' motion to dismiss.

The case is No. 17-01868 JVS.
Attorneys: Carlin R. Metzger for the CFTC. C. Brandon Wisoff (Farella Braun and Martel LLP) for Monex Credit Co., Monex Deposit Co. and Newport Services Corp.
Companies: Monex Credit Co.; Monex Deposit Co.; Newport Services Corp.
MainStory: TopStory CommodityFutures Derivatives Enforcement FinancialIntermediaries FraudManipulation CaliforniaNews
Back to Top

**[Docket #86 Supporting Exhibit 1i]**

PUBLICATIONS



itemImage.AlternateText

# Court Delimits CFTC's Enforcement Reach

May 16, 2018

The Dodd-Frank Wall Street Reform Act strengthened the jurisdiction and enforcement capabilities of the CFTC in a number of respects.  Once key provision concerned Retail Commodity Contracts, under CEA section 2(c)(2)(D). It provides that the CFTC shall have jurisdiction over commodity transactions "entered into, or offered (even if not entered into), on a leveraged or margined basis, or financed by the offeror, the counter-party, or a person acting in concert with the offeror or counter-party on a similar basis." An exception is where there is delivery within 28 days.

A second key addition is section 6(c)(1), an anti-fraud provision which provides that it "shall be unlawful for any person, directly or indirectly, to use or employ, or attempt to use or employ, in connection with any swap, or a contract of sale of any commodity in interstate commerce, or for future delivery, any manipulative or deceptive device or contrivance, in contravention of such rule and regulations as the Commission shall promulgate." The CFTC adopted Rule 180.1 which generally tracks the language of the statute.

Each of these provisions was critical to the recent decision in *CFTC v. Monex Credit Company*, Civil Action No. 8:17-CV-01868 (C.D.Cal. May 1, 2018).  There the court rejected the position of the CFTC as to each provision. The court's interpretation of anti-fraud section 6 (c)(1) is also at odds with a recent decision of another district court, according to the decision.

***Monex***
The CFTC brought an enforcement action against Monex and others based in part on the two provisions cited above.

The case was before the court on the defendants' motion to dismiss under Rule 12(b)(6), F. R Civ. and the agency's motion for a preliminary injunction. The former was granted, the latter denied.

Monex offered retail customers two types of transactions, according to the complaint. The first are retail transactions in which the customer pays full price for precious metals. This type of transaction is not at issue here.

The second offer is what the firm called its Atlas program. There Monex offers precious metals on a leveraged, margined, or financed basis.  Retail customers can purchase precious metals by paying a portion of the purchase price and financing the balance under the program.  Customers with trading accounts can open positions with Monex acting as the counter-party and setting the price in each transaction.  If the transaction is "on leverage" or "on margin," Monex provides the financing and a deposit is required as margin. In this situation Monex retains complete control – it sets the margin and can liquidate the account for failure to meet the requirements of the program.

Under the terms of the customer agreement Monex retains control of the metals traded in the Atlas program. The customer does not take actual physical delivery. Rather, the metal is maintained in a depository subject to an agreement Monex has with the depository. The customer only obtains physical possession of the metal on full payment or if they ask for actual delivery. Otherwise, the customer holds a long position. The CFTC complaint claims that the customers do not have an actual position, but just a book entry that is a sham. The agency alleged prohibited off-exchange transactions and fraud.

In resolving the motion to dismiss the court first turned to section 2(c)(2)(D).  The parties disagreed regarding the impact of the delivery exception on the provision.  The CFTC argued that since it is an exception, the Defendants had the burden of establishing it applies here. The Defendants disagreed, claiming that it is an exclusion requiring the CFTC to prove that it does not apply here. The court declined to resolve the question.

Rather, the court focused on the meaning of the term delivery. The decision in *CFTC v. Hunter Wise Commodities, LLC*, 749 F. 3d 967 (11th Cir. 2014) is the only case to have focused on the meaning of that term. There the court defined delivery in terms of a transfer of possession and control.  The court's holding did not require, however, that the buyers take actual physical control of the commodity. The court also found that the defendant in the action did not have sufficient supplies available to cover its margin accounts. Since it could not deliver, there was no delivery.

In this case Defendants claimed that there was delivery within the meaning of prior CFTC interpretations which have not required actual physical delivery to meet the requirement.

Rather, a number of factors have been considered such as ownership, possession, title and

the physical location of the commodity purchased or sold.  Here Monex claimed its agreements fall within these requirements.

The CFTC rejected this claim, contending that the arrangement here is a sham. That contention was based primarily on the fact that the customer positions can be liquidated at any time without notice.  The agency also cited to provisions in the agreements which give Monex complete control.

The court rejected the CFTC's interpretation based largely on its reading of the statutes. The points cited by the CFTC focus on the Monex business model, the court noted. The statutory provisions involved "apply to covered retail commodity transactions, which must be entered into or offered on a leveraged or margin basis, or financed by the offeror. If this conduct alone negated "actual delivery," every financed transaction would violate Dodd-Frank. The Court can conceive of no plausible leveraged retail transaction of fungible commodities that would not involve at least some of the same alleged practices.  Thus, if the Court were to adopt the CFTC's construction, the result would be to eliminate the Actual Delivery Exception from the CEA." (internal citations omitted).

