

**COMMODITY FUTURES TRADING COMMISSION**

140 Broadway, 19th Floor
New York, New York 10005
Telephone: (646) 746-9700
Facsimile:  (646) 746-9940

Division of
Enforcement

Gates S. Hurand
Senior Trial Attorney
646-746-9753
ghurand@cftc.gov

May 25, 2018

**BY ECF**

Chief Magistrate Judge Roanne L. Mann
United States District Court
Eastern District of New York
225 Cadman Plaza East
New York, New York 11201

> Re:   *Commodity Futures Trading Commission v. Patrick K. McDonnell and CabbageTech, Corp. d/b/a Coin Drop Markets*, **No. 18-CV-00361 (JBW)(RLM)**

Dear Chief Magistrate Judge Mann:

     I am a Senior Trial Attorney in the Division of Enforcement (the "Division") of the Commodity Futures Trading Commission (the "Commission") and represent the Commission in the captioned matter.  Pursuant to the Court's May 22, 2018 Order, I write respectfully to respond to Defendant Patrick K. McDonnell's letters dated May 18, 2018, Dkt. Nos. 84, 85, and to request by letter-motion certain relief from the Court to facilitate third-party productions.

**Discovery Background**

     The Division is seeking basic information about Mr. McDonnell's use of the telephone and internet as instruments for his alleged fraud.  As part of these efforts, the Division recently issued a subpoena to Charter Communications ("Charter"), which acquired Time Warner Cable, relating to Mr. McDonnell's telephone and internet access (the "May 18 Subpoena").  Mr. McDonnell's objections to the May 18 Subpoena, Dkt. Nos. 84, 85, are the latest in a long series of delay tactics.

     Mr. McDonnell did not testify at the March 6, 2018 preliminary injunction hearing in this matter.  Since then, Mr. McDonnell has taken a series of drastic actions to avoid testifying under oath.  Shortly before his deposition noticed for April 17, he announced his intent to default.  Dkt. No. 48.  To avoid his deposition noticed for May 4, he filed a voluntary petition for bankruptcy in a misguided effort to trigger a stay of the action.  Dkt. Nos. 64, 65.  To avoid his deposition noticed for May 11, he agreed to settlement terms and then promptly reneged.  Dkt. Nos. 72, 73.  To avoid his deposition noticed for May 15, he simply failed to appear and did not respond to the Division's attempts to contact him.  Dkt. No. 73.  Later, he claimed he had confused the date (despite multiple reminder e-mails the Division had sent) and moreover was unavailable until

Hon. Roanne L. Mann
May 25, 2018
Page 2

June 5. *Id.* (Mr. McDonnell's purported unavailability appears inconsistent with his prolific filings. Dkt. No. 95.)

Mr. McDonnell has sought to avoid or delay other discovery as well. He failed to participate in discovery and comply in full with the Court's March 7, 2018 Scheduling Order. Dkt. No. 41. After the Division moved to compel, he failed to appear for a telephone conference with the Court during a time he had indicated he would be available, resulting in the Court having to reschedule the conference. Dkt. No. 45. He provided Court-ordered consents only after being ordered to do so by the Court six times. *See* Electronic Order of the Court dated April 20, 2018. And he has represented to the Court that he cannot access the CabbageTech, Corp. d/b/a Coin Drop Markets ("CDM") e-mail account coindropmarkets@gmail.com because he lost a telephone with the two-factor authentication application Google Authenticator, *see* Ex. 1 (Apr. 9, 2018 Hrg. Tr. 14)—even though Google provides an access-recovery process for this circumstance. *See* Ex. 2. Mr. McDonnell's delay tactics have required the repeated intervention of the Court. *E.g.*, Dkt. 82. The tactics also reveal the motive underlying his latest, meritless objections, and show the need for the requested relief.

**<u>McDonnell's Meritless Objection to the May 18 Subpoena</u>**

The Complaint alleges that Mr. McDonnell engaged in a fraudulent virtual currency scheme, including by the mail and the internet. Dkt. No. 1. The Division initially expected to receive documents related to the mechanisms of the alleged fraud, such as Mr. McDonnell's access and use of certain e-mail, social media, and virtual currency accounts as well as Internet Protocol ("IP") addresses through discovery pursuant to the Court's Preliminary Injunction Order. Dkt. No. 29. After Mr. McDonnell failed to produce any records in response to the Order, apart from a list of publicly available bitcoin addresses (most of which Mr. McDonnell appears to have had no direct interaction with), the Division then sought to obtain this information through deposition. Time and again, however, Mr. McDonnell has improperly evaded answering such questions under oath.

