UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
------------------------------X  Docket#
COMMODITY FUTURES TRADING      : 18-cv-00361-JBW-RLM
COMMISSION,                    :
              Plaintiff,       :
                               :
    - versus -                 : U.S. Courthouse
                               : Brooklyn, New York
                               :
 MCDONNELL, et al.,            : May 31, 2018
              Defendants       :
------------------------------X
```

TRANSCRIPT OF CIVIL CAUSE FOR TELEPHONE CONFERENCE
BEFORE THE HONORABLE ROANNE L. MANN
UNITED STATES MAGISTRATE JUDGE

**A   P   P   E   A   R   A   N   C   E   S:**

**For the Plaintiff:**          **David William Oakland, Esq.**
                                **Alejandra de Urioste, Esq.**
                                **Gates Hurand, Esq.**
                                Commodity Futures
                                Trading Commission
                                140 Broadway, 19th Floor
                                New York, NY 10005


**For the Defendant:**          **Patrick K. McDonnell, pro se**
                                20 Rawson Place
                                Staten Island, NY 10314

**Transcription Service:**      **Transcriptions Plus II, Inc.**
                                61 Beatrice Avenue
                                West Islip, New York 11795
                                laferrara44@gmail.com

Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

Proceedings

1           THE COURT:  This is Judge Mann on the line.

2   I'm conducting a telephonic hearing in CFTC v. McDonnell,

3   et al., 18-cv-361.

4           Do I have plaintiff's counsel on the line?

5           MR. HURAND:  Yes, your Honor.  Good afternoon.

6           This is Gates Hurand for the CFTC.

7           MR. OAKLAND:  David Oakland for the CFTC.

8           MS. DE URIOSTE:  And Alexjandra de Urioste for

9   the CFTC.

10          THE COURT:  And do I have Mr. McDonnell on the

11  line?

12          MR. MCDONNELL:  Yes, your Honor, I am here.

13          THE COURT:  Have counsel for the CFTC seen Mr.

14  McDonnell's response to the application that was filed by

15  the CFTC last night?

16          MR. HURAND:  Yes, your Honor.  That's docket

17  number 111.  We filed that on his behalf today.

18          THE COURT:  Yes, thank you for reminding me of

19  that.

20          All right.  So now we have a pileup of issues

21  before this Court.  Let me just make some preliminary

22  observations.  You know, both sides have been repeating

23  the same arguments and it's getting a bit tiresome.  Mr.

24  McDonnell keeps talking about how the CFTC has exceeded

25  the discovery limits.  He's relying on a ruling that I

3

Proceedings

1  made early in this case which specifically was very

2  limited in scope.  The Court, at that time was referring

3  to the fact that it had specifically ordered Mr.

4  McDonnell to provide certain authorizations and the CFTC

5  included an authorization or two that was not

6  specifically within the scope of the Court's order.  That

7  did not mean that they weren't entitled to further

8  discovery and yet Mr. McDonnell keeps repeating that the

9  CFTC has exceeded the scope of discovery in this case.

10       I know what my prior rulings are.  I don't need

11  to be reminded all the time of what they were, nor do I

12  need any characterization of what they meant.  I know

13  what they meant and they're being cited unfairly.

14       By the same token, within the last several

15  days, the CFTC has on several occasions, repeated the

16  history of Mr. McDonnell's -- the obstacles that he has

17  thrown in the way of completing discovery in this case.

18  I'm well aware of it and I don't need to have every

19  submission to the Court recount that history.  This file

20  is long enough without cluttering it with a lot of

21  repetitious arguments.

22       All right.  Now let's address the issues before

23  the Court.  Mr. McDonnell in docket entries 84 and 85

24  which seem to seek the same relief, so I don't know why

25  he felt it necessary to file two communications with the

4

Proceedings

1    Court, but he's objecting to the Charter subpoena which

2    he says is illegal because it invades the privacy of his

3    family.  His family has nothing to do with this and he

4    asked for relief in stopping the alleged harassment by

5    the plaintiff.  He also objects to the temporal scope of

6    the subpoena which seeks information going back to early

7    2016.

8               Let me start with that question, as to why it's

9    necessary to go back to 2016 rather than start with 2017?

10              MR. HURAND:  Yes, your Honor.  This is Gates

11   Hurand for the CFTC.  Part of the subpoena to Charter for

12   subscriber information is looking for IP addresses that

13   may relate to a variety of email and social media

14   accounts, some of which he may have established going

15   back before 2017.  And so we're looking to develop

16   evidence about those.

17              THE COURT:  And I take it what you're taking in

18   this subpoena is in effect, pedigree-type information.

19   This is noncontent?

20              MR. HURAND:  Exactly, your Honor.  This is

21   seeking pedigree account information, you know, who holds

22   the account and the IP address that the internet access

23   is occurring from, the telephone number from which a call

24   is coming from.

25              THE COURT:  And what is the -- first of all, do

5

Proceedings

1   you have any reason to believe the charter is going to

2   comply with the subpoena absent consent from the

3   subscriber?

4            MR. HURAND:  Based on my communications with

5   Charter, I believe that they will not produce the

6   information absent the consent.

7            THE COURT:  And what is the relevance -- the

8   CoinDropMarkets@gmail.com was the subject of a prior

9   telephonic proceeding before this Court, maybe even more

10   than one.  I've lost count.  But that is the email

11   address for the business at issue in this case.  The

12   plaintiff alleged that he can no longer access that gmail

13   account himself because he lost the phone with the two-

14   factor authentication.  What are the other email

15   addresses?

16            MR. HURAND:  Other email addresses that we

17   expect Mr. McDonnell may have used in this matter?  I am

18   not sure I understand, your Honor.

19            THE COURT:  Well, the subpoena for which you

20   haven't even obtained -- you haven't obtained consent for

21   this subpoena, correct -- an authorization?

22            MR. HURAND:  Um.

23            THE COURT:  You said that Charter is not going

24   to comply absent the consent of the subscriber.

25            MR. HURAND:  Yes, your Honor.

6

Proceedings

1        THE COURT:  Now in our prior proceeding, we

2   were dealing with specific email accounts.

3        MR. HURAND:  Uh-hum.

4        THE COURT:  And a PayPal account.  Now there is

5   a list of email accounts.  These were not all the subject

6   of our prior discussions. So you haven't applied to the

7   Court for consent from Mr. McDonnell but from what you've

8   said, you can't get this information without his consent.

9        MR. HURAND:  Your Honor, I think that the Court

10  is referring to the list of email addresses that are part

11  of the definition of relevant subscribers for the Charter

12  subpoena, is that right?

13        THE COURT:  Yes.

14        MR. HURAND:  Those emails were included as ways

15  to identify the subscriber who, you know, we believe to

16  be or maybe Patrick McDonnell.  And so those are email

17  addresses that we believe may relate to him and so may be

18  a way that Charter can tie perhaps a different account

19  that it has to his internet use.  We're not looking for

20  the contents of those emails from Charter and I don't

21  believe that Charter could, you know, has access to

22  those.

23        THE COURT:  Well, as I understand it, you're

24  not asking for content at all.  You're asking for the

25  account pedigree information but as I understand it, you

7

Proceedings

1  would be seeking account pedigree for these email

2  accounts, correct?

3  MR. HURAND:  These email accounts would be

4  Charter to identify the cable or telephone subscriber for

5  which we would obtain pedigree information such as IP

6  addresses that Charter subscriber had logged in from and

7  billing information relating to the Charter account.

8  I don't think that they would have the type of

9  user information that GMX or GMail would have.

10  MR. MCDONNELL:  Your Honor, may I address that?

11  THE COURT:  No, I am not --

12  MR. MCDONNELL:  All right.  I apologize.

13  THE COURT:  -- yet finished.

14  MR. MCDONNELL:  Okay.

15  THE COURT:  You re describing all of these

16  emails, telephones, IP addresses, the one name, the

17  street address, as relevant subscribers.  You are asking

18  for all subscriber information for the relevant

19  subscribers.  So you are asking for account pedigree

20  information for all of those accounts, emails,

21  telephones, et cetera.

22  MR. HURAND:  Yes, your Honor.  For example, if

23  the subscriber used or associated one of those emails --

24  email addresses with the internet or telephone account,

25  then that would hopefully be picked up by this search.

8

Proceedings

1      THE COURT:  All right.  Mr. McDonnell, you

2  wanted to be heard?

3      MR. MCDONNELL:  I'm just -- they're saying that

4  they're looking to access the IP address and things of

5  that nature.  I discussed this, I think it was in -- gee,

6  my answer to this actual docket that they -- in Exhibit

7  13 of their evidence booklet that they gave me, they have

8  my IP address.  They have all this information that

9  they're claiming that they're looking to extract from

10  son's account.  They have it all.  So it is redundant in

11  terms of requiring information that they already have

12  that they submitted into evidence.

