UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

COMMODITY FUTURES TRADING
COMMISSION,

                Plaintiff,

      v.

PATRICK K. MCDONNELL,
and CABBAGETECH, CORP. d/b/a COIN
DROP MARKETS,

                Defendants.

Case No. 18-CV-0361 (JBW)

ECF Case

---

**PLAINTIFF'S OPPOSITION TO DEFENDANT PATRICK K. MCDONNELL'S
MOTION FOR RECONSIDERATION (ECF 99)**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................... 1

PROCEDURAL BACKGROUND..................................................................................... 2

LEGAL STANDARD......................................................................................................... 3

ARGUMENT ...................................................................................................................... 4

I.      *Monex* Does Not Provide Any Basis To Reverse This Court's Decision.......................... 4

    A.      The "Actual Delivery Exception" Does Not Bar the Commission's 7 U.S.C.
       § 9(1) Claim ............................................................................................................ 5

    B.      7 U.S.C. § 9(1) and 17 C.F.R. § 180.1 Prohibit the Fraud Alleged in the
       Complaint................................................................................................................. 6

        1.      7 U.S.C. § 9(1) and Regulation 180.1 Unambiguously Prohibit Fraud
           Whether or Not There Is Manipulation...................................................... 6

        2.      *Monex* Erred by Disregarding the Text of 7 U.S.C. § 9(1)......................... 8

II.     McDonnell's Subject-Matter and Personal Jurisdiction Arguments Should Be Rejected 12

CONCLUSION.................................................................................................................. 13

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Ardestani v. INS*, 502 U.S. 129 (1991) ........................................................................10

*Auer v. Robbins*, 519 U.S. 452 (1997) ........................................................................11

*Barnhart v. Sigmon Coal Co.*, 534 U.S. 438 (2002) ....................................................10

*Belfiore v. Proctor & Gamble Co.*, 140 F. Supp. 3d 241 (E.D.N.Y. 2015) ................. 3-4

*Bhd. R.R. Trainmen v. Balt. & Ohio R.R.*, 331 U.S. 519 (1947) ...................................9

*Bonn-Wittingham v. Project O.H.R. (Office for Homecare Referral), Inc.*, No. 16-CV-541
(ARR)(JO), 2017 WL 2178426 (E.D.N.Y. May 17, 2017) .........................................4

*CFTC v. Hunter Wise Commodities, LLC*, 21 F. Supp. 3d 1317 (S.D. Fla. 2014) ........7

*CFTC v. Kraft Foods Grp., Inc.*, 153 F. Supp. 3d 996 (N.D. Ill. 2015) ....................7, 9

*CFTC v. McDonnell*, 287 F. Supp. 3d 213 (E.D.N.Y. 2018)................................. *passim*

*CFTC v. Monex Credit Co.*, No. 8:17-01868, 2018 WL 2306863 (C.D. Cal. May 1,
2018). .................................................................................................... *passim*

*CFTC v. Monex Deposit Co.*, 824 F.3d 690 (7th Cir. 2016)...........................................8

*CFTC v. S. Tr. Metals, Inc.*, 880 F.3d 1252 (11th Cir. 2018).........................................7

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council*, 467 U.S. 837 (1984)....................8, 11

*Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989)....................................6

*Conn. Nat'l Bank v. Germain*, 503 U.S. 249 (1992)......................................................6

*De Sylva v. Ballentine*, 351 U.S. 570 (1956) ............................................................ 8-9

*Dep't of Hous. v. Rucker*, 535 U.S. 125 (2002) ......................................................7, 10

*Dewsnup v. Timm*, 502 U.S. 410 (1992) ......................................................................10

*Honeycutt v. U.S.*, 137 S. Ct. 1626 (2017)....................................................................9

*In re Application to Enforce an Admin. Subpoena of the U.S. CFTC v. Monex Deposit
Co.*, No. 14 C 6131, 2014 WL 7213190 (N.D. Ill. Dec. 17, 2014)......................... 7-8

