# Exhibit A

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION<br><br>Plaintiff,<br><br>v.<br><br>MONEX DEPOSIT COMPANY, MONEX CREDIT COMPANY, NEWPORT SERVICE CORPORATION, LOUIS CARABINI, and MICHAEL CARABINI,<br><br>Defendants. | Case No. 17-cv-06416<br><br>Hon. Sharon Johnson Coleman |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS COMPLAINT FOR FAILURE TO STATE A CLAIM

| **DENTONS US LLP** | **KOBRE & KIM LLP** |
|---|---|
| Stephen J. Senderowitz<br>Steven L. Merouse<br>Jacqueline A. Giannini | Michael S. Kim<br>Andrew C. Lourie<br>Matthew I. Menchel<br>Benjamin J.A. Sauter |
| 233 South Wacker Drive – Suite 5900<br>Chicago, Illinois 60606<br>+1 312 876 8000 | 111 W. Jackson Blvd. – 17th Floor<br>Chicago, Illinois 60604<br>+1 312 429 5100 |

*Attorneys for Defendants Monex Deposit Company,*
*Monex Credit Company, Newport Services Corporation,*
*Louis Carabini, and Michael Carabini*

October 3, 2017

TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................................ 1

RELEVANT BACKGROUND ........................................................................................................... 2

   A.  Regulatory Background ........................................................................................................ 2

   B.  Factual Background .............................................................................................................. 3

      1.  Monex's Atlas Account .................................................................................................. 3

      2.  The CFTC's Regulatory Allegations ............................................................................. 5

      3.  The CFTC's Fraud Allegations ...................................................................................... 5

      4.  The CFTC's Allegations Against The Individual Defendants .................................... 10

      5.  The CFTC's Requested Relief ..................................................................................... 10

ARGUMENT ..................................................................................................................................... 10

   A.  The CFTC Has Not Sufficiently Alleged A Claim For Fraud (Counts 2 and 3) ............... 11

      1.  The Website Statements Are Insufficient To Establish Fraud ..................................... 14

      2.  The Brochure Statements Are Insufficient To Establish Fraud ................................... 16

      3.  The Training Materials Are Insufficient to Establish Fraud ........................................ 17

      4.  The Statements To Five Monex Customers Are Insufficient ...................................... 19

   B.  The CFTC Has Failed To Plead That It Has Jurisdiction Over The Transactions At Issue (All Counts) ........................................................................................................... 20

      1.  "Actual Delivery" Occurs Upon Physical Transfer Of Metals To A Depository And Title Transfer To The Customer ................................................................................... 20

      2.  The CFTC Has Failed To Plead That The Transactions At Issue Fall Outside The Actual Delivery Exclusion ........................................................................................... 23

      3.  Jurisdictional Limitations Govern All Counts in the Complaint and Warrant Dismissal of the Complaint in its Entirety ...................................................................... 25

      4.  Defendants Lacked Fair Warning That Their Conduct Could Be Construed As Unlawful ........................................................................................................................ 27

   C.  The CFTC Has Failed To State A Claim For Controlling Person Liability ..................... 33

      1.  Counts 2 and 3 Should Be Dismissed as to the Individual Defendants ...................... 34

      2.  Counts 1 And 4 Should Be Dismissed As To The Individual Defendants ................. 35

CONCLUSION .................................................................................................................................. 36

the CFTC's position make sense. A customer may remove Monex's encumbrance and take physical possession (or leave his metal in storage) at any time simply by paying off the outstanding loan. Prior to that time, the interests of both the customer and the secured lender (Monex) are protected while the metals sit in something similar to escrow and any change in value belongs solely to the customer. It would be unmanageable to have the CFTC's jurisdiction hinge on whether a customer, in its sole discretion, decides to exercise the right to pay off the loan and move the metal to another location.

### 3. Jurisdictional Limitations Govern All Counts in the Complaint and Warrant Dismissal of the Complaint in its Entirety

The Actual Delivery Exclusion divests the CFTC of jurisdiction over *all* of the claims in the Complaint: The CFTC concedes in the Complaint that the Actual Delivery Exclusion applies to Counts 1, 2 and 4, *see* Compl. ¶ 17, and, for the reasons that follow, it applies to Count 3 as well.

