**Yale Law School**
## Yale Law School Legal Scholarship Repository

Faculty Scholarship Series                                    Yale Law School Faculty Scholarship

1-1-1961

# Sufficiency of the Evidence and Jury Control Devices Available Before Verdict

Fleming James Jr.

Follow this and additional works at: http://digitalcommons.law.yale.edu/fss_papers

 Part of the Law Commons

### Recommended Citation

Sufficiency of the Evidence and Jury Control Devices Available Before Verdict, 47 Va. L. Rev. 218 (1961)

This Article is brought to you for free and open access by the Yale Law School Faculty Scholarship at Yale Law School Legal Scholarship Repository. It has been accepted for inclusion in Faculty Scholarship Series by an authorized administrator of Yale Law School Legal Scholarship Repository. For more information, please contact julian.aiken@yale.edu.

# SUFFICIENCY OF THE EVIDENCE AND JURY-CONTROL DEVICES AVAILABLE BEFORE VERDICT†

*Fleming James, Jr.*\*

OVER the years, the courts have developed numerous devices for controlling the jury in the exercise of its traditional functions. This article will discuss several of the most important of these devices: first the concept of sufficiency of the evidence and then the closely related mechanisms available during the trial for implementing this concept.

## SUFFICIENCY OF THE EVIDENCE

The concept of sufficiency of the evidence is addressed to the court's function, not the jury's. The court will not submit a case to the jury unless it decides as an initial matter that the proponent has proven each of the propositions essential to his claim by *sufficient evidence* to justify or warrant a *finding in his favor upon it*. This requirement is obviously a corollary of the modern notion that juries must decide cases on the evidence put before them in court and may no longer rely on private knowledge unknown to the judge.[1]

The clearest case of insufficient evidence is presented where the proponent offers *literally no evidence at all* upon a proposition essential to his claim. But unless the requirement is to be a mockery it must go further than this; surely it should not be satisfied by calling a witness to testify simply that he saw the defendant in a negligence case at the scene of the accident, although such testimony might well have enough relevance to the issue to merit admissibility in evidence. It is a judicial

---

† This article will appear as part of a forthcoming text on procedure by Professor James, to be published by Little, Brown & Co. The author gratefully acknowledges the able assistance rendered by Stephen L. Dinces, third year student, Yale Law School.

\* Professor of Law, Yale Law School. B.A., 1925, LL.B., 1928, Yale University. Member, Connecticut Bar.

1. See 9 WIGMORE, EVIDENCE §§ 2487, 2494 (3d ed. 1940) [hereinafter cited as WIGMORE]. Much of what appears in the first part of this article parallels a former article wherein the author sought to treat some of the same problems in a different context. See James, *Proof of the Breach in Negligence Cases (Including Res Ipsa Loquitur)*, 37 VA. L. REV. 179 (1951).

legend that there once was a "scintilla rule" under which a verdict could be directed only when there was literally no evidence for proponent,[2] but if there ever was such a notion all that remains of it today is its universal repudiation.[3]

Before attempting to analyze the requirement of sufficiency of evidence, it will be well to give a very brief description of the kinds of evidence. In the final analysis all proof requires some process of inference, before it can be translated into an actual decision by the trier. We are accustomed, however, to divide proof into direct and circumstantial. When evidence of a fact is in the form of testimony by a purported observer of that fact, we call the evidence direct, as to that fact. And where that fact in turn is one of the propositions which a party is trying to establish as his side of an ultimate issue made by the pleadings in the case, or in any other way permitted by the relevant procedural rules, then the evidence is direct evidence in that case.[4] The only processes of inference involved have to do with the credibility (including accuracy of observation, memory, et cetera) of the witness and the accuracy of his means of communication. Where the thing itself, which is one of the facts in issue (such at the torn carpet that caused the accident, or the injured limb), is put before the trier for actual inspection we call the evidence "real evidence."[5] In all other cases proof is called circumstantial and will be seen to require further processes of inference. Typically it involves proof of fact *A*, which is not itself a fact in issue, as the basis of an inference of the existence of fact *B*, which is in issue. A word should also be said about what is called "demeanor evidence." This refers to what the trier may actually observe about the witnesses in the way of appearance, conduct, manner, and so on.[6] It may have great bearing on questions of credibility but affects the question of sufficiency at only two points as we shall see.

2. See 9 WIGMORE § 2494, at 296 n.11:
>    This phrase is mentioned, to be repudiated, in the 1800s: 1857, Toomey v. R. Co., 3 C.B. N.S. 146, 150; 1857, Wheelton v. Hardisty, 8 E. & B. 232, 262, 277; 1868, Ryder v. Wombell, L.R. 4 Exch. 32; but it is difficult to find any prior time when it was ever a recognized test in England.

3. See cases collected DEC. DIG. *Trial*, Key No. 139(1)(i); 9 WIGMORE § 2494 n.12; Smith, *The Power of the Judge To Direct a Verdict: Section 457-a of the New York Civil Practice Act*, 24 COLUM. L. REV. 111, 114 (1924).

4. 1 WIGMORE § 24.

5. *Ibid.* Another term is demonstrative evidence. See DEC. DIG., *Evidence*, Key Nos. 188-98.

6. See L. Hand, J., in Dyer v. MacDougall, 201 F.2d 265, 268-69 (2d Cir. 1952); 3 WIGMORE § 946.

Where there is direct testimony of the existence of a simple fact (*i.e.*, in the sense of someone's conduct or an item in the circumstances surrounding it),[7] such testimony is generally held in civil cases to satisfy the test of sufficiency—it will, as we say, justify or warrant a finding by the trier that the fact existed. The concept of sufficiency is not concerned with the question of whether the trier will in fact make such a finding; it has nothing to do with ordinary questions of credibility or the persuasive effect which evidence will actually have upon the mind of this particular jury or judge as trier of fact. It does not ordinarily matter therefore that the testimony of the fact may be contradicted or impeached.[8]

The statements in the last paragraph are subject to two qualifications. In the first place, courts do place outer bounds on credibility, and testimony which is ruled incredible as a matter of law will not be counted in determining sufficiency. If, for example, a witness' testimony is flatly contradicted by indisputable physical facts or laws of nature, it will be disregarded as not capable of belief by reasonable men.[9] Courts have it in their power to extend the notion of incredibility as a matter of law so as to contract the jury's function substantially. In fact, however, they have used this doctrine sparingly, and while it will be extended to an occasional extreme set of circumstances beyond the physical facts situation, the latter situation accounts for most of the occasions for its use. As one appellate court put it, perhaps overdramatically: "This court and the trial court must ordinarily accept as

---

7. Thayer defines the word fact—in the ordinary lay sense—"as indicating things, events, actions, conditions, as happening, existing, really taking place." THAYER, A PRELIMINARY TREATISE ON EVIDENCE AT THE COMMON LAW 191 (1898) [hereinafter cited as THAYER].

8. See Taylor v. Corkey, 142 Conn. 150, 111 A.2d 925 (1955); Twohey v. Brown, 246 Iowa 114, 66 N.W.2d 870 (1954); Alvey v. Bntchkavitz, 196 Va. 447, 84 S.E.2d 535 (1954); Olney v. Carmichael, 202 Md. 226, 96 A.2d 37 (1953); Rueger v. Hawks, 150 Neb. 834, 36 N.W.2d 236 (1949); Kircher v. Atchison, T. & S.F. Ry., 32 Cal. 2d 176, 195 P.2d 427 (1948).

> If the testimony of one witness . . . is legally sufficient, it matters not that this testimony may be contradicted by ten witnesses for defendant, or even that it may be in conflict with statements before the trial, or testimony in a previous trial or other legal proceeding, of the same witness.

Olney v. Carmichael, *supra* at 232, 96 A.2d at 39.

9. See, *e.g.*, Baltimore & O.R.R. v. State *ex rel.* Andrews, 190 Md. 227, 58 A.2d 243 (1948); Scott v. Hansen, 228 Iowa 37, 289 N.W. 710 (1940); Gianotta v. New York, N.H. & H.R.R., 98 Conn. 743, 120 Atl. 560 (1923); Louisville & N.R.R. v. Chambers, 165 Ky. 703, 178 S.W. 1041 (1915).

true the testimony even of a veritable Munchausen in the uttermost stretches of his imaginings." [10]

Direct testimony of a fact's existence may occasionally be regarded as insufficient to warrant a finding of that fact for another reason. In a few instances our law imposes an artificial requirement of corroboration, as in the case of treason[11] or perjury.[12] Such rules were once fairly common throughout our law, but today have almost disappeared from civil cases. A possible exception is found in cases where a passenger is injured by the jerk or jolt of a train or other conveyance. Some courts, for instance, hold that the severity of the jolt needed to show negligence is not sufficiently proven by testimony which simply describes the jolt as severe by appropriate adjectives; there must be corroboration, as by showing its effect on other passengers.[13]

The question of sufficiency of circumstantial evidence to prove a fact is more complex and subtle. It turns on the concept of legitimacy of the desired inference. If $A$ is shown, then the trier may infer $B$ from $A$ if, but only if, the inference is a rational one.[14] The test of rationality is usually expressed in terms of probabilities. Where from

10. Kuper v. Betzer, 115 F.2d 842, 844 (8th Cir. 1940); see Kircher v. Atchison, T. & S.F. Ry., 32 Cal. 2d 176, 195 P.2d 427 (1948); Lutzen v. Henry Jenkins Transp. Co., 133 Conn. 669, 54 A.2d 267 (1947). In the *Kircher* case a dissenting judge, at 188, 195 P.2d at 435, characterized the situation thus:

> To be expected to believe that the plaintiff could have stumbled over a shallow depression thirteen feet from the westerly rail of the track and been pitched forward and under the train on that track so that his hand was crushed on the easterly rail and his body not injured while under the moving train, taxes credulity to the breaking point.

In the *Lutzen* case the court held erroneous an instruction that plaintiff would be negligent as a matter of law if she walked into the side of a moving truck in broad daylight.

11. U.S. Const. art. III, § 3; see Haupt v. United States, 330 U.S. 631 (1947). Wigmore calls such requirements synthetic or quantitative rules. 7 Wigmore § 2030. See generally 7 Wigmore §§ 2030-75.

12. See Weiler v. United States, 323 U.S. 606 (1945); Annot., 156 A.L.R. 499 (1945); Annot., 111 A.L.R. 825 (1937).

13. See Seidenberg v. Eastern Mass. St. Ry., 266 Mass. 540, 165 N.E. 658 (1929); Norfolk & W. Ry. v. Rhodes, 109 Va. 176, 63 S.E. 445 (1909); Coyle v. Pittsburgh Rys., 149 Pa. Super. 281, 27 A.2d 533 (1942). *But see* Belledeau v. Connecticut Co., 110 Conn. 625, 149 Atl. 127 (1930).