Second, the court turned to the application of the anti-fraud section, 6(c)(1). Initially, the court rejected Defendants' claim that the actual delivery exception negated the application of the statute here.  To the contrary, the plain language of the sections provides the CFTC with jurisdiction over covered retail commodity transactions to enforce the anti-fraud sections. The court then turned to the construction of the statute. Monex argued that the section only applies to particular commodity transactions that are manipulative in the derivatives market. In contrast, the CFTC claimed that section 6(c)(1) applies to retail commodities transactions with or without market manipulation.

Initially, the court focused on the language of the section which it acknowledged is broad. That language prohibits "manipulation" and makes it unlawful in connection with any swap, or a contract of sale of any commodity -- "any manipulative or deceptive device or contrivance. . ." is prohibited.  The legislative history is consistent with this reading of the statute.  That history reveals that the section was designed to ease the burned of proving manipulation for the CFTC by reducing the "specific intent" element to one of recklessness. This followed the approach used by the SEC in manipulation cases.

Viewed in this context, the court concluded that "the CEA unambiguously forecloses the application of section 6(c)(1) in the absence of actual or potential market manipulation. While this conclusion appears to be inconsistent with *CFTC v. McDonnell*, 287 F. Supp. 3d 213, 226-27, 229-30 (E.D.N.Y. 2018) "the main focus of that decision was whether the CFTC could regulate virtual currencies as a commodity," the court stated.

***Comment.***
The decision is significant.  Section 2(c)(2)(D) regarding Retail Commodity Transactions

broadened the jurisdiction of the CFTC.  Under this section the agency argued here that arrangements such as those used by Monex are in fact trades that should be on a regulated exchange. Yet, if in fact delivery is made within the time limit, there is an exception, which the court noted.

The court's construction of CEA section 6(c)(1) clearly delimits its reach. While the court focused on the language of the section, the result seems driven more by its reading of the legislative history.  The language of the section, which is also the predicate for the ruling in *McDonnell*,  and the Supreme Court's focus on statutory language to the exclusion of history should be considered when evaluating this determination. Nevertheless, the decision represents two significant losses for the CFTC.  *See, e.g.*, Digital Realty Trust Inc. v. Somers,  No. 1276 (S.Ct. Feb. 21, 2018) (Three Justices object to citing legislative history to interpret text of statute).

## Related Industries & Practices

Securities & Financial Services Litigation & Enforcement

Read Our Blog
SEC Actions Blog

Media Resources
media@dorsey.com

**[Docket #86 Supporting Exhibit 1j]**

**CFTC Dealt Blow in Retail Commodity Transactions Case**



# CFTC Dealt Blow in Retail Commodity Transactions Case

On Tuesday, a Central District of California court dismissed the CFTC's complaint against Monex Credit Company, et al., 17-01868, rejecting the CFTC's controversial "actual delivery" argument set forth in *CFTC v. Hunter Wise Commodities, LLC,* 749 F3d 967, 970 (11th Cir. 2014). The CFTC, argued that Monex allegedly failed to actually deliver precious metals to its customers because the metals purchased in financed transactions were held in third-party depositories and were not under the customers' control, and Monex could liquidate the customers' positions in the company's sole discretion, without notice, if the customers did not meet margin calls. The court found that Monex's agreements with the depositories satisfied actual delivery.

Interestingly, the Hunter Wise rationale is the basis for the CFTC's "Interpretation on Virtual Currency 'Actual Delivery' in Retail Transactions." The effect of this is unclear at this time for those in the retail commodity or virtual currency transaction business.

**About Kennyhertz Perry's Commodities, Futures, and Derivatives Practice Group**
Kennyhertz Perry advises clients on a wide range of commodities and derivatives regulatory matters.  Kennyhertz Perry has experience in all types of derivative transactions and design structures to meet clients' specific trading, financial and/or credit needs.  The roots of the practice are in the commodities markets, where Kennyhertz Perry partner Braden Perry spent time as a Senior Trial Attorney with the Commodity Futures Trading Commission.

Our lawyers regularly advise our clients on compliance with the complex laws and regulations governing the securities and derivatives industries, including the Commodity Futures Modernization Act of 2000, the Commodity Exchange Act, the Gramm-Leach-Bliley Act, the Securities Acts of 1933 and 1934, the Investment Company Act of 1940, the Investment Advisers Act of 1940, the SEC and CFTC regulations, the rules of the various derivatives exchanges and clearinghouses and other industry self-regulatory organizations and the "Blue Sky" state securities laws. Keeping abreast of regulatory developments is imperative, and enables our lawyers to guide clients on comment-making about proposed legislation and regulation, provide ongoing operational and compliance counseling, and offer advice on appropriate modifications of transaction structure and documentation.

Clients also benefit from Kennyhertz Perry's experience in related areas of law, such as litigation, banking, securities, insurance, and its regular practice before the Commodity Futures Trading Commission. Leaders in the financial industry choose Kennyhertz Perry because the firm's lawyers tailor their advice to the unique issues presented by each matter they handle.
To learn more about Kennyhertz Perry, LLC, please visit kennyhertzperry.com.


--
This message and its attachments are sent from a 'Pro Se' litigant and may contain information that is confidential and protected by privilege from disclosure. If you are not the intended recipient, you are prohibited from printing, copying, forwarding or saving them. Please delete

the message and attachments without printing, copying, forwarding or saving them, and notify the sender immediately.

---

 Virus-free. www.avg.com