In light of Mr. McDonnell's evasions and his purported unavailability for deposition until June 5, the Division has sought this information through third-party subpoenas. In particular, the Division recently issued the May 18 Subpoena seeking *subscriber information* relating to Mr. McDonnell's telephone and internet access (e.g., name, address, phone and account numbers, use records, assigned network address or addresses, and billing and account information). *See* Dkt. No. 84-2 at 8 (May 18 Subpoena Schedule A). Notably, the subpoena does not seek the *content* of subscriber communications, except for a presumably small number of communications with the service provider, such as those relating to billing, nor does the Division seek any information concerning the content of what Mr. McDonnell accessed on the internet. The information sought, e.g., the assigned network addresses or IP addresses associated with Mr. McDonnell's computers and other internet-accessible devices, is relevant to establishing that Mr. McDonnell accessed or controlled certain e-mail, social media, and virtual currency accounts, particularly those alleged to be part of the fraudulent scheme or to evince the likelihood of future misconduct. The Division expects to seek additional non-content subscriber information relating, e.g., to other e-mail accounts at Google and GMX Internet Services as well.

Through unsworn letters, Dkt. Nos. 84, 85, Mr. McDonnell objected to the May 18 Subpoena on the grounds that (1) the records are outside the scope of discovery, (2) the records may involve other "adult family members" at his home, and (3) Mr. McDonnell has used an unspecified telephone line for "legal calls" and so all subscriber information, such as account ownership and IP addresses, is somehow privileged.  *See* Dkt. No. 84, 85.

Mr. McDonnell's objections are meritless.  *First*, the subpoena seeks subscriber information that may link Mr. McDonnell to mechanisms of his alleged fraud.  This is plainly relevant to the Complaint's allegations and within the scope of discovery.  *See* Fed. R. Civ. P. 26(b).  *Second*, Mr. McDonnell appears to have operated his alleged scheme at least in part, if not almost exclusively, from his home.  The fact that Mr. McDonnell's family members purportedly shared use of (or even paid for) the internet access and telephone line(s) through which Mr. McDonnell perpetrated his alleged fraud does not remove the records from the scope of discovery.  Indeed, other evidence suggests one or more transactions with, or accounts in the name of, such family members in connection with McDonnell's alleged schemes, thus belying Mr. McDonnell's unsworn denials.  *Finally*, the invocation of attorney-client privilege is baseless because the subpoena for subscriber information does not seek the contents of privileged attorney-client communications (if any), and the mere fact of such communications themselves (if any) is not privileged.  *E.g.*, *In re Application For Subpoena To Kroll*, 224 F.R.D. 326, 328–29 (E.D.N.Y. 2004) (citations omitted).

**Requested Relief Concerning Other Subpoenas**

Following Mr. McDonnell's delays, the Division has served a subpoena on Twitter for content relating to the CDM business Twitter account @coindropmarkets and subsequently conferred with Twitter counsel.  The Division learned from counsel for Twitter that, to verify that Mr. McDonnell is the accountholder, Twitter e-mailed the CDM business e-mail account cdm@gmx.com on May 5, 2018.  To date, Mr. McDonnell—who is believed to have access to this e-mail account—has not replied to this e-mail from Twitter.  Twitter awaits his confirmation before production.

The Division also has served a subpoena to Google concerning the CDM business e-mail account coindropmarkets@gmail.com.  To verify that Mr. McDonnell is the accountholder, counsel for Google indicated Mr. McDonnell may (i) consent to the entry of an Order such as the attached, *see* Ex. 3; (ii) log into the CDM e-mail account; and (iii) send an e-mail from the CDM account to Google confirming his consent.  As mentioned, Mr. McDonnell previously represented to the Court that he cannot access the coindropmarkets@gmail.com account because he lost a smartphone that had the two-factor authentication program Google Authenticator.  *See* Ex. 1.  But contrary to his representations to the Court, as confirmed by counsel for Google, Mr. McDonnell in fact may regain access to the account by following instructions on Google's website.  *See* Ex. 2.

Finally, as discussed above, the Division has served the May 18 Subpoena for non-content subscriber information relating to Mr. McDonnell's telephone and internet, and for communications (if any) between Charter and the relevant subscriber(s).  Charter has indicated it may produce relevant records, if any exist, after execution of a consent form.  *See* Ex. 4.

Hon. Roanne L. Mann
May 25, 2018
Page 4

      As discussed above, it appears that Mr. McDonnell's purported inability to access information and objections are simply delay tactics. To facilitate the productions of relevant materials at little or no burden to Mr. McDonnell, the Division respectfully requests that the Court direct Mr. McDonnell to (1) confirm to Twitter his control of the CDM account by responding to the e-mail that Twitter has sent to the cdm@gmx.com e-mail address; (2) consent to entry of the attached Order, Ex. 3, and regain access to his coindropmarkets@gmail.com Google account in order to confirm that he is the accountholder and to authorize the release of e-mails; and (3) execute a consent to Charter, Ex. 4, for the subpoenaed subscriber information.

                                       Respectfully submitted,

                                       /s/ Gates S. Hurand

                                       Gates S. Hurand

cc:     Patrick K. McDonnell (by ECF and electronic mail)