13      And I don't see -- and my personal belief is

14  since I've really started putting my head down, doing the

15  legal work and all the things like that, that they're in

16  seek of who I could possibly, you know, be talking to in

17  regards to my legal.  The only phone calls that I make on

18  this phone are to my mother or to the Court or to the

19  CFTC.  Nobody in my family uses this phone no more at all

20  at this point because --

21      THE COURT:  Well, you know, you make a lot of

22  representations to the Court but as yet, you have not

23  shown up for your deposition.  You have managed to avoid

24  it even though --

25      MR. MCDONNELL:  (Indiscernible).

9

Proceedings

1        THE COURT:  -- even though it was scheduled and
2   now you're throwing information out that is not under
3   oath and we need to --

4        MR. MCDONNELL:  (Indiscernible).

5        THE COURT:  -- we need to get to the bottom of
6   this.

7        MR. MCDONNELL:  No, my thing is, I am just
8   saying that they have the information that they're saying
9   they are seeking already.  They've presented it here in
10  an evidence booklet.  So what would be the need to have
11  that same information that --

12       THE COURT:  Well, I don't have access to the
13  evidence booklet.  So I don't know what you're talking
14  about and that's what I am trying to find out, why they
15  need this information.

16       MR. MCDONNELL:  Okay.  I am sorry.

17       THE COURT:  And why it's relevant.  And
18  CoinDropMarkets@gmail.com we know is relevant and we know
19  that you haven't produced that although the CFTC has
20  represented to the Court and has submitted documentation
21  from Google, that it is within your custody, possession
22  and control because you have access to it.

23       You claimed that you didn't have access because
24  you lost the phone with the two-factor authentication but
25  you could have access to it and you have just turned a

10

Proceedings

1   blind eye to that --

2          MR. MCDONNELL:  I did not -- honestly, your

3   Honor, I didn't --

4          THE COURT:  -- because --

5          MR. MCDONNELL:  -- I never researched it to

6   that level.  I just became aware of that when they sent

7   that to me.

8          THE COURT:  Well, are you now --

9          MR. MCDONNELL:  (Indiscernible).

10         THE COURT:  -- prepared to access that

11  information and provide it to them because you were

12  ordered to produce that --

13         MR. MCDONNELL:  Yeah.  No, I have no problem

14  accessing.  I have not denied accessing it.  What I am --

15  what I was saying is that in my letters is that I have

16  signed the authorizations and did everything that I was

17  supposed to in regards to that email in terms of the --

18  nowhere did I say do that if I was ordered by the Court.

19  You know, but up until the point I felt that I have done

20  everything that I am supposed to do and the only time

21  that I was aware of that was in regards to the filing of

22  the Court to you.

23         The first time I recognized that I could take

24  that approach that they got from a professional in

25  Washington to recover my account, was the notification

11

Proceedings

1   that they gave to the Court.

2          THE COURT:  And when you saw that, you didn't

3   offer to produce that information for them, did you?

4          MR. MCDONNELL:  I didn't because I felt I had

5   completed all my obligations under the previous court

6   orders.

7          THE COURT:  Well, let me just make it clear to

8   you, you have not and we will get to your answers to the

9   interrogatories and document demands which you did not

10  produce as directed by the deadline directed.  Your

11  explanation essentially is you forgot which frankly, is

12  not credible.  It's not as if this case hasn't been on

13  your mind since you've been causing the CFTC to file

14  multiple papers per day on your behalf.

15         Let me ask --

16         MR. MCDONNELL:  (Indiscernible).

17         THE COURT:  -- the CFTC --

18         MR. MCDONNELL:  (Indiscernible).

19         THE COURT:  -- it is not clear to me why you

20  need all of the information set forth in the subpoena

21  which you cannot -- you will not even -- as you've

22  indicated, you are not going to get without a consent

23  from the subscriber and you haven't even established that

24  Mr. McDonnell or the entity was the subscriber to these

25  accounts.

Proceedings

1    MR. HURAND:  So the information that was put

2    into this chart in an attempt to identify the relevant

3    subscriber, came from our documents that we have obtained

4    in this case, you know, information that we believe may

5    be related to Mr. McDonnell that come from either his or

6    Coin Drop Markets' business records that we have been

7    able to obtain and so the thought process was to the

8    extent that this information was linked to a cable

9    internet or telephone account that was used for the

10   business, it would come up on Charter's search.

11        And so that's why it was included.  The concern

12   was that, you know, given what we understand to be a

13   large number of email addresses that Mr. McDonnell has

14   used, it may be that CoinDropMarkets@gmail.com was not

15   the email address that he, in fact, may have used for

16   this Charter account or for the internet account.

17        You know, just as an example of this, we

18   understand from Federal Express records that he's used --

19   had multiple accounts with multiple email addresses, all

20   of which appear to relate in some way to either

21   CabbageTech or to Coin Drop Markets or, you know, in some

22   other way to his business.

23        THE COURT:  The problem is again, that you're

24   going to -- in order to get these documents by subpoena,

25   you're going to have to get a consent and before the

13

Proceedings

1   Court is going to order Mr. McDonnell to consent, I want

2   to be satisfied that he, in fact, arguably, at least, has

3   the authority to consent.

4           And for some of these email addresses, he

5   doesn't -- he hasn't disputed that these were the

6   business accounts that he used.

7           The problem is, some of them may well be family

8   accounts that he may have -- he may on occasion have

9   used, that doesn't mean that he's the subscriber.

10          MR. HURAND:  Your Honor, or authorized user may

11  be another term but it -- I take the Court's point that

12  it may be that he was using the account but may not have

13  been the subscriber or authorized user.

14          THE COURT:  Well, why don't you ask -- I will

15  allow you now to ask questions of Mr. McDonnell.  Let's

16  get to the bottom of this.

17          MR. HURAND:  Mr. McDonnell, which -- how did

18  you access the internet from your house?

19          MR. MCDONNELL:  Through the IP address that you

20  have in Exhibit 13.

21          MR. HURAND:  Which one is that?

22          MR. MCDONNELL:  It's in the docket that I

23  answered (indiscernible).

24          MR. HURAND:  Is it the first IP address the

25  subpoena, the 24.168.89.122?

14

Proceedings

1        MR. MCDONNELL:  I wouldn't know it offhand but

2  it's the one that I mentioned in my recent docket about

3  you having it in the exhibit.

4        MR. HURAND:  Okay.  Because it appears that

5  there's a second one on the same document -- and your

6  Honor, if it's helpful, I believe that --

7        MR. MCDONNELL:  It's 24.168.89 and I put that

8  (indiscernible).

9        THE COURT:  That's the first --

10        MR. HURAND:  Your Honor?

11        THE COURT:  -- IP address on the subpoena which

12  is docket entry 84-2, page 8.

13        MR. HURAND:  And, your Honor, one -- the second

14  IP address, the 72, I believe when Mr. McDonnell refers

15  to the exhibit book in tab 13, I believe that he's

16  referring to the exhibits that the CFTC put together and

17  served on him in advance of the March 6th hearing.  Is

18  that right, Mr. McDonnell?

19        MR. MCDONNELL:  It was actually a third party

20  did it (indiscernible) by the name of Maxmine GLIP Data

21  Results (ph.) and they did a -- I guess an analysis that

22  clearly shows my internet protocol IP address starting in

23  24.168.89 and also they show the assigned network

24  address.  They showed the defendant's geographical

25  location, as well as the ISP provider, Time Warner, which

Proceedings

1   you related to in your response saying that they changed

2   their name to the name that we're talking about now.

3          MR. HURAND:  And those are yours, Mr.

4   McDonnell?

5          MR. MCDONNELL:  What are mine?

6          MR. HURAND:  Is that IP address your IP

7   address?

8          MR. MCDONNELL:  I'm going to be honest with

9   you, I have never looked at my own IP address.  It's not

10  something that people normally do.  So, I mean, you guys,

11  you know, did some research -- I don't know.  I did -- I

12  could check my IP address, if you show me how to do it

13  and tell you if it is.  I don't know my IP address.  It's

14  not something I have ever checked.

15         MR. HURAND:  Your Honor, just as background,

16  there's a second IP address on that exhibit that is also

17  the second IP address on the subpoena and that's the

18  72.227.210.194.

19         THE COURT:  And you said that's also on what

20  other document?

21         MR. HURAND:  The tab 13 of our so-called

22  evidence book that we used at the March 6th hearing that

23  lists some lookup information in an attempt to locate

24  geographically, certain IP addresses.

25         MR. MCDONNELL:  And I don't know -- I have one

16

Proceedings

1  -- I have one cable, one phone, one internet line.  So I

2  don't know how there could be two IP addresses.  I have

3  one line.

4          MR. HURAND:  And Mr. McDonnell, how do you

5  access the internet since the beginning of 2017?

6          MR. MCDONNELL:  Have I accessed it?

7          MR. HURAND:  How have you accessed it?

8          MR. MCDONNELL:  Through a computer.

9          MR. HURAND:  Were you accessing the internet

10  through your computer at home?

11          MR. MCDONNELL:  I access the internet every

12  time that I do my legal work or go online in reference to

13  this case.  That's the only reason I go online.

14  Sometimes read the local paper and that's about it but

15  everything -- any time that I have accessed it has been

16  from my kitchen table where I do my kitchen table where I

17  do my legal work, in my home, under the IP address that

18  my home is under.

19          MR. HURAND:  And that's during the whole of

20  2017?

21          MR. MCDONNELL:  Yeah, I -- I don't leave my

22  house outside of work.  Anytime I have accessed the

23  internet has been under the roof of this home.