*Langsam v. Vallarta Gardens*, No. 08 Civ. 2222(LAP), 2009 WL 2252612 (S.D.N.Y.
July 28, 2009)..............................................................................................4

*Morenz v. Wilson-Coker*, 415 F.3d 230 (2d Cir. 2005) ...............................................................7

*N.L.R.B. v. SW Gen., Inc.*, 137 S. Ct. 929 (2017) .....................................................................10

*Rubin v. U.S.*, 449 U.S. 424 (1981).........................................................................................6-7

*Shrader v. CSX Transp., Inc.*, 70 F.3d 255 (2d Cir. 1995) ......................................................3-4

*Sierra Club, Inc. v. Leavitt*, 488 F.3d 904 (11th Cir. 2007)......................................................11

*T.Z. v. City of N.Y.*, 634 F. Supp. 2d 263 (E.D.N.Y. 2009) .......................................................3

*U.S. v. Turkette*, 452 U.S. 576 (1981)......................................................................................10

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245 (2d Cir. 1992) ..........................4

## STATUTES AND REGULATIONS

7 U.S.C. § 2(c)(2)(C) (2012).......................................................................................................5

7 U.S.C. § 2(c)(2)(D) (2012) ..................................................................................................1, 5

7 U.S.C. § 6(a) (2012).................................................................................................................5

7 U.S.C. § 6(b) (2012).................................................................................................................5

7 U.S.C. § 6b (2012) ...................................................................................................................5

7 U.S.C. § 9(1) (2012) ........................................................................................................*passim*

15 U.S.C. § 78j (2012)............................................................................................................7, 9

28 U.S.C. § 1331 (2012) ........................................................................................................2, 12

28 U.S.C. § 1345 (2012) ........................................................................................................2, 12

17 C.F.R. § 180.1(a) (2017)................................................................................................*passim*

## RULES

Fed. R. Civ. P. 12(b). ...............................................................................................................12

Fed. R. Civ. P. 12(h). ...............................................................................................................12

Local Civ. R. 6.3 .........................................................................................................................3

## OTHER AUTHORITIES

*Prohibition on the Employment, or Attempted Employment, of Manipulative and Deceptive Devices and Prohibition on Price Manipulation*, 76 Fed. Reg. 41398 (July 14, 2011) ..........11

156 Cong. Rec. S3295, S3348 (daily ed. May 6, 2010) ...........................................................7, 10

Plaintiff Commodity Futures Trading Commission ("Commission" or "CFTC") respectfully submits this Opposition to Defendant Patrick J. McDonnell's ("McDonnell") motion for reconsideration (ECF 99) ("Motion" or "Mot.")[1] of this Court's March 6, 2018 Memorandum and Order ("March 6 Order").

## PRELIMINARY STATEMENT

Once again, McDonnell seeks to avoid responsibility for the fraudulent virtual currency scheme that he and his company operated by arguing that it falls outside the reach of the Commission's enforcement authority under Section 6(c)(1) of the Commodity Exchange Act ("Act" or "CEA"), 7 U.S.C. § 9(1) (2012), and Commission Regulation ("Regulation") 180.1(a), 17 C.F.R. § 180.1(a) (2017).  This Court has already rejected this argument once and should do so again.

McDonnell's current Motion relies entirely upon the recent opinion in *CFTC v. Monex Credit Co.*, No. 8:17-01868, 2018 WL 2306863 (C.D. Cal. May 1, 2018), a deeply flawed decision that is neither controlling nor persuasive.  McDonnell first cribs from *Monex* an argument concerning the so-called "actual delivery exception" provided in Section 2(c)(2)(D) of the Act, 7 U.S.C. § 2(c)(2)(D) (2012).  This argument completely misses the mark because 7 U.S.C. § 2(c)(2)(D) only applies to certain transactions entered into or offered on a leveraged, margined, or financed basis.  No such leveraged, margined, or financed transaction has been alleged here, making McDonnell's invocation of an exception to 7 U.S.C. § 2(c)(2)(D) wholly irrelevant.