Count 3 is governed by Section 6(c) of the CEA, which makes it unlawful to use or employ any manipulative or deceptive device or contrivance in connection with "a contract of sale of any commodity in interstate commerce." 7 U.S.C. § 9(1). Because this language could be construed to cover "any commodity," the CFTC will no doubt argue that it has broad jurisdiction to pursue this Count ***regardless*** of whether the Actual Delivery Exclusion is satisfied. The CFTC's interpretation is unprecedented and incorrect as a matter of law.

First, the Actual Delivery Exclusion falls under the section of the CEA that creates the CFTC and defines its jurisdiction. 7 U.S.C. § 2(a)(1) (titled "Jurisdiction of Commission.").

---

final version of [the] statute delete[d] language contained in an earlier draft, [the] court may presume that the earlier draft is inconsistent with ultimate congressional intention." *In re Town & Country Home Nursing Servs., Inc.*, 963 F.2d 1146, 1151 (9th Cir. 1991); *accord Jama v. Immigration & Customs Enforcement*, 543 U.S. 335, 341 (2005) ("We do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply.").

25

This section vests the CFTC with jurisdiction over certain types of transactions, "except to the extent otherwise provided in [. . .] subsections (c) and (f). *Id.* § 2(a)(1)(A). In turn, subsection (c) grants the CFTC jurisdiction over certain "leveraged or margined" retail commodity transactions, except as provided in the Actual Delivery Exclusion. *Id.* § (c)(2)(D)(i)(II), (c)(2)(D)(ii)(III)(aa). The ultimate effect is that the CFTC's jurisdictional mandate does not extend to leveraged transactions that fall within the Actual Delivery Exclusion. There is no exception to this framework for fraud claims asserted under CEA Section 6(c).

Second, this limitation on the CFTC's authority is supported by basic canons of statutory construction. The CFTC affirmatively argues that the specific jurisdictional provision governing retail commodity transactions applies to this case. (*See, e.g.*, Dkt. No. 1 ¶ 17.) The CFTC cannot circumvent this jurisdictional boundary simply by invoking a more general substantive prohibition. Reading these provisions together and as a whole dictates that the CFTC's jurisdictional mandate with respect to retail commodity transactions qualifies and limits its ability to enforce the substantive prohibition in CEA Section 6(c). *See RedLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 132 S. Ct. 2065, 2071 (2012) (recognizing principles of statutory construction dictate that "the specific governs the general"); *see also Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153 (1976) (finding that the more specific provisions of the National Bank Act prevailed over the broader, more generally applicable venue provisions of the Securities Exchange Act because "[w]here there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one"). Furthermore, a narrow reading of the CFTC's authority is supported in this case by another canon of statutory interpretation: the rule of lenity. *See, e.g.*, *United States v. Lanier*, 520 U.S. 259, 266 (1997) ("[T]he canon of strict

construction of criminal statutes, or the rule of lenity, ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered").

Third, the CFTC's expansive interpretation of its authority under Section 6(c) — that it has unlimited anti-fraud jurisdiction under CEA § 6(c)(1) irrespective of the Actual Delivery Exclusion and other limitations imposed in Section 2 — would lead to absurd and unintended results. In the CFTC's view, Section 6(c) provides it with roving anti-fraud jurisdiction over virtually the entire economy, regardless of whether a particular "commodity" transaction has any impact on the derivatives markets traditionally understood to be the CFTC's sole province. *See, e.g.*, 7 U.S.C. § 1a(9) (providing expansive definition of "commodity"). Such an unchecked interpretation of Section 6(c) would be unprecedented. *Cf. Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 455 (1989) ("Looking beyond the naked text for guidance is perfectly proper when the result it apparently decrees is difficult to fathom or where it seems inconsistent with Congress' intention").

Accordingly, the Actual Delivery Exclusion applies to all Counts and its applications warrants dismissal of the Complaint in its entirety.