The policy behind such a rule is protection against false claims which may be too easily fabricated. *Cf.* Cardozo, Ch. J., in Murphy v. Steeplechase Amusement Co., 250 N.Y. 479, 482, 166 N.E. 173, 174 (1929) ("He cannot help himself to a verdict . . . by the . . . facile comment that it threw him with a jerk.").

14. See 2 Harper & James, Torts § 19.4 (1956); James, *supra* note 1, at 185-93; *cf.* Western & Atl. R.R. v. Henderson, 279 U.S. 639 (1929).

*Virginia Law Review* [Vol. 47:218

the proven facts the nonexistence of the fact to be inferred appears to be just as probable as its existence (or more probable than its existence), then the conclusion that it exists is a matter of speculation, surmise, and conjecture, and a jury will not be allowed to draw it.[15] This test suggests mathematical precision, but the suggestion is spurious. For one thing, we lack the quantitative data about most matters which would be needed to make meaningful statements in terms of probabilities. Of course some broad generalizations would command general assent. These are the judgments of "common sense," but even they are fallible. How often the science of the morrow makes today's common sense look foolish! Moreover the area is vast wherein thoughtful men who accept today's common sense would either disagree or refuse to guess on which side of the line the greater probability lay.

Another flaw in the test as usually formulated lies in the possibility that courts may not mean it to be taken literally anyhow. One able court has said that it "may be an overstatement of the quantum of proof required . . . ."[16] Another, looking in the opposite direction declared that it is "not enough that mathematically the chances somewhat favor a proposition to be proved; for example . . . the fact that only a minority of men die of cancer [would not] warrant a finding that a particular man did not die of cancer."[17]

It appears then that the test, formulated in terms which suggest objective, scientific precision, is in fact one which gives the courts little guidance and great latitude. Even where expert evidence concerning probabilities is available it is seldom offered. Instead, courts are constantly asserting or assuming broad generalizations about human behavior and all sorts of other matters which either rest on their own very fallible notions about such things (which, since judges are human, often reflect veritable old wives' tales current in the culture of the community), or spring from considerations of policy and expediency.

In addition to the previously discussed general test for the sufficiency of circumstantial evidence, there is occasionally asserted a proscription against "building an inference on an inference."[18] No such test has ever been applied literally and uniformly, nor is there any rational

---

15. See Prosser, Torts 200 (2d ed. 1955); *cf.* Nash v. Raun, 149 F.2d 885, 888 (3d Cir.), *cert. denied*, 326 U.S. 758 (1945).

16. Gutierrez v. Public Serv. Interstate Transp. Co., 168 F.2d 678, 680 (2d Cir. 1948).

17. Sargent v. Massachusetts Acc. Co., 307 Mass. 246, 250, 29 N.E.2d 825, 827 (1940).

18. See 1 Wigmore § 41; Annot., 95 A.L.R. 162 (1935).

justification for it.[19] Few cases are tried where inference is not piled on inference two and three deep. A very simple and familiar example will suffice. A man flees the scene of a crime or tort. From his flight we may infer a consciousness of guilt; from the consciousness we may reason to the fact of guilt.[20] If the rule means simply that the jury will not be allowed to draw an inference from proof which does not point to it with sufficient probability, then its meaning is unobjectionable, but the form of the statement is unfortunate and misleading. It has sometimes been applied mechanically to preclude inferences that seem well within the realm of what is reasonable by any rational standard.[21] The rule should be repudiated outright and in its stead there should be used a statement such as the one recently made by a California court that: "In a civil case, if the first inference is a reasonably probable one it may be used as a basis for a succeeding inference." [22]

Another proscription often stated is that the disbelief of a denial does not warrant an inference that the denied fact existed. In one case, for example, where plaintiff had to prove that his decedent, climbing down the side of a freight car on a siding, was *actually seen* by the crew of an approaching train in time to sound warning, and where the fireman and engineer testified that they did not see him though they were keeping a proper lookout, the court held that a jury might not infer that decedent was seen from a disbelief of the engine crew's testimony.[23] The jury was not, of course, bound to have accepted the testimony as true, but its rejection opens up many possibilities which do not include the desired conclusion. The engineer and fireman may not have been looking out at all or they may have been talking or joking or distracted by something at the time. It may be argued therefore that the probability that the crew did see the decedent does not appear great enough to make the desired inference rational. This argument overlooks the possibility that demeanor evidence "may satisfy the tribunal, not only that the witness' testimony is not true, but that the truth is the

---

19. *Ibid.*

20. See Kotler v. Lalley, 112 Conn. 86, 151 Atl. 433 (1930); State v. Ford, 109 Conn. 490, 146 Atl. 828 (1929).

21. See cases collected in 1 WIGMORE § 41, at 434 n.2; 20 AM. JUR., *Evidence* §§ 164-65 (1939); Annot., 95 A.L.R. 162, 175 n.22 (1935).

22. Vaccarezza v. Sanguinetti, 71 Cal. App. 2d 687, 698, 163 P.2d 470, 477 (Dist. Ct. App. 1945); *cf.* Lemmon v. Paterson Constr. Co., 137 Conn. 158, 75 A.2d 385 (1950); Annot., 95 A.L.R. 181-96 (1935).

23. Cruzan v. New York C. & H.R.R., 227 Mass. 594, 116 N.E. 879 (1917); *appeal dismissed per stipulation*, 249 U.S. 621 (1918).

*Virginia Law Review* [Vol. 47:218

opposite of his story . . . ." [24] Moreover it often overlooks, as in the case put, the trier's right to accept part of a witness' testimony (*e.g.*, that he looked carefully and could see what was obvious) and reject part[25] (*e.g.*, that he failed to see a man clearly within the line of vision), and the trier's indubitable right to find a fact from circumstantial evidence over the denial of the person who alone has full knowledge of the fact.[26] Further, competing possibilities are often minimized or eliminated in specific circumstances. These considerations throw doubt on the case just described. Nevertheless the prevailing rule may be justified in some contexts since its alternative would enable an unscrupulous litigant to make *any* allegation about his adversary's conduct and get to the jury on the issue with nothing in the way of proof save the possibility that his adversary's denial may be disbelieved.[27]

So far the discussion has been confined to inferences of the existence of simple facts. As we have seen many ultimate issues in litigation involve also the evaluation or appraisal of simple facts in terms of their legal consequences, and this evaluation also falls within the jury's province. The issue of negligence in an accident case is a good example. When it is said that there is insufficient evidence to warrant a finding for the proponent on an issue which is complex or mixed in this way, the expression means that there are *no* facts which may legitimately be found from the evidence (direct, real, and circumstantial) which a jury will be allowed to evaluate as negligence, or the like.[28] Thus the concept of insufficiency has a double aspect when used in connection with such an issue. It may involve a lack of proof of what the facts were, so that evaluation is impossible. An example would be a decedent's

24. Dyer v. MacDougall, 201 F.2d 265, 269 (2d Cir. 1952).

25. See Pandolfo v. Acheson, 202 F.2d 38 (2d Cir. 1953); United States *ex rel.* Leong v. O'Rourke, 125 F. Supp. 769 (W.D. Mo. 1954); Foshee v. Wolters, 86 Cal. App. 2d 766, 195 P.2d 930 (Dist. Ct. App. 1948). *But cf.* Olney v. Carmichael, 202 Md. 226, 96 A.2d 37 (1953).

26. See Hamlin v. Roundy, 96 N.H. 123, 124, 71 A.2d 419, 420 (1950); Groves v. City of Webster City, 222 Iowa 849, 270 N.W. 329 (1936); Clark v. Boston & Me. R.R., 87 N.H. 36, 39, 173 Atl. 368, 370 (1934); *cf.* Gray v. Southern Pac. Co., 23 Cal. 2d 632, 145 P.2d 561 (1944).

27. The kind of situation found in Dyer v. MacDougall, 201 F.2d 265 (2d Cir. 1952), presents this possibility (although of course there is no reason whatever to suppose any lack of scruples on the part of plaintiff in that particular case). The reasoning of the court did not stress the point made in the text, but rather the impossibility of effective appellate review of any ruling based exclusively on demeanor evidence which could not be brought before the appellate court. See *id.* at 269.

28. See 2 Harper & James, Torts § 15.2, at 876-77 (1956).

conduct leading up to his unwitnessed death.[29] But evidence may also be called insufficient to show negligence, for instance, where all the relevant facts are fully known—even admitted—if the court is unwilling to let a jury characterize or evaluate those facts in the way which the proponent claims and needs.[30]

The next question is what evidence is to be considered in determining sufficiency? The answer is that part of the reasonably credible evidence most favorable to the proponent. The concept of sufficiency is not primarily concerned with credibility, nor with the choice among competing permissible inferences;[31] it is addressed to the court's function, while credibility and persuasive effect are matters for the jury. This means that all conflicts in the evidence are to be resolved against the party who challenges the sufficiency of the evidence and this includes conflicts and contradictions within a witness' or a party's own testimony.[32] And the proponent—such a challenge is always made *against* a party having the production burden—is entitled to the most favorable of competing rational inferences and to have inferences drawn from the most favorable findings.[33] It is the court's "function to determine whether the evidence in its entirety would rationally support a verdict for the plaintiff, assuming that the jury took, as it would be entitled to take, a view of the evidence most favorable to the plaintiff." [34]

While this test resolves conflicts in the evidence in favor of the proponent and therefore disregards that part of the evidence which favors the opponent's side of those conflicts, this does not mean that *all* conflicts are to be so resolved, or that *all* evidence unfavorable to the proponent is to be disregarded. As we have seen, courts will not let credit be given

29. See Kotler v. Lalley, 112 Conn. 86, 151 Atl. 433 (1930).

30. See, *e.g.*, Kimbar v. Estis, 1 N.Y.2d 399, 135 N.E.2d 708 (1956) (failure of boy's camp to light paths in woods at night); Goldberger v. David Roberts Corp., 139 Conn. 629, 96 A.2d 309 (1953) (furnishing young boy with paddle); McDonald v. Fryberger, 233 Minn. 156, 46 N.W.2d 260 (1951) (leaving ordinary kitchen cabinet unfastened to wall); HOLMES, THE COMMON LAW 120-21 (1881).