24          MR. HURAND:  And --

25          MR. MCDONNELL:  I don't have any mobile

Proceedings

1    devices.  I haven't since 2013 when I beat cancer.  The

2    reason being, I am not crazy, just my phone stopped

3    ringing when I was sick and I realized if no one wanted

4    to call me when I was sick, I don't need a phone.  That's

5    why I don't have any mobile devices, never did.  Don't

6    believe in them.

7         MR. HURAND:  What's the device that you had the

8    two-factor authentication through?

9         MR. MCDONNELL:  It was offline with no service,

10   iPhone that was given to me from my son because he had

11   upgraded his service and had a phone.  It was just a

12   thing that I used for that because you need some type of

13   device to download any type of two FA type of protection

14   or things of that nature.  But I had no internet access.

15   I had no account, nothing attached to it.  It was the

16   device that had electricity and anything -- you could,

17   you know, just basically download the things that you

18   need to protect your online account.

19        MR. HURAND:  And did you connect the smart

20   phone through your home WiFi?

21        MR. MCDONNELL:  I guess it would have to

22   probably be connected.  That's the only thing that would

23   have to be connected in order to get the services, you

24   know, like Google authentication and things like that,

25   you have -- but in terms of computers and stuff, I have

18

Proceedings

1  one little laptop that I borrowed from somebody that I am

2  using for this case.

3        MR. HURAND:  And so for the entirety of 2017,

4  you accessed the internet only through your home internet

5  access?

6        MR. MCDONNELL:  Through the IP address that is

7  paid through Spectrum.  That IP address is the address

8  that I use for internet access.  I don't carry a mobile,

9  so I can't hotspot and all those things.  I don't do

10  that.

11        MR. HURAND:  and whose account is that Spectrum

12  account?

13        MR. MCDONNELL:  My son Patrick's.  Under his

14  Social Security number, his date of birth, everything,

15  his email and all that.  None of the emails that you

16  relate to in that subpoena has anything to do with my

17  son's account.

18        MR. HURAND:  And do you make -- but you make

19  use of that account?

20        MR. MCDONNELL:  I use, I guess, my portion of

21  the account, as well as the other parties in the house

22  (indiscernible).

23        MR. HURAND:  And Coin Drop Markets used that

24  account?

25        MR. MCDONNELL:  I don't believe Coin Drop

19

Proceedings

1    Markets or CabbageTech ever used the telephone.  It was

2    an internet-based business through a website that, you

3    know, people paid, you know, willingly.  It wasn't -- we

4    weren't out there solicitation -- soliciting with market

5    materials.  The only market materials were the websites

6    that no longer exist.

7            MR. HURAND:  And the internet access that Coin

8    Drop Markets had was this internet access that we're

9    talking about from your -- inside your home using your

10   son's account?

11           MR. MCDONNELL:  I would assume.

12           MR. HURAND:  And no others?

13           MR. MCDONNELL:  No.  I use one internet

14   provider, that's it.

15           MR. HURAND:  Um.

16           MR. MCDONNELL:  I know where you're going with

17   it and I am being honest with you.

18           MR. HURAND:  And do you have the account number

19   for that Spectrum account?

20           MR. MCDONNELL:  I do but I am not giving it to

21   you because once again, it's my son's.  He's the

22   subscriber and if you have -- if you want consent to that

23   account, you're going to have to ask my son.

24           THE COURT:  Mr. McDonnell, no one is looking to

25   -- they're not looking for information on your son but to

20

Proceedings

1   the extent that you may have been using an account

2   associated with your son in which he was the subscriber,

3   but if you were using it for business --

4            MR. MCDONNELL:  I understand that.

5            THE COURT:  -- purposes, then the CFTC would be

6   entitled to it.  So you have to understand that we're not

7   looking --

8            MR. MCDONNELL:  Like I (indiscernible) I said

9   that I don't, you know, believe that I ever used the

10  phone or anything of that nature.  I think that the CFTC,

11  if they're looking for something that has four other

12  people -- three other people attached outside of me,

13  should come with the who, what, where, why, time, date,

14  what they're looking for, the specifics of what they're

15  looking for, not a fishing expedition.  It's just that,

16  you know, the sheer specifics -- you know, like you said

17  before when I referenced Exhibit 13, you said because

18  it's not in front of the Court, that it's basically like

19  irrelevant.

20           Well, he's referring to things and paperwork

21  and stuff that's not in front of the Court as well and I

22  am asking through my -- there's nothing I am

23  (indiscernible).

24           THE COURT:  I didn't say that Exhibit 13 was

25  irrelevant.  I said I didn't have it, so I didn't know

21

Proceedings

1   what you were referring to.

2            MR. MCDONNELL:  No, but what he stated too,

3   what he was quoting we don't have either in front of any

4   of us -- for him, he said that he has documents that he

5   is in possession from his investigation that indicate

6   that my phone number or my internet provider was used.

7   We're not in possession to even know that's true.  None

8   of us are in possession of that.

9            MR. HURAND:  Your Honor, just on that point, we

10  received productions from third parties and then we have

11  provided those to Mr. McDonnell.

12           MR. MCDONNELL:  Well, anyhow, even if I was in

13  possession, the Court is not in possession of them.

14           THE COURT:  Well, we can --

15           MR. MCDONNELL:  My point is this --

16           THE COURT:  -- drag this --

17           MR. MCDONNELL:  -- I am glad that nothing --

18           THE COURT:  -- we can make this --

19           MR. MCDONNELL:  -- (indiscernible) your Honor

20  that --

21           THE COURT:  -- easy, Mr. McDonnell or we can

22  make it hard.

23           MR. MCDONNELL:  I'm trying to make it easy,

24  your Honor, but I am not trying to violate other people's

25  rights.  You know, the thing is this, in the end, the

Proceedings

1   world is going to see in my opinion that I wasn't

2   supposed to be in this position in the first place.  So

3   to have other people included in my family, to violate my

4   family, and to do things like that when I declare that I

5   did not use this phone in any of the alleged acts that

6   they are -- like they don't even have an alleged act of

7   what my phone was used for.

8            There's no mention in the complaint that I used

9   the telephone.  If you look at their recent requests and

10  their previous requests, there was no mention to a

11  telephone until I came at that with the motion to

12  dismiss.  This has nothing to do with that type of

13  evidence.

14           The initial states of -- state of any type of

15  investigative period would be to go to the normal things,

16  to telephone, the internet, those things.  They weren't

17  requested previously because they were satisfied with the

18  fact according to Exhibit 13, that they had that data but

19  now that it benefits them to see who I am working with

20  legally because I am becoming a fight and I am no longer

21  illiterate, they want to know exactly who I am dealing

22  with, what I am dealing with, how am I gathering my

23  information.  They're asking me for information on my

24  defense.  They're asking me for a whole bunch of stuff

25  that violates -- how can I defend myself if the plaintiff

23

Proceedings

1  has my defense?

2           THE COURT:  They're not going to get your

3  defense because what they are seeking in this subpoena is

4  account pedigree information.  It's not content of

5  communications.  It's to be able to tie certain accounts

6  to you.  That's what they're seeking.

7           MR. MCDONNELL:  (Indiscernible).

8           THE COURT:  And I am trying to accommodate the

9  interests on both sides.  I don't know that the CFTC

10 needs to list all of these email accounts as relevant

11 subscribers.  For example, if --

12          MR. MCDONNELL:  (Indiscernible).

13          THE COURT:  -- the relevant subscriber is

14 Patrick K. McDonnell residing at 20 Rawson Place and if

15 that is how the information is maintained by Charter,

16 then to the extent that Patrick K. McDonnell was the

17 subscriber for CoinDropMarkets@gmail.com for CDM@gmx.us,

18 presumably, that information is going to be retrievable

19 by subpoenaing information relating to Patrick K.

20 McDonnell at a certain address.

21          MR. MCDONNELL:  (Indiscernible).

22          THE COURT:  But the way this is written, the

23 CFTC is defining each of these email addresses and

24 telephone numbers and IP addresses as relevant

25 subscribers.  So theoretically, there could be over a

24
Proceedings

1    dozen different relevant subscribers here.  And the Court
2    does not have --
3             MR. MCDONNELL:  I (indiscernible) what --
4             THE COURT:  -- sufficient information on each
5    of these alleged relevant subscribers to be able to
6    conclude that Mr. McDonnell should be compelled to
7    provide a consent.
8             MR. HURAND:  Your Honor, if I -- with the
9    Court's permission, it may be efficient just to confirm
10   which of these email accounts Mr. McDonnell has used in
11   connection with his dealings and then which of these
12   telephone numbers he has because it may be that these are
13   all his.
14            MR. MCDONNELL:  The telephone number that I use
15   is 718-524-6312.  Now if you're going to request
16   something under me, being notified that that's my son's
17   number, then request it without the phone number and the
18   information that he wrote.  But to request it under the
19   phone number that you know for a fact, and I can send you
20   the bill that it's his, is one thing.
21            Like the other stuff you're requesting, you
22   have the right to do all of that, according to what I
23   think and what the judge is saying.  But you should do it
24   without the phone number that you know is my son, you
25   know, being the subscriber.  That's fair.  Then you could

Proceedings

1  do whatever you want but to include his phone number when

2  you know that that is his account is just a violation of

3  his privacy rights under everything the Constitution

4  says.