McDonnell then latches on to *Monex*'s erroneous reading of the phrase "manipulative *or* deceptive" in 7 U.S.C. § 9(1) (emphasis added) as "manipulative *and* deceptive."  2018 WL

---

[1]  The Commission herein opposes McDonnell's various requests as supplemented (ECF 69, 75, 87, 89, 90, 99) that in sum and substance seek reconsideration of the Court's March 6, 2018 Memorandum and Order.

2306863, at *8 (emphasis added).  This conclusion, however, is so questionable that the court itself has already determined that there are "substantial grounds for difference of opinion," with respect to it, and *sua sponte* certified the decision for immediate appeal.  *Monex*, No. 8:17-cv-01868 (C.D. Cal. May 15, 2018), No. 194, *appeal docketed*, No. 18-55815 (9th Cir. June 20, 2018).  *Monex* provides no basis for altering this Court's well-reasoned and sound conclusion that 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a) prohibit the fraudulent scheme alleged in the Complaint.  McDonnell also raises unsupported and meritless subject-matter and personal jurisdiction arguments, but he fails entirely to establish that reconsideration is warranted. McDonnell's Motion should therefore be denied.

## PROCEDURAL BACKGROUND

On February 15, 2018, McDonnell filed a Motion to Dismiss for Lack of Subject-Matter Jurisdiction (Pursuant to Rule 12(B)(1), Fed. R. Civ. P.) and/or Failure to State a Claim Upon Relief Can Be Granted (Pursuant to Rule 12(B)(6), Fed. R. Civ P.).  (ECF 18.)  The Commission opposed McDonnell's motion and also submitted a brief in support of a preliminary injunction that addressed the Court's jurisdiction and the Commission's authority to bring this action.  (ECF 20, 21.)[2]  In particular, the Commission's PI Brief provided a detailed discussion of 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a) and how they prohibit, among other things, fraud in connection with a contract of sale of any commodity in interstate commerce.  *See* PI Brief at 12-23.

On March 6, 2018, the Court denied McDonnell's motion to dismiss, holding that the Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1345 and that the Commission had adequately pled its claim for fraud in violation of 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a).  *CFTC v. McDonnell*, 287 F. Supp. 3d 213, 230 (E.D.N.Y. 2018).  At the same time,

---

[2] *See* Memorandum of Law in Opposition to Defendant Patrick K. McDonnell's Motion to Dismiss (ECF 20) (hereinafter "Motion to Dismiss Opposition") and Brief of Commodity Futures Trading Commission in Support of Motion for Preliminary Injunction and Other Relief (ECF 21) (hereinafter "PI Brief").

the Court granted a preliminary injunction in favor of the Commission.  In the Court's thorough and well-reasoned opinion, the Court held that (i) virtual currencies fell within the CEA's definition of "commodity," (ii) the Commission has jurisdictional authority to bring suit against defendants utilizing a scheme to defraud investors through a "contract [for] sale of [a] commodity in interstate commerce," and (iii) language in 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1 establish the Commission's regulatory authority over the manipulative schemes, fraud, and misleading statements alleged in the Commission's Complaint.  *Id.* at 228-230.

Despite the Court's comprehensive opinion rejecting McDonnell's jurisdictional arguments and affirming the Commission's anti-fraud enforcement authority under 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a) to prosecute the fraudulent scheme alleged in the Complaint, on May 7, 2018, McDonnell began filing a series of belated requests seeking reconsideration of the Court's opinion based upon the *Monex* decision.  (*See* ECF 69, 75, 87, 89, 90, 99.)  On May 22, 2018, the Court stated that it would hear McDonnell's motion for reconsideration of the Court's order denying his motion to dismiss.  (ECF 88.)  As explained below, neither *Monex* nor any of McDonnell's other arguments provide grounds for altering this Court's March 6 Order.

## LEGAL STANDARD

Local Civil Rule 6.3 governs motions for reconsideration and requires a party, within fourteen days of a court's order, to set forth the matters or controlling decisions which the party believes the Court has overlooked.  *See* Local Civ. R. 6.3.  The rule "is to be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the court."  *Belfiore v. Proctor & Gamble Co.*, 140 F. Supp. 3d 241, 244 (E.D.N.Y. 2015) (Weinstein, J.) (quoting *T.Z. v. City of N.Y.*, 634 F. Supp. 2d 263, 268 (E.D.N.Y. 2009)).