### 4. Defendants Lacked Fair Warning That Their Conduct Could Be Construed As Unlawful

If the Court adopts the CFTC's new definition of actual delivery, the continued prosecution of the Defendants under this new, altered standard would violate their due process right to adequate warning of the legal consequences of their actions. As the Supreme Court has held, due process requires that "laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited." *Grayned v. City of Rockland*, 408 U.S. 104, 108 (1972); *see also Satellite Broad. Co. v. FCC*, 824 F.2d 1, 3 (D.C. Cir. 1987). Courts consistently vacate agency orders and dismiss complaints that are based on a "substantial change in [an]

27

enforcement policy that was not reasonably communicated to the public." *Upton v. SEC*, 75 F.3d 92, 98 (2d Cir. 1996) (vacating SEC's order because "there was substantial uncertainty in the Commission's interpretation of [the Rule, and the defendant] was not on reasonable notice that [the at-issue] conduct might violate the Rule"); *see also, e.g.*, *United States v. Chrysler Corp.*, 158 F.3d 1350, 1355-56 (D.C. Cir. 1998); *Kropp Forge Co. v. Sec. of Labor*, 657 F.2d 119, 122 (7th Cir. 1981).

In analyzing whether due process has been violated, courts must "review[] the regulations and other public statements issued by the agency" to determine whether "a regulated party acting in good faith would be able to identify, with 'ascertainable certainty,' the standards with which the agency expects parties to conform." *Gen. Elec. Co. v. U.S. E.P.A.*, 53 F.3d 1324, 1329 (D.C. Cir. 1995); *see also Stoller v. CFTC*, 834 F.2d 262, 265-67 (2d Cir. 1987). Here, a reasonable person acting in good faith would not view the CFTC's public statements regarding what constitutes actual delivery to require more than physical delivery of the metal purchased to a depository and title transfer to the customer — exactly what the CFTC has pled that Monex did.

First, as explained in detail above, the CFTC, in its Final Interpretation of the Actual Delivery Exclusion, stated that "[a]ctual delivery ***will have occurred*** if, within 28 days, the seller has: (1) Physically delivered the entire quantity of the commodity purchased by the buyer [. . .] into the possession of a depository other than the seller [. . .] and (2) has transferred title to that quantity of the commodity to the buyer." Retail Commodity Transactions Under Commodity Exch. Act, 78 Fed. Reg. at 52428 (emphasis added). The example is definitive and unqualified — "[a]ctual delivery will have occurred" — *not* actual delivery may occur or is likely to occur.

Second, the CFTC repeatedly adopted and reinforced this definition of actual delivery in its recent enforcement action against Worth Group, Inc. ("Worth") in *CFTC v. Worth Group,*

28

*Inc.*, No. 13-cv-80796 (S.D. Fla.) (filed on August 13, 2013). In that case, the CFTC alleged that Worth delivered metal by: (1) instructing the depository to move the metals from a master account in Worth's name to a subaccount in the customer's name; and (2) issuing to the customer a "Commodity Title Transfer Notice" that confirmed that title to the metal had been transferred. (Sauter Decl. Ex. C; Compl. ¶¶ 66-68, *CFTC v. Worth Group, Inc.*, No. 13-80796 (S.D. Fla. Aug. 13, 2013), ECF No. 1; *cf. id.* ¶ 53 (noting that, although metals were physically transferred to a depository and title was transferred to the customers, Worth retained the ability to liquidate customer accounts under certain circumstances).)[33] Unlike here, however, the CFTC in *Worth* did ***not*** claim that this method of delivery — physical delivery to a depository plus transferring title — failed to accomplish actual delivery. Rather, the complaint alleged that Worth simply "failed to make timely actual delivery to its financed customers because it [d]id not allocate sufficient metal to subaccounts at [the depository]" within twenty eight days. (*Id.* ¶ 74.) A reasonable observer of this complaint would have concluded in good faith that Worth's delivery process would have resulted in actual delivery.