31. See note 8 *supra*.

32. See Zullo v. Zullo, 138 Conn. 712, 89 A.2d 216 (1952); Connors v. Richards, 230 Mass. 436, 119 N.E. 831 (1918); cases cited note 25 *supra*; *cf.* Albaugh v. Pennsylvania R.R., 120 F. Supp. 70 (D.D.C. 1954), *aff'd*, 219 F.2d 764 (D.C. Cir. 1955); cases cited note 9 *supra*.

33. See, *e.g.*, Wilkerson v. McCarthy, 336 U.S. 53 (1949); Szukics v. Ruch, 367 Pa. 646, 81 A.2d 903 (1951); Lemieux v. Leonard Constr. Co., 73 R.I. 338, 58 A.2d 625 (1947); McDonald v. Metropolitan St. Ry., 167 N.Y. 66, 60 N.E. 282 (1901); Gostin v. Scott, 80 Ga. App. 630, 56 S.E.2d 778 (1949).

34. Wilkerson v. McCarthy, *supra* note 33, at 65 (Frankfurter, J., concurring).

*Virginia Law Review* [Vol. 47:218]

to testimony which is flatly contradicted by indisputable physical facts or laws of nature.[35] And that part of the evidence which demonstrates such contradiction (such as that which shows beyond doubt what view a highway traveler would have looking down the tracks as he approached a railway crossing on a clear day) is *not* to be disregarded.[36] While credibility is for the jury, courts set the outer limits of it. In doing so they have the power to make serious inroads into the *jury's* sphere, but in fact they have exercised this power with marked restraint.[37]

The question of credibility is sometimes raised in an entirely different way by a motion to direct a verdict. Where the proponent, having also the persuasion burden, offers testimonial evidence which strongly supports his side of the case and the opponent fails to shake it on cross-examination and offers no countervailing evidence, the proponent may move for a directed verdict. If at this point no presumption operates in the proponent's favor the question may arise whether the jury may reasonably *disbelieve* his evidence. This is not usually described as a problem of the sufficiency of evidence, but it has much in common with that concept, for in the last analysis it comes down to a question whether "demeanor evidence" may be sufficient to warrant rejection of an otherwise uncontradicted and unimpeached statement. A few states answer the question in the affirmative and hold that a directed verdict must be denied for that reason.[38] However the prevailing view regards the clear, uncontradicted, self-consistent, and unimpeached testimony of even interested witnesses as sufficient basis for a directed verdict in favor of the party having the persuasion burden as well as the initial production burden.[39] This amounts to a holding that reasonable men

---

35. See note 9 *supra* and accompanying text.

36. See note 9 *supra*. In Gianotta v. New York, N.H. & H.R.R., 98 Conn. 743, 120 Atl. 560 (1923), the evidence showing the indisputable physical facts was introduced by defendant. Similarly, much of it was also introduced by defendant in Piscitello v. New York, N.H. & H.R.R., 116 Conn. 638, 166 Atl. 61 (1933), in which the court upheld a directed verdict for defendant.

37. 2. HARPER & JAMES, TORTS § 15.2, at 877 (1956); see note 10 *supra*.

38. Alexander v. Tingle, 181 Md. 464, 30 A.2d 737 (1943); Woodin v. Durfee, 46 Mich. 424, 9 N.W. 457 (1881); Smith, *supra* note 3, at 121 n.47; Sunderland, *Directing a Verdict for the Party Having the Burden of Proof*, 11 MICH. L. REV. 198 (1913); see 9 WIGMORE § 2495.

39. The cases are reviewed in an excellent opinion by Vanderbilt, C.J., in Ferdinand v. Agricultural Ins. Co., 22 N.J. 482, 126 A.2d 323 (1956). See also 9 WIGMORE § 2495; Sunderland, *supra* note 38; Annot., 62 A.L.R.2d 1191 (1958).

In the *Ferdinand* case the court held the direction of a verdict for plaintiff to be

could not disbelieve such testimony on the basis of demeanor evidence.[40]

The sufficiency of the evidence is to be contrasted with the weight of the evidence. The latter term is usually used to refer to the jury's function and of course the jury is concerned with the weight of evidence at least in the sense of its persuasive effect on their own minds. This includes questions of credibility and choice among competing inferences in the particular case before them. There is also another, more objective sense in which the term weight of the evidence (or clear weight of the evidence) is used. In many jurisdictions a trial court has wide discretion to order a new trial where it believes the verdict to be against the "weight" or "clear weight" of the evidence. In exercising this discretion courts make some appraisal of credibility—more than they are permitted on a challenge to the sufficiency of the evidence, but less than the jury is permitted in making its own rather subjective judgment. Obviously this test is even more vague and more dependent on imponderable factors than is the test of what is not reasonably credible as matter of law. It must necessarily be addressed largely to judicial discretion.[41]

### Pre-Verdict Devices for Controlling the Jury

Having examined the concept of sufficiency of the evidence we shall proceed to consider the various devices available during the trial for implementing this concept and also for limiting the sphere of what the jury may and should consider in those cases in which one or more

improper, but stated the general rule at 494, 126 A.2d at 329-30, thus:

> Where men of reason and fairness may entertain differing views as to the truth of testimony, whether it be uncontradicted, uncontroverted or even undisputed, evidence of such a character is for the jury. . . . But when the testimony of witnesses, interested in the event or otherwise, is clear and convincing, not incredible in the light of general knowledge and common experience, not extraordinary, not contradicted in any way by witnesses or circumstances, and so plain and complete that disbelief of the story could not reasonably arise in the rational process of an ordinarily intelligent mind, then a question has been presented for the court to decide and not the jury.

40. Or perhaps to a judgment that the chance that a rational verdict will be based on demeanor evidence in such a case, though theoretically possible, is "to the last degree rare," and therefore should be disregarded because of the disadvantages entailed in recognizing it (*e.g.,* the fact that demeanor evidence cannot be preserved in the record or recaptured on appeal). *Cf.* L. Hand, J., in *Dyer v. MacDougall*, 201 F.2d 265, 269 (2d Cir. 1952). The *Dyer* case involved an attempt to urge an inference of a fact's existence from disbelief of a denial of its existence. That problem will be seen to raise some of the questions presented here.

41. See note 67 *infra* and accompanying text; McBaine, *Trial Practice: Directed Verdicts; Federal Rule,* 31 Calif. L. Rev. 454 (1943).

issues are to be submitted to them. These are the mechanical devices, so to speak, for the court's control of the jury. In reviewing them we shall always try to be mindful of their relationship to the concepts which they are designed to serve, and their relationship to each other.

## A.  *Admission and Exclusion of Evidence*

Courts do, of course, exercise control over the jury by deciding what evidence they may hear. The bases for the rules admitting or excluding evidence are related, for the most part, to legal concepts other than the ones we are discussing—concepts usually treated under the heading of evidence rather than under the present heading. It should, however, be noted here that evidence which is excluded on objection or struck out on later motion is not counted in measuring the sufficiency of evidence.[42] Evidence which is erroneously admitted over objection will no doubt be counted by the trial judge, but if he changes his mind he may thereafter disregard it on a later motion to take the case from a jury,[43] or he may grant a new trial because of his error.[44] If the erroneous ruling, admitting evidence over objection, is properly saved for review on appeal, a reversal and new trial may result.[45]

There remains at this point the question of how evidence is to be counted in testing sufficiency, where it has been admitted without objection[46] but would have been excluded if objection had been made.

---

42. See Abramowitz v. Abramowitz, 137 N.Y.S.2d 442 (Sup. Ct. 1954). If the ruling is erroneous and is properly saved for review on motion for new trial or on appeal, it may bring about a new trial.

43. See Jacksonville Paper Co. v. Hartford Acc. & Indem. Co., 260 Ala. 132, 69 So. 2d 411 (1953).

44. See cases collected in Dec. Dig., *New Trial*, Key No. 35.

45. See, *e.g.*, Dairy & Ice Cream Supply Co. v. Gastonia Ice Cream Co., 232 N.C. 684, 61 S.E.2d 895 (1950); Niedner v. Wabash R.R., 219 S.W.2d 886 (Mo. Ct. App. 1949).
Even if the improperly admitted evidence was the only evidence to support an essential element in plaintiff's case, the disposition should generally be a new trial rather than a judgment for defendant since "but for the court's ruling plaintiff might have offered other proof." Dairy & Ice Cream Supply Co. v. Gastonia Ice Cream Co., *supra* at 686, 61 S.E.2d at 897. *But cf.* Williams v. New Amsterdam Cas. Co., 136 Colo. 458, 319 P.2d 1078 (1957) (where trial court reversed finding of Industrial Accident Commission on basis of evidence erroneously received over objection, held award of Commission reinstated).

46. Or, rather, without *proper* objection. If the objection is not made on the proper ground, it does not count. Thus relevant but inadmissible hearsay evidence, admitted over an objection that it is "incompetent, irrelevant and immaterial," will be treated as though it came in without objection. See *In re* Estate of Fagin, 246 Iowa

The answer to the question turns in part on the ground upon which the evidence would have been excluded. If it is irrelevant to the issues in the case, this means that it has no logical probative value and is not entitled to consideration.[47] If, however, the evidence is relevant and the proper objection would be based on one of the exclusionary rules, the answer may be different. Some of the exclusionary rules are based on considerations which have nothing to do with the logical probative value of the evidence they exclude.[48] If such evidence comes in without objection there seems to be no valid reason for a reluctance to consider it for whatever it is worth. Evidence which is sufficient to prove a fact under the ordinary canons of logical reasoning and relevancy should not be shorn of that effect simply because it would have been excluded as privileged had the privilege been claimed.[49]

Greater difficulty comes when the rule of exclusion includes some considerations which involve the probative value of the evidence. An example is the hearsay rule, and most of the apposite judicial decisions concern relevant but inadmissible hearsay evidence which was admitted without objection. Where *W*'s testimony of what *X* said is offered to show that what *X* said is true ("to prove the truth of the matter asserted in such statement," as the classic phrase has it), then the trier is asked to put faith in *X*'s veracity (used in the broad sense to include accuracy of observation, memory, expression, et cetera, as well as honesty) although the adversary has no chance to cross-examine *X* and the trier no chance to observe *X*'s demeanor either in making the statement or under cross-examination upon it. The hearsay rule rests upon a faith in cross-examination to elicit flaws and defects in the

---

496, 66 N.W.2d 920 (1954); Keim v. D. B. Berelson & Co., 105 Cal. App. 2d 154, 233 P.2d 123 (Dist. Ct. App. 1951).