5          THE COURT:  Well, assuming --

6          MR. MCDONNELL:  And that's what I am saying

7  (indiscernible) --

8          THE COURT:  -- assuming you even had --

9          MR. MCDONNELL:  -- I am not (indiscernible).

10          THE COURT:  -- standing to assert his privacy

11  rights, you don't.

12          MR. MCDONNELL:  I am sorry (indiscernible).

13          THE COURT:  He has his own rights but I am

14  trying to come up -- I am trying to narrow this to

15  accommodate everyone's interest, even the interest --

16          MR. MCDONNELL:  May I make --

17          THE COURT:  -- of those --

18          MR. MCDONNELL:  -- a suggestion?

19          THE COURT:  Mr. McDonnell?

20          MR. MCDONNELL:  As you could see

21  (indiscernible).

22          THE COURT:  Mr. McDonnell, would you stop

23  interrupting the Court?

24          MR. MCDONNELL:  I'm sorry.

25          THE COURT:  As I said, I'm trying to

26

Proceedings

1    accommodate the interest of everyone, including those who

2    are not even before the Court now.

3              MR. MCDONNELL:  Okay.

4              THE COURT:  So let's focus on what is

5    undisputed are accounts connected to you.  And let's do

6    this quickly because this is just one of numerous

7    applications --

8              MR. MCDONNELL:  Right.

9              THE COURT:  -- that are pending before me and I

10   don't I have all night to address this.

11             Mr. Hurand, do you have specific questions for

12   Mr. McDonnell?

13             MR. HURAND:  Mr. McDonnell, are there any

14   emails here that you have not used in connection with,

15   you know, virtual currency dealings?

16             MR. MCDONNELL:  Can you say that --

17             MR. HURAND:  CoinDropMarkets@gmail.com?

18             MR. MCDONNELL:  That's the company's email.

19             MR. HURAND:  What about PatMcDonnell@gmx.us?

20             MR. MCDONNELL:  I don't recognize it.

21             MR. HURAND:  Have you ever -- so you've never

22   used that one?

23             MR. MCDONNELL:  I don't recognize it.  I don't

24   believe I ever used it because I don't recognize it.

25             MR. HURAND:  CDM@gmx.us?

Proceedings

1          MR. MCDONNELL:  That's my legal.

2          MR. HURAND:  Before this case was filed, did

3   you have that address?

4          MR. MCDONNELL:  Yes, I had that address because

5   it was the address that we used for the PayPal account.

6   You know that.

7          MR. HURAND:  And that's an account you used for

8   the Coin Drop Markets' business?

9          MR. MCDONNELL:  I used it like I told you,

10  strictly for PayPal.  That was it.  We've been through

11  this, Gates.

12          MR. HURAND:  Is CTCMembership@gmx.com an email

13  address that you used for your business dealings?

14          MR. MCDONNELL:  I don't recognize that either.

15          MR. HURAND:  Is KingMcDonnell@gmx.com an email

16  address that you've used for your business dealings?

17          MR. MCDONNELL:  I would never relate to myself

18  as a king.

19          THE COURT:  That wasn't the question.

20          MR. MCDONNELL:  I don't recognize it, no.

21          MR. HURAND:  And that's

22  DeafDollarsDove@gmail.com (ph.), is that ever -- is that

23  an account that you've ever used for virtual currency

24  dealings?

25          MR. MCDONNELL:  I don't recognize that either.

28

                              Proceedings

1              MR. HURAND:  For the telephone numbers -- the

2    telephone number 718-524-4718, have you ever used that

3    number?

4              MR. MCDONNELL:  I don't recognize that.

5              MR. HURAND:  The number 929-428-6422, have you

6    ever used that number?

7              MR. MCDONNELL:  I don't recognize that.

8              MR. HURAND:  The telephone number 347-857-6043,

9    have you ever used that number?

10             MR. MCDONNELL:  I don't recognize that, as

11   well.

12             MR. HURAND:  What about the number 888-614-

13   6445?

14             MR. MCDONNELL:  I do not recognize that, also.

15             MR. HURAND:  That's not a Coin Drop Markets

16   number?

17             MR. MCDONNELL:  I don't recognize it, no.  It

18   could be.  I don't recognize it at this moment in my

19   life.

20             MR. HURAND:  Is there anywhere that you could

21   look to confirm whether you've ever used those numbers?

22             MR. MCDONNELL:  I could check for the 888

23   number.  I wouldn't know it offhand but I don't recognize

24   it off my memory but I could check on that but the other

25   ones, I don't recognize.

29

Proceedings

1          MR. HURAND:  Do you have any way of checking

2    the other ones?

3          MR. MCDONNELL:  I don't believe so.  I don't

4    believe I possess enough specific information to

5    recognize that, no.

6          MR. HURAND:  What about 1-888-624-6445?

7          MR. MCDONNELL:  Off my head, I don't recognize

8    but I will research it, if you want.  If you want to send

9    it through my email and I will get back to you.

10          THE COURT:  Do you have any further questions

11    for Mr. McDonnell?

12          MR. OAKLAND:  Mr. McDonnell, this is David

13    Oakland.

14          MR. MCDONNELL:  Hi, David.

15          MR. OAKLAND:  Hi.  Are there documents you are

16    going to review in order to ascertain the status of those

17    numbers?

18          MR. MCDONNELL:  No, I would actually go online

19    and look at what's left in terms of pictures and stuff

20    that, you know, people may have posted and see if the

21    number coincides that the number you give me.  I don't

22    believe there would be any documents to anything.

23          THE COURT:  All right.  So is the CFTC prepared

24    to narrow the subpoena?

25          MR. HURAND:  Yes, your Honor.  I think if we

30

Proceedings

1   could begin with seeking -- with respect to the

2   CoinDropMarkets@gmail.com account, the CDM@gmx.us account

3   but then removing the others, as ways of identifying

4   relevant subscribers and then identifying only the number

5   that Mr. McDonnell could recall on this telephone call

6   and then leaving the IP addresses, the first two that we

7   have listed in our so-called evidence book and dropping

8   the third, leaving only his name, address, those two

9   email addresses, the one telephone number and the two IP

10  addresses is a way to limit the definition of relevant

11  subscriber.

12          THE COURT:  Well, this sounds reasonable to me

13  and perhaps adding the 888 phone number or phone numbers,

14  assuming that those were associated with the defendant

15  entity, if to the extent that Mr. McDonnell is going to

16  go online to see if those were phone numbers associated

17  with the business, isn't that something that the CFTC

18  could do and then just satisfy the Court with a link?

19          MR. HURAND:  Yes, your Honor.  We can look into

20  tying those numbers to -- in some way to the business.

21          THE COURT:  Well, I am prepared to approve a

22  subpoena that's narrowed as the CFTC has proposed,

23  possibly including the 888 numbers and since Charter is

24  going to require a consent from the subscriber, given the

25  discussions that we have had now and Mr. McDonnell's

31

Proceedings

1    statements, I am going to require that he provide such

2    consent and I will note, Mr. McDonnell, that although the

3    time period is from 2016 until the present, that that --

4    that this is simply, so-called account pedigree

5    information, to show -- to connect you to that account.

6    It is not content.  So that --

7            MR. MCDONNELL:  Your Honor, all my legal calls

8    on that -- that line.  I have no problem with

9    (indiscernible).

10           THE COURT:  But your legal calls are not going

11   to be reflected in the information that's being sought.

12           MR. MCDONNELL:  They're not going to receive

13   any phone numbers?

14           THE COURT:  Would the usage records include

15   phone numbers?  Let me --

16           MR. HURAND:  Your Honor, I am not sure but I

17   believe that they would, although, you know, our position

18   would be that the mere existence of a communication --

19   the mere fact of it is not privileged.  It would be the

20   contents of it and we're not getting any of the content.

21           MR. MCDONNELL:  That's not the case when you

22   can just run any phone number through Google and see what

23   the attorney's name is that I might be, you know, just

24   talking to or something of that.  A phone number

25   identifies people and I don't want you knowing my

Transcriptions Plus II, Inc.

32

Proceedings

1   defense.  I don't want you knowing the lawyers that, you

2   know, maybe I called up and asked for some guidance or,

3   you know, references or something.  And I don't believe

4   that you have the right to that.

5           THE COURT:  Mr. McDonnell, when did you start

6   calling lawyers?

7           MR. MCDONNELL:  I've been calling lawyers from

8   day one, from them telling me they don't want to handle

9   my case.  They don't have enough money.  I have spoken to

10  a --

11          THE COURT:  When -- don't tell me day one.

12  Tell me a date.

13          MR. MCDONNELL:  It would have been the first --

14  from the initial date that we had our first

15  communications by telephone, I would say in early --

16  maybe mid-February or maybe early February.  I don't have

17  the exact date right now.

18          THE COURT:  So let me ask the CFTC, do you

19  really need to have this information through the present

20  or can it go through January of 2018?