A motion for reconsideration "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might

reasonably be expected to alter the conclusion reached by the court." *Belfiore*, 140 F. Supp. 3d at 245 (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotation marks omitted). Decisions by other district courts are "persuasive but nonbinding authority [that do] not constitute a point of law or fact that mandates reconsideration." *Bonn-Wittingham v. Project O.H.R. (Office for Homecare Referral), Inc.*, No. 16-CV-541 (ARR)(JO), 2017 WL 2178426, at *1 (E.D.N.Y. May 17, 2017) (quotation omitted); *see also Langsam v. Vallarta Gardens*, No. 08 Civ. 2222(LAP), 2009 WL 2252612, at *2 (S.D.N.Y. July 28, 2009) ("Controlling decisions include decisions from the United States Court of Appeals for the Second Circuit; they do not include decisions from other circuits or district courts . . . ."). Because *Monex* is a decision from another district court, it does not constitute authority that mandates reconsideration. Nevertheless, below, the Commission addresses the issues raised by McDonnell in his Motion.

## ARGUMENT

### I.   *Monex* Does Not Provide Any Basis To Reverse This Court's Decision

McDonnell's argument that *Monex* warrants reconsideration of this Court's March 6, 2018 decision is meritless. This Court has already examined Section 6(c)(1) of the Act, 7 U.S.C. § 9(1), and Regulation 180.1(a), 17 C.F.R. § 180.1(a), in detail and correctly concluded that these provisions permit the Commission to prosecute the fraudulent scheme alleged in the Complaint. *McDonnell*, 287 F. Supp. 3d at 229. As explained below, *Monex* provides no basis for reversing this Court's prior decision.

A.     The "Actual Delivery Exception" Does Not Bar the Commission's 7 U.S.C.
       § 9(1) Claim

McDonnell first argues, based on *Monex*, that Section 2(c)(2)(D) of the Act, 7 U.S.C.

§ 2(c)(2)(D) (2012), and its "actual delivery exception" bar enforcement of 7 U.S.C. § 9(1)

against Defendants.  (*See* Mem. at 9-10, 22; ECF 90.)  McDonnell's reliance on *Monex*,

however, is misplaced.  Section 2(c)(2)(D) and its "actual delivery exception" plainly do not

apply here.

*Monex*'s discussion of Section 2(c)(2)(D) of the Act and its actual delivery exception has

no bearing here.  Section 2(c)(2)(D) generally provides that Sections 4(a), 4(b), and 4b of the

Act, 7 U.S.C. §§ 6(a), 6(b), 6b (2012), apply to certain retail commodity transactions entered into

or offered on a leveraged, margined, or financed basis "as if" the transaction was a contract of

sale of a commodity for future delivery.  *See* 7 U.S.C. § 2(c)(2)(D)(iii) (2012).  Section

2(c)(2)(D) excepts from its coverage any contract of sale that results in actual delivery within 28

days (the "Actual Delivery Exception").  *See* 7 U.S.C. § 2(c)(2)(D)(ii)(III)(aa) (2012).  In *Monex*,

the issue of Section 2(c)(2)(D) and its Actual Delivery Exception arose because the CFTC's

complaint involved retail commodity transactions offered on a leveraged, margined, or financed

basis.  2018 WL 2306863, at *1.  In contrast, the Complaint here does not allege any transactions

entered into or offered on a leveraged, margined, or financed basis.  Section 2(c)(2)(D) of the

Act is simply not implicated here, thus the issue of whether its Actual Delivery Exception applies

is of no consequence.[3]