Furthermore, over the course of the *Worth* action, the CFTC made or adopted numerous other statements confirming that Worth's delivery process was adequate:

*In connection with the appointment of the Worth corporate monitor agreed to by the parties in that case:* The parties in *Worth* agreed to the appointment of a corporate monitor, among other things, to "perform an assessment of Worth's current procedures and practices for actual delivery of precious metals to its retail customers." (Sauter Decl. Ex. D, Consent Order of Prelim. Inj. ¶ 4, *CFTC v. Worth Group, Inc.*, No. 13-80796 (S.D. Fla. Jan. 23, 2014), ECF No.

---

[33] The Court may take judicial notice of matters of public record, including public court documents, in determining the adequacy of a complaint under Rule 12(b)(6). *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

29

61.)  The monitor ultimately determined that "Worth's procedures [as outlined in the complaint] effectively accomplish the actual delivery of sufficient precious metals to fulfill end customer purchases on a timely basis and within the twenty-eight days required by the CEA," and that "Worth [wa]s complying and should be able to comply with the CEA on an ongoing basis with respect to its metals delivery obligations to its end customers." (Sauter Decl. Ex. E, Corporate Monitor's Report at 2, *CFTC v. Worth Group, Inc.*, No. 13-80796 (S.D. Fla. March 10, 2014), ECF No. 75.)  The CFTC never refuted or corrected these statements.

*In opposition to Worth's motion to dismiss:*  The CFTC had a section of its brief titled, "There is No Dispute in this Case Regarding the Meaning of 'Actual Delivery,'" in which it explained that there was nothing "violative with Worth's practice of making 'actual delivery' by physically delivering metal to a depository and allocating it into an account held in the customer's name." (Sauter Decl. Ex. F, CFTC Opp. to Defs.' Mot. to Dismiss at 16, *CFTC v. Worth Group, Inc.*, No. 13-80796 (S.D. Fla. Dec. 16, 2013), ECF No. 48.)

*In connection with its motion to amend:*  After Worth moved to have the monitor discharged, the CFTC moved to amend its complaint to plead, similar to its claims against Monex, that Worth's delivery method no longer accomplished actual delivery in light of the Eleventh Circuit's decision in *Hunter Wise*.  At oral argument on Worth's motion to discharge the monitor on, the CFTC engaged in the following exchange with the court:

THE COURT: Is the amended complaint based upon this new decision?

MR. CHU: That's correct, Your Honor.

THE COURT: So what you're saying is all of the rules have changed in the middle of this thing?

MR. CHU: Your Honor, yes, essentially the Eleventh Circuit decision which was rendered, yes.

30

(Sauter Decl. Ex. G, Oral Arg. Tr. at 24-25, *CFTC v. Worth Group, Inc.*, No. 13-80796 (S.D. Fla. Sept. 11, 2014), ECF No. 124.) In other words, the CFTC conceded that, in its view, the definition of actual delivery had "changed." As explained above, however, *Hunter Wise* did not, in fact, change the definition of actual delivery, and the CFTC had no basis therefore to change its view.

The district court in *Worth* ultimately denied the CFTC's motion to amend, finding, among other things, that "[t]he proposed amendment would violate the Defendants' constitutional rights to fair notice under Supreme Court precedent and would therefore be subject to dismissal." *CFTC v. Worth Group, Inc.*, No. 13-80796, 2014 WL 11350233, at *3 (S.D. Fla. Oct. 27, 2014). In effect, applying the CFTC's new theory of "actual delivery" would have meant that, regardless of Worth's allocation procedures and recordkeeping, each and every financed transaction would violate the CEA. Notably, after *Worth*, the CFTC did not issue new guidance changing or clarifying what it thinks "actual delivery" means. And, as set forth below, the CFTC's unsuccessful effort to amend in *Worth* does not constitute such guidance as a matter of law.

*In the final Consent Order of Permanent Injunction:* Despite its earlier articulation of its interpretation of *Hunter Wise* and how that case purported to change the definition of actual delivery, the CFTC again reversed course and entered into a consent order of preliminary injunction, pursuant to which Worth could continue its operations so long as it "actual[ly] deliver[ed] to the customer or the customer's depository" within twenty eight days. The Order stated that this would "bring [Worth's] business into compliance with the law of this Circuit regarding actual delivery as articulated in [*Hunter Wise*]." (Sauter Decl. Ex. H, Consent Order

31

of Permanent Inj. ¶¶ 28-29, *CFTC v. Worth Group, Inc.*, No. 13-80796 (S.D. Fla. Feb. 1, 2016), ECF No. 194.)