47. Thus if the parol evidence rule is regarded as a rule of substantive law which renders parol evidence irrelevant once the agreement has become integrated in a writing, the effect of this view will be to exclude consideration of parol evidence though admitted without objection. See Foster v. Wagner, 337 S.W.2d 485, 492 (Tex. Civ. App. 1960); Cooper v. Vaughan, 81 Ga. App. 330, 58 S.E.2d 453 (1950); El Zarape Tortilla Factory, Inc. v. Plant Food Corp., 90 Cal. App. 2d 336, 203 P.2d 13 (Dist. Ct. App. 1949).

48. 8 WIGMORE § 2175.

49. See, *e.g.*, Stalder v. Stone, 412 Ill. 488, 107 N.E.2d 696 (1952) (adoption proceeding; grounds for adoption shown by affidavit of natural mother reciting her criminal conduct without claim of privilege); Adams v. State, 200 Md. 133, 88 A.2d 556 (1952) (abortion proven by testimony of women upon whom practiced); State v. Desilets, 96 N.H. 245, 73 A.2d 800 (1950) (lascivious acts shown by testimony of accomplice); Burris v. Burris, 75 A.2d 514 (Del. Super. Ct. 1950) (action for divorce; affirmative defense of adultery shown by admissions of plaintiff on cross examination).

character and powers of the witness and in the statement itself, and qualifying circumstances which the probing of cross-examination may reveal and which would put the statement in a different light.[50] The exclusion of hearsay, then, rests in large part upon the lack of guaranty of trustworthiness of extrajudicial statements made without the opportunity to cross-examine. The question is whether this lack is so serious that hearsay statements should not be sufficient basis for finding the fact asserted in such statement where it has been admitted in evidence without objection.

Some courts, perhaps a majority, have taken the broad position that relevant evidence, inadmissible under the hearsay or some other exclusionary rule but admitted without objection, is in the case for all purposes and that its weight is for the trier of facts.[51] Others, a small minority, have declared flatly that inadmissible hearsay has no probative value and will not support a finding even though admitted without objection.[52]

Perhaps both views are too broad and uncritical. It is submitted that no single answer should cover all hearsay statements. Not all hearsay is equally untrustworthy, nor is it all of the same quality. Hearsay ranges all the way from business records upon which practical men would rely in lending large sums of money to idle village gossip which

---

50. See Morgan, Some Problems of Proof Under the Anglo-American System of Litigation 106-41 (1956) [hereinafter cited as Morgan]; 5 Wigmore §§ 1360-65.

51. See, *e.g.*, Pataskas v. Judeikis, 327 Mass. 258, 98 N.E.2d 265 (1951) (authentication of handwriting by witness not shown to have familiarity; case turned on the authorship of these letters and there was no other authentication); Stickel v. San Diego Elec. Ry., 32 Cal. 2d 157, 195 P.2d 416 (1948) (conclusion of witness that decedent "must have seen" the bus "because she tried to step on the gas"); Crampton v. Osborn, 356 Mo. 125, 201 S.W.2d 336 (1947) (inadmissible hearsay, admitted without objection, to be given "its natural probative effect"); Ventromile v. Malden Elec. Co., 317 Mass. 132, 57 N.E.2d 209 (1944) (only evidence to show at trial that plaintiff slipped on wax was plaintiff's testimony that she had so stated on prior occasion; held sufficient); Barlow v. Verrill, 88 N.H. 25, 183 Atl. 857 (1936) (verdict supported by inadmissible hearsay); Clark v. Reynolds, 125 Va. 626, 100 S.E. 468 (1919) (*semble*); Swegle v. State Bd. of Equalization, 125 Cal. App. 2d 432, 436-37, 270 P.2d 518, 521 (Dist. Ct. App. 1954) ("In ordinary civil actions incompetent evidence admitted without objection is sufficient to support a finding.").
There is an excellent collection of cases together with critical comment in Annot., 104 A.L.R. 1130 (1936). See also 20 Am. Jur. *Evidence* §§ 1185, 1195 (1939).

52. See Burgess v. Small, 151 Me. 271, 117 A.2d 344 (1955); Knox Metal Prods., Inc. v. Watson, 100 Ga. App. 832, 112 S.E.2d 295 (1959); Wright v. Dabbs, 220 S.W.2d 681, 685 (Tex. Civ. App. 1949). See generally 32 C.J.S. *Evidence* § 1034 (1942). Maine has changed her position. See note 53 *infra*.

responsible people would at once dismiss as worthless.[53] The law of hearsay itself recognizes this diversity and has developed the famous exceptions to the hearsay rule in part, at least, because of the guaranties of trustworthiness found in some types of situations.[54] And wherever evidence is admitted, though hearsay, under one of the recognized exceptions to the exclusionary rule, it of course is counted in reckoning sufficiency.[55] But the exceptions do not by any means include all the hearsay that men of affairs consider reliable; the field of inadmissible hearsay today still covers a wide range.[56] It is not surprising, therefore, to find that some courts will uphold a finding based on hearsay evidence which has been admitted without objection if it is the kind upon which responsible men would base practical judgments; and not otherwise.[57] The test should be an elastic one as a number of courts have concluded in recent, thoughtful opinions.[58]

---

53. See the admirable analyses in Goldthwaite v. Sheraton Restaurant, 154 Me. 214, 145 A.2d 362 (1958); MORGAN 106-95. See also James, Book Review, 66 YALE L.J. 160 (1956).

In his last chapter, Professor Morgan shows how the present rules will often exclude evidence which the intelligent and responsible layman would consider worthy of consideration, yet will often admit evidence which most of us would consider almost worthless. MORGAN 169-95.

54. In 5 WIGMORE §§ 1420-22, Professor Wigmore states what he considers the general principles underlying the hearsay exceptions (necessity and circumstantial probability of trustworthiness); while in § 1425 he states his intention to take up the application of these principles to each exception, and the succeeding chapters contain the attempts to follow up this intention.

*But see* MORGAN 167-68:

> An examination of the cases, however, shows no guaranty which would be even a weak substitute for cross-examination and in many instances the so-called substitute for the oath is merely an absence of a motive to falsify, not a stimulus to tell the truth.

55. See Crawley v. Selby, 208 Ga. 530, 67 S.E.2d 775 (1951).

56. See MORGAN 169-95; James, Book Review, 66 YALE L.J. 160 (1956).

57. See the careful appraisals in Goldthwaite v. Sheraton Restaurant, 154 Me. 214, 145 A.2d 362 (1958); *In re* Estate of Fagin, 246 Iowa 496, 66 N.W.2d 920 (1954); Shepard v. Purvine, 196 Ore. 348, 248 P.2d 352 (1952).

Compare the similar problem of whether administrative findings may ever be supported by hearsay evidence, and if so, under what circumstances. See, *e.g.*, Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229-30 (1938); NLRB v. Englander Co., 260 F.2d 67, 72 (9th Cir. 1958); Thompson v. County School Bd., 166 F. Supp. 529 (E.D. Va. 1958), *aff'd sub nom.* Hamm v. County School Bd., 263 F.2d 226 (4th Cir. 1959); Ferguson-Steere Motor Co. v. State Corp. Comm'n, 63 N.M. 137, 314 P.2d 894 (1957); Swegle v. State Bd. of Equalization, 125 Cal. App. 2d 432, 270 P.2d 518 (Dist. Ct. App. 1954); Derrick v. Board of Liquor Control, 98 Ohio App. 97, 128 N.E.2d 239 (1954); 1 WIGMORE §§ 4a-c.

58. See cases cited first paragraph of note *57 supra.*

*Virginia Law Review*

## B. *Nonsuit, Directed Verdict, and Dismissal*

All of these devices invoke the concept of the sufficiency of the evidence.[59] There has been some controversy over the questions of whether credibility may be considered on some or all of these motions and whether a judge may properly direct a verdict wherever he would set aside an opposite one.[60] There may, to be sure, be some shadings in the application of the sufficiency test for the different devices, and among different jurisdictions. And there may once have been wider variations in the test applied. But by and large the sufficiency test as described above is used pretty uniformly in this country when any of these devices is invoked,[61] and the doctrinal differences referred to are

---

59. For comprehensive reviews of these various devices, see Galloway v. United States, 319 U.S. 372 (1943); Thoe v. Chicago, M. & St. P.R.R., 181 Wis. 456, 195 N.W. 407 (1923); Hopkins v. Railroad, 96 Tenn. 409, 34 S.W. 1029 (1896).

The original common law device was the demurrer to the evidence, a phrase still used in some states. These devices have different procedural incidents but they all have this in common, that they test the legal sufficiency of the evidence.

Where the complaint fails to state a cause of action or claim for relief, but no demurrer or motion to dismiss the complaint was filed in the pleading stage, the question arises whether, upon a motion at the trial for nonsuit or directed verdict, the sufficiency of the evidence is to be tested by the allegations which the complaint does contain or by those which it ought to contain. This question is primarily one of waiver of defenses. Courts take divergent views upon it. See, *e.g.*, Buchanan v. Heath, 210 Ga. 410, 80 S.E.2d 393 (1954); Carlson v. Bankers Trust Co., 242 Iowa 1207, 50 N.W.2d 1 (1951); Coleman v. Whisnant, 226 N.C. 258, 37 S.E.2d 693 (1946); Harbin v. Hunt, 151 Ga. 60, 105 S.E.2d 842 (1921); Bradford v. City of Commerce, 91 Ga. App. 581, 86 S.E.2d 645 (1955); Note, 18 Ga. B.J. 498 (1956); Note, 2 Drake L. Rev. 18 (1952).

60. See, *e.g.*, Blum v. Fresh Grown Preserve Corp., 292 N.Y. 241, 54 N.E.2d 809 (1944); Bank of United States v. Manheim, 264 N.Y. 45, 189 N.E. 776 (1934); McDonald v. Metropolitan St. Ry., 167 N.Y. 66, 60 N.E. 282 (1901); Brizius, *Directed Verdicts on Uncontradicted Testimony*, Trial Law. Guide, Nov. 1959, p. 87; McBaine, *Trial Practice: Directed Verdicts; Federal Rule*, 31 Calif. L. Rev. 454 (1943); Smith, *The Power of the Judge To Direct a Verdict: Section 457-a of the New York Civil Practice Act*, 24 Colum. L. Rev. 111 (1924); Note, *The Motion for a Directed Verdict in Indiana: An Evaluation of Present Standards*, 32 Ind. L.J. 238 (1957).