21          MR. HURAND:  We agree to that, your Honor.

22          THE COURT:  All right, so --

23          MR. MCDONNELL:  That's fair.

24          THE COURT:  So the subpoena and the consent

25  will cover the reduced list of relevant subscribers for

Transcriptions Plus II, Inc.

33

Proceedings

1   the time period from January 2016 through January 2018

2   and I am requiring that Mr. McDonnell sign a consent to

3   the production of this information.

4            MR. MCDONNELL:  Well, I am going to have to

5   have my son sign that.

6            THE COURT:  Excuse me?

7            MR. MCDONNELL:  My son would sign the consent,

8   right?

9            THE COURT:  I wasn't --

10           MR. MCDONNELL:  (Indiscernible)?

11           THE COURT:  He's not a party before the Court.

12  I am requiring that you sign it.

13           All right.  So let's turn to some of the

14  remaining issues before the Court.  I'm looking now at

15  docket entry 102 which is the CFTC's letter of May 25th.

16  That responded to Mr. McDonnell's letter regarding

17  Charter which we have now addressed but it also includes

18  requested relief concerning other subpoenas, specifically

19  a subpoena on Twitter for content relating to the Twitter

20  account, Coin Drop Markets, as well as a subpoena to

21  Google concerning the Coin Drop Markets business email

22  account, CoinDropMarkets@gmail.com.

23           And apparently, the service providers are not

24  satisfied with the consents that have been provided by

25  Mr. McDonnell.  They want a response to their emails

34

Proceedings

1    concerning these accounts.

2              Mr. McDonnell, have you received those emails?

3              MR. MCDONNELL:  No, because I don't have access

4    -- I haven't accessed that Gmail account that they're

5    saying they sent to and I don't recognize CDM@gmx.com.

6    The reason I had .us was because CDM@gmx.com was not

7    available.

8              THE COURT:  Well, is --

9              MR. MCDONNELL:  That (indiscernible).

10             THE COURT:  -- the --

11             MR. MCDONNELL:  -- (indiscernible) provide

12   (indiscernible).

13             THE COURT:  The Gmail account that you don't

14   have access to, you now know how --

15             MR. MCDONNELL:  They gave me the instructions

16   in the document to you.

17             THE COURT:  All right.  So are you prepared

18   then to reestablish access and to respond to that

19   subpoena?

20             MR. MCDONNELL:  Yes, if I am supposed to, your

21   Honor, absolutely.  If I have grounds not to, I would

22   like to, you know, object but if that -- you know, I am

23   not -- I have no problem with them having that account.

24   I honestly just didn't know -- I didn't know -- not that

25   I didn't know, I didn't look into the recovery process.

35

Proceedings

1   So they looked into the recovery process.  They went to a

2   specialist.  The fairest thing for me to do would be to

3   figure out how to do it, click the email and let them get

4   the information they requested.

5           THE COURT:  Well, I did order you to provide a

6   consent.  We already litigated that issue.  And ow it's

7   simply that the service provider is asking for another

8   step and so I don't want to relitigate that issue since

9   there is a way --

10          MR. MCDONNELL:  That's (indiscernible).

11          THE COURT:  -- since this is information within

12  your custody, possession or control since you could

13  access it.

14          MR. MCDONNELL:  If I (indiscernible).

15          THE COURT:  I am directing that you access that

16  CoinDropMarkets@gmail account and respond --

17          MR. MCDONNELL:  I will (indiscernible).

18          THE COURT:  -- to Google, so that they'll

19  release that information and after the CFTC obtains it,

20  it will provide you with a copy of it.

21          MR. MCDONNELL:  Okay.

22          MR. HURAND:  Your Honor, on the point of the

23  CoinDropMarkets@gmail.com email address, Google, somewhat

24  as an additional burden asked for entry of a consent

25  order as well and they even contacted me today to ask for

36

Proceedings

1    the addition of one extra paragraph to the order and so

2    with the Court's permission, I would resubmit that

3    document.

4            THE COURT:  Well, their consent form, if I

5    recall correctly, they're asking for a lot of information

6    that I don't know that I am prepared to order and as far

7    as I am concerned, if they want to litigate this, if they

8    have lawful consent, they can certainly say we don't want

9    to provide this information until we notify the

10   subscriber and see if there is an objection from the

11   subscriber.

12           If they want to do that, and say we'll wait,

13   you know, five -- we'll wait two business days and see if

14   there is an objection and they get no objection, they get

15   no objection, then they should produce it.  They don't

16   get to dictate the terms of the consent.

17           MR. MCDONNELL:  I --

18           THE COURT:  If the Court has ordered Mr.

19   McDonnell to consent, he's provided a consent form and at

20   some point it's up to the Court and not up to them, they

21   can't start -- it's not up to them to start providing all

22   kinds of qualifications and conditions.

23           MR. HURAND:  Yes, your Honor.

24           THE COURT:  And if they would like to appear in

25   court and show cause why what I have just suggested isn't

37

Proceedings

1    sufficient, then they can do so.

2              MR. HURAND:  I will convey that to counsel.

3              THE COURT:  And please let the Court know as

4    soon as possible because we are running out of time,

5    given Judge Weinstein's schedule.  We need --

6              MR. HURAND:  And --

7              THE COURT:  The case law is clear that as long

8    as they have lawful consent -- Mr. McDonnell has objected

9    but he has been ordered by the Court to provide consent

10   and the Court has the legal authority to do that, as part

11   of the discovery process.  They have lawful consent.

12             If they want to make sure that there's not an

13   objection, as I said, I am prepared to give them an

14   opportunity to notify the subscriber and see whether

15   there's any objection but absent that, I expect that

16   there will be producing the documents.

17             MR. HURAND:  Yes, your Honor.  And in terms of

18   the Twitter response, along the same lines as to Google?

19             THE COURT:  Well, we have another issue with

20   the Twitter which is that Mr. McDonnell says that he does

21   not have access to that GMX account.  Let me just -- am I

22   remembering correctly what your position is, Mr.

23   McDonnell?

24             MR. MCDONNELL:  Yeah, I -- the reason I had

25   registered CDM@gmx.us is because the .com wasn't

Transcriptions Plus II, Inc.

38
Proceedings

1    available.  I actually went onto GMX and tried to access

2    this account they're talking about with my password, just

3    to see if maybe I forgot and it wouldn't go through.  I

4    think that maybe Twitter made a mistake and put the .com

5    instead of the .us honestly.

6              MR. OAKLAND:  Mr. McDonnell, this is David

7    Oakland again.

8              MR. MCDONNELL:  Hi, David.

9              MR. OAKLAND:  Have you previously received

10   communications -- last year when the Twitter was in

11   effect.

12             MR. MCDONNELL:  Yeah.

13             MR. OAKLAND:  Did you receive communications

14   from Twitter at your CDM@gmx.us account?

15             MR. MCDONNELL:  I don't think so, no, because I

16   was doing PayPal on that.  That's why I -- I believe that

17   that Twitter account is set up under

18   CoinDropMarkets@gmail.com.  I believe that's the handle

19   for that account.

20             MR. OAKLAND:  So if Twitter for some reason has

21   a clerical error in their records, as to which email

22   address is the correct email -- let's say for example,

23   for whatever reason, somehow it got entered as

24   CDM@gmx.com --

25             MR. MCDONNELL:  Okay.

Proceedings

1           MR. OAKLAND:  -- instead of gmx.us, you're not

2    saying that that was not -- that that Twitter account was

3    not --

4           MR. MCDONNELL:  I'm saying that it struck me as

5    odd to see the .com, so the only thing that I thought

6    just first thing in my head was that they -- not even

7    looking at the content of the situation, just the email

8    address, I said maybe they just, you know -- it would be

9    a common mistake for a person to put .com versus .us.  So

10   that was why I -- that was just what I concluded but it

11   might not be true at all.  That's just me just thinking,

12   you know, seeing something that is odd to me and just

13   coming to a conclusion.

14          THE COURT:  And Mr. McDonnell, why are you now

15   unable to access your Twitter account?

16          MR. MCDONNELL:  No, I am -- that Twitter

17   account doesn't exist no more.  It hasn't existed for a

18   long time.  The thing I am saying is the CDM@gmx they're

19   saying is the access email for that Twitter.

20          THE COURT:  No, I understand that but you -- so

21   you have no way of using the gmx.us email, you have no

22   way of accessing stored communications from twitter.

23   Those would all be in the hands of the third-party

24   provider, Twitter.

25          MR. MCDONNELL:  Yeah, I actually tried to

40

Proceedings

1   access that gmx.com account just to see if, like I said,

2   I forgot it with, you know, just some passwords that

3   could I remember and there was no -- there was no access.

4          I don't believe I ever owned it.  I believe

5   from my recollection that I had registered the .us

6   because the .com wasn't available.

7          MR. OAKLAND:  Mr. McDonnell, this is David

8   Oakland again.  Have you did -- did you receive any email

9   from Twitter in the last, you know, two to three weeks?

10         MR. MCDONNELL:  In regards to what?

11         MR. OAKLAND:  Your CDM@gmx.us account, the one

12  that you still have --

13         MR. MCDONNELL:  No, absolutely not, no.

14         MR. OAKLAND:  So they have not sent anything to

15  that account.