---

[3] In a supplement to his motion to dismiss, McDonnell also argues that a "CEA 2 day 'ACTUAL DELIVERY
EXEMPTION'" bars the Commission's 7 U.S.C. § 9(1) claims.  (*See* ECF 90.)  McDonnell presumably refers to an
exception provided under Section 2(c)(2)(C) of the Act, 7 U.S.C. § 2(c)(2)(C) (2012).  This exception, too, is
irrelevant.  Section 2(c)(2)(C) of the Act applies to certain foreign currency transactions (*see* 7 U.S.C. §
2(c)(2)(C)(i)(I)) that are entered into or offered on a leveraged, margined, or financed basis (*see* 7 U.S.C. §
2(c)(2)(C)(i)(I)(bb)).  Here, the Complaint (1) does not allege foreign currency transactions and (2) does not allege
any transactions entered into or offered on a leveraged, margined, or financed basis.

### B.    7 U.S.C. § 9(1) and 17 C.F.R. § 180.1 Prohibit the Fraud Alleged in the Complaint

McDonnell also argues that the Complaint should be dismissed because it is "absent of 'any' claim(s) specifying 'fraud-based market manipulation.'"  (Mot. at 2.)  Here, McDonnell relies on *Monex*'s erroneous conclusion that Section 6(c)(1) of the Act, 7 U.S.C. § 9(1), prohibits only manipulation, not fraud.  As this Court's prior decision makes clear, however, the statute plainly prohibits fraud, even in the absence of manipulation.  *Monex*'s reasoning is flawed and unpersuasive, and it provides no basis for altering this Court's prior ruling.

### 1.    7 U.S.C. § 9(1) and Regulation 180.1 Unambiguously Prohibit Fraud Whether or Not There Is Manipulation

In the March 6 Order, this Court provided a detailed analysis of the CFTC's enforcement authority under 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a) and correctly recognized the Commission's authority to use 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1 to combat fraud, including the fraudulent scheme alleged in the Complaint.  *See, e.g.*, *McDonnell*, 287 F. Supp. 3d at 229 ("CFTC has jurisdictional authority to bring suit against defendants *utilizing a scheme to defraud* investors through a 'contract [for] sale of [a] commodity in interstate commerce.'") (emphasis added); *id.* ("[The CFTC's] expansion into *spot trade commodity fraud* is justified by statutory and regulatory guidance.") (emphasis added); *id.* ("Language in 7 U.S.C. §9(1), and 17 C.F.R. § 180.1, establish the CFTC's regulatory authority over the manipulative schemes, fraud, and misleading statements alleged in the complaint.").  A straightforward analysis of the statute's text compels this conclusion.

"The starting point for [the] interpretation of a statute is always its language."  *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 739 (1989).  "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there."  *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992).  Where the words of the statute are

unambiguous, the "judicial inquiry is complete." *Id.* at 254 (quoting *Rubin v. U.S.*, 449 U.S. 424, 430 (1981).

Section 6(c)(1) of the Act and Regulation 180.1 are unambiguous.  Section 6(c)(1) prohibits "any manipulative *or* deceptive device or contrivance" in connection with a contract of sale of a commodity in interstate commerce.[4]  7 U.S.C. § 9(1) (emphasis added).  Regulation 180.1(a) similarly prohibits "any manipulative deceptive, scheme, or artifice to defraud," as well "any untrue statement of material fact" and "any act, practice, or course of business, which operates . . . as a fraud or deceit" in connection with a contract of sale of a commodity in interstate commerce.  17 C.F.R. § 180.1(a)(1)-(3) (2017).  The word "or" in 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a) indicates the "disjunctive," so only one of the provision's prongs needs to be met.  *See Morenz v. Wilson-Coker*, 415 F.3d 230, 234-35 (2d Cir. 2005).  The word "any" means there are no further limitations.  *Dep't of Hous. v. Rucker*, 535 U.S. 125, 131 (2002).  Thus, by its text, 7 U.S.C. § 9(1) covers conduct that is deceptive, but not necessarily manipulative, including fraudulent misstatements and omissions, in connection with a contract of sale of a commodity in interstate commerce, just as this Court previously found.  Numerous other courts have also held so.  *See, e.g.*, *CFTC v. S. Tr. Metals, Inc.*, 880 F.3d 1252, 1262-63 (11th Cir. 2018) (holding that 7 U.S.C. § 9(1) prohibits "fraud" by "misrepresentation, misleading statement, or deceptive omission"); *CFTC v. Kraft Foods Grp., Inc.*, 153 F. Supp. 3d 996, 1008 (N.D. Ill. 2015) (holding that Section 6(c)(1) and Rule 180.1 prohibit not only "use of manipulative devices to defraud," but also "the use of schemes to defraud" and "the use of artifices to defraud"); *CFTC v. Hunter Wise Commodities, LLC*, 21 F. Supp. 3d 1317, 1346-47 (S.D. Fla. 2014); *see also In re Application to Enforce an Admin. Subpoena of the U.S. CFTC v.*