The relevant due process standard for purposes of this case is what a reasonable person, acting in good faith, would have understood actual delivery to mean in light of the above guidance and principles. In *Worth*, prior to the motion to amend, both the monitor and, more importantly, the court understood the CFTC's position to be that Worth's delivery method (which is, for all intents and purposes, identical to Monex's delivery method as pled in the Complaint) satisfied the requirements of actual delivery under the CEA.[34] As the court held, the CFTC cannot claim that anyone had "fair notice" of its new, "chang[ed]" interpretation of actual delivery, *Worth*, 2014 WL 11350233, at *3. Indeed, no new guidance was issued by the CFTC on this issue after *Worth*, and a reasonable person would expect there to be new guidance if the CFTC was making a change.

Furthermore, any argument by the CFTC that its unsuccessful attempt to amend the complaint in *Worth* provided fair warning is without merit. First, courts have held that an agency articulating a change in its interpretation of its regulations in a court filing ***does not*** provide fair warning or notice. *See, e.g., Gerstle v. Gamble-Skogmo, Inc.*, 478 F.2d 1281, 1294 & n.13 (2d Cir. 1973) (the circuit was "loath to impose huge liability" on the basis of a substantial modification of the SEC's position "by way of its *amicus* brief," finding that "the Commission should proceed by a rule or a statement of policy that would receive wider public attention than an amicus brief in a private suit"). This is particularly true when, as in *Worth*, the CFTC lost its motion. *See, e.g., United States v. Hoyts Cinemas Corp.*, 256 F. Supp. 2d 73, 91 (D. Mass. 2003)

---

[34] Both the court and the monitor came to the conclusion that this delivery method resulted in "actual delivery," despite the fact that Worth, similar to Monex, could (and did) liquidate a customer position if the equity in the account fell below a certain percentage. (*See* Sauter Decl. Ex. B; Dkt. No. 1 ¶ 53.)

32

(finding it "hard to consider the brief" in support of a motion that the government lost "as providing fair warning or 'notice'"), *vacated on other grounds*, 380 F.3d 558 (1st Cir. 2004). Second, any notice, however insufficient, that the failed motion may have provided to the public about the CFTC's new interpretation of actual delivery was nullified by the final Consent Order of Permanent Injunction, in which the CFTC reverted back to its original interpretation of actual delivery. To the extent the CFTC has decided to change its mind, yet again, on the appropriate definition of actual delivery, "the public may not be held accountable under this construction without some appropriate notice." *Stoller*, 834 F.2d at 267; *see also Satellite Broad. Co.*, 824 F.2d at 4 . ("The agency's interpretation is entitled to deference, but if it wishes to use that interpretation to cut off a party's right, it must give full notice of its interpretation.").

### C. The CFTC Has Failed To State A Claim For Controlling Person Liability

Aside from the CFTC's failure to allege an underlying CEA violation, the CFTC's claims against the Individual Defendants should be dismissed for the additional reason that they do not adequately allege controlling person liability.

The CFTC alleges that the Individual Defendants are personally liable under each count of the Complaint as "controlling persons." (*See* Dkt. No. 1 ¶¶ 77, 86, 92, 100.) To state a claim for controlling person liability under the CEA, the CFTC must allege facts showing "that the controlling person did not act in good faith or knowingly induced, directly or indirectly, the act or acts constituting the violation." 7 U.S.C. § 13c(b).[35] To meet this standard, the CFTC's allegations must show that the Individual Defendants acted "recklessly; negligence alone is insufficient." *Monieson v. CFTC*, 996 F.2d 852, 860 (7th Cir. 1993). Furthermore, because two

---

[35] The standards for controlling person liability under the CEA and the Exchange Act differ in an important respect. Unlike under the Exchange Act, it is the **CFTC's burden** to prove bad faith or knowing inducement under the express language of the CEA. 7 U.S.C. § 13c(b).

33