61. See Kingston v. McGrath, 232 F.2d 495 (9th Cir. 1956) (same test in *jury* case whether dismissal or directed verdict sought); Julien v. Barker, 75 Idaho 413, 272 P.2d 718 (1954) (nonsuit); Cooke v. Townley, 265 P.2d 1108 (Okla. 1954) (demurrer to evidence or directed verdict); City of Lake Mills v. Veldhuizen, 263 Wis. 49, 56 N.W.2d 491 (1953) (nonsuit); McLeod v. Andrew Murphy & Son, Inc., 155 Neb. 318, 51 N.W.2d 620 (1952) (peremptory instruction or nonsuit); Peterson v. Bober, 79 N.D. 300, 56 N.W.2d 331 (1952) (directed verdict and dismissal); Lea v. Bridgeman, 228 N.C. 565, 46 S.E.2d 555 (1948) (nonsuit, prayer for instructions, or objection to submission of issues); Schiff v. Oak Park Cleaners & Dyers, Inc., 9 Ill. App. 2d 1, 132 N.E.2d 416 (1955) (directed verdict or judgment n.o.v.); Copeland v. Rabing, 110 Cal. App. 2d 631, 243 P.2d 119 (Dist. Ct. App. 1952) (nonsuit); cases cited note

largely battles of words.[62]

So far as credibility goes, *all* courts consider it on a motion for directed verdict to the minimum degree of determining whether testimony is capable of belief by reasonable men or is incredible as a matter of law. No court will let a jury base a verdict on testimony which is flatly contradicted by indisputable physical facts or laws of nature,[63] and few, if any courts are willing to go much further than that on such a motion.[64] The real differences, for the most part, are in the willingness to find contradiction with physical facts or some other basis for declaring evidence incredible as matter of law.[65] Even here there is today a fairly uniform reluctance to go very far in taking matters of credibility from the jury.[66] The apparent differences lie in nomenclature. Some courts call the problem described in this paragraph one of credibility, others do not.

As for equating the test for directing a verdict to that for setting aside a verdict and granting a new trial, the matter is complicated by the wide range among the tests used in different jurisdictions for setting a verdict aside. These will not be examined in this article, and it suffices here to point out two things: (1) the equation is more nearly valid in some jurisdictions than it is in others, but the differences are rather because of variations in the new trial test than because of any

---

*59 supra.*

In a case tried to the court without a jury some jurisdictions permit the judge to weigh the evidence and make findings of fact upon a motion for dismissal at the close of plaintiff's case. FED. R. CIV. P. 41(b); Steffen, *The Prima Facie Case in Non-Jury Trials,* 27 U. CHI. L. REV. 94 (1959).

62. See Note, *The Motion for a Directed Verdict in Indiana: An Evaluation of Present Standards,* 32 IND. L.J. 238 (1957), for an excellent treatment of this problem.

63. See Lohmann v. Wabash R.R., 364 Mo. 910, 269 S.W.2d 885 (1954); Cameron v. Goree, 182 Ore. 581, 189 P.2d 596 (1948); Cincinnati, N. & C. Ry. v. Johnson, 281 Ky. 565, 136 S.W.2d 769 (1940); Morris v. Chicago, M. & St. P.R.R., 1 Wash. 2d 587, 97 P.2d 119 (1939), *aff'd per curiam on rehearing,* 100 P.2d 19 (1940); Gianotta v. New York, N.H. & H.R.R., 98 Conn. 743, 120 Atl. 560 (1923).

64. See Wilkerson v. McCarthy, 336 U.S. 53 (1949); Gunning v. Cooley, 281 U.S. 90 (1930); Jarman v. Philadelphia-Detroit Lines, 131 F.2d 728 (4th Cir. 1942); Kostial v. Aero Mayflower Transit Co., 119 Ind. App. 377, 85 N.E.2d 644 (1949); cases cited note 10 *supra; cf.* Allis Chalmers Mfg. Co. v. Wichman, 220 F.2d 426 (8th Cir.), *cert. denied,* 350 U.S. 835 (1955); Kansas City Pub. Serv. Co. v. Shephard, 184 F.2d 945 (10th Cir. 1950); Young v. Kansas City Pub. Serv. Co., 156 Kan. 624, 135 P.2d 551 (1943).

65. *Compare, e.g.,* Pennsylvania R.R. v. Chamberlain, 288 U.S. 333 (1933), *with* Wilkerson v. McCarthy, *supra* note 64.

66. See cases cited notes 10 64 *supra.* See generally 2 HARPER & JAMES, TORTS §§ 15.2, 19.2 (1956).

variation in the directed verdict test.[67] (2) One formulation of the equation is that a verdict should be directed where "it would be the duty of the court to set aside [a contrary] verdict and grant a new trial." [68] If "duty" refers to that which would be sanctioned by reversal on appeal (rather than only by the judge's inner sense of moral duty) then the equation is largely true but adds nothing, since this duty would exist only where the evidence to support the verdict was *insufficient* in law.[69]

The motions for nonsuit, directed verdict, or dismissal test not only the factual aspect but also the evaluative aspect of the concept of sufficiency.[70] Here greater differences are probably found in the availability of one of these motions than in the matter of credibility. There has been a school of thought (Holmes was its leading mentor) which would have the courts increasingly particularize the rules or

---

67. In general there are three different rules or tests for setting aside a verdict as against the weight of the evidence in the various jurisdictions:

(1) In some states the trial court has a genuine and well-nigh unfettered discretion which will not be deemed abused "where there is any evidence which would support a judgment in favor of the moving party," and is in effect invited to act as a thirteenth juror. See Hawk v. City of Newport Beach, 46 Cal. 2d 213, 219, 293 P.2d 48, 51 (1956); Cavallaro v. Sharp, 84 R.I. 67, 121 A.2d 669 (1956); Oklahoma City v. Drinkwater, 271 P.2d 1108 (Okla. 1954); Denney v. Tate, 96 Ga. App. 3, 99 S.E.2d 296 (1957); McLaughlin v. Broyles, 36 Tenn. App. 391, 255 S.W.2d 1020 (1952).

(2) In some states the trial court is forbidden to set aside a verdict if "on the evidence" the jury could have reasonably found in accordance with the verdict as rendered. See Kerrigan v. Detroit Steel Corp., 146 Conn. 658, 659, 154 A.2d 517, 518 (1959); Monihan v. Public Serv. Interstate Transp. Co., 22 N.J. Super. 149, 91 A.2d 585 (App. Div. 1952), *cert. denied*, 11 N.J. 215, 94 A.2d 215 (1953); Dyer v. Hastings, 87 Ohio App. 147, 94 N.E.2d 213 (1950).

(3) In most jurisdictions the trial court is given a role somewhere between those prescribed by the two rules just described. Under this rule the judge should weigh the evidence but should not interfere with the verdict

> unless the verdict is clearly against the undoubted general current of the evidence, so that the court can clearly see, that they have acted under some mistake, or from some improper motive, or bias, or feeling.

Alsop v. Commercial Ins. Co., 1 Fed. Cas. 564, 571 (No. 262) (C.C.D. Mass. 1833). See also Aetna Cas. & Sur. Co. v. Yeatts, 122 F.2d 350 (4th Cir. 1941); 6 Moore, Federal Practice ¶ 59.08 [5] (2d ed. 1954).

The tests laid down for the guidance of the trial court (the subject of the present note) are not to be confused with the rules to be applied by appellate courts in reviewing the trial court's action, although the two necessarily overlap.

68. Blum v. Fresh Grown Preserve Corp., 292 N.Y. 241, 244, 54 N.E.2d 809, 810 (1944) (All italicized in original.); *cf.* N.Y. Civ. Prac. Act § 457a.

69. See Blum v. Fresh Grown Preserve Corp., *supra* note 68, at 245, *quoting* Brown v. Mohawk & H.R.R., 1 How. App. Cas. 52, 66 (N.Y. Ct. App. 1847).

70. 2 Harper & James, Torts § 15.3 (1956).

standards of conduct for people to follow in recurring situations.[71]
This view would make itself felt through manipulation of the concept
of sufficiency of evidence (*e.g.*, no evidence would be sufficient to
support a claim unless it showed a deviation from the fixed standard)
and be implemented by the more frequent granting of the motions
under discussion. This school of thought has lost ground in the present
century, especially in personal injury tort cases.[72]

Also, there is probably more variation among decisions concerning
the legitimacy of inferences from circumstantial evidence than con-
cerning credibility.[73] And here, too, as in the matter of evaluation con-
duct, the tendency has probably been in the direction of allowing the
jury greater latitude in drawing inferences, notably in personal injury
tort cases.[74]

The changes described in the last two paragraphs are, it seems,
manifestations of deeper changes in the substantive law and in the
attitude of society towards the proper solution of the problem of ac-
cident victims in our increasingly mechanized society. These attitudes
are not yet fully reflected in the announced rules of substantive law
and one (conscious or unconscious) response to this fact has been the
enlargement of the jury's sphere.[75]

## C.  *Instructions to the Jury*

It is the common law tradition that in all civil jury trials the judge
has the right and duty to instruct the jury upon the substantive law

---

71. See Baltimore & O.R.R. v. Goodman, 275 U.S. 66 (1927); Southern Pac. Co. v.
Berkshire, 254 U.S. 415 (1921); Lorenzo v. Wirth, 170 Mass. 596, 49 N.E. 1010
(1898); HOLMES, THE COMMON LAW 110-29 (1881).

72. See 2 HARPER & JAMES, TORTS § 15.3 (1956); Nixon, *Changing Rules of Liability
in Automobile Accident Litigation*, 3 LAW & CONTEMP. PROB. 476 (1936); Searl,
*Automobile Liability Law Development and Trend*, 39 BEST'S INSURANCE NEWS 585
(Fire & Cas. ed. 1938).

73. See, *e.g.*, Dillon v. Rockaway Beach Hosp. & Dispensary, 284 N.Y. 176, 30 N.E.2d
373 (1940), where, though the Court of Appeals' conclusions seem reasonable enough,
the trial court and the Appellate Division had both taken a narrower view of the
evidence. *Compare* Morrison v. Le Torneau Co., 138 F.2d 339 (5th Cir. 1943), *with*
Eickhoff v. Beard-Laney, Inc., 199 S.C. 500, 20 S.E.2d 153 (1942).

74. This is perhaps best illustrated by the increasingly liberal application of res
ipsa loquitur. See James, *Proof of the Breach in Negligence Cases (Including Res
Ipsa Loquitur)*, 37 VA. L. REV. 179 (1951), especially at 198 n.59, which contrasts older
and newer cases dealing with the unexplained breaking of machinery. *Cf.* Wilkerson
v. McCarthy, 336 U.S. 53 (1949); Pennsylvania R.R. v. Chamberlain, 288 U.S. 333
(1933).