16         MR. MCDONNELL:  No, not at all.

17         MR. OAKLAND:  So if it's an error deeply

18  embedded in Twitter's files.

19         MR. MCDONNELL:  Yeah, and I don't know if it's

20  an error or not in terms of how they put it there but I

21  am -- that's just an assumption.

22         THE COURT:  Well, again, I would say that if

23  Twitter has Mr. McDonnell's consent and they've got no

24  response from the gmx.com email, they can try gmx.us.  If

25  they get no objection, then they should produce the

Transcriptions Plus II, Inc.

41

Proceedings

 1   records based on the consent -- the court-ordered consent

 2   that he's provided.

 3          MR. OAKLAND:  Thank you.

 4          THE COURT:  All right.  Is the next issue, is

 5   that the most recent motion that's come in?

 6          MR. HURAND:  Yes, your Honor.

 7          THE COURT:  Oh, we have -- I am sorry.  We have

 8   Mr. McDonnell's motion with respect to a Capital One

 9   account but the CFTC states that it is not subpoenaed

10   Capital One.  So, Mr. McDonnell, what is the basis for

11   your belief that Capital One has been subpoenaed?

12          MR. MCDONNELL:  Well, they had presented

13   Capital One in one of their exhibits to me.  They've

14   since answered their -- they since answered and

15   clarified, you know, that they haven't subpoenaed it and

16   that they don't have -- they're not in possession of

17   anything.  So I mean I really don't have an argument at

18   this point because they clarified -- they answered the

19   question and they clarified.

20          THE COURT:  And I do want to state you've asked

21   the Court to conduct an audit of all of their subpoenas.

22          MR. MCDONNELL:  Yes.

23          THE COURT:  The Court does not sit to audit all

24   discovery that takes place.  The Court relies on the good

25   faith of --

42

Proceedings

1          MR. MCDONNELL:  Right.

2          THE COURT:  -- the parties and here the CFTC

3   has represented to the Court that anytime it's served a

4   subpoena, that it has served notice on you of that

5   subpoena and that after it has obtained documents in

6   response to a subpoena, those documents have been

7   produced to you and will the CFTC please confirm that?

8          MR. HURAND:  Yes, your Honor.  This is Gates

9   Hurand.  That's been our practice thus far and I think we

10  have some, you know, another production coming.

11         THE COURT:  But there --

12         MR. MCDONNELL:  Your Honor?

13         THE COURT:  -- are no subpoenas that have been

14  served for which Mr. McDonnell has not been provided

15  notice.  Is that accurate?

16         MR. HURAND:  Yes, first on the point of notice,

17  that is accurate.  We have noticed him before the serving

18  the subpoenas in each case.

19         THE COURT:  So given those representations,

20  anytime Mr. McDonnell has had a problem with any of the

21  subpoenas, he clearly has not been shy about writing to

22  the Court and complaining about the subpoenas.  I am not

23  going to back now over prior history.  If there are

24  specific issues with specific subpoenas, I have heard

25  them.  I will hear them but I am not simply going to do

43

Proceedings

1   an overall review of every subpoena that has been served

2   in the case.

3           MR. MCDONNELL:  Can I ask this, your Honor?

4   So, you know, outside of all that, you know -- and I

5   agree with you on that, the last sentence, I asked just

6   for like, you know, so we don't end up in this type of

7   situation where I'll write the Court.  Like, twenty-four

8   hour notice, like they could just send the subpoena

9   they're going to send me, just for an inspection that

10  we're not going to run into any problems is what I am

11  looking for and I don't think --

12          THE COURT:  They just said that they've been

13  sending you notice before they even serve the subpoena.

14          MR. MCDONNELL:  N, I know they send the notice

15  correctly and they definitely do do that but the fact is

16  is sending notice and the notice of requesting

17  information that I object to like we're going through

18  right now, is the issue -- is the reason that I just --

19  would just like someone just to look at it for two

20  seconds.  Okay, they're within their rights and Mr.

21  McDonnell will have no objection or no right to file a

22  motion on this.

23          To pre -- you know, to -- just to prevent

24  future issues like this, I am just asking for someone to

25  give a quick glance and then, you know -- and then they

44

Proceedings

1   would subpoena the thing and then they would go through

2   it.  I'm not saying that they haven't subpoenaed me

3   correctly.  They are correct in what they're saying, when

4   they did serve me, they served me with that and they did

5   everything.

6          My main concern is to prevent issues of us --

7   you know, like the serving of the subpoena is one thing

8   but then the information request of the subpoena is where

9   the arguments for the objection seem to start.  So I was

10  just asking for that type of relief, just to

11  (indiscernible).

12         THE COURT:  Well, I am not -- if you're asking

13  the Court going forward to review every subpoena that's

14  served, the answer is that is not the role of the Court,

15  and this Court will not do it.

16         MR. MCDONNELL:  Okay.

17         THE COURT:  If they serve you with a subpoena,

18  and you have an issue with it, first of all, you should

19  talk with them about it to see whether it's something

20  that you can resolve with the CFTC before making an

21  application to the Court.

22         If you can't resolve it, then you can make an

23  application to the Court.  I can assure you, third

24  parties who are subpoenaed do not immediately produce

25  records.  So if you're given notice before they serve the

45

Proceedings

1    subpoena --

2            MR. MCDONNELL:  Okay.

3            THE COURT:  -- I think you can be fairly

4    confident that if you send a notice -- if you make a

5    motion to the Court, you're going to --

6            MR. MCDONNELL:  Right (indiscernible) action.

7            THE COURT:  -- the Court is going to see that

8    before the documents are produced.

9            MR. MCDONNELL:  Okay.  I agree.

10           THE COURT:  All right.  So the last item on the

11   agenda is the CFTC's letter of May 30th and Mr.

12   McDonnell's response of May 31st.  This concerns Mr.

13   McDonnell's response to the interrogatories and document

14   demands.  The Court's May 17th order directed Mr.

15   McDonnell on pain of sanctions to respond to any

16   outstanding discovery request by May 28th.

17           As of May 28th, Mr. McDonnell according to the

18   CFTC and it's undisputed by him, had not produced any

19   responsive materials or answers to the interrogatories.

20   After the close of business the next day, the CFTC

21   emailed Mr. McDonnell to notify him that he had not

22   received responses and an hour later, Mr. McDonnell

23   emailed two pdfs purporting to be his responses.  Those

24   have been produced to the Court by the CFTC.  The

25   responses to the interrogatories -- every single one of

46

Proceedings

1    them, without exception reads, "Defendant does not

2    possess enough specific information to answer this

3    question."  That is the response to thirteen different

4    interrogatories.

5            The demand for documents, each one of those

6    demands has prompted a response.  Defendant does not

7    possess enough specific information to answer this

8    question.  These are not even questions, they're document

9    demands but he -- Mr. McDonnell has responded to the

10   document demands with the same exact response that he

11   used in responding to the interrogatories.

12           In his response, he -- Mr. McDonnell claims

13   that defendant in no way willfully violated the Court's

14   order.  Any outstanding discovery request was satisfied

15   within an hour of plaintiff's reminder/request, and he

16   refers to this as a simple oversight.

17           As I said earlier, given the history of this

18   case, it strains credulity to suggest that this was just

19   an oversight but in any event, even if it was an

20   oversight, the responses in no way satisfied the

21   defendant's obligations.  These were not good faith

22   responses.

23           And Mr. McDonnell, you claim that you're

24   getting legal advice.  I don't know who is giving you

25   legal --

47

Proceedings

1          MR. MCDONNELL:  That's right.

2          THE COURT:  -- advice but let me just say this,

3  that that pattern of responding to the discovery demands

4  is not a good faith response.

5          MR. MCDONNELL:  Okay.

6          THE COURT:  And it may well be that for certain

7  questions, you don't recall any information and it -- you

8  don't even say I don't recall the specifics but in

9  general, I recall the following.  This is just --

10          MR. MCDONNELL:  Your Honor, if I could answer

11  that.

12          THE COURT:  -- the back --

13          MR. MCDONNELL:  I'll go every question with you

14  and tell you why because like they're asking me to

15  identify persons with knowledge or any information I have

16  used that makes the Court (indiscernible).

17          THE COURT:  Who worked for your company?

18          MR. MCDONNELL:  I'm -- nobody, it was just me.

19  That's what I mean.

20          THE COURT:  Then --

21          MR. MCDONNELL:  Like they're asking for -- you

22  know, my company didn't trade cryptocurrency for people.

23  So they're asking for information on people that I traded

24  for, my company traded for and I don't possess enough

25  specific information to answer that because my company

48

Proceedings

1   didn't do that.

2          And then when it comes to things like the

3   identity of all documents, I clearly stated to them many

4   times that whatever documents or whatever information

5   pertaining to customers would be in PayPal or would be in

6   the Coin Drop Markets' gmail.  That's all that's left of

7   it.  And I've been honest with that.

8          So basically, they've been provided with that

9   information.  I don't possess anymore or enough specific

10  information to answer that question and that's where I

11  say things become redundant because, you know, like

12  there's so many things on there that have already been

13  addressed.