---

[4] Congress borrowed this text from Section 10(b) of the Exchange Act of 1934, 15 U.S.C. § 78j(b) (2012), the well-known anti-fraud statute.  *See* 156 Cong. Rec. S3295, S3348 (daily ed. May 6, 2010).

*Monex Deposit Co.*, No. 14 C 6131, 2014 WL 7213190, at *2 (N.D. Ill Dec. 17, 2014) ("Section 6(c)(1) of the Act … is the statutory provision regulating deceptive conduct in connection with a contract of sale of a commodity in interstate commerce."), *aff'd sub nom*. *CFTC v. Monex Deposit Co.*, 824 F.3d 690 (7th Cir. 2016).

Even the *Monex* decision itself recognized that "the plain language of § 6(c)(1) suggests that Congress intended to prohibit either manipulative or deceptive conduct." *Monex*, 2018 WL 2306863, at *8. The text of Section 6(c)(1), however, does more than "suggest" that—it explicitly says that, which ought to have been "the end of the matter." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council*, 467 U.S. 837, 842-43 (1984). Accordingly, this Court's prior finding that 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a) prohibit fraud is a sound conclusion that flows directly from the statutory text. *See McDonnell*, 287 F. Supp. 3d at 229.

### 2.    *Monex* Erred by Disregarding the Text of 7 U.S.C. § 9(1)

Rather than follow the unambiguous language of 7 U.S.C. § 9(1), *Monex* incorrectly concluded that the "or" in 7 U.S.C. § 9(1) must be read as an "and" and construed 7 U.S.C. § 9(1)'s prohibition on the use of "manipulative or deceptive device[s]" to require both manipulative *and* deceptive conduct, not one or the other. *Monex*, 2018 WL 2306863, at *8. However, the *Monex* court's various justifications for this artificially conjunctive interpretation are plainly in error and belie the statute's clear and unambiguous prohibition against fraud, with or without manipulation.

*First*, notwithstanding the statute's plain language, *Monex* justified ignoring the statute's plain use of the word "or" by dismissing Congress' choice of words as "careless," relying on *De Sylva v. Ballentine*, 351 U.S. 570, 573 (1956). *De Sylva*, however, is distinguishable because the court in that case stressed repeatedly that the "careless" statutory text at issue was ambiguous and a literal reading of the statute in the disjunctive would create a plainly wrong result. 351

U.S. at 573-74.  *Monex* could point to no such ambiguity here because none exists.  *See* 7 U.S.C § 9(1) (2012).

*Second*, *Monex* mistakenly relied on *Kraft*, 153 F. Supp. 3d at 1010, to further support the proposition that the use of "or" does not "necessarily mean[] that the section bars two distinct kinds of conduct."  *Monex*, 2018 WL 2306863, at *8.  In *Kraft*, however, the court did not redraft the statute in the conjunctive and conclude that "or" can be ignored.  To the contrary, relying on interpretations of Section 10(b) of the Securities Exchange Act of 1934, upon which 7 U.S.C. § 9(1) and 17 C.F.R.§ 180.1 are, in part, based, *Kraft* held that all causes of action under § 9(1) inherently must sound in fraud.  153 F. Supp. 3d at 1009.  Thus, quite the opposite of the holding in *Monex*, the *Kraft* court found that 7 U.S.C. § 9(1) establishes three separate and distinct prohibitions on fraud: "(1) the use of manipulative devices to defraud, (2) the use of schemes to defraud, and (3) the use of artifices to defraud."[5]  *Id.* at 1008.