75. See James, *Tort Law in Midstream: Its Challenge to the Judicial Process*, 8

*Virginia Law Review* [Vol. 47:218

applicable to all the ultimate issues made by the pleadings and the proof.[76] This duty was not dependent on the making of any requests to charge by parties[77]—to this extent it represents a departure from notions of party presentation and prosecution and an instance of judicial responsibility for seeing that certain steps in the litigation process are taken, and properly taken. In this tradition the judge often sums up the evidence in the course of his charge and indicates just how the legal rules should be applied to the various factual findings permissible under the evidence.[78] Moreover he may also *comment* on the weight of the evidence and indicate his own opinion concerning the credibility of witnesses and the relative strength of competing permissible inferences, provided always that he makes it clear to the jury that it is their province to decide such questions of weight and credibility.[79]

Because of the judge's position of prestige and respect in the trial his charge can be used to exert a good deal of psychological influence on the jurors, who are laymen and sometimes inexperienced and impressionable. This influence is enhanced by the timing of the charge—it occurs after arguments of counsel and is the last significant event at the trial before the jury's deliberation. All this was not regarded as a disadvantage of the procedure but rather as an essential safeguard against the jury's possible ignorance and undue susceptibility to appeals to the "passional elements" in their nature. "It is not too much to say of any period, in all English history," says Thayer, "that it is impossible

---

BUFFALO L. REV. 315, 342-44 (1959); Smith, *Sequel to Workmen's Compensation Acts*, 27 HARV. L. REV. 235, 344, 367 (1914); note 72 *supra*.

76. THAYER 112-14; Farley, *Instructions to Juries—Their Rôle in the Judicial Process*, 42 YALE L.J. 194 (1932).

77. For modern cases which follow the common law in this respect see Cipollone v. D'Alessandro-Crognale, Inc., 333 Mass. 469, 131 N.E.2d 754 (1956); McNeill v. McDougald, 242 N.C. 255, 87 S.E.2d 502 (1955); Shiers v. Cowgill, 157 Neb. 265, 59 N.W.2d 407 (1953); Reithof v. Pittsburgh Rys., 361 Pa. 489, 65 A.2d 346 (1949); Perlman v. Haigh, 90 N.H. 404, 10 A.2d 228 (1939); Investors Syndicate v. Thompson, 172 Ga. 203, 158 S.E. 20 (1931).

A general description of the patterns in use in America, based on correspondence with trial lawyers, appears in ARNOLD & JAMES, CASES ON TRIALS, JUDGMENTS AND APPEALS 676-79 (1936).

78. See 9 WIGMORE § 2551; Wright, *Instructions to the Jury: Summary Without Comment*, 1954 WASH. U.L.Q. 177. According to Professor Wright 19 American states permit a factual summary either with or without comment. *Id.* at 206-07.

79. See Quercia v. United States, 289 U.S. 466 (1933); Sheahan v. Barry, 27 Mich. 217, 226-27 (1873); 9 WIGMORE § 2551; Sunderland, *The Inefficiency of the American Jury*, 13 MICH. L. REV. 302, 305 (1915). See generally Wright, *The Invasion of Jury: Temperature of the War*, 27 TEMP. L.Q. 137 (1953).

*Jury-Control Devices*

to conceive of trial by jury as existing there in a form which would withhold from the jury the assistance of the court in dealing with the facts." [80]

The basic features of instructions to the jury which have just been described are found today in the federal courts and those of several of the states.[81] But the nineteenth century witnessed a popular political movement which led to, among other things, an aggrandizement of the importance and stature of the jury (as the popular branch of the tribunal) and to a corresponding diminution of the importance and stature of the judge.[82] Among the results of this movement, several are pertinent to the present subject matter: (1) statutes and even constitutional provisions forbidding judges to comment upon the evidence;[83] (2) rules and statutes relieving the court of its traditional duty to take the initiative in covering the whole law of the case in its charge, and requiring the court to charge only upon points expressly covered by specific requests to charge;[84] (3) and rules requiring the charge to be given *before* final arguments of counsel.[85]

The most extreme steps to reduce the judge's function are to be found in Mississippi where the judge is forbidden to give any charge upon points not requested by counsel and the clerk simply marks the parties' request as "given" or "refused." [86]   The granted requests are then read to the jury by the attorneys before they argue the case.[87]

These steps towards diminution of judicial responsibility and control

---

80. Thayer 188 n.2.

81. The present status of the rules in the various states may be found in the following articles: Wright, *Adequacy of Instructions to the Jury*, 53 Mich. L. Rev. 505, 813 (1955) (pts. 1-2); Wright, *supra* notes 78 and 79.

82. See Sunderland, *supra* note 79, at 307-09.

83. *Ibid;* see Wright, *supra* notes 78, 79 and 81.

84. As in Mississippi, see McElroy, *Procedural Aspects of Motions and Instructions,* 30 Miss. L.J. 413, 419-21 (1959); as in Missouri, see Otis, *The Judge to the Jury,* 6 U. Kan. City L. Rev. 3, 4-6 (1937); Wright, *supra* note 78, at 180-82; as in Virginia, see Catterall, *Trial by Jury in Virginia: The Power of the Judge To Comment on the Facts,* 28 Va. L. Rev. 106 (1941); Wright, *Adequacy of Instructions to the Jury: II,* 53 Mich. L. Rev. 813, 821-22 (1955).

85. As in Wyoming, Nevada, Kansas, Nebraska and Utah. See Wright, *supra* note 78, at 183-89. *Compare* Blatt, *Judge's Charge to Jury Should Precede Arguments of Counsel,* 33 J. Am. Jud. Soc'y 56 (1949), *with* Hartshorne, *The Timing of the Charge to the Jury,* 33 J. Am. Jud. Soc'y 90 (1949).

86. Miss. Code Ann. § 1530 (1942); Producers Gin Ass'n v. Beck, 215 Miss. 263, 60 So. 2d 642 (1952); see Arnold & James, *op. cit. supra* note 77, at 677.

87. McElroy, *supra* note 84, at 420.

have been widely condemned by commentators and there are some indications that the tide has turned the other way.[88]

Because of the differences in practice just described it is difficult to make valid generalizations about what a charge should and should not contain. The rules that follow are, however, widely applied.

The charge should tell the jury which questions are for them to decide and which are not.[89] Usually this means that the judge tells the jury what the issues are and what rule or rules of substantive law they should apply to the various possible findings of fact they might make under the evidence. And the judge should explain to the jury which party has the burden of proof (persuasion burden) on each issue and the measure to which they must be persuaded before that burden is met.[90] The court usually tells the jury that questions of the credibility of witnesses are for them to decide.[91] It may also give them some guide for drawing rational inferences of fact.[92]

If the proponent has failed to meet his production burden on the whole case or on some element necessary for recovery the court will, as we have seen, take the case from the jury by nonsuit, directed verdict, or dismissal.[93] But it often happens that a proponent who is entitled to go to the jury on some issues fails to meet his production burden on an issue which is not necessarily dispositive of the whole case. It then becomes the judge's duty to withdraw that issue from the jury's consideration.[94] It is error to leave to the jury an issue which is not properly in the case under the evidence and the pleadings,[95] except where the pleadings are treated as amended to accommodate an issue litigated by consent,[96] or the like.

---

88. Wright, *supra* note 79.

89. See ARNOLD & JAMES, *op. cit. supra* note 77, at 712-15; 1 REID'S BRANSON, INSTRUCTIONS TO JURIES §§ 1-5 (repl. ed. 1960) [hereinafter cited as BRANSON]; Farley, *supra* note 76, at 205-10.

90. It has been pointed out that in many states it is not error to omit such an instruction in civil cases in the absence of a request to charge. 1 BRANSON § 61.

91. 1 BRANSON §§ 37-41, 68, 69 (indicating some standard guides given to jury for assessing credibility).

92. 1 BRANSON § 20.

93. See text accompanying notes 59-75 *supra*.

94. If the issue has not been brought to the jury's attention in any way, there may be no occasion to mention it in the charge at all.

95. State *ex rel.* Central Coal & Coke Co. v. Ellison, 270 Mo. 645, 195 S.W. 722 (1917); Norfolk So. R.R. v. Norfolk Truckers' Exch., Inc., 118 Va. 650, 88 S.E. 318 (1916); see 1 BRANSON § 50; Farley, *supra* note 76, at 207.

96. As under FED. R. CIV. P. 15(b).

The court may determine that on one permissible version of the facts
there would be no question of evaluation properly for the jury, while
on another permissible version there would be such a question for them.
Suppose, for example, one witness puts the speed of defendant's auto-
mobile at twenty miles an hour, another at forty. If the judge believes
that the former speed could not reasonably be found negligent under
the circumstances, while the latter might, he should give a conditionally
binding instruction on the point. He should tell them that if they find
the speed to have been twenty miles an hour they must find the driver
free from negligence in this particular, but that if they find the speed
to have been forty miles an hour, they should then go on to determine
whether that was a reasonable speed under all the circumstances.[97]

It constitutes error to give a binding instruction where the matter
of evaluation is properly for the jury.[98]

Where it is a question for the court what the construction of a
writing is, or whether given facts constitute probable cause in malicious
prosecution, the court will—if the case is for the jury at all—tell them
that the written words have such and such meaning,[99] or that such and
such facts do (or do not) constitute probable cause.[100]

If the case is one in which parol evidence is admissible as an aid in
construing a contract, it is up to the jury to resolve any conflicts re-
vealed by the parol evidence and also to resolve any question of con-
struction "if, when all the evidence is in, both written and oral, fair-
minded men might reasonably arrive at different conclusions" upon it.[101]

The charge must not assume the existence or the nonexistence of a
fact in issue.[102]

All jurisdictions allow for the filing by the parties of requests to

---

97. 2 HARPER & JAMES, TORTS § 15.4 (1956); SHULMAN & JAMES, CASES ON TORTS 188-89
(2d ed. 1952).

98. Maher v. Connecticut Co., 113 Conn. 556, 155 Atl. 854 (1931).

99. De Shields v. Insurance Co. of No. America, 125 S.C. 457, 118 S.E. 817 (1923);
see 1 BRANSON § 13.

100. Patrick v. Wigley, 206 Okla. 194, 242 P.2d 423 (1952); Byers v. Ward, 368 Pa.
416, 84 A.2d 307 (1951); Carson v. Doggett, 231 N.C. 629, 58 S.E.2d 609 (1950); see
THAYER 221-32.