14         And even if you look at the -- I don't know how

15  to pronounce it, the interrogatories, and the other

16  document where they're asking the question, there's some

17  similar questions just on each one that are kind of like

18  pertaining to the same thing, you know, and that's what I

19  mean -- you know, that's how I am saying that, like, you

20  know, this -- for instance, number two, it says all

21  documents and communications leading to accounts under

22  the name or control of McDonnell.  What accounts?  Like

23  what specific accounts?  Do you want like -- if I had an

24  EZ Pass, do you want that?

25         Like I provided everything that I was supposed

Proceedings

1  to in terms of the business accounts and everything that

2  I was supposed to in terms of the authorization.  So to

3  me, what I am looking at this, just as a person that is

4  being requested, the information, I don't have that

5  information.

6          THE COURT:  Mr. McDonnell --

7          MR. MCDONNELL:  (Indiscernible).

8          THE COURT:  -- you know, the discovery demands

9  include definitional sections.  So you say that what

10 accounts do they mean and I am flipping back because it's

11 -- although the specific demands, there aren't that many,

12 it is a long document because there are -- there's a

13 definitional section including on page 2 of 10, item

14 number 3, the term account or accounts refers broadly to

15 all manner of accounts, actual currency, virtual currency

16 or otherwise --

17         MR. MCDONNELL:  All right, yes.

18         THE COURT:  -- including without limitation --

19         MR. MCDONNELL:  They have all that.  I provided

20 all that.

21         THE COURT:  Please stop interrupting.  You

22 wanted to know what accounts meant.

23         MR. MCDONNELL:  I'm sorry.

24         THE COURT:  I am reading the definition now.

25         MR. MCDONNELL:  Okay.

Proceedings

1          THE COURT:   Including without limitation,

2   commodities, futures, and options accounts, brokerage

3   accounts, trading accounts, virtual currency wallets,

4   exchange accounts, securities accounts and bank accounts.

5   So there is your definition.

6          MR. MCDONNELL:  They have (indiscernible).  He

7   has -- and I recently filed bankruptcy and I put every

8   account on there and I don't possess any of those

9   accounts now.

10          THE COURT:  Well, the bankruptcy court is an

11   entirely separate body from the CFTC.

12          MR. MCDONNELL:  No, but I just don't possess

13   them -- I don't have -- I don't have banking accounts, I

14   don't have stock accounts, I don't have options accounts.

15   I don't -- I am not there.  I don't do that.  So I can't

16   produce that, so therefore again, I don't possess enough

17   specific information to answer that because I don't have

18   that.

19          THE COURT:  Well, let's not talk in the future

20   tense --

21          MR. MCDONNELL:  I don't (indiscernible).

22          THE COURT:  -- because the subpoena -- excuse

23   me, the discovery demands relate to a period of time and

24   now I don't have in front of me the -- the relevant time

25   period for the document request is from January 1st, 2016

51

Proceedings

1    to the present, unless noted otherwise in the request.

2               MR. MCDONNELL:  Okay.

3               THE COURT:  So you're saying now you don't have

4    any accounts.

5               MR. MCDONNELL:  No, they have (indiscernible).

6               THE COURT:  Did you have accounts within the

7    time period specified?

8               MR. MCDONNELL:  And they're in possession of

9    them.  They have the Bitrex account and they have the

10   wallet addresses that were not third-party wallets.  They

11   were -- they were decentralized wallets.  I was -- I -- I

12   do -- I explain this in the Court that I was not a big

13   user of third-party exchanges and I asked them in the

14   courtroom last time, why did he request all this

15   information from companies like Kraken and stuff that I

16   couldn't possibly access from my browser because it's

17   barred because of the New York State regulation, like

18   websites (indiscernible) like you are.

19              I've addressed this with them and I have given

20   them all the information that they've asked for initially

21   when it came to the wallets and it came to transactions

22   and things and we've argued it.  And there's no more

23   like --

24              THE COURT:  What was the information that you

25   gave them?

Proceedings

1    MR. MCDONNELL:  I gave them everything that

2  they asked for which was the specific wallet addresses

3  and everything that was required in -- there was only two

4  wallet addresses for the company, there was the Bitcoin

5  and a Litecoin address that they had referenced in their

6  complaint and they --

7            THE COURT:  Well, the --

8            MR. MCDONNELL:  -- asked for (indiscernible)

9  back.

10           THE COURT:  -- demand is not limited to the

11  company.

12           MR. MCDONNELL:  Yeah, but I don't have any

13  personal is what I am telling you.  I don't --

14           THE COURT:  Well, you're going back --

15           MR. MCDONNELL:  -- I'm not lying to you.

16           THE COURT:  -- into the present tense.

17           MR. MCDONNELL:  Yeah.

18           THE COURT:  We're not talking about just the

19  present.

20           MR. MCDONNELL:  My business and my -- my

21  business and my personal was the same thing.  I wasn't a

22  huge corporation.  Like I was just a regular person with

23  a little newsletter business.  That's why when they're

24  coming at me with 30 email addresses and things like

25  this, that's imbalanced, you know, compared to what I

53

Proceedings

1   did.  I didn't have all those railways and everything.

2          I mean, as everyday goes by it just seems like

3   this case gets bigger on fabrications.  I don't possess

4   any spouse accounts, haven't since 1992.  I haven't

5   traded stock options.  I have never traded an option in

6   my life personally.  Things like that I have never -- you

7   know, I don't understand why that would even be

8   (indiscernible).

9          THE COURT:  Mr. McDonnell, I don't know what

10  information you have or haven't provided to the CFTC in

11  the past.

12          MR. MCDONNELL:  I provided everything I was

13  asked for, ma'am.

14          THE COURT:  I don't know what that is but to

15  the extent you may have provided information to them

16  informally, specific information, they're entitled to

17  serve formal discovery demands and get formal responses.

18          MR. MCDONNELL:  No, this is formal that I

19  provided.  This is under a court order that I provided.

20  I can take the time tonight to find the docket number

21  where I provided all the information to them and we

22  actually had a hearing over it.  We argued this point in

23  your courtroom about him saying that I had connections

24  with the Russian nationalism -- nationalists or

25  something.

54

Proceedings

1      Like they've been provided with all the

2  information that they requested and this is redundant

3  information.  I told them that I am not in possession of

4  the communications and emails and all that stuff and

5  that's why I gave them authorization for all those

6  accounts, so they can go in there and verify whatever

7  they need, the PayPal, the list of the customers, because

8  all the customers came through PayPal, that was -- they

9  signed up through PayPal.  They have all the customer

10  information and they know they have all the customer

11  information.

12          THE COURT:  Had you been responding to these

13  documents in good faith --

14          MR. MCDONNELL:  Yes.

15          THE COURT:  -- you would have provided

16  individualized responses to each interrogatory or each

17  document and each document demand.  And to the extent

18  that --

19          MR. MCDONNELL:  I have read every single one of

20  the (indiscernible).

21          THE COURT:  Mr. McDonnell, please stop

22  interrupting the Court.

23          MR. MCDONNELL:  Right.

24          THE COURT:  To the extent that -- in response

25  to a particular demand or interrogatory, the information

55
Proceedings

1   had been provided, you could have said all information

2   responsive to this request was provided to the CFTC on

3   March 16th.  I don't remember the exact date, 2018.

4            MR. MCDONNELL:  No, I understand.

5            THE COURT:  At least then they would have a

6   record that you're saying whatever you provided before,

7   there's nothing else, but you didn't do that and what you

8   did is -- I assume you just kept hitting a repeat button

9   over and over again.

10            MR. MCDONNELL:  No, I read every single one

11   specifically, honestly.  I really did.  And there's

12   really not one -- even -- I spoke to him on the phone

13   yesterday and I told him that I only had a couple of

14   articles printed out from what was going on in the media

15   at the time, whatever was being said about the case and

16   just some things with the chairman going to Washington.  I

17   have like six articles and the rest was what they had

18   been sending me.

19            I don't have a defense to this day, your Honor.

20   What defense do I have against these people?  What can I

21   subpoena on them?  What records, information, can I --

22   how do I defend myself?  I still don't know how.  That's

23   why I haven't resented them with evidence and things like

24   that because I don't have any.  The only evidence I have

25   is how I am being treated by law through this whole case.

56

Proceedings

1   That's the only argument I have.

2           The only defense I have is that I am innocent

3   and that I am charged improperly.  I have no way to

4   produce any type of evidence or anything against them

5   outside of the misconduct that they have factually

6   performed in many facets of this whole case and I am

7   fighting this.  There's no way that I would have

8   willfully not sent these answers or read each one

9   specifically and gave you my honest opinion when I have

10  my whole life at hand.

11          I have a motion to dismiss in front of the

12  Court and I am fighting and I am fighting harder than

13  anybody would ever believe, twelve hours a day.  I'm one

14  person doing the work of a full law firm, okay?  And they

15  have a lot of people under them to help them and you have

16  to understand the position that I am in today, at 4:58 --

17  at 4:58, my phone was shut off.  I had to go across the

18  street and borrow my neighbor's credit card to get the

19  phone on, so this -- I didn't get this case dismissed and

20  I wasn't -- and I didn't look like I was evading.  Okay?

21          So I am doing everything that I can do, okay?

22  And I am humbling myself, begging people to borrow their

23  credit card to pay my bills, to be on the phone and to be

24  available, okay, for whatever it is.