*Third*, *Monex* erroneously relied on the headings in 7 U.S.C. § 9 to justify disregard of the statute's text.  *See Monex*, 2018 WL 2306863, at *8.  "[T]he heading of a section cannot limit the plain meaning of the text."  *Bhd. R.R. Trainmen v. Balt. & Ohio R.R.*, 331 U.S. 519, 529 (1947).  That the heading "fails to refer to all the matters which the framers of that section wrote into the text is not an unusual fact."  *Id.* at 528.  Nor does it authorize a court to "construe" a statute "in a way that negates its plain text."  *Honeycutt v. U.S.*, 137 S. Ct. 1626, 1635 n.2 (2017).  Thus, it was an error for *Monex* to glean support for its reading from 7 U.S.C. § 9's headings.

*Fourth*, the court improperly delved into the limited legislative history of 7 U.S.C. § 9(1) and arrived at an interpretation of that history that was mistaken.  *See Monex*, 2018 WL

---

[5] Although not at issue here, the Commission disagrees that a manipulation claim under 7 U.S.C. § 9(1) or 17 C.F.R. § 180.1(a) must be fraud-based.

2306863, at *9.  Where a statute, like 7 U.S.C. § 9(1), is unambiguous, "reference to legislative history is inappropriate." *Dep't of Hous*, 535 U.S. at 132.  Only a "conclusive statement in the legislative history" that Congress meant to deviate from the "ordinary understanding" of the text may justify disregarding the words of the statute. *Ardestani v. INS*, 502 U.S. 129, 136 (1991).  In any event, here nothing in the legislative history contradicts the text of 7 U.S.C. § 9(1), let alone is there a "conclusive statement."  *Monex* relied on statements by two Senators, despite the fact that legislators' speeches are "among the least illuminating forms of legislative history." *N.L.R.B. v. SW Gen., Inc.*, 137 S. Ct. 929, 943 (2017); *see also Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 457 (2002) ("Floor statements from two Senators cannot amend the clear and unambiguous language of the statute.").  Moreover, nothing in the speeches cited contradicts 7 U.S.C. § 9(1)'s text.  *Monex* merely observed that the Senators discussed manipulation and then wrongly concluded that their silence concerning fraud was dispositive.  *See* 2018 WL 2306863, at *9.  That is not the case.  *Dewsnup v. Timm*, 502 U.S. 410, 419-420 (1992) ("[W]here the language is unambiguous, silence in the legislative history cannot be controlling."); *U.S. v. Turkette*, 452 U.S. 576, 591 (1981) (declining to draw a "negative inference" from affirmative statements in legislative history).  Furthermore, the Senate sponsor of 7 U.S.C. § 9(1) stated in her floor speech that the statute borrows the words "manipulative or deceptive device or contrivance" from Section 10(b) of the Exchange Act (the well-known anti-fraud statute) so that "courts and the Commission [] interpret the new authority in a similar manner" and by reference to "the 75 years" of "case law [that] has developed around th[ose] words."  156 Cong. Rec. at S3348.

  *Finally*, *Monex* erred by stating that the court owes no deference to the Commission's interpretation of 7 U.S.C. § 9(1) and then cherry picking a single sentence from the

Commission's Regulation 180.1 adopting release and concluding that it supported the court's construction.   *See* 2018 WL 2306863, at *10.  This court has already recognized that courts generally defer to an agency's interpretation of a statute "that the agency is responsible for administering."  *McDonnell*, 287 F. Supp. 3d at 224 (quoting *Sierra Club, Inc. v. Leavitt*, 488 F.3d 904, 911-12 (11th Cir. 2007)).  Likewise, courts also defer to an agency's interpretation of its own regulation "unless plainly erroneous or inconsistent with th[at] regulation."  *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (internal quotation marks omitted).  With respect to Regulation 180.1, the Commission has stated consistently that it prohibits fraud.  This is repeated throughout the rule's adopting release,[6] including in the very sentence *Monex* cited, which confirms that Regulation 180.1 prohibits "fraud or manipulation" and warns that the Commission will prioritize, *inter alia*, wrongdoing that may negatively impact cash commodity markets and participants.  2018 WL 2306863, at *10 (quoting 76 Fed. Reg. at 41401).[7]