101. Geoghegan Sons & Co. v. Arbuckle Bros., 139 Va. 92, 101, 123 S.E. 387, 389
(1924); see Terminal Constr. Corp. v. Bergen County, 18 N.J. 294, 113 A.2d 787
(1955); Swift v. McMurray, 133 Okla. 104, 271 Pac. 635 (1927); MacIntyre v. Angel,
109 Cal. App. 2d 425, 240 P.2d 1047 (Dist. Ct. App. 1952).

102. Barnett v. H. L. Green Co., 233 Ala. 453, 171 So. 911 (1936); see 1 BRANSON
§§ 23-26.

charge.[103]  A rule or statute usually prescribes a time for filing such requests (*e.g.*, at the close of the evidence) and requires them to be in writing.[104]  Other requirements, separately numbered paragraphs, citation of supporting authority, et cetera, may also be imposed.[105]

The importance of requests to charge varies among the different jurisdictions, inversely with the duty of the court to instruct fully upon the ultimate issues. As one court has recently put it, even where there are no requests a federal court must nevertheless charge "on the broad general fundamental rules of law applicable to the principal issues of fact in the case." [106]  And if there is a failure in this regard, an objection taken as required by the rule will preserve the rights of the objecting party. If, however, counsel wants the jury instructed specifically on a particular matter, requests for such instructions must be filed as a condition to putting the trial court in error for a failure to cover the "particular matter." [107]  Thus in a negligence case the trial judge will be bound to give the general formula for negligence as being conduct involving a foreseeable and unreasonable risk of harm to others under the circumstances. And the judge on his own initiative may, and often will, mention the circumstances which he thinks significant. But if a party wishes to compel him to mention any particular circumstance (on pain of being in error for an omission to do so) then he should file a request to charge the jury upon that circumstance.[108]

Even under this rule it will often be desirable, though perhaps not necessary, to file requests to charge for the purposes of: (1) getting before the judge a party's legal theory of the case (especially where that is likely to be unusual or unfamiliar); (2) clarifying legal points in advance of argument of counsel, so that the argument may be shaped in accordance with the law as the judge will declare it.

Under procedural systems which condition the judge's duty to charge upon the filing of a proper request on the point in question, the importance of filing such requests is obviously greater than under the common law rule.

---

103. See 1 BRANSON §§ 150-61 for a general treatment of requests to charge.
104. See FED. R. CIV. P. 51.
105. See 1 BRANSON § 154; CONNECTICUT PRACTICE BOOK § 153 (1951).
106. Turner Constr. Co. v. Houlihan, 240 F.2d 435, 439 (1st Cir. 1957).
107. *Ibid.*
108. Even where no request to charge upon a particular circumstance is filed, the court may be in error if it selects other circumstances for mention in its charge and omits reference to a circumstance that has attained litigious importance at the trial. See 1 BRANSON §§ 105-06.

Under either system the framing of proper requests to charge is something of an art. Clearly the request must embody a correct statement of substantive law and avoid all the pitfalls which the charge itself must avoid, such as the assumption of a fact in issue. An unnecessary difficulty is commonly encountered by ending a request with a direction to find for one party or the other. Such a request will be proper only if *all* the conditions for plaintiff's recovery or defendant's verdict, as the case may be, are included in the single request,[109] and such inclusion will usually make the request cumbersome and unwieldy, unless it deals with broad legal propositions.

If a request clearly identifies a point upon which the party filing it is entitled to a charge, but is improper in form or substance, the question arises whether the trial court will be in error if it fails to give a proper instruction on the point. There is certainly authority that where the meaning of a request is reasonably apparent, and its subject matter is significant and not sufficiently covered by the general charge, a court would be unjustified in ignoring the request merely because it is susceptible of such an interpretation as to make its proposition not absolutely accurate.[110] Yet the instances are legion where the appellate court finds no error on the ground that the request is inaccurate or not in conformity with the rules.[111] So complete is appellate discretion to choose one or the other of these attitudes in any specific case, and so reluctant are such courts to reverse except where error is clear or a clear miscarriage of justice is sensed, counsel is well advised to frame important requests with precision and care.

Most jurisdictions require a party to make specific objections to the charge as a condition to appellate review of statements or omissions in the charge.[112] Such objections are generally made at the close of the charge before the jury retires.[113] The provision to this effect in Rule 51 of the Federal Rules of Civil Procedure is to be read in connection with Rule 46 which dispenses with the need for formal exceptions wherever a party makes known to the court what he wants the

---

109. *E.g.*, Dwyer v. Connecticut Co., 103 Conn. 678, 131 Atl. 838 (1925).

110. Montgomery v. Virginia Stage Lines, Inc., 191 F.2d 770, 772 (D.C. Cir. 1951) (request embodying applicable regulations of ICC "not entirely correct"); see Annes v. Connecticut Co., 107 Conn. 126, 129, 139 Atl. 511, 512 (1927) (request embodying applicable last clear chance doctrine "of somewhat doubtful accuracy").

111. See 1 BRANSON § 180, at 485; DEC. DIG., Trial, Key No. 261.

112. See 1 BRANSON §§ 170-75.

113. *Id.* at 471.

court to do and why, or "his objection to the action of the court and his grounds therefor." Taking these two rules together, courts of appeals have held that points clearly raised in proper requests to charge need not be repeated by objection at the close of a charge which failed to give such a request.[114]

## D. *Special Verdicts and Interrogatories*

The special verdict emerged at common law as a device by which the jury might protect itself from some of the dangers of attaint;[115] but it became transformed on this side of the Atlantic into a device for judicial control of juries, to be utilized at the judge's option.[116] While the special verdict—at the court's insistence—has never become a common thing in America, it remains as an available device sometimes resorted to today. Its infrequency is due to its clumsiness and difficulty. To support a judgment the verdict has to include findings upon all the material facts in issue, and it must do so by stating without ambiguity facts, not evidence or conclusions of law. It is not easy to frame such a verdict (or questions which will elicit it) in the heat of trial, and the history of special verdicts is "a rocky road strewn with innumerable wrecks." [117]

The Federal Rules of Civil Procedure seek to avoid some of this difficulty. Rule 49(a) provides that if, in submitting a case to the jury (by interrogatories or otherwise) for their special verdict, "the court omits any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issue so omitted unless before the jury retires he demands its submission to the jury." The court is then given the power to make findings of fact upon the omitted issue, and even its failure to do so is to be supplied by the assumption of a finding "in accord with the judgment on the special verdict." [118]

The submission to the jury of interrogatories to be answered along with their general verdict is a device which has become available in

---

114. *E.g.*, Montgomery v. Virginia Stage Lines, Inc., 191 F.2d 770 (D.C. Cir. 1951); Wright v. Farm Journal, Inc., 158 F.2d 976 (2d Cir. 1947); Williams v. Powers, 135 F.2d 153 (6th Cir. 1943).

115. GREEN, JUDGE AND JURY 353 (1930); see THAYER 217-19; *cf.* Morgan, *A Brief History of Special Verdicts and Special Interrogatories*, 32 YALE L.J. 575, 588-91 (1923).

116. See CLEMENTSON, SPECIAL VERDICTS 8 (1905); GREEN, *op. cit. supra* note 115, at 353; Sunderland, *Verdicts, General and Special*, 29 YALE L.J. 253, 258 (1920).

117. Sunderland, *supra* note 116, at 261.

118. FED. R. CIV. P. 49(a).

*Jury-Control Devices*

most jurisdictions.[119] It does not suffer the same impediment as the old special verdict and has enjoyed wider use.[120] In a few states the practice of submitting such interrogatories has become required or a matter of course in all civil cases.[121]

Rule 49(b) of the Federal Rules expressly provides for such interrogatories. It also makes explicit provision about what should be done where difficulty is posed by the jury's answers. In the usual case the answers to the interrogatories will be consistent with each other and harmonious with the general verdict. The judge should then "direct the entry of the appropriate judgment upon the verdict and answers." [122] Where, however, the answers are consistent with each other but one or more is inconsistent with the general verdict, the court may do one of three things: (1) direct entry of judgment in accordance with the answers, notwithstanding the general verdict; (2) return the jury for further consideration of its answers and verdict; or (3) order a new trial.[123] The last two courses of action are open to the court (in the alternative) where the answers are inconsistent with each other, "and one or more is likewise inconsistent with the general verdict." [124] In such case the court is not, however, to direct the entry of judgment. In administering these provisions courts should be astute to reconcile answers with each other and with the verdict where this is reasonably possible.[125]

Under the typical American pattern, including that in the federal courts, it is not the parties' option to require a special verdict or propound interrogatories; the choice lies with the court and rests largely

119. CLEMENTSON, *op. cit. supra* note 116, at 16-41; GREEN, *op. cit. supra* note 115, at 354-55; Morgan, *supra* note 115, at 591-92; Wicker, *Special Interrogatories to Juries in Civil Cases*, 35 YALE L.J. 296 (1926).

120. Although it is not expressly stated, this is the clear implication of the works by Green and Wicker cited in note 119 *supra*.

121. See GREEN, *op. cit. supra* note 115, at 355-74 (describing practice in North Carolina, Texas, and Wisconsin); Frank, *The Case for the Special Verdict*, 32 J. AM. JUD. SOC'Y 142, 147-48 (1949).

122. FED. R. CIV. P. 49(b).

123. *Ibid.*

124. *Ibid.*

125. See, *e.g.*, Morris v. Pennsylvania R.R., 187 F.2d 837, 840 (2d Cir. 1951); Gulf Ref. Co. v. Fetschan, 130 F.2d 129 (6th Cir. 1942), *cert. denied*, 318 U.S. 764 (1943); *In re* Estate of Erwin, 170 Kan. 728, 228 P.2d 739 (1951); Tobin v. Van Orsdol, 241 Iowa 1331, 45 N.W.2d 239 (1950); Klever v. Reid Bros. Express, Inc., 151 Ohio St. 467, 86 N.E.2d 608 (1949); Ford v. Carpenter, 147 Tex. 447, 216 S.W.2d 558 (1949); Wicker, *supra* note 119, at 304; *cf.* Golden No. Airways v. Tanana Publishing Co., 218 F.2d 612, 618 (9th Cir. 1954).

in its discretion, though either party may request such action.[126]   In the federal courts and in most states judges do not in fact require special verdicts or propound interrogatories in the majority of civil cases,[127] although there is a school of thought which would extend their use.[128]

There are several possible advantages of special verdicts and interrogatories. First, they tend to localize error and avoid the necessity for many reversals on appeal, while the grounds of a general verdict are often not ascertainable.[129] For example, in the typical negligence case the issues made by the pleadings include defendant's negligence, its causal relation to plaintiff's claimed injury, the existence and extent of injury, and the plaintiff's contributory negligence. A general verdict for plaintiff implies a finding on each one of these issues, but a general verdict for defendant does not, since it may rationally be grounded on any one of a number of possible combinations of findings. A finding adverse to plaintiff *on any one of the issues*,[130] for instance, will call for a defendant's verdict no matter what the jury finds on the other issues.