25          When you see a defendant does not possess

Proceedings

1   enough specific information to answer this question, I

2   understand your opinion and yes, I probably could have

3   worded it better in reference to what I did but I viewed

4   it as though I had (indiscernible) information, that I

5   had given that information and I no longer possess that

6   specific information because I had given it to them in

7   the first place.

8           And this isn't -- you know, everybody on this

9   phone is going to move on with their life after this

10  case.  This case is going to affect me for the rest of my

11  life.  It's destroyed my life.  I have no life.

12          And I just wonder when the Court steps in and

13  stops looking at all the he said, she said stuff back and

14  forth and see by the law that I am charged incorrectly.

15  Because at the end of this case, everybody is going to

16  say wow, he was right.  And that's just what God is going

17  to do.  Nobody can stop God's plan.

18          And I am telling you that I have done

19  everything.  I did not willfully violate your order.  I

20  would never disrespect the Court and I would never

21  disrespect you.  I have answered even their -- this that

22  we're talking about right now.  I answered it as quick as

23  I could.  And your clerk will tell you that I have been

24  on top of every single response, typically within 24

25  hours.  I learned how to do this.  I am learning how to

58

Proceedings

1   format.  I am learning how to use the PDF.  I am learning

2   how to do all this and I am getting better at it and I am

3   getting resources.

4           But I need -- there has to be some leniency

5   towards an idiot representing themselves because everyday

6   I am learning and I am learning on the fly.  I don't have

7   a core grasp or understanding or intellect of how to

8   interpret this law or how to interpret everything.  I am

9   interpreting it to my view of it, same way that they are

10  and I didn't put those answers to be defiant in any way.

11  I put those answers because I believe that I have given

12  them everything that I had been requested to under court

13  order.

14          THE COURT:  Well, that's not what --

15          MR. MCDONNELL:  And (indiscernible) --

16          THE COURT:  -- those answers say.

17          MR. MCDONNELL:  -- (indiscernible) your Honor

18  to be -- to be going through all this stuff.

19          THE COURT:  That is --

20          MR. MCDONNELL:  I did all this on my own.

21          THE COURT:  The answers do not say --

22          MR. MCDONNELL:  (Indiscernible) everybody

23  (indiscernible) to the defendants, every -- the

24  plaintiffs, everybody just respects that.  I know we're

25  adversaries but can people respect that this is one

59

Proceedings

1  person fighting all of you, a huge office?  I think I'm

2  doing okay.  I'm trying my best.  You can see everyday I

3  am learning and I am trying to practice this law

4  according to your structure.  I am not perfect and I

5  probably never will be in this law because it's not what

6  I chose to do.

7          And I am -- I apologize to you.  I apologize to

8  the plaintiffs.  I apologize to everybody for my

9  ignorance but I did not willfully avoid this order and I

10  did not not take the time to specifically read each and

11  everyone of them.  And I was being honest in my answer.

12  It might not be suitable to the Court, it might not be

13  suitable to the plaintiff's needs but that's my honest

14  opinion because I felt and I still feel that I have

15  (indiscernible) all this information to the plaintiff.

16          THE COURT:  Well again, I do not view these

17  responses as satisfying the Court's order.  There is a

18  motion to sanction you, either in terms of monetary

19  sanctions or an order preclusion.  Since you are pro se,

20  I am prepared to give you an opportunity to supplement

21  these responses and I want you to go through them one by

22  one --

23          MR. MCDONNELL:  (Indiscernible).

24          THE COURT:  -- and if your answer is I provided

25  this information -- all -- any and all information I have

60

Proceedings

1    in response to this document demand, I provided to the

2    CFTC on March whatever, 2018.  Then put that.

3            Or with respect to the accounts, if you

4    provided information to the bankruptcy court, I assume

5    you've saved copies of information that you produced to

6    the bankruptcy court, then say all the account

7    information is attached.  It's what I produced to the

8    bankruptcy account.

9            MR. MCDONNELL:  Your Honor, (indiscernible) --

10            THE COURT:  I want responses that show that

11    you're actually taking seriously each of these demands

12    and I want you to serve them by Monday.

13            MR. MCDONNELL:  You'll have them by tomorrow, I

14    promise you.

15            THE COURT:  And we have a deposition going

16    forward on Tuesday.  And let me just say this because I

17    think it is important to go forward with the deposition

18    because the CFTC hasn't gotten the information it needs

19    through interrogatories and document demands.  So I think

20    you should go forward with the deposition and if as a

21    result of the deposition --

22            MR. MCDONNELL:  (Indiscernible).

23            THE COURT:  -- you end up subpoenaing other

24    parties and get documents, and you need to take a further

25    deposition of Mr. McDonnell, then under the rules you

61

Proceedings

1   would be required to seek permission of the Court but I

2   will tell you that I will look favorably on such an

3   application, given the way this case has been handled by

4   the defendant to date.

5          MR. HURAND:  Thank you, your Honor.

6          THE COURT:  All right.  Is there anything

7   further?

8          MR. HURAND:  One thing.  I think if Mr.

9   McDonnell wanted to take the weekend and give us

10  responses to the document requests and also to the

11  interrogatories under oath, on Monday morning, I just

12  want to -- I would rather him do it thoroughly than crank

13  out something very quickly.

14         THE COURT:  I said I was going to give him

15  until Monday.  Let's say until noon on Monday --

16         MR. MCDONNELL:  All right.  I --

17         THE COURT:  -- so that we'll have an actual

18  thoughtful response and you're not going to find yourself

19  being asked the same questions at deposition because if

20  you just give some off, you know -- backhanded responses,

21  they're going to be -- you can be sure that at your

22  deposition, they're going to be asking follow-up

23  questions and then they'll probably move for sanctions

24  again.

25         MR. MCDONNELL:  Okay.

62

Proceedings

1          THE COURT:  Now one final matter I want to

2   raise and that is Mr. McDonnell, you have not registered

3   to receive ECF filings and it --

4          MR. MCDONNELL:  No, I --

5          THE COURT:  -- has been problematic for the

6   Court --

7          MR. MCDONNELL:  -- (indiscernible).

8          THE COURT:  -- because every time I issue an

9   order, if you had registered for ECF, although you would

10  not be permitted to docket into ECF, you would receive

11  the Court's order and because you haven't registered --

12         MR. MCDONNELL:  (Indiscernible) for me every

13  time (indiscernible).

14         THE COURT:  Excuse me?

15         MR. MCDONNELL:  The plaintiff, every time that

16  you do put out an order, they always send it to me.  They

17  (indiscernible).

18         THE COURT:  Well, they're not obligated to do

19  that.

20         MR. MCDONNELL:  No, but they have.

21         THE COURT:  But the Court is obligated to make

22  sure you're served with anything that it issues.

23         MR. MCDONNELL:  Okay.

24         THE COURT:  And I want you to get my orders

25  quickly.  So is there a reason why you haven't registered

63

Proceedings

1   for ECF?

2          MR. MCDONNELL:  No, I guess it's just that we

3   were like -- I honestly felt comfortable dealing with the

4   ECF through them, like it was just one streamlined

5   process that (indiscernible).

6          THE COURT:  It's not streamlined because if

7   there is something that goes out at 7 o'clock at night

8   from the Court and --

9          MR. MCDONNELL:  Yes.

10          THE COURT:  -- they don't see it until the next

11   day, then you complain about the delay.

12          MR. MCDONNELL:  No, I only --

13          THE COURT:  If you registered for ECF --

14          MR. MCDONNELL:  -- (indiscernible) --

15          THE COURT:  -- you would --

16          MR. MCDONNELL:  -- (indiscernible) on time, you

17   know, and to their credit is what I am saying.  To my

18   credit -- to my lack of credit, I need to set it up

19   tonight.

20          THE COURT:  Please.  I don't know whether you

21   can do it tonight or not.  I don't know whether you need

22   the assistance of the clerk's office --

23          MR. MCDONNELL:  (Indiscernible) application

24   (indiscernible).  I have looked at it.  It says mail an

25   application in and about five days, they'll, you know,

64

Proceedings

1   send it to them in the pro se office and then they'll

2   approve it and (indiscernible).

3          THE COURT:  You may have to mail it in but do

4   it sooner --

5          MR. MCDONNELL:  Yes.

6          THE COURT:  -- rather than later.  For example,

7   I will be doing a minute entry of very, very short form

8   summary of this proceeding.  That will be docketed

9   tonight.  You're not going to get it tonight, unless the

10  -- unless one of the attorneys for plaintiff happens to

11  be around and sends it to you but if you were registered

12  for ECF, you would get it as soon as it's filed.

13         MR. MCDONNELL:  All right.

14         THE COURT:  All right.  Thank you very much.

15  Good night.

16              (Matter concluded)

17                   -o0o-

18

19

20

21

22

23

24

25

65

# C E R T I F I C A T E

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **3rd** day of **June**, 2018.

*Linda Ferrara*
Linda Ferrara

AAERT CET**D 656
Transcriptions Plus II, Inc.