*     *     *

In sum, this Court has already examined 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a) and correctly concluded that they provide the Commission with anti-fraud enforcement authority to prosecute McDonnell's fraud.  *McDonnell*, 287 F. Supp. 3d at 229.  *Monex*'s myriad of errors make the decision unpersuasive, and it provides no grounds for reconsidering this Court's prior decision.

---

[6] *See, e.g.*, *Prohibition on the Employment, or Attempted Employment, of Manipulative and Deceptive Devices and Prohibition on Price Manipulation*, 76 Fed. Reg. 41398, 41398 (July 14, 2011) ("These rules broadly prohibit fraud and manipulation); *id.* ("fraud and fraud-based manipulative devices"); *id.* at 41399 ("fraud and fraud-based manipulative schemes"); *id.* at 4100 ("fraud and fraud-based manipulations"); *id.* at 41401 ("fraud or manipulation, or attempted fraud or manipulation"); *id.* ("all manner of fraud and manipulation); *id.* at 41404 ("all manipulative and deceptive conduct").

[7] *Monex* also failed to recognize that where a statute, such as 7 U.S.C. § 9(1), contains "an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation," the regulations are "given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Chevron*, 467 U.S. at 843-44.  Here, there is no assertion that 17 C.F.R. § 180.1's distinct prohibitions are arbitrary or capricious, and the disjunctive formulation of 17 C.F.R. § 180.1 aligns properly with the disjunctive statutory text.  17 C.F.R. § 180.1 should therefore be given controlling weight.

## II.  McDonnell's Subject-Matter and Personal Jurisdiction Arguments Should Be Rejected

In passing, McDonnell improperly frames his *Monex*–related arguments as raising issues of subject-matter and/or personal jurisdiction.  (*See, e.g.*, Mot. at 22.)  As to subject-matter jurisdiction, nothing in McDonnell's Motion nor the *Monex* decision provides any reason for altering the Court's prior, correct conclusion that it has subject-matter jurisdiction to hear this case under 28 U.S.C. §§ 1331 and 1345.  *McDonnell*, 287 F. Supp. 3d at 230.  As to personal jurisdiction, McDonnell has waived any argument long ago (*see* Fed. R. Civ. P. 12(h)(1)) and, in any event, McDonnell fails to cite any reason why this Court would lack personal jurisdiction.  The Court has already found that McDonnell is a Staten Island resident (*McDonnell*, 287 F. Supp. 3d at 232), and McDonnell was properly served at his residence on January 22, 2018.  (*See* ECF 7.)  For these reasons and the reasons stated in the Commission's Motion to Dismiss Opposition, McDonnell's Motion should be denied with respect to any relief pursuant to Rule 12(b)(1) or (2) of the Federal Rules of Civil Procedure.

---

**CONCLUSION**

For the foregoing reasons, the Commission respectfully requests that the Court deny McDonnell's motion for reconsideration.

Dated:  July 2, 2018

COMMODITY FUTURES TRADING
COMMISSION

By:  /s Alejandra de Urioste
Alejandra de Urioste (adeurioste@cftc.gov)
Gates S. Hurand (ghurand@cftc.gov)
David Oakland (doakland@cftc.gov)
K. Brent Tomer (ktomer@cftc.gov)
Manal M. Sultan (msultan@cftc.gov)
COMMODITY FUTURES TRADING
COMMISSION
DIVISION OF ENFORCEMENT
140 Broadway, 19th Floor
New York, NY 10005
Phone: (646) 746-9700
Fax: (646) 746-9940

*Attorneys for Plaintiff Commodity Futures
Trading Commission*