Suppose now there has been error in the charge, or in the admission of evidence, which goes to one issue only, such as contributory negligence, and the trial results in a defendant's verdict. It is apparent that the error may have had no part whatever in producing the verdict since

126. See Skidmore v. Baltimore & O.R.R., 167 F.2d 54 (2d Cir.), *cert. denied*, 335 U.S. 816 (1948); 1 BRANSON § 161.

127. Sunderland stated that in this country jury trial is "almost universally administered" by use of the general verdict. Sunderland, *supra* note 116, at 254-55. Green refers to the taking of a general verdict as "the normal method." GREEN, *op. cit. supra* note 115, at 350. An assumption that this is the fact seems quite clearly to underlie Judge Frank's pleas for interrogatories found in Skidmore v. Baltimore & O.R.R., 167 F.2d 54, 56-70 (2d Cir.), *cert. denied*, 335 U.S. 816 (1948). *Cf.* Rossman, *The Judge-Jury Relationship in the State Courts*, 3 F.R.D. 98, 107-10 (1944).

128. See, *e.g.*, Skidmore v. Baltimore & O.R.R., *supra* note 127, at 56, 70 (opinions of Frank and Hand, JJ.); GREEN, *op. cit. supra* note 115, at 350-74; Rossman, *supra* note 127; Wicker, *supra* note 119. Contrast the opinions of Clark and Frank, JJ., in Morris v. Pennsylvania R.R., 187 F.2d 837, 843 (2d Cir. 1951).

129. That is, they are not ascertainable even on a theoretical basis. Juries in fact have the *power* to decide cases on grounds which they are not supposed to consider—indeed those which they have been forbidden to consider. For many purposes, however, the law blandly assumes that juries do what they are told by the court to do. That assumption is being made in the present and immediately succeeding paragraphs of the text.

130. Including total lack of injury, since actual damage to plaintiff is an essential element of a claim for damages caused by negligence. 2 HARPER & JAMES, TORTS § 25.1, at 1300 (1956).

the verdict could have been based on a finding, *e.g.*, that defendant himself was not negligent. Nevertheless the error *may have contributed to producing the result*, and since that is so the prevailing appellate rule in America requires reversal and a new trial.[131] If, however, the appellate court can see from the record that the result in the first trial would necessarily have been the same even if the error had not occurred, then the error will be regarded as "harmless" and "non-prejudicial," and a reversal is not called for.[132] Since the answers to interrogatories may reveal that findings on issues other than the one infected by error required the verdict which was rendered, they will frequently show that an error is harmless and non-prejudicial.

Another possible advantage of these devices is that the instructions may be rendered less cumbersome and difficult to frame and to understand. This benefit might accompany the special verdict but not (to anything like the same extent, at least) the general verdict taken along with answers to interrogatories. Ordinarily the charge must indicate what law would be applicable to each of the possible findings and combinations of findings which a jury might make from the evidence. This calls for stating each of these findings in hypothetical form and often leads to instructions involving many near-repetitions to accommodate slight factual variations among permissible findings which would be attended by different legal consequences. Not only are such charges hard for the court to frame and for the jury to follow,[133] but they are a prolific source of error.[134] Since the special verdict records only the jury's findings of fact (which would include evaluations within its sphere, for instance, of what is "reasonable") there is no need for the court to charge upon those legal consequences which are

---

131. See, *e.g.*, Fillippon v. Albion Vein Slate Co., 250 U.S. 76 (1919) (instruction to jury in absence of parties and counsel); Ferderer v. Northern Pac. Ry., 75 N.D. 139, 26 N.W.2d 236 (1947) (instruction to jury in absence of parties and counsel); Poultryland, Inc. v. Anderson, 200 Ga. 549, 37 S.E.2d 785 (1946) (refusal of a timely request for sequestration of witnesses); Sweeney v. Vierbuchen, 224 Ind. 341, 66 N.E.2d 764 (1946) (erroneous instruction on attorney-client relationship); Kimball v. Borden, 95 Va. 203, 28 S.E. 207 (1897) (erroneous instruction on negligence); Gurwell v. Jefferson City Lines, Inc., 239 Mo. App. 305, 192 S.W.2d 683 (1946) (erroneous admission of medical opinion).

132. Morris v. Pennsylvania R.R., 187 F.2d 837, 841 (2d Cir. 1951); see Sunderland, *supra* note 116, at 259; Wicker, *supra* note 119, at 306.

133. Green, *op. cit. supra* note 115, at 351; Sunderland, *supra* note 116, at 259.

134. Arnold & James, Cases on Trials, Judgments and Appeals 676-77 (1936); Green, *op. cit. supra* note 115, at 351. See generally 1 Branson § 180; Farley, *Instructions to Juries—Their Rôle in the Judicial Process*, 42 Yale L.J. 194, 202 (1932).

*Virginia Law Review* [Vol. 47:218

within the court's province to decide upon, or to frame hypothetical instructions in terms of those consequences.

Where it falls within the jury's province to decide most, or many of the significant legal consequences—as in the typical personal injury negligence case[135]—this advantage of the special verdict is minimized.

As a third advantage, these devices put psychological pressure on the jury to stick to the performance of their theoretical functions and to keep them from deciding cases on grounds which they are supposed—again, in theory—to ignore. They exert this pressure by focussing jury attention on the questions which are allocated to them for decision and requiring the jury to record their answers to these questions. This is the "advantage" most commonly emphasized by modern protagonists of the special verdict or interrogatories.[136] Whether it is in fact advantageous in some or any cases is a question upon which men stand deeply divided.

The jury's only theoretical functions are to find from the evidence what the simple facts are and to make some (but not all) legal evaluations of these facts, in the manner prescribed by the judge's charge. Serious critics of jury trial feel that juries do not perform even these functions well, and that the disadvantages of jury trial outweigh its benefits. But the jury is so firmly ensconced among American institutions that there is no practical likelihood of its abolition, so these critics turn to devices which will limit the jury's power and at least keep it from extending beyond the reservation allotted to it by legal theory.[137]

Others accept jury trial, believing that juries perform the necessary functions better than would a single judge, but agree with the serious critics in thinking that juries should be confined to their theoretical tasks.[138] Both these groups welcome interrogatories and special verdicts as means for keeping juries within bounds.

Throughout the jury's history it has been recognized that juries do not always stick to their theoretical function and apply the law in the judge's charge to the facts as they find them. Juries sometimes take the

---

135. 2 Harper & James, Torts §§ 15.3, 17.1-.2 (1956).

136. See, *e.g.*, Clementson, *op. cit. supra* note 116, at 12; Frank, *supra* note 121, at 147; Sunderland, *supra* note 116, at 262; Wicker, *supra* note 119, at 306.

137. See Frank, *supra* note 121, at 142-43. See generally Frank, Courts on Trial 108-45 (1949); Green, *op. cit. supra* note 115, at 395-417.

138. This seems to have been the attitude of Wicker, *supra* note 119.

law into their own hands and decide a case according to popular preju-
dice, which often embodies lay notions of what the law ought to be.
This, of course, is the very thing that the two groups just described
unite in deploring. But there is a third viewpoint, held by men of
stature in the law, which recognizes that this tendency of juries is not
always a weakness but sometimes a great strength of the system. Lord
Coke is reported to have observed "the jurors are chancellors." [139]
Holmes said:

> [O]ne reason why I believe in our practice of leaving questions of
> negligence to them is what is precisely one of their gravest defects
> from the point of view of their theoretical function: that they will
> introduce into their verdict a certain amount—a very large amount,
> so far as I have observed—of popular prejudice, and thus keep the ad-
> ministration of the law in accord with the wishes and feelings of the
> community. [140]

Pound concluded that "jury lawlessness is the great corrective of law
in its actual administration." [141] One of our ablest trial judges of today
has noted that "traditionally juries are the device by which the rigor
of the law is modified pending the enactment of new statutes." [142]
Justice Traynor of the California Supreme Court believes that "we
would lose more than we would gain by a reform of fact-finding that
would only compel righteous adherence [by juries] to wrong rules."
Until the rules themselves are changed we are better off with "that
quiet distortion that presently adapts them to the needs of a rough
justice." [143]

The implications of these differing points of view for the question
here under discussion were well summed up by James Bradley Thayer
over sixty years ago:

> Logic and neatness of legal theory have always called loud, at least
> in recent centuries, for special verdicts, so that the true significance
> of ascertained facts might be ascertained and declared by the one

139. Pound, An Introduction to the Philosophy of Law 133 (1922).

140. Holmes, Collected Legal Papers 237-38 (1920).

141. Pound, *Law in Books and Law in Action*, 44 Am. L. Rev. 12, 18 (1910).

142. Wyzanski, *A Trial Judge's Freedom and Responsibility*, 65 Harv. L. Rev. 1281, 1286 (1952).

143. Traynor, *Fact Skepticism and the Judicial Process*, 106 U. Pa. L. Rev. 635, 640 (1958).

*Virginia Law Review*                    [Vol. 47:218

> tribunal fitted to do this finally and with authority. But considerations
> of policy have called louder for leaving to the jury a freer hand.[144]

More recently, Moore concluded that the use of special verdicts or
the general verdict and interrogatories should be the exception and not
the rule, and that if there is sufficient evidence to circumvent a motion
for a directed verdict, "the problem is usually best solved by an overall,
common judgment of the jurors—the general verdict." [145]

This last point of view has much to commend it.[146] If it is accepted
the administrative advantages, localizing error and facilitating instruc-
tions, to be had from interrogatories and special verdicts may well be
outweighed. It should be noted, however, that this view may not have
equal application at all times to all fields of the law. Recognition of the
need for the jury's equitable dispensing power in areas where the written
law is out of tune with popular notions of justice and is in transition
does not necessarily mean that the same need exists, or exists to the
same extent, in other areas. Moreover, the relative complexity of some
types of cases magnifies the importance for them of administrative
considerations which may not deserve great weight in the ordinary
traffic case.

---

144. THAYER 218.

145. 5 MOORE, FEDERAL PRACTICE ¶ 49.05, at 2218 (2d ed. 1951).

146. The writer is persuaded to this view, at least in the field of personal injury
accident litigation, until a more comprehensive solution is worked out. See James, *Tort
Law in Midstream: Its Challenge to the Judicial Process,* 8 BUFFALO L. REV. 315 (1959).