# DISMISSING FEDERAL RULE OF CIVIL PROCEDURE 41

## *Bradley Scott Shannon*[*]

*Despite its long pedigree, Federal Rule of Civil Procedure 41, the rule generally governing the dismissal of federal civil actions, is ill-equipped to deal with the realities of modern federal civil practice. But the many problems with Rule 41 need not be tolerated. As this Article demonstrates, Rule 41 can and should be amended in a manner that preserves much of its history, yet comports with these realities. An amended Rule 41 also would more clearly avoid running afoul of the substantive limitations imposed by the Rules Enabling Act.*

## I. INTRODUCTION

Dismissals play a prominent role in federal civil practice.[1] It is no exaggeration to say that most actions are resolved by dismissal.[2] This fact alone would seem to make dismissals a subject worthy of study.

Though the Federal Rules of Civil Procedure refer to dismissals in many places,[3] dismissals are governed generally by Federal Rule of Civil

---

[*] Professor of Law, Florida Coastal School of Law. I thank Professors Stephen Burbank and Kevin Clermont, who, though not necessarily agreeing with the contents of this Article, were kind enough to provide helpful comments.

[1] Dismissals also play a prominent role in state civil practice and, to the extent that state practice parallels federal, much of what is said here applies there as well. Indeed, this might be particularly true in this area, for Federal Rule of Civil Procedure 41—the primary focus of this Article—"has served as a model for similar provisions in many states." RESTATEMENT (SECOND) OF JUDGMENTS § 19 cmt. b (1982).

[2] Most actions are resolved by settlement. *See* Marc Galanter & Mia Cahill, *"Most Cases Settle": Judicial Promotion and Regulation of Settlements*, 46 STAN. L. REV. 1339, 1339 (1994) (observing that "settlement is the most frequent disposition of civil cases in the United States"). Though "surprisingly little systematic knowledge exists about settlement rates," one recent study of two large federal districts over a two-year period revealed an aggregate settlement rate of 66.9%. Theodore Eisenberg & Charlotte Lanvers, *What is the Settlement Rate and Why Should We Care?*, 6 J. EMPIRICAL LEGAL STUD. 111, 111–12, 115 (2009). Because a settlement typically results in a dismissal of the underlying action, *see infra* note 27 and accompanying text (discussing settlements in conjunction with dismissals), this study similarly suggests a dismissal rate of at least 67%. *See id.* at 115. And, because this figure does not take into account the many other ways in which an action may be dismissed, some of which are quite common, *see infra* notes 19–20 and accompanying text (discussing the various types of dismissals), the total dismissal rate must be much higher. It might be observed, though, that there are other means of disposing of an action, and that not every disposition results in (or is caused by) a dismissal. *See infra* note 18 and accompanying text (distinguishing dismissals from other types of dispositions).

[3] *See* Bradley Scott Shannon, *Action Is an Action Is an Action Is an Action*, 77 WASH. L. REV. 65, 117–18 (2002) (cataloging the various types of dismissals expressly provided for in the Federal Rules of

*UNIVERSITY OF LOUISVILLE LAW REVIEW*                     [Vol. 52:265

Procedure 41.[4]  Rule 41 was one of the original rules promulgated in 1938, and it has changed very little since.[5]

It is time for more substantial change.  Regardless of whether Rule 41 ever served its purpose—or even represented a correct statement of the relevant law—it has become increasingly apparent that the rule is not adequately aligned with the realities of modern federal practice.  This is perhaps most vividly demonstrated by the Supreme Court's decision in *Semtek International Inc. v. Lockheed Martin Corp.*,[6] in which the Court relied upon an erroneous interpretation of Rule 41—holding that the phrase "operates as an adjudication [on] the merits" means only that such a dismissal precludes the relitigation of the same action in the same federal district court—to avoid confronting the question whether the rule as applied in that case exceeded the Court's rulemaking power.[7]  But there are other problems—so many, in fact, that the rule itself should be dismissed.  That dismissal, though, should be without prejudice.  Rule 41 can and should be saved, but only after these problems have been rectified.

---

Civil Procedure).  It might be observed, though, that many grounds for dismissal are not specifically mentioned in the Federal Rules of Civil Procedure.  One example is a dismissal pursuant to a contractual forum selection clause.  *See, e.g.*, Lauro Lines S.R.L. v. Chasser, 490 U.S. 495, 496 (1989) (holding that the denial of a motion to dismiss for enforcement of a forum-selection clause is not immediately appealable under the collateral order doctrine).  Another is a dismissal for expiration of the applicable statute of limitation.  *See, e.g.*, Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 509 (2001) (holding that "the claim-preclusive effect of the California federal court's dismissal . . . of [an] action on statute-of-limitations grounds is governed by a federal rule that in turn incorporates California's law of claim preclusion").  Incidentally, as used in this Article, "Rule" (or "Rules") refers to the Federal Rules of Civil Procedure.

[4] *See* FED. R. CIV. P. 41 ("Dismissal of Actions").  The full text of current Rule 41 is reproduced *infra* app. A.

[5] *See* 9 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2361, at 406–07 (3d ed. 2008) ("Federal Rule 41 has been amended seven times since it originally was promulgated in 1938.  The amendments, however, have been substantively insignificant.  It is doubtful if a single case would have been decided differently if the rule stood as it did in 1938 . . . .").

[6] *Semtek*, 531 U.S. 497.

[7] FED. R. CIV. P. 41(b); *Semtek*, 531 U.S. at 506.  *See also* Stephen B. Burbank, Semtek, *Forum Shopping, and Federal Common Law*, 77 NOTRE DAME L. REV. 1027, 1045–46 (2002) (footnotes omitted), stating:

The drafting history [of Rule 41] makes it clear that the Court in Semtek was correct in positing that the rulemakers used the words "operates as an adjudication [on] the merits" in Rule 41(b) as the opposite of "without prejudice," and thus as synonymous with the words "with prejudice."  It also reveals, however, that to the extent they thought about the question, the rulemakers believed that they had authority to define both when a dismissal would not be eligible to bar another action on the same claim and when it would be eligible for such effect, and that they sought to do the latter in Rule 41(b).  I have found no suggestion in this history that the rulemakers intended to cabin the effects to the rendering court.

The primary purposes of this Article, then, are to expose these many problems with Rule 41 and to propose some possible solutions.[8]   The Article will proceed as follows: In Part II, the Article will briefly describe the nature of dismissals in general and the various preclusive effects thereof.   In Part III, the Article will compare this understanding of dismissals with the text of Rule 41.   This comparison will reveal several problems with Rule 41 as currently written, many of which are quite serious.   Then in Part IV, the Article will propose some amendments to Rule 41 that would solve the problems identified in Part III and more accurately reflect the way in which dismissals operate in practice.[9]   Perhaps most significantly, the Article will conclude that although there are situations in which the relevant order or stipulation properly may prescribe the preclusive effect thereof, this should occur only in those situations in which that effect is not dictated by operation of law.   This change would not only be more consistent with the constraints imposed by the Rules Enabling Act,[10] it would prevent district courts—as well as the rule itself—from assigning a preclusive effect to a dismissal that it ought not bear.

## II. What Is a Dismissal and What Is Its Effect?

Before engaging in a full-scale critique of Rule 41, it might be helpful to step back a bit and start with a review of the different types of dismissals and their various preclusive effects.

Generally speaking, a dismissal is a means (though not the only means) of disposing of or otherwise resolving an action.[11]   More specifically, a dismissal is a disposition in favor of a defendant usually on grounds independent of the underlying merits of the action (e.g., the plaintiff's claims and the defendant's merits-based defenses).[12]   Depending upon the

---

[8]   The scope of this Article appears to be unprecedented.   A few articles have been written regarding the current confusion as to the nature of dismissals and the problems caused thereby.   *See* Shannon, *supra* note 3, at 116–46; Bradley Scott Shannon, *A Summary Judgment Is Not a Dismissal!*, 56 DRAKE L. REV. 1, 2–9 (2007).   And certainly some scholars and even courts have expressed concern as to whether certain portions of Rule 41 are consistent with the federal rulemaking power.   *See Semtek*, 531 U.S. at 503–04; Stephen B. Burbank, *Interjurisdictional Preclusion, Full Faith and Credit and Federal Common Law: A General Approach*, 71 CORNELL L. REV. 733, 782–83 (1986).   But there does not appear to be any prior effort to identify the problems with Rule 41 more comprehensively and to propose a more comprehensive solution.

[9]   A revised version of Rule 41 that includes all of the changes proposed in this Part may be found *infra* app. B.

[10]   *See* 28 U.S.C. §§ 2071–77 (2012).

[11]   *See* Shannon, *supra* note 3, at 116–46 (discussing the various means of resolving an action).

[12]   *See* Shannon, *supra* note 3, at 116 (defining "dismissal" as "a nonadjudicatory (in the sense that there is no actual adjudication on the merits) disposition by motion, notice, or stipulation (rather than by

Case 1:18-cv-00361-JBW-RLM   Document 143   Filed 07/16/18   Page 4 of 36 PageID #: 1873

circumstances, a dismissal may be accomplished upon notice by the plaintiff,[13] by stipulation of the parties,[14] or by motion and order of the district court.[15]   A dismissal may relate to an action as a whole or to any claim or party therein,[16] and a claim may be dismissed by fewer than all plaintiffs, as to fewer than all defendants (though a dismissal of all claims against any given defendant is tantamount to the dismissal of that defendant), or both.[17]   A dismissal may be distinguished from other types of dispositions, such as dispositions resulting from the granting of other types of dispositive motions or adjudication by trial.[18]

There are many different bases for the dismissal of an action (or any claim therein).   Though the Rules do not purport to describe them all, various bases for dismissal are provided for throughout.[19]   But some bases for dismissal exist simply as a matter of federal procedural common law.[20]

Perhaps the most interesting aspect of dismissals is that the various bases for dismissal, as well as the various means of obtaining a dismissal,

---

trial) in favor of a defending party").   It might be observed that the Rules themselves do not expressly define the meaning of the term "dismissal."   Though this fact is not unusual—most of the terms used in the Rules are not expressly defined therein—the absence of such a definition probably has contributed to the widespread ignorance as to its true meaning.   *See, e.g.*, Fox v. Vice, 131 S. Ct. 2205, 2211 (2011) (erroneously referring to a summary judgment as a dismissal with prejudice); BLACK'S LAW DICTIONARY 502 (8th ed. 2004) (defining "dismissal" overbroadly as the "[t]ermination of an action or claim without further hearing, especially before the trial of the issues involved").   Incidentally, it might be more accurate here to speak of claiming and defending parties, rather than plaintiffs and defendants, for Rule 41 also applies to the "dismissal of any counterclaim, crossclaim, or third-party claim."   FED. R. CIV. P. 41(c).   But, for ease of understanding, this Article will use the shorthand terms "plaintiff" and "defendant" to refer to these concepts.

[13]   *See* FED. R. CIV. P. 41(a)(1)(A)(i) (providing generally that a plaintiff may obtain a dismissal by filing "a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment").

[14]   *See* FED. R. CIV. P. 41(a)(1)(A)(ii) (providing generally that a plaintiff may obtain a dismissal by filing "a stipulation of dismissal signed by all parties who have appeared").

[15]   *See* FED. R. CIV. P. 41(a)(2) (providing generally that a dismissal may be obtained "at the plaintiff's request . . . by court order, on terms that the court considers proper"); FED. R. CIV. P. 41(b) ("If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it.").   Incidentally, Rule 41 refers to dismissals initiated or joined by a plaintiff as "voluntary" dismissals, and to dismissals initiated by a defendant (or, presumably, the court) as "involuntary" dismissals.   FED. R. CIV. P. 41(a)–(b).

[16]   For example, a motion to dismiss for lack of subject-matter jurisdiction might relate only to a single claim, and a motion to dismiss for lack of personal jurisdiction might relate only to a single defendant.   *See* FED. R. CIV. P. 41(b).

[17]   It is unclear, though, whether the voluntary dismissal of fewer than all claims or parties may properly be accomplished via Rule 41.   *See* FED. R. CIV. P. 41.   For more on this problem, *see infra* notes 622–677 and accompanying text.

[18]   *See* Shannon, *supra* note 8, at 2–9 (discussing the distinction between dismissals and summary judgment); Shannon, *supra* note 3, at 116–46 (discussing the distinction between dismissals and other dispositive motions and trial).

[19]   *See* Shannon, *supra* note 3, at 116–46.

[20]   *See supra* note 3 and accompanying text (describing two such dismissals).

result in many different types of dismissals, at least in terms of their preclusive effect.[21]

At one end of the spectrum lies the voluntary dismissal by a plaintiff.[22] Such a dismissal generally has no preclusive effect whatsoever, meaning a plaintiff in that situation would be free to recommence the same action in another court or even in the same court.[23]

At the other end of the spectrum lies the dismissal for "failure to state a claim upon which relief can be granted."[24] A motion to dismiss for failure to state a claim, if granted, generally is completely preclusive, in that the underlying action may not be recommenced in any court.[25] The same is true of certain other involuntary dismissals, such as the "penalty" dismissals described in Rule 41(b), that, in appropriate circumstances, may be given the same effect.[26] In addition, stipulated dismissals that are the product of a settlement generally provide for the same result, for defendants almost

---

[21] *See* Shannon, *supra* note 3, at 116–46.

[22] *See* FED. R. CIV. P. 41(a).

[23] *See* 9 WRIGHT & MILLER, *supra* note 5, § 2367, at 554–55 (observing that such dismissals generally are "considered to be without prejudice, which means that it effectively erases the dismissed action and permits the initiation of a second action"). This is not true, though, of a notice of dismissal filed by a plaintiff who previously voluntarily dismissed the same action; in that situation, the second voluntary dismissal by rule "operates as an adjudication on the merits." FED. R. CIV. P. 41(a)(1)(B).

[24] *See* FED. R. CIV. P. 12(b)(6).

[25] *See* Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 399 n.3 (1981) ("The dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a 'judgment on the merits.'"). For this reason, a dismissal for failure to state a claim arguably should not be referred to as a dismissal at all, but rather should be called a motion for judgment on the complaint. Essentially, a dismissal for failure to state a claim functions more like a motion for judgment on the pleadings or for summary judgment, in that it does not simply "operate[] as an adjudication on the merits." *See* FED. R. CIV. P. 41(b). It *is*, in a very real (albeit pretrial) sense, an adjudication on the merits. *See* Shannon, *supra* note 8, at 4 n.11. Of course, in assigning a claim-preclusive effect to a dismissal for a failure to state a claim, care must be taken to determine the proper scope of the prior action. *See id.* Moreover, some courts have recognized a few, limited exceptions to this general rule. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 26 (1982) ("Exceptions to the General Rule Concerning Splitting"). And one legal scholar has suggested that some dismissals of this nature should not be given preclusive effect in a court with a less rigorous pleading regime. *See* Bradley Scott Shannon, *I Have Federal Pleading All Figured Out*, 61 CASE W. RES. L. REV. 453, 491–94 (2011). In the vast majority of cases, though, the presumption that a dismissal for failure to state a claim is claim preclusive should hold sway. *See id.*

[26] *See* FED. R. CIV. P. 41(b) (providing that "[u]nless the dismissal order states otherwise" a dismissal for failure by a plaintiff "to prosecute or to comply with these rules or a court order . . . operates as an adjudication on the merits"). *See also* 18A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION § 4435, at 133–34 (2d ed. 2002) ("The characteristics that determine the extent of preclusion may have little to do with actual resolution of the merits, although the paradigm will always be a judgment entered after full trial of all disputed matters. Thus it is clear that an entire claim may be precluded by a judgment that does not rest on any examination whatever of the substantive rights asserted.").

invariably will insist on the preclusion of any future litigation of the same claims by the same parties as a condition thereto.[27]

But many dismissals lie somewhere between these two extremes. Many dismissals (to use Rule 41 terminology) do not operate as an adjudication on the merits, and yet cannot be said to be completely without prejudice.[28]  And the reason has to do with the distinction between issue and claim preclusion.[29]

Take, for example, a dismissal for lack of subject-matter jurisdiction. Is such a dismissal preclusive with respect to the federal district court that issued it?  Absolutely.[30]  If a plaintiff, having had its action dismissed for lack of subject-matter jurisdiction, were to recommence the same action in the same court, the result would be the same: the action would be dismissed.[31]  The second time, though, the court would not dismiss the action for lack of subject-matter jurisdiction, nor, generally speaking, would it reexamine the propriety of its prior conclusion regarding jurisdiction. Instead, the court would simply observe that it had previously decided this issue (subject-matter jurisdiction) and had held in favor of the defendant.[32] And the same result would inure were the plaintiff to recommence the action in any other federal district court.[33]  The prior dismissal would preclude further litigation.

But what if the plaintiff were to recommence this same action in a *state* trial court?  Would such an action also be subject to dismissal?  Not necessarily, for the issue whether the state court has subject-matter jurisdiction is quite different from the issue confronting the federal court.[34] Thus, such a dismissal has preclusive effect, but only as to the issue

---

[27] *See* 18 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 131.30[3][c][ii], at 131-105 (3d ed. 2013) ("Parties to an action who resolve their disputes prior to trial need to disengage from the litigation by appropriate means.  If the parties intend their resolution to permanently resolve their claims . . . , they can stipulate, pursuant to [Rule] 41(a), to a dismissal with prejudice."); 18A WRIGHT, MILLER & COOPER, *supra* note 26, § 4443, at 265 ("In most circumstances, it is recognized that consent agreements ordinarily are intended to preclude any further litigation on the claim presented . . . ."). Of course, other types of dispositive motions—such as motions for summary judgment—and trials are claim preclusive as well.  *See* Shannon, *supra* note 3, at 134–35.

[28] *See infra* notes 30–33 and accompanying text.

[29] *See* 18 WRIGHT, MILLER & COOPER, *supra* note 26, § 4402, at 7–20. (explaining that after a judgment has been rendered claim preclusion bars any issue relevant to the cause of action—such as duty or breach—between the same parties, but issue preclusion bars only the issues litigated and necessary to the preceding judgment).

[30] *See* 18A *id.* § 4435, at 139.

[31] *Id.*

[32] *See id.* (observing that dismissals for lack of jurisdiction "generally do preclude relitigation of the underlying issue of jurisdiction").

[33] *See id.*

[34] *See id.* (observing that the initial jurisdictional defect must be overcome before a second action may be brought).

decided;[35] it prevents the relitigation of the same action in some, but not all, courts.[36]  All a plaintiff need do to avoid the effects of preclusion is solve the problem that led to the initial dismissal.[37]  With respect to a dismissal for lack of subject-matter jurisdiction, the solution likely would be recommencement in another judicial system.[38]  By contrast, with respect to a dismissal for lack of personal jurisdiction, the problem is not so much the nature of the court, but rather relates more to geography.  The solution likely would involve recommencement in a jurisdiction with a closer connection to the defendant.[39]  For a dismissal for insufficient service of process, better service.[40]  And so on.[41]

And there is one more quantum level of complexity.  In the Introduction, this Article spoke of dismissals having a preclusive effect that is dictated by operation of law.  What is meant by this statement is that the preclusive effect of some dismissals (whatever that effect might be) is a matter of federal common law[42] and generally is not something over which either the parties or the dismissing court have any control.[43]  Admittedly, district courts do have some limited ability to expressly exempt all or part of an action otherwise disposed of from the effects of claim preclusion.[44]

---

[35]  *See id.*

[36]  *See id.*

[37]  *See, e.g., id.* ("[D]ismissals for lack of jurisdiction, for improper venue, or for failure to join a party under Civil Rule 19. . . . should not preclude a second action on the same claim that overcomes the initial defect of jurisdiction, venue, or parties.").

[38]  *See* 18 *id.* § 4402, at 20 ("Dismissal of a suit for want of federal subject-matter jurisdiction, for example, should not bar an action on the same claim in a court that does have subject[-]matter jurisdiction, but ordinarily should preclude relitigation of the same issue of subject-matter jurisdiction in a second federal suit on the same claim.").

[39]  *See* 18A *id.* § 4436, at 168–70 ("Personal jurisdiction is treated like subject-matter jurisdiction. Dismissal for want of personal jurisdiction precludes relitigation of the same issue of jurisdiction, but does not preclude issues not decided and does not preclude a second action on the same claim in a court that can establish personal jurisdiction." (footnotes omitted)).

[40]  *See* 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1353, at 342 (3d ed. 2004).

[41]  *See* RESTATEMENT (SECOND) OF JUDGMENTS § 20 cmt. b (1982) (recognizing and discussing this principle).

[42]  *See* Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 508 (2001) ("[F]ederal common law governs the claim-preclusive effect of a dismissal by a federal court . . . ."). The *Semtek* Court further held, though, that "federal common law" sometimes will require further reference to state preclusion law.  *See id.* ("adopting, as the federally prescribed rule of decision," in that case "the law that would be applied by state courts in the State in which the federal diversity court sits").  *See also* Burbank, *supra* note 7, at 1040 n.60 ("Even read literally, [Rule 41] simply does not speak to the question of the law that otherwise governs the effect of a dismissal.").

[43]  *See* 18 WRIGHT, MILLER & COOPER, *supra* note 26, § 4413, at 312 (recognizing the "general rule that a court cannot dictate preclusion consequences at the time of deciding a first action").

[44]  *See* RESTATEMENT (SECOND) OF JUDGMENTS § 26(1)(b) (1982); 18 WRIGHT, MILLER & COOPER, *supra* note 26, § 4413, at 312–20; *see also* Tobias Barrington Wolff, *Preclusion in Class Action*

But in the vast majority of cases, the preclusive effect of a dismissal just is what it is.[45]  Thus, for example, that a dismissal for failure to state a claim for which relief can be granted is claim preclusive, whereas a dismissal for lack of subject-matter jurisdiction has only issue preclusive effect is, in a practical sense, essentially preordained.[46]  The dismissing court generally is powerless to alter these effects, meaning that in most instances, any language to the contrary properly should be disregarded by the parties and any later court.   As well-explained by the authors of the *Restatement (Second) of Judgments*:

> [A] judgment may not have an effect contrary to that prescribed by the statutes, rules of court, or other rules of law operative in the jurisdiction in which the judgment is rendered.   Thus in a jurisdiction having a rule patterned on Rule 41(b) of the Federal Rules of Civil Procedure, a dismissal for lack of jurisdiction, for improper venue, or for nonjoinder may not be a bar regardless of the specification made.   And even in the absence of such a rule, a dismissal on any of these grounds is so plainly based on a threshold determination that a specification that the dismissal

---

*Litigation*, 105 COLUM. L. REV. 717, 760 (2005) ("Within the parameters established by the applicable preclusion doctrine, . . . the rendering court has many tools at its disposal through which to shape the course of the proceedings and control the positive effects of its judgment," including "those through which the rendering forum can impose constraints—that is, the mechanisms by which it can employ less than the full extent of the authorization that the applicable preclusion doctrine provides in attaching prescriptive force to its judgment").   Such a reservation, though, requires "special reasons," RESTATEMENT (SECOND) OF JUDGMENTS § 26 cmt. b, at 236 (1982), and because there are "few cases that justify this course, [ ] the power of reservation should be sparingly exercised," 18 WRIGHT, MILLER & COOPER, *supra* note 26, § 4413, at 312.   Moreover, to the extent such dismissals are in some sense discretionary, such dismissals presumably could be reversed on appeal for abuse of discretion.   Finally, it bears recalling that "[a] court cannot give its judgment prescriptive force in excess of that authorized by the applicable preclusion rules . . . ."  Wolff, *supra*, at 760.

[45]  *See Semtek*, 531 U.S. at 508.  Of course, if the preclusive effect of a dismissal is dictated by federal common law, a court at some point in the past must have properly determined what that effect should be and announced it in the course of deciding a case, thereby establishing precedent on that issue.   *See* Ronan E. Degnan, *Federalized Res Judicata*, 85 YALE L.J. 741, 742 (1976) (asserting early 19th century courts "shared a common understanding of res judicata in terms of *what* a judgment decided").  It is in this sense that a court today can be said to have no control over that effect; it will not only be obligated to adhere to such precedents, but typically it will also have no normative reason for deviating from them.

[46]  This is not to say that such effects were not different at some point in the past.   Indeed, the preclusive effect of a dismissal for failure to state a claim might be an example of one that has changed, at least in part.  *See* ROBERT C. CASAD & KEVIN M. CLERMONT, RES JUDICATA: A HANDBOOK ON ITS THEORY, DOCTRINE, AND PRACTICE 87–91 (2001) (discussing the evolution of the treatment of "dismissal for insufficiency of complaint").  This is also not to say that such effects could not change to some limited extent in the future, or cannot vary among jurisdictions.   The preclusive effect of a dismissal for expiration of the applicable statute of limitations might be an example of both.   *See id.* at 93–96 (discussing the preclusive effect of "dismissal for statute of limitations").   Still, for present purposes and (again) in the vast majority of cases, there are fairly definite answers to most of these questions, at least as a matter of positive law.

will be a bar should ordinarily be of no effect.[47]

Yet not all dismissals follow this pattern.  For example, a dismissal for improper conduct on the part of a plaintiff might be made claim preclusive.[48]  Or it might not.[49]  For the appropriate penalty (i.e., the severity of the punishment) is a matter within the sound discretion of the district court, depending on the circumstances.[50]  There is no preordained effect and, because of this, the dismissing court must specify what that effect is (at least if it wants to avoid future arguments along this line).[51]  A similar problem arises with respect to voluntary dismissals.  Though Rule 41 generally provides for a default—"without prejudice"[52]—should the parties or the district court fail to specify otherwise, the parties and the court are at liberty to alter that presumption by so providing to the contrary.[53]

---

[47] RESTATEMENT (SECOND) OF JUDGMENTS § 20 cmt. d (1982) (emphasis added).  See also Burbank, *supra* note 7, at 1035 n.33 (quoting Goddard v. Sec. Title Ins. & Guar. Co., 92 P.2d 804, 807 (Cal. 1939)):

> If the intention of the court, gathered from its order or other source, were the test of the effect of the judgment on subsequent actions, the doctrine of res judicata would disappear as a legal principle, and the bar of a judgment would depend wholly upon the whim of the first judge, or, more probably, on the form of the proposed order drafted by successful counsel.

Presumably, this also means that a failure on the part of a later court to respect such effects (whatever they are) constitutes reversible error.

[48] See, for example, both FED. R. CIV. P. 37(b)(2) and FED. R. CIV. P. 41(a)(2), which provide a court discretion regarding whether a dismissal for improper conduct is with or without prejudice.

[49] *See* Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 643 (1976) (holding that the district court did not abuse its discretion in dismissing the underlying action pursuant to Rule 37(b)(2), though acknowledging that the court properly might have imposed a lesser sanction).

[50] 8B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2289, at 537 (3d ed. 2010) ("Rule 37(b)(2) gives the court a broad discretion to make whatever disposition is just in the light of the facts of the particular case.").

[51] *See* CASAD & CLERMONT, *supra* note 46, at 97–98 ("Dismissals for failure to prosecute the claim, or penalty dismissals for failure to comply with the rules or orders of the court, are prime examples of such judgments in state or federal court.").  Alternatively, the law could provide for some sort of default effect should the dismissing court fail to so specify, and Rule 41 currently so provides.  *See* FED. R. CIV. P. 41(b) (providing generally that an involuntary dismissal, "[u]nless the dismissal order states otherwise, . . . operates as an adjudication on the merits").

[52] *See* FED. R. CIV. P. 41(a)(1)(B)–(2).

[53] *See id.*  Of course, neither the parties nor the district court can compel a later court to respect these choices.  But as in the preordained effect context, a failure to respect the parties' or the court's designation in this context likewise would constitute reversible error.  *See supra* note 47 and accompanying text.

### III. RULE 41 AND ITS DISCONTENTS

With the foregoing understanding of dismissals and their various preclusive effects in mind, it is time to turn our attention to Rule 41 and determine whether and to what extent this rule reflects this understanding and otherwise accomplishes its apparent purposes.  When seen in this light, several problems with Rule 41 are revealed.   Though many of these problems are fairly innocuous, some are quite serious.

But before beginning, and out of respect to those who played a role in the drafting of Rule 41, a word might be said about the nature of that endeavor.   Because of the many different bases for dismissal, the differences in the procedures relating to voluntary and involuntary dismissals, and the wide range of preclusive effects, some of which are determinate and some of which are not, the formulation of a single rule on this topic is a difficult task.   The primary difficulty, though, lies not in the length of the rule; many rules are longer.[54]   Rather, the difficulty is trying to coherently capture the variety that is inherent in this concept.   But a proposed rule is the topic of the next Part.   The purpose of this Part is to show how Rule 41 in its current form falls short.

### A. The Scope of Rule 41

One fairly obvious problem with Rule 41 relates to its scope.   Rule 41 begins by speaking only of original claims—that is, claims by a plaintiff against a defendant[55]—though later, it also provides for the dismissal of counterclaims, crossclaims, and third-party claims.[56]   But there are other types of claims not accounted for by this rule.   For example, it might be possible for a third-party defendant to assert a claim against an original plaintiff,[57] or for that plaintiff to assert a claim against a third-party defendant.[58]   It is unclear why Rule 41 does not expressly provide for the dismissal of all claims.

### B. The Disparate Treatment of Claimants

Rule 41 provides that a plaintiff may obtain a dismissal by notice if filed "before the opposing party serves either an answer or a motion for

---

[54] *See, e.g.*, FED. R. CIV. P. 4; FED. R. CIV. P. 26.

[55] *See* FED. R. CIV. P. 41(a)–(b).

[56] *See id.* 41(c).

[57] *See* FED. R. CIV. P. 14(a)(2)(D).

[58] *See id.* 14(a)(3).

summary judgment."[59]   But with respect to other types of claims, Rule 41 provides that the notice of dismissal must be filed "before a responsive pleading is served" or "if there is no responsive pleading, before evidence is introduced at a hearing or trial."[60]   There does not seem to be any strong reason for treating original claims different from other types of claims with respect to the deadline for the filing of a notice of dismissal. Absent such a reason, the disparate treatment of claimants with respect to this deadline seems unduly complicating, if not unfair.[61]

### C. The Dismissal of Fewer Than All Claims

Rule 41 permits the "voluntary dismissal" of an "action,"[62] whereas a defendant may move for an "involuntary dismissal" with respect to "the action or any claim against it."[63]   It is unclear whether the drafters of Rule 41(a) intended that the word "action" be given its technical meaning in this context.[64]   Though general principles of textual interpretation might suggest that it should,[65] commentators have suggested that such a reading makes little sense, for there does not seem to be a strong reason for preventing the voluntary dismissal of fewer than all claims,[66] particularly considering that Rule 15(a) permits essentially the same result via amendment.[67]

### D. The Bases for Involuntary Dismissal

Though Rule 41 does not expressly mention all of the possible bases for dismissal, it does provide for a dismissal (or at least the possibility of a dismissal) "[i]f the plaintiff fails to prosecute or to comply with these rules

---

[59] FED. R. CIV. P. 41(a)(1)(A)(i).

[60] *Id.* at 41(c)(1)–(2).

[61] It also might be observed that a "responsive pleading" to a counterclaim, crossclaim, or third-party claim (or, presumably, any other type of claim) likewise is now an answer.   *See* FED. R. CIV. P. 7(a). There is, therefore, no longer any compelling reason for using the former phrase.   Moreover, it is unclear why the alternative deadline provided for in Rule 41(c)—"before evidence is introduced at a hearing or trial"—is contingent upon the absence of such a "responsive pleading."   FED. R. CIV. P. 41(c). Though it is always possible that a defending party might fail to file and serve an answer to a counterclaim, crossclaim, or third-party claim, this possibility seems remote, given that such a response is required. *See* FED. R. CIV. P. 7(a).

[62] *See* FED. R. CIV. P. 41(a).

[63] *See id.* 41(b).

[64] *See id.* 41 advisory committee's notes.

[65] *See* 8 MOORE, *supra* note 27, ¶ 41.13[6], at 41-25 (concluding that "Rule 15(a) is the preferred method for eliminating claims, as the courts have held that the dismissal of an 'action' under Rule 41 does not include fewer than all claims against any particular defendant").

[66] *See, e.g.*, 9 WRIGHT & MILLER, *supra* note 5, § 2362, at 409–14.

[67] *See infra* notes 126–27 and accompanying text (discussing the operation of this rule).

or a court order."[68]   Each of these three bases for involuntary dismissal is well-established,[69] and each seems justifiable.  But it also seems that there might be other types of improper conduct by plaintiffs that are not covered by this (or any other) rule.  Though some types of improper conduct might be sanctionable pursuant to a federal statute[70] or even the court's inherent power,[71] it seems theoretically possible that there could be some types of improper conduct that might fall outside of both.  There is, therefore, no obvious reason why the "penalty" dismissals provided for in Rule 41 should be limited to these three particular bases.

### E. The Preclusive Effect of Dismissals

Setting aside (for the moment) any possible Rules Enabling Act concerns, there appear to be four main preclusion-related problems with Rule 41: (1) the terminology employed by the current rule; (2) the failure to expressly provide for all involuntary dismissals lacking claim-preclusive effect, and therefore exempt from the presumption that such dismissals operate as an adjudication on the merits; (3) the proper treatment of involuntary dismissals whose preclusive effect is dictated by operation of law; and (4) the proper treatment of voluntary and involuntary dismissals lacking any sort of preordained claim-preclusive effect.  Each of these four problems is discussed below.

*1.   Terminology.* — The first preclusion-related problem with Rule 41 involves its choice of terminology.[72]  The rule generally speaks of voluntary dismissals as presumptively being "without prejudice."[73]  By contrast, an involuntary dismissal—"except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19"—presumptively "operates as an adjudication on the merits."[74]   As a means of expressing preclusive effect, though, the phrase, "without prejudice" (as well as the companion phrase "with prejudice") has long been a source of some confusion.[75]  The

---

[68]  FED. R. CIV. P. 41(b).

[69]  *See, e.g.,* 18A WRIGHT, MILLER, & COOPER, *supra* note 26, § 4435, at 139–40 (discussing general treatment by courts of each basis for involuntary dismissal).

[70]  *See, e.g.,* 28 U.S.C. § 1927 (2012) ("Counsel's liability for excessive costs").

[71]  *See, e.g.,* Chambers v. NASCO, Inc., 501 U.S. 32, 35 (1991) (holding that federal courts have some inherent power to sanction litigants for bad-faith conduct).

[72]  *See* CASAD & CLERMONT, *supra* note 46, at 86 (explaining that misleading terminology, such as "prejudice" and "on the merits," fail to distinguish "which judgments have bar effect").

[73]  FED. R. CIV. P. 41(a)(1)(B)–(2).  There is one exception: "if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits."  *Id.* at 41(a)(1)(B).

[74]  *Id.* at 41(b).

[75]  *See, e.g., Developments in the Law: Res Judicata,* 65 HARV. L. REV. 818, 838 (1952) ("It may be

same is true of the phrase "operates as an adjudication on the merits,"[76] which also lacks parallelism.    Moreover, though "operates as an adjudication on the merits" generally had been understood as meaning claim-preclusive effect,[77] that understanding was changed by the Supreme Court in *Semtek*,[78] which interpreted this phrase as meaning only that it prevents the recommencement of the same action in the same federal district court.[79]   This interpretation, though perhaps accurate as far as it goes, does not accurately reflect the full preclusive effect of dismissals that are said to so operate, some of which further preclude the recommencement of the same action in other federal district courts, other state courts, or even all courts.[80]

    2.  *Involuntary Dismissals Lacking Claim-Preclusive Effect.* — A more serious problem relates to the list of involuntary dismissals lacking claim-preclusive effect set forth in Rule 41.  Rule 41 provides, in part: "Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits."[81]   But this list of exceptions is incomplete.

---

provided by rule that a dismissal will be 'with prejudice' unless the contrary is expressed by the court, or 'without prejudice' unless the court otherwise specifies.  The meaning of these phrases therefore is significant; unfortunately they have not been used uniformly." (footnote omitted)).

    [76] FED. R. CIV. P. 41(b).   The RESTATEMENT (SECOND) OF JUDGMENTS § 19 cmt. a (1982), expresses:

> It is frequently said that a valid and final personal judgment for the [defendant] will bar another action on the same claim only if the judgment is rendered "on the merits."  The prototype case continues to be one in which the merits of the claim are in fact adjudicated against the plaintiff after trial of the substantive issues.  Increasingly, however, by statute, rule, or court decision, judgments not passing directly on the substance of the claim have come to operate as a bar.  Although such judgments are often described as "on the merits" or as "operating as an adjudication on the merits," that terminology is not used here in the statement of the general rule because of its possibly misleading connotations.

    [77] *See id.*
    [78] Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497 (2001).
    [79] *See id.* at 506.  Many have found the *Semtek* Court's interpretation dubious, at best.  *See, e.g.*, 8 MOORE, *supra* note 27, ¶ 41.50[7][a], at 41-197 ("The Court's interpretation of adjudication on the merits under Rule 41(b) to not include a traditional res judicata effect is completely inconsistent with well established judicial interpretation.").  *Cf.* Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 396 (1990) ("'Dismissal without prejudice' is a dismissal that does not 'operate as an adjudication [on] the merits,' Rule 41(a)(1), and thus does not have a res judicata effect.").   Regardless, the Court's interpretation is binding until *Semtek* is overruled or Rule 41 is amended.
    [80] *See supra* notes 22–41 and accompanying text.  *See also* 18A WRIGHT, MILLER & COOPER., *supra* note 26, § 4435, at 132–33 (describing "on the merits" as "an unfortunate phrase, which could easily distract attention from the fundamental characteristics that entitle a judgment to greater or lesser preclusive effects").
    [81] FED. R. CIV. P. 41(b).

Dismissals for insufficient process[82] or for insufficient service of process[83] likewise do not operate as adjudications on the merits.[84]  There are others.[85]  This oversight has led to problems, for "[a]lthough the language of the rule may seem clear, some of the results that seem clearly dictated are so plainly untenable that sound decisions have been reached only with considerable artistry or without cogent analysis."[86]

One such example can be found in *Costello v. United States*.[87]  At issue in *Costello* was whether a dismissal for failure to file the affidavit of good cause in a prior denaturalization proceeding "barred" the United States from "instituting the present proceeding."[88]  The Supreme Court recognized that "[a]t common law dismissal on a ground not going to the merits was not ordinarily a bar to a subsequent action on the same claim,"[89] and therefore that "the failure of the Government to file the affidavit of good cause in a denaturalization proceeding does not present a situation calling for the application of the policy making dismissals operative as adjudications on the merits."[90]  At the same time, the Court observed that this sort of dismissal was not one of the exceptions expressly provided for in Rule 41(b), and that the district court in the earlier proceeding also had failed to specify "whether the dismissal was with or without prejudice."[91]  Yet, the Court did not "discern in Rule 41(b) a purpose to change this common-law principle with respect to dismissals in which the merits could not be reached for failure of the plaintiff to satisfy a precondition."[92]  Accordingly, "[i]n defining the situations where dismissals 'not provided for in this [R]ule' also operate as adjudications on the merits, and are not to be deemed jurisdictional, it seems reasonable to confine them to those situations where the policy behind the enumerated grounds is equally

---

[82]  *See* FED. R. CIV. P. 12(b)(4).

[83]  *See id.* 12(b)(5).

[84]  *See* CASAD & CLERMONT, *supra* note 46, at 87 ("[D]ismissals for . . . inadequate notice . . . do not have bar effect.").  This might be true even under the interpretation of "operates as an adjudication on the merits" adopted by the Supreme Court in *Semtek*.

[85]  *See* 18A WRIGHT, MILLER & COOPER, *supra* note 26, § 4435, at 140 ("There are many grounds of dismissal that do not seem to fall within the categories 'provided for in this rule' and yet clearly should not—and do not—operate as an adjudication that precludes a second action on the same claim.").  *See also* Burbank, *supra* note 7, at 1044 (recalling Charles E. Clark's warning during the drafting of Rule 41 that "'listing is always dangerous because of possible omissions'").

[86]  18A WRIGHT, MILLER & COOPER, *supra* note 26, § 4435, at 138–39 (footnote omitted).  *See also id.* at 140 (observing further that this portion of Rule 41(b) "has caused substantial difficulty").

[87]  Costello v. United States, 365 U.S. 265 (1961).

[88]  *Id.* at 268, 288.

[89]  *Id.* at 285.

[90]  *Id.* at 287.

[91]  *Id.* at 284.

[92]  *Id.* at 286.

applicable."[93]   The Court therefore held "that a dismissal for failure to file the affidavit of good cause is a dismissal 'for lack of jurisdiction,' within the meaning of the exception under Rule 41(b)."[94]   Rationalizing its holding, the Court continued:

> Nothing in the term "jurisdiction" requires giving it the limited meaning that the petitioner would ascribe to it.  Among the terms of art in the law, "jurisdiction" can hardly be said to have a fixed content.  It has been applied to characterize other prerequisites of adjudication which will not be re-examined in subsequent proceedings and must be brought into controversy in the original action if a defendant is to litigate them at all.[95]

The *Costello* Court almost certainly reached the correct result regarding the preclusive effect of the dismissal in question, but having to achieve that result by characterizing a dismissal for failure to file an affidavit of good cause as "jurisdictional" seems regrettable.[96]  Obviously, the problem here is the rule.

One might argue that the problem in *Costello* could have been avoided had the district court in the earlier proceeding "stated otherwise" and specified that its dismissal was not to operate as an adjudication on the merits.[97]  But this seems like a curious (not to mention somewhat onerous) requirement with respect to a dismissal whose preclusive effect is essentially fixed as a matter of federal common law.  And of course, if the district court fails to do so (as was the case in *Costello*),[98] the problem is not averted.

A variation of the same problem occurred in *Semtek*.[99]  In *Semtek*, the district court—adopting language proposed by the defendant—dismissed the underlying action for expiration of the applicable statute of limitations "'on the merits and with prejudice.'"[100]   To the extent this language manifested an intent to give this dismissal claim-preclusive effect, this effort appears to have been misguided, and the Supreme Court ultimately

---

[93] *Id.*

[94] *Id.* at 285.

[95] *Id.* at 287–88.

[96] *Cf.* Sebelius v. Auburn Reg'l Med. Ctr., No. 11-1231, slip op. at 6 (U.S. Jan. 22, 2013) (observing that "jurisdiction" "'has been a word of many, too many, meanings,'" and that "we have tried in recent cases to bring some discipline to the use of the term" (quoting Steel Co. v. Citizens for Better Environment, 523 U.S. 83, 90 (1998))).

[97] *See Costello*, 365 U.S. at 268 (noting the district court did not specify whether its dismissal was to operate as an adjudication on the merits).

[98] *See id.*

[99] Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497 (2001).

[100] *Id.* at 499.

rejected such a result.[101]   But rather than characterize this dismissal as jurisdictional, as the Court had done in *Costello*, the *Semtek* Court instead interpreted the phrase "operates as an adjudication [on] the merits" for purposes of Rule 41(b) as meaning only that the dismissal precluded the relitigation of a defense based on the same statute of limitations in the same federal district court.[102]   The full preclusive effect of such a dismissal, according to the Court, was not provided for in Rule 41, but rather was (again) a matter of federal common law.[103]

Though the *Semtek* Court, therefore, did not decide whether the California federal district court's dismissal order barred the refiling of the same action in Maryland, the Court speculated that it should not.[104]  If that is true, then a dismissal for expiration of the applicable statute of limitations (at least for the purpose of that case) is yet another example of a dismissal lacking claim-preclusive effect but not exempted from default "adjudication on the merits" treatment under Rule 41(b).[105]   Though this would seem to be another occasion in which a district court should "state otherwise"—something (again) a district court seemingly should not have to do—the irony here is that the district court in *Semtek* did supplement its dismissal order with express language regarding its claim-preclusive effect.[106]  The problem (unless one agrees with the Supreme Court's interpretation of Rule 41 and what it means to operate as an adjudication on the merits) was that the district court got it wrong.  The district court should have said that its dismissal did *not* operate as an adjudication on the merits (or, more accurately, that it might not, depending upon the nature of the court in which the action is recommenced).   Yet, if the district court had said nothing—i.e., if it had simply stated the basis for the dismissal (expiration of the statute of limitations), but no more—the Supreme Court would have found itself in the same awkward position.

A final problem with this portion of Rule 41(b) concerns its failure to specify the preclusive effect of those involuntary dismissals as to which the usual presumption does *not* apply.  Does this mean that dismissals "for lack

---

    [101]  *See id.* at 509 (concluding that "there is no conceivable federal interest in giving that time bar more effect in other courts than the California courts themselves would impose").   There was, though, no appeal of the district court's ruling (at least insofar as the language used), *see id.* at 499, an unfortunate fact that might have led in part to the Court's rather convoluted interpretation of Rule 41(b) and the meaning of the phrase "operates as an adjudication [on] the merits."  *See id.* at 506.
    [102]  *See id.* at 506.
    [103]  *See id.* at 508.
    [104]  *See id.* at 508–09 (discussing the "traditional rule" in this regard).
    [105]  *See id.* at 508–09; *see also supra* notes 28–41 and accompanying text.
    [106]  *See id.* at 499.

of jurisdiction, improper venue, or failure to join a party under Rule 19"[107] have no preclusive effect whatsoever? No. Rather, "[t]his provision means only that the dismissal permits a second action on the same claim that corrects the deficiency found in the first action. The judgment remains effective to preclude relitigation of the precise issue of jurisdiction or venue that led to the initial dismissal."[108] Though this failure to specify this effect does not, of itself, seem like a serious problem, it seems somewhat odd considering the effect of other involuntary dismissals *is* specified.

*3. Involuntary Dismissals Having Claim-Preclusive Effect.* — Yet another problem with Rule 41—perhaps the most significant problem—relates to those dismissals that *do* have claim-preclusive effect.

As discussed previously, the preclusive effect of many dismissals (whatever that is) is dictated by operation of law.[109] At least one of those dismissals—a dismissal for failure to state a claim upon which relief can be granted—typically precludes the relitigation of the same action.[110] Again, Rule 41 provides that, "[u]nless the dismissal order states otherwise," such dismissals operate "as an adjudication on the merits."[111] But, as interpreted by the Court in *Semtek*, the phrase "operates as an adjudication [on] the merits" now means only that it prevents the relitigation of the same claim in the same federal district court.[112] The rule therefore does not fully reflect the effect of such a dismissal.[113]

Moreover, Rule 41 provides no guidance as to when it might be appropriate for a district court to issue an order that states otherwise, and thus it almost seems to invite those courts to attempt to alter that which cannot be altered, and purport to make that which is preclusive, not, and

---

[107] FED. R. CIV. P. 41(b).

[108] 18A WRIGHT, MILLER & COOPER, *supra* note 26, § 4436, at 149 (footnote omitted).

[109] *See supra* notes 42–47 and accompanying text.

[110] *See supra* note 25 and accompanying text.

[111] FED. R. CIV. P. 41(b).

[112] *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505–06 (2001).

[113] Indeed, the Court's interpretation in *Semtek* did not even accurately reflect the full preclusive effect of the dismissal (for expiration of the California statute of limitations) in that case, a dismissal that presumably would also have had a preclusive effect in a California *state* court. *See Semtek*, 531 U.S. at 508 (adopting "the law that would be applied by state courts in the state in which the federal diversity court sits"). See also RICHARD H. FALLON, JR. ET AL., HART & WECHSLER'S THE FEDERAL COURTS AND THE FEDERAL SYSTEM 595 (6th ed. 2009):

> Instead of reading [Rule 41(b)] to provide for claim preclusive effect in only one court (the court that dismissed the action) but not in others, the Court might more plausibly have construed the rule as rendering a dismissal falling within its terms eligible for claim preclusive effect in any court, but only if that effect was required by the governing law of preclusion (in [*Semtek*], federal common law). That interpretation would have avoided a novel and confusing distinction between the rendering court and other courts.

vice versa.[114]  So long as the district court does *not* state otherwise, and attempt to give a dismissal a preclusive effect other than what it has by operation of law, no problem arises.[115]  Regrettably, sometimes district courts (such as the district court in *Semtek*)[116] make mistakes in this regard, and Rule 41 seems to require that those mistakes be respected.

    *4.  Voluntary and Involuntary Dismissals Lacking Preordained Claim-Preclusive Effect*. — As discussed previously, the preclusive effect of many dismissals is essentially dictated by operation of law.  But some dismissals, such as the "penalty" dismissals described in Rule 41(b),[117] have no preordained preclusive effect.  A district court conceivably (and properly) could make such dismissals completely without prejudice (i.e., with no claim-preclusive effect whatsoever), completely claim preclusive, or perhaps something in between.[118]  As to these types of involuntary dismissals—though only as to these types—Rule 41 properly provides for such exercises of discretion.[119]  Judges must be allowed to say what they are allowed to do.  The same is true of voluntary dismissals, such as a voluntary dismissal that is the product of a settlement by the parties.  In that situation, the parties, if desired, must be able to avoid the default effect provided for in the rule ("without prejudice")[120] and stipulate that such a dismissal has a claim-preclusive effect.

## IV. A Proposed Solution

    There is no need to tolerate the problems with Rule 41 identified in Part III or to rely upon imaginative reconstructions of rule text in order to reach correct results.  At the same time, there does not seem to be any need to eliminate Rule 41 entirely or to redraft it from scratch.  Rule 41 can be

---

[114]  *See* 18A Wright, Miller & Cooper, *supra* note 26 § 4435, at 139 (footnotes omitted):

> Dismissal [for lack of jurisdiction, improper venue, or failure to join a party under Rule 19] indeed should not preclude a second action on the same claim that overcomes the initial defect of jurisdiction, venue, or parties.  Despite some possible ambiguity in the language of the rule, moreover, the court should not have any option to provide that such a dismissal does operate as an adjudication that bars a second action.  At the same time, such dismissals generally do preclude relitigation of the underlying issue of jurisdiction, venue, or party joinder.

[115]  *Id.* at 135–37.
[116]  *See Semtek*, 531 U.S. at 499.
[117]  *See* Fed. R. Civ. P. 41(b) (providing for a dismissal "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order").
[118]  *See supra* notes 50–53 and accompanying text.
[119]  *See* 9 Wright & Miller, supra note 5, § 2369, at 591–94.
[120]  Fed. R. Civ. P. 41(a)(1)(B).

Case 1:18-cv-00361-JBW-RLM   Document 143   Filed 07/16/18   Page 19 of 36 PageID #: 1888

saved, but it should be amended. Some of the problems with Rule 41 can be corrected fairly easily. But some of the problems—particularly those relating to the preclusive effect of dismissals—are more difficult and require more creative solutions.

### A. Symmetry Between Claims and Claimants

*1. Inclusion Of All Types of Claims.* — Regarding its scope, it seems that Rule 41 should provide for the dismissal of *all* claims that may be stated in an action, and not just original claims, counterclaims, crossclaims, and third-party claims. Though other types of claims might be relatively rare, there does not seem to be any reason to exclude them.[121] Like the more common types of claims, those other types of claims also must be adjudicated or otherwise disposed of in some appropriate manner.

*2. Equal Treatment of Claimants.* — Just as Rule 41 should apply equally to all claims, so should it apply with respect to all claimants. Among other things, this means that the deadline for the filing of a notice of dismissal by any claimant should be functionally the same. And of the alternative deadlines for the filing of a notice of dismissal currently provided for in the rule—either a) before the service of "an answer or a motion for summary judgment,"[122] or b) "before a responsive pleading is served,"[123] or "if there is no responsive pleading, before evidence is introduced at a hearing or trial"[124]—the former seems the more sensible. Rule 41 should so provide in all contexts.

*3. Voluntary Dismissal of Fewer Than All Claims.* — Just as Rule 41(b) provides for the involuntary dismissal of "the action or any claim,"[125] it seems that Rule 41(a) also should expressly provide for the *voluntary* dismissal of fewer than all of the claims in the action.

Admittedly, such an amendment would result in some overlap with Rule 15, the rule that governs the amendment of pleadings. Rule 15 permits a party to amend its pleading (an amendment that presumably could result in the elimination of a claim or claims) "once as a matter of course" if done within "21 days after serving it" or the earlier of "21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f)."[126] Alternatively, Rule 15 provides that a party may amend its

---

[121] *See* 9 WRIGHT & MILLER, *supra* note 5, § 2362, at 409–14.
[122] FED. R. CIV. P. 41(a)(1)(A)(i).
[123] *Id.* 41(c)(1).
[124] *Id.* 41(c)(2).
[125] *Id.* 41(b).
[126] FED. R. CIV. P. 15(a)(1).

pleading "with the opposing party's written consent or the court's leave."[127]
A side-by-side comparison shows that there is probably little, if anything,
that could be voluntarily dismissed pursuant to Rule 41(a), even if amended
as proposed in this Article, that could not be accomplished via Rule
15(a).[128]  But Rule 15 *itself* could be amended and, in any event, the desire
for symmetry between voluntary and involuntary dismissals seems to
outweigh the cost of any redundancy.

## B. Expansion of the "Penalty" Dismissals

Though Rule 41 currently provides for the involuntary dismissal of an
action or claim on certain grounds (failure to prosecute or to comply with
the Rules or a court order[129]), it does not expressly so provide with respect
to other types of improper conduct.  It seems that Rule 41 either should go
one way or the other—i.e., either it should not specifically mention *any*
grounds for dismissal, or it should provide for all of them, at least with
respect to "penalty"-type dismissals (to the extent that such dismissals are
the proper subject for a federal rule and not provided for elsewhere in the
Rules).  There does not seem to be any strong reason for providing for some
such dismissals, but not all of them.[130]   And of these two alternatives, the
latter seems the more preferable.[131]   In part, this is due to tradition, and the
fact that Rule 41 has always provided for such dismissals, at least to some
extent.[132]  But it is also based on what seems to be some perceived need for
a provision of this nature.[133]  Some types of improper conduct might not be
proper subjects for the invocation of a federal district court's inherent
power.[134]  A more universal "penalty"-type provision also would avoid the

---

[127]   *Id.* 15(a)(2).
[128]   *Compare* FED. R. CIV. P. 41(a) (providing a plaintiff may dismiss an action unilaterally or by consent),
*with* FED. R. CIV. P. 15(a) (providing a plaintiff may dismiss parties by unilaterally or consensually amending the
complaint), *and* a revised version of Rule 41 that includes all of the changes proposed *infra* app. B
(providing a plaintiff may dismiss by filing a timely notice of dismissal or by a consensual stipulation signed by
all parties).
[129]   *See* FED. R. CIV. P. 41(b).
[130]   *See* 9 WRIGHT & MILLER, *supra* note 5, § 2369, at 578–94.
[131]   Of course, in fairness, Rule 55 should probably be amended as well to provide for a default
judgment in the event of improper conduct by a *defendant*.  *See* Shannon, *supra* note 3, at 126 n.254
(discussing this "apparent oversight").  But that is a matter that is beyond the scope of this Article.
[132]   *See* 9 WRIGHT & MILLER, *supra* note 5, § 2361, at 406–07 (stating Rule 41 has change very little
substantively over the years).
[133]   *See* 9 WRIGHT & MILLER, *supra* note 5, § 2369, at 609–13 (noting the circuits echo similar sentiments
that "'a serious showing of willful default'" warrants the harsh penalty of Rule 41(b) (footnote omitted)).
[134]   *See* MARTIN H. REDISH, FEDERAL JURISDICTION: TENSIONS IN THE ALLOCATION OF JUDICIAL
POWER 20–22 (2d ed. 1990) (1980) (challenging generally the inherent rulemaking power of the federal
courts).

need to catalog all of the various types of behavior (failure to prosecute, failure to comply with a court order, etc.) that might lead to the invocation of this rule.

Some might object on the ground that the procedures for dealing with some types of improper conduct are already included elsewhere in the Rules.[135]  But this is true of current Rule 41 as well and, in line with conventional rules of textual interpretation, the particular, rather than the general, presumably would take priority.[136]  Some also might object on the ground that not all instances of improper conduct call for a dismissal.  But the same is also true of the grounds for dismissal currently provided for in Rule 41.[137]  Some measure of discretion is probably going to attach to any provision of this nature, with a dismissal with claim-preclusive effect simply marking the outer limit of a range of potential punishments.

### C. Changes With Respect to Preclusion-Related Issues

Again, the greatest challenges with respect to Rule 41 dismissals relate to their preclusive effect.  One challenge relates to the terminology currently being used and how that terminology has been interpreted by the Supreme Court.[138]  But the bigger challenge relates to how to account for dismissals whose preclusive effect is dictated by operation of law and, at the same time, provide for dismissals whose preclusive effect is not, all without running afoul of the Rules Enabling Act.[139]

*1. Terminology.* — In order to avoid the ambiguities and interpretive baggage associated with terms such as "without prejudice" and "operates as an adjudication on the merits,"[140] Rule 41, as necessary and appropriate, should instead speak only of the preclusive effect of a dismissal.  The alternative would be stipulated definitions of current terms but, given their history, a clean break from the past seems warranted.  "Claim preclusion" and "issue preclusion" have fairly well-established meanings and therefore appear to be superior ways of describing dismissals that have (or are

---

[135] *See, e.g.*, FED. R. CIV. P. 11 ("Signing Pleadings, Motions, and Other Papers; Representations to the Court; Sanctions"); FED. R. CIV. P. 37 ("Failure to Make Disclosures or to Cooperate in Discovery; Sanctions").

[136] *See* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 183–88 (2012) (discussing the "General/Specific Canon").

[137] *See* 9 WRIGHT & MILLER, *supra* note 5, § 2369, at 609–14 (noting federal courts consider lesser sanctions before imposing Rule 41).

[138] *See supra* notes 72–80 and accompanying text.

[139] *See* 28 U.S.C. § 2072(b) (2012) (stating "[s]uch rules shall not abridge, enlarge or modify any substantive right"); *supra* notes 42–53 and accompanying text.

[140] *See* FED. R. CIV. P. 41; *supra* notes 72–80 and accompanying text.

intended to have) such preclusive effects.[141]  Such a change also would pave the way for a rule governing dismissals that accommodates the true preclusive effects thereof.

   *2.  Dismissals Whose Preclusive Effect Is Dictated by Operation of Law.* — As discussed previously, the preclusive effect of many dismissals, such as those described in Rule 12(b), is essentially preordained.  Of those dismissals, some have claim-preclusive effect, but most only preclude the relitigation of the issue that resulted in the dismissal.[142]  The question, then, is how to account for this variety in a rule like Rule 41.

   One approach would be to do what Rule 41 does currently: adopt a presumption or default, but provide for exceptions.[143]  But, in order to utilize that approach, several obstacles must be overcome.  The first is the formulation of an appropriate default.  In the involuntary dismissal context, claim preclusion seems like the best option, for at least it marks the outer limit of any such effects.

   However, even if Rule 41 were to prescribe such a default, a second obstacle, one that exists currently, arises.  Because many dismissals do not have claim-preclusive effect, some dismissals would have to be exempted from this presumption and, as discussed previously, the list of such dismissals currently found in Rule 41 is incomplete.  Though one solution might be to compile a more complete list, such an endeavor probably would be prone to underinclusiveness.  The better solution, it seems, would be to eliminate any reference to any such a list.

   This raises a third obstacle.  For those dismissals that do not have claim-preclusive effect, the district court would have to specify a different, more appropriate preclusive effect.[144]  However, this seems like an odd requirement with respect to those dismissals whose preclusive effect is already dictated by operation of law.  Indeed, with respect to such dismissals, it makes little sense even to provide for a default.  Accordingly, in this context, it seems that the best solution of all would be to forgo the

---

   [141]  *See, e.g.*, 18 WRIGHT, MILLER & COOPER, *supra* note 26, § 4402, at 12 ("The distinction between claim preclusion and issue preclusion achieves greater clarity of expression, and at times seems to contribute to greater clarity of thought."); *id.* at 7 ("Although the time has not yet come when courts can be forced into a single vocabulary, substantial progress has been made toward a convention that the broad 'res judicata' phrase refers to the distinctive effects of a judgment separately characterized as 'claim preclusion' and 'issue preclusion.'").

   [142]  *See supra* notes 42–53 and accompanying text.

   [143]  *See* FED. R. CIV. P. 41(a)(1)(B)–(b) (providing the current defaults of without prejudice for a voluntary dismissal and with prejudice for an involuntary dismissal).

   [144]  *See supra* notes 50–53 and accompanying text.

specification of preclusive effects and simply defer to established federal common law.[145]

Thus, with respect to those dismissals whose preclusive effect is dictated by operation of law, certainly the district courts should be allowed to state the *grounds* for the dismissal (e.g., lack of subject-matter jurisdiction).[146]   But Rule 41 should not say anything regarding the *preclusive effect* of such dismissals, for nothing need (or should) be said.  In addition to leading to more correct results, such a rule seemingly would avoid any Rules Enabling Act problems associated with the specification of preclusive effects therein.[147]

---

[145] *Cf.* 18A WRIGHT, MILLER & COOPER, *supra* note 26, § 4435, at 140:

> Courts have not yet come upon it, but the best way to reconcile these results with the language of the rule is to find that these dismissals have only the preclusive effect as an adjudication on the merits that is appropriate to the circumstances.  Issue preclusion is generally appropriate as to the precise issues resolved, and the dismissal operates as an adjudication on the merits to that extent.  Analysis independent of the language of the rule may show that claim preclusion is also appropriate.  Only then should the dismissal operate as an adjudication on the merits of the claim as well as the issues actually decided.

[146] *See* Earl C. Dudley, Jr. & George Rutherglen, *Deforming the Federal Rules: An Essay on What's Wrong with the Recent* Erie *Decisions*, 92 VA. L. REV. 707, 726 (2006) ("Even if the Federal Rules do not, by themselves, determine issues of preclusion, they operate as part of a procedural system in which they provide the conditions and structure under which these issues are resolved.").

[147] *See* Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 503 (2001) (describing Rule 41 as "a highly peculiar context in which to announce a federally prescribed rule on the complex question of claim preclusion, saying in effect, 'All federal dismissals (with three specified exceptions) preclude suit elsewhere, unless the court otherwise specifies'").  Indeed, the *Semtek* Court later noted:

> We do not decide whether, in a diversity case, a federal court's "dismissal upon the merits" (in the sense we have described), under circumstances where a state court would decree only a "dismissal without prejudice," abridges a "substantive right" and thus exceeds the authorization of the Rules Enabling Act.  We think the situation will present itself more rarely than would the arguable violation of the Act that would ensue from interpreting Rule 41(b) as a rule of claim preclusion; and if it is a violation, can be more easily dealt with on direct appeal.

*Id.* at 506 n.2.  But if Rule 41 were to be amended so as to prevent this label from being affixed to dismissals to which it does not apply, this problem would never arise.  Surely, that would be a better solution.  The Court also noted:

> Rule 41(b), interpreted as a preclusion-establishing rule, would not have the two effects described in the preceding paragraph—arguable violation of the Rules Enabling Act and incompatibility with [Erie R.R. v. Thompkins, 304 U.S. 64[] (1938)]—if the court's failure to specify an other-than-on-the-merits dismissal were subject to reversal on appeal whenever it would alter the rule of claim preclusion applied by the State in which the federal court sits.  No one suggests that this is the rule, and we are aware of no case that applies it.

*UNIVERSITY OF LOUISVILLE LAW REVIEW*                    [Vol. 52:265

Of course, even if Rule 41 were to say nothing about preclusion with respect to those dismissals whose preclusive effect is dictated by operation of law, there is still at least one additional obstacle. Rule 41 currently permits a district court (apparently without limitation) to "state otherwise" and alter the presumptive preclusive effect of the dismissal in question.[148] But Rule 41 should not permit the district courts to alter the preclusive effect of a dismissal whose effect is dictated by operation of law. For if the preclusive effect of some particular dismissal has been established as a matter of federal common law as being X, specifying that the effect instead is Y does not (or at least should not) make it Y.[149] The preclusive effect of such dismissals is (appropriately) found in law lying outside the province of the Rules, and any attempt to alter that law via Rule 41 might be problematic on a number of fronts.[150] There is, generally speaking, no need for discretion in this context.[151]

---

531 U.S. at 504 n.1 (citation omitted). But regardless of whether any appellate court has, in fact, applied (or should apply) such a rule, the amendment to Rule 41 proposed in this Article seemingly would solve this problem as well. In other words, if a district court *were* to specify a preclusive effect other than that dictated by operation of law, there does not seem to be any reason why that contrary specification could not be reversed on appeal, or disregarded in any collateral proceeding.

[148] *See* FED. R. CIV. P. 41 (a)(1)(B)–(b).

[149] *See* RESTATEMENT (SECOND) OF JUDGMENTS § 20 cmt. d (1982) ("While there are instances in which a court may have discretion to determine that a judgment of dismissal shall operate as a bar . . . , a judgment may not have an effect contrary to that prescribed by the statutes, rules of court, or other rules of law operative in the jurisdiction in which the judgment is rendered."); *see also* Burbank, *supra* note 8, at 782 ("[P]roperly viewed, Rule 41(b) merely states what other sources of federal law, of a nationally binding character, have the power to determine; it thus provides fair notice to litigants." (footnotes omitted)). Perhaps an analogy may be drawn to the law relating to judgments. The Rules define a "judgment" as an appealable order, *see* FED. R. CIV. P. 54(a), and generally require that judgments be set out in a separate document (typically called a "judgment"), *see* FED. R. CIV. P. 58(a). But the preparation of this separate "judgment," of itself, does not render the order to which it relates appealable, and the failure to prepare a separate "judgment" does not prevent an appealable order from being appealed. *See* Shannon, *supra* note 3, at 155–56 & n.375 (discussing these issues and the Supreme Court cases supporting these conclusions). And so it is here. A dismissal whose preclusive effect is dictated by operation of law has such effect (whatever it might be) as a matter of federal common law, and not as a result of anything a district court might say. For the same reason, such effect generally may not be altered by that court—or, for that matter, any other court (aside from the Supreme Court, which presumably could alter such effects by overruling contrary federal common law precedent). This is, again, essentially what happened in *Semtek*, in which the Court more or less rejected the district court's attempt to alter the proper preclusive effect of a dismissal for expiration of a California statute of limitations in that case, thereby enabling other, later courts to disregard such language. *See Semtek*, 531 U.S. at 509 ("Because the claim-preclusive effect of the California federal court's dismissal 'upon the merits' of petitioner's action on statute-of-limitations grounds is governed by a federal rule that in turn incorporates California's law of claim preclusion . . . , the Maryland Court of Special Appeals erred in holding that the dismissal necessarily precluded the bringing of this action in the Maryland courts.").

[150] *See Semtek*, 531 U.S. at 503 ("[I]t would be peculiar to find a rule governing the effect that must be accorded federal judgments *by other courts* ensconced in rules governing the internal procedures of the rendering court itself. Indeed, such a rule would arguably violate the jurisdictional limitation of the Rules Enabling Act. . . ." (emphasis added)); Burbank, *supra* note 8, at 767 ("The rendering court does

A more difficult question relates to that portion of Rule 41 dealing with voluntary dismissals.  Rule 41 provides that "if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits."[152]  A dismissal made pursuant to this rule also would be a dismissal whose preclusive effect (presumably claim preclusion)[153] is determinate, though not as a matter of federal common law, but rather pursuant to the rule itself.[154]

From a procedural standpoint, such a rule seems reasonable.  Though different policy makers might select a lesser penalty for such conduct, claim preclusion does not seem wholly inappropriate.  It also seems reasonable to eliminate any discretion on the part of the district courts in this context.

The more difficult question, though, is whether and to what extent a federal rule properly may prescribe the preclusive effect of this (or any) disposition.[155]  This issue arises because of the Rules Enabling Act and its proviso that any rule promulgated pursuant thereto "shall not abridge, enlarge or modify any substantive right."[156]  Preclusion law (particularly that relating to claim preclusion) arguably falls on the substantive side of this line,[157] and some believe this to be true even when such effects are the

---

not determine the preclusive effects of a federal judgment, and some of the courts that determine them are not federal courts." (footnote omitted)).  Whether the *Semtek* Court's statement regarding the Rules Enabling Act—which arguably constitutes dicta—should be interpreted as applying to all attempts to prescribe, by federal rule, the preclusive effect of a dismissal seems doubtful.  In any event, the amendments proposed in this Article, at least as they relate to dismissals whose preclusive effect is dictated by operation of law, take this issue off the table.  *See infra* app. B.

[151]  Some district court judges might be concerned as to whether they will be able to correctly determine whether the preclusive effect of any given dismissal is dictated by operation of law.  Upon some reflection, though, this determination is probably easier than some might now imagine.  In any event, if Rule 41 were to acknowledge that such dismissals only have the preclusive effect to which they are entitled, then those judges might be comforted by the fact that any contrary designation, though perhaps causing confusion in a *Semtek*, (again) would have no binding effect on later courts.

[152]  FED. R. CIV. P. 41(a)(1)(B).

[153]  At least this seems to be the interpretation it was given pre-*Semtek*.  *See* 9 WRIGHT & MILLER, *supra* note 5, § 2368, at 567 (observing that such a dismissal generally "prevents the institution of another action on the same claim").  The version of Rule 41 proposed in this Article, which is not intended to change the meaning of this particular provision, makes this effect explicit.  *See infra* app. B.

[154]  *See* FED. R. CIV. P. 41(a)(1)(B).

[155]  *See* DAVID L. SHAPIRO, CIVIL PROCEDURE:  PRECLUSION IN CIVIL ACTIONS 146 n.44 (2001) ("The question of the extent to which a Federal Rule of Civil Procedure can, consistently with the Rules Enabling Act (28 U.S.C. § 2072), control the preclusive effect of a federal judgment is one that remains unresolved.").

[156]  28 U.S.C. § 2072(b) (2012).

[157]  *See* 7AA WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 1789, at 557 (3d ed. 2005) ("Since the preclusive effect to be given a judgment typically is viewed as a 'substantive' matter, a federal rule that purported to govern the subject might be held to violate the . . . Enabling Act . . . .");  Burbank, *supra* note 8, at 764 ("[T]he Rules Enabling Act does not authorize Federal Rules of preclusion.").

result of what appear to be procedural matters, such as dismissals.[158]  The challenge, then, is to design a procedural rule governing dismissals—something the Act obviously permits[159]—while at the same time avoiding the "substantive rights" prohibition.[160]

Because of the importance of the question and the frequency with which it might be asked, the determination whether a rule complies with the Rules Enabling Act ought to be a relatively simple task.  Regrettably, "even after seventy-plus years, the [Supreme] Court has been unable to come up with definitions of 'procedural' and 'substantive' which predictably resolve that distinction."[161]

But we do have some Supreme Court precedent.  The Court's latest case on this topic is *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*[162]  In *Shady Grove*, Justice Scalia (who also delivered the opinion of the Court in *Semtek*[163]) summarized the prevailing standard for assessing the propriety of a federal rule as follows:  "We have long held that th[e] limitation [in 28 U.S.C. § 2072(b)] means that the Rule must 'really regulat[e] procedure,—the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them.'"[164]  Justice Scalia stated the test:

---

[158]  *See* Burbank, *supra* note 7, at 1031 (concluding "that the Federal Rules of Civil Procedure do not, by and large, contain preclusion law and that they cannot validly prescribe such law"); Jay Tidmarsh & Brian J. Murray, *A Theory of Federal Common Law*, 100 NW. U. L. REV. 585, 611 (2006) ("Implicit but never expressly stated in the [*Semtek*] Court's reasoning is the premise that rules of claim preclusion are substantive rather than procedural in nature.").  Such an understanding does to some extent parallel the development of the law in these two areas.  *See* RESTATEMENT (SECOND) OF JUDGMENTS ch. 1, intro. note, at 5–6 (1982) ("In modern times, the foundation of civil procedure in most jurisdictions in the United States is the Federal Rules of Civil Procedure, with statutory supplementations and modifications.  The law of res judicata, in contrast, has remained largely the product of decisional law.").  Nonetheless, it is far from certain that preclusion law is substantive, at least in all contexts, and many have disagreed with this characterization.  *See, e.g.*, Amy Coney Barrett, *Procedural Common Law*, 94 VA. L. REV. 813, 829–32 (2008) (concluding that preclusion law is predominantly procedural).

[159]  *See* 28 U.S.C. § 2072(a) (empowering the Supreme Court to "prescribe general rules of practice and procedure . . . for cases in the United States district courts").

[160]  *Id.* § 2072(b) ("Such rules shall not abridge, enlarge or modify any substantive right.").

[161]  Joseph P. Bauer, *Shedding Light on* Shady Grove*: Further Reflections on the* Erie *Doctrine from a Conflicts Perspective*, 86 NOTRE DAME L. REV. 939, 947 (2011).  Legal scholars seem to have fared no better.  *See* Leslie M. Kelleher, *Taking "Substantive Rights" (in the Rules Enabling Act) More Seriously*, 74 NOTRE DAME L. REV. 47, 49 (1998) ("Despite the passage of more than six decades, neither the Court nor the commentators have managed to produce a workable definition of the [Rule Enabling Act's] 'substantive rights' limitation.").

[162]  Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393 (2010).

[163]  Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 499 (2001).

[164]  *Shady Grove*, 559 U.S. at 407 (opinion by Scalia, J.) (quoting Sibbach v. Wilson & Co., 312 U.S. 1, 14 (1941)).

The test is not whether the rule affects a litigant's substantive rights; most procedural rules do.  What matters is what the rule itself regulates: If it governs only "the manner and means" by which the litigants' rights are "enforced," it is valid; if it alters "the rules of decision by which [the] court will adjudicate [those] rights," it is not.[165]

"Applying that test," Justice Scalia continued,

[W]e have upheld rules authorizing imposition of sanctions upon those who file frivolous appeals or who sign court papers without a reasonable inquiry into the facts asserted.  Each of these rules had some practical effect on the parties' rights, but each undeniably regulated only the process for enforcing those rights; none altered the rights themselves, the available remedies, or the rules of decision by which the court adjudicated either.[166]

Based on this precedent, there appears to be little doubt that the Federal Rules of Civil Procedure may properly provide for penalties for the violation of those rules, and the Supreme Court has so held on a number of occasions.[167]  It further appears that those penalties may include a dismissal with preclusive effect, even claim-preclusive effect.[168]  Obviously, the

---

[165] *Id.* (citation omitted) (quoting Miss. Publ'g Corp. v. Murphree, 326 U.S. 438, 446 (1946)). Though this portion of Justice Scalia's opinion failed to capture a majority, his articulation of the standard for assessing the propriety of a federal rule fairly may be considered the holding of the Court on this issue.  *See* Kevin M. Clermont, *The Repressible Myth of* Shady Grove, 86 NOTRE DAME L. REV. 987, 1013 (2011) ("[*Shady Grove*] may not say much for eternity, but it does say that the unadorned [*Sibbach-Hanna*] test, so protective of the Federal Rules, is the law.").  If nothing else, it reflects the holdings of earlier Courts on this issue.

[166] *Shady Grove*, 559 U.S. at 407 (citations omitted).

[167] *See, e.g.*, Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc., 498 U.S. 533, 552 (1991) ("There is little doubt that [Federal Rule of Civil Procedure] 11 is reasonably necessary to maintain the integrity of the system of federal practice and procedure, and that any effect on substantive rights is incidental."); Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990) ("It is now clear that the central purpose of Rule 11 is to deter baseless filings in [d]istrict [c]ourt and thus, consistent with the Rule Enabling Act's grant of authority, streamline the administration and procedure of the federal courts."); Burlington N. R.R. Co. v. Woods, 480 U.S. 1, 4, 5, 8 (1987) ("The cardinal purpose of Congress in authorizing the development of a uniform and consistent system of rules governing federal practice and procedure suggests that Rules which incidentally affect litigants' substantive rights do not violate [the Rules Enabling Act] if reasonably necessary to maintain the integrity of that system of rules.") (upholding, unanimously, Federal Rule of Appellate Procedure 38, which permits the court of appeals to award "just damages and single or double costs to the appellee" for frivolous appeals).

[168] *See* Patrick Woolley, *The Sources of Federal Preclusion Law After* Semtek, 72 U. CIN. L. REV. 527, 585 (2003) ("In short, the key question in determining whether the Court has authority to promulgate rules of preclusion should not be whether the enforcement of a procedural policy will require cutting off rights, but whether the policy choice itself is one the Court should be allowed to mandate through the Federal Rules."); *id.* at 602 ("If courts conclude—as I believe they should—that the [Rules Enabling Act] permits promulgation of Federal Rules of Civil Procedure which directly enforce

purpose of the two-dismissal provision found in Rule 41 is to prevent a plaintiff from abusing the system, as well as the defendant, by preventing that plaintiff from repeatedly commencing and then dismissing the same action.[169] The rule seems eminently fair in that it not only gives the plaintiff two chances, but also requires an affirmative and unilateral act by that plaintiff (the filing of a notice of dismissal) in order to trigger its effect.[170] Such a rule, if revised to clarify that such a dismissal indeed has claim-preclusive effect, might seem to implicate the very Rules Enabling Act concerns raised by the *Semtek* Court.[171] But unlike the scenario in *Semtek*, prescribing a claim-preclusive effect to a dismissal for violation of a two-dismissal rule would not conflict with any contrary "rule" that appropriately might have been established pursuant to federal common law (including any further reference to state law).[172] Thus, given the nature of this rule and the federal interests at stake—not to mention that it has remained in force for more than 75 years—that the rule apparently allows for no discretion and specifies a claim-preclusive effect does not seem to raise any serious Rules Enabling Act issues.[173]

3.   *Dismissals Whose Preclusive Effect Is Not Dictated by Operation of Law*. — Though the preclusive effect of many dismissals is dictated by operation of law, we have also seen that some dismissals—including most voluntary dismissals and the "penalty" dismissals provided for in Rule 41(b)—have no preordained claim-preclusive effect.[174] This means that someone—either the district court or the parties themselves—must be permitted to prescribe the preclusive effect that is appropriate under the circumstances. Any scheme to the contrary would be unworkable, for the alternative either would be no prescribed effect or some default effect, and neither would accurately reflect the intended preclusive effect in all situations.[175]

---

otherwise valid procedural obligations through preclusion, there can be no doubt courts may create uniform federal common law rules of preclusion governing penalty dismissals. Such uniform federal rules would be justified by the federal interest in the integrity of the Federal Rules.").

[169] *See* Fed. R. Civ. P. 41(a)(1)(B).

[170] *Id.*

[171] *See* Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 503–04 (2001).

[172] *See supra* notes 164–67 and accompanying text.

[173] *But see* Burbank, *supra* note 8, at 782–83 & n.239 ("[T]he most that can be said for [this provision] is that it suggests a rule that could validly be formulated as a matter of federal common law as a corollary to the basic federal law obligation to respect federal judgments.").

[174] *See* Fed. R. Civ. P. 41(b); *see also supra* notes 42–53 and accompanying text.

[175] If a defendant intends to alter the preclusive effect that would typically attach to the dismissal at issue—for example, if the court intends to deprive a dismissal for failure to state a claim of preclusive effect—it should also state in the corresponding order of dismissal the reasons why some other effect is appropriate under the circumstances.

But even if the district court or the parties were to be permitted to prescribe the appropriate preclusive effect (as they are currently), at least two issues relating to Rule 41 remain.  The first is whether Rule 41 should make any reference to this limited ability to prescribe the appropriate preclusive effect, given that this power is probably not dependent upon the inclusion of any such reference.  The second is whether the inclusion of such language would run afoul of the Rules Enabling Act.

Regarding the issue whether Rule 41 should make any reference to this ability to prescribe the preclusive effect of a dismissal:  It seems, as a practical matter, that it would do no harm, and probably would do some good, to utilize Rule 41 as a means of reminding the district court and the parties of their obligations in this regard.  The rule need not be written in a manner that *compels* them to make this determination, or even *permits* them to do so; rather, it can be written so as to simply recognize their ability to do so.  But it also seems prudent to retain defaults (no claim-preclusive effect in the case of a voluntary dismissal, but claim-preclusive effect for involuntary dismissals) in this context should the parties fail to so specify.[176]  The alternative would be an unspecified effect and, though federal common law presumably would fill in the gaps, some level of confusion would ensue, for (again) such dismissals have no preordained preclusive effect.[177]

Regarding the Rules Enabling Act issue:  It seems that if the "penalty" provision found in Rule 41(a)(1), even if amended to reaffirm that such a dismissal has claim-preclusive effect, passes muster, then the sort of provisions proposed here also would be permissible.  Certainly, no one seems to doubt the ability of federal courts, as appropriate, to impose

---

[176] These presumptions as to the effects of voluntary and involuntary dismissals seem to reflect common law understandings as to the effects of such dismissals.  *See* RESTATEMENT (SECOND) OF JUDGMENTS § 20 cmt. f (1982) (discussing the traditional effect of a voluntary "nonsuit"); RESTATEMENT (SECOND) OF JUDGMENTS § 19 cmt. e (1982) (discussing the traditional effect of a plaintiff's failure to prosecute or obey a court order).

[177] Indeed, the *Restatement* expressly recognizes:

the growing importance in this area of statutes and rules of court, which reflect a wide variety of views as to the circumstances in which fairness to the defendant and avoidance of undue burdens on the courts require that a dismissal operate as a bar.  Thus even among those states that have statutes or rules closely patterned on Rule 41 of the Federal Rules of Civil Procedure, there are variations, for example as to the time periods when there is a right to a voluntary dismissal, and as to whether certain dismissals (e.g., for failure to prosecute) operate as a bar in the absence of a specification by the court.

RESTATEMENT (SECOND) OF JUDGMENTS § 20 cmt. j (1982).

penalties for improper conduct.[178]  The most problematic portions would be the defaults.  But as appropriate, the default proposed for involuntary dismissals (claim preclusion) is easily avoidable by the district court and goes no farther than the claim-preclusive effect prescribed in proposed Rule 41(a)(1).  The same should be true of a rule that permits the parties to specify that a voluntary dismissal is to be regarded as having the same effect.  Again, such a rule, in a sense, would not be specifying the effect of any dismissal per se, but rather would be doing little more than recognizing the ability of the court (or the parties) to memorialize their intent in those situations.  Indeed, here also, the proposed rule does no more than what has been permitted for the past 75 years.  In fact, it does less.[179]

## V. CONCLUSION

A comprehensive review of Rule 41 reveals a number of problems therewith.  Though the rule might seem fine on the surface, it is in fact practically and theoretically unworkable.  Rule 41, in its current form, is incomplete, internally inconsistent, and in some instances, just plain wrong.  Most significantly, Rule 41 appears to give some dismissals a preclusive effect in excess of what is appropriate under the common law, and it appears to confer discretion upon the district courts to avoid such preclusive effects in a manner contrary to that law.  As a result, in many cases, federal courts have achieved appropriate results only by ignoring clear rule text or

---

[178]  *See* Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 509 (2001) ("If, for example, state law did not accord claim-preclusive effect to dismissals for willful violation of discovery orders, federal courts' interest in the integrity of their own processes might justify a contrary federal rule.").  *See also id.* at 503 ("Rule 41(b) sets forth nothing more than a default rule for determining the import of a dismissal (a dismissal is 'upon the merits,' with the three stated exceptions, unless the court 'otherwise specifies.'"); SHAPIRO, *supra* note 155, at 146 n.44 ("[T]he Federal Rules can at the least create a context that will, and should, affect the content of the federal common law rule.").  Additionally, Burbank, *supra* note 8, at 782–83 (footnotes omitted), states:

> Federal standards are necessary to determine when a federal judgment can preclude subsequent litigation, whatever law governs the preclusive effects of that judgment.  In the case of so-called penalty dismissals under Rule 41(b), that interest is buoyed by the additional consideration that uncertainty as to the binding nature of federal judicial action might lead to disregard of perfectly valid Federal Rules and orders and that the costs of such disregard would fall on the federal courts.

[179]  Of course, if the view of the Rules Enabling Act expressed in this Article is incorrect, presumably one could accomplish the same revisions to Rule 41 via a congressional bill or even an amendment to the Act itself.  Neither is without precedent, and there do not appear to be any constitutional impediments to either course.

Case 1:18-cv-00361-JBW-RLM   Document 143   Filed 07/16/18   Page 31 of 36 PageID #: 1900

through tortured interpretations of that text.  Obviously, this is not a happy state of affairs.

But these many problems need not be tolerated.  It is time for change. Rule 41 should be amended in a manner that adequately addresses the needs of the federal judiciary and acknowledges the realities surrounding dismissals and the preclusive effect thereof.  Only then can Rule 41 serve the purposes for which it was intended.

APPENDIX A:
CURRENT FEDERAL RULE OF CIVIL PROCEDURE 41

**Rule 41. Dismissal of Actions**

(a) VOLUNTARY DISMISSAL.
   (1) *By the Plaintiff.*
    (A) *Without a Court Order.* Subject to Rules 23(e), 23.1(c), 23.2, and 66 and any applicable federal statute, the plaintiff may dismiss an action without a court order by filing:
      (i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or
      (ii) a stipulation of dismissal signed by all parties who have appeared.
    (B) *Effect.* Unless the notice or stipulation states otherwise, the dismissal is without prejudice. But if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits.
   (2) *By Court Order; Effect.* Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper. If a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication. Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice.
   (b) INVOLUNTARY DISMISSAL; EFFECT. If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits.
   (c) DISMISSING A COUNTERCLAIM, CROSSCLAIM, OR THIRD-PARTY CLAIM. This rule applies to a dismissal of any counterclaim, crossclaim, or third-party claim. A claimant's voluntary dismissal under Rule 41(a)(1)(A)(i) must be made:
    (1) before a responsive pleading is served; or
    (2) if there is no responsive pleading, before evidence is introduced at a hearing or trial.
   (d) COSTS OF A PREVIOUSLY DISMISSED ACTION. If a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court:
    (1) may order the plaintiff to pay all or part of the costs of that previous action; and
    (2) may stay the proceedings until the plaintiff has complied.

APPENDIX B:

PROPOSED FEDERAL RULE OF CIVIL PROCEDURE 41 (AND NOTES)

**Rule 41. Dismissal of Claims and Actions**

(a) VOLUNTARY DISMISSAL.

(1) *Without a Court Order.* Subject to Rules 23(e), 23.1(c), 23.2, and 66 and any applicable federal statute, a plaintiff may dismiss the action or any claim without a court order by filing:

(A) a notice of dismissal before the defendant to whom the action or claim relates serves either an answer or a motion for summary judgment; or

(B) a stipulation of dismissal signed by all parties who have appeared. Unless the notice or stipulation states otherwise, the dismissal does not preclude the relitigation of the action or claim so dismissed. But if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal precludes the relitigation of that claim.

(2) *By Court Order.* Except as provided in Rule 41(a)(1), the action or any claim may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper. If a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication. Unless the order states otherwise, the dismissal does not preclude the relitigation of the action or claim so dismissed.

(b) INVOLUNTARY DISMISSAL. If a plaintiff engages in improper conduct, a defendant may move to dismiss the action or any claim against it. If the claim preclusive effect of the dismissal—as well as any involuntary dismissal not under this rule—is not dictated by operation of law, the dismissal precludes the relitigation of the claim or action dismissed unless the order states otherwise.

(c) DISMISSING OTHER TYPES OF CLAIMS. This rule applies similarly to a dismissal of any other type of claim provided for in these rules.

(d) COSTS OF A PREVIOUSLY DISMISSED ACTION. If a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court:

(1) may order the plaintiff to pay all or part of the costs of that previous action; and

(2) may stay the proceedings until the plaintiff has complied.

## NOTES TO PROPOSED RULE 41[180]

To the extent reasonably possible, the structure and language of Rule 41 was left unchanged.  The proposed rule might be written differently if done on a clean slate.  But the long history of the rule, which has changed little over the past seventy-five years, counsels against a wholesale rewriting.  Thus, the proposed rule adopts the same general structure as the current rule, and subdivision (d) has not been changed at all.  Even with respect to subdivisions (a) through (c), some of the changes are subtle and discernible only after a careful reading and comparison of the current and proposed versions.  Most of the changes are substantive (i.e., non-technical), though a few are designed more to streamline the rule, to bring parallelism and conformity with respect to similar portions of the rule, and, where possible, to shorten unnecessarily long passages.

*Subdivision (a).*  Current paragraph (1), which consisted only of a heading ("By the Plaintiff"), has been eliminated as redundant (considering that a voluntary dismissal is, essentially by definition, a dismissal that is initiated or at least joined by the plaintiff).  This enables what are currently subparagraphs (A) and (B) to become paragraphs (1) and (2), thus shortening the rule and eliminating one layer of complexity.  Also, current subparagraph (B) ("Effect") has been combined with current subparagraph (A) and this separate heading has been eliminated.  This renders what are now paragraphs (1) and (2) more similar in style to current (and proposed) subdivision (b), which likewise does not separate the effect of the dismissal in question from the rest of the rule.  Including the word "effect" in the heading of current Rule 41(a)(1)(B) (as well as in the headings of current Rules 41(a)(2) and (b)) also seemed to add little or nothing to the organization or understanding of the rule.

Proposed paragraph (1) ("Without a Court Order") provides that a plaintiff may dismiss a claim (or, by implication, claims) as well as the entire action.  This change is consistent with what is already occurring in practice, and is consistent also with similar language currently found in subdivision (b).  This change is not intended to supplant the possible amendment of pleadings pursuant to Federal Rule of Civil Procedure 15(a), which should continue to operate on its own terms and without reference to this rule.  In addition, the phrase "opposing party" has been replaced by the phrase "defendant to whom the action or claim relates."  Though longer, the latter phrase seems to more accurately identify the relevant defending party.

---

[180] These notes are not intended to serve as draft advisory committee's notes.  Rather, they are simply an explanation of the language included in the proposed rule.

Finally (and most significantly), the phrase "is without prejudice" currently found in subparagraph (B) is replaced by the phrase "does not preclude the relitigation of the action or claim so dismissed." This change reflects the general change away from outdated (and potentially misleading) phrases such as "with prejudice" and "without prejudice" to more accurate (and less ambiguous) claim preclusion-type language.

Proposed paragraph (2) similarly replaces "action" with "action or any claim," and "is without prejudice" with "does not preclude the relitigation of the action or claim so dismissed." Proposed paragraph (2) also eliminates the phrase "under this paragraph (2)" as unnecessary, it being clear that the dismissal referred to in this proposed paragraph is the dismissal referred to in this proposed paragraph.

*Subdivision (b).* Again, the word "effect" has been eliminated in the heading of proposed subdivision (b) as unnecessary. In addition, the grounds for dismissal currently included in Rule 41(b) (failure to prosecute or to comply with the rules or a court order) are now simply referred to as "improper conduct." The latter phrase has the virtues of being simpler and arguably (and appropriately) broader. Consistent with prior practice, though, this rule is not intended to supplant or supersede more specific penalty provisions found elsewhere in the Rules, such as those found in Rules 11 and 37.

The remaining changes to subdivision (b) are fairly substantial. Currently, the last sentence of this subdivision provides: "Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits." By contrast, the last sentence of proposed subdivision (b) provides: "If the claim preclusive effect of the dismissal—as well as any involuntary dismissal not under this rule—is not dictated by operation of law, the dismissal precludes the relitigation of the claim or action dismissed unless the order states otherwise." This change accomplishes several things. First, rather than trying to catalog all those involuntary dismissals that, by operation of law, do not operate "as an adjudication on the merits," the proposed rule simply acknowledges the fact that there are some differences with respect to the preclusive effect of the various types of involuntary dismissals, and that, in most instances, such effects are the product of federal (or perhaps state) common law, and not Rule 41. Second, the proposed rule recognizes that, with respect to those involuntary dismissals whose effect is dictated by operation of law, there is nothing that a district court can (or should) do to alter that effect. Finally, though the proposed rule preserves the concept of a default effect with

respect to those involuntary dismissals whose preclusive effect is not preordained (such as might be the case with respect to a "penalty"-type dismissal), it abandons the antiquated (and potentially confusing) phrase "operates as an adjudication on the merits" (as well as the interpretive baggage that comes with it) in favor of the more modern (and seemingly less confusing) "precludes the relitigation of the claim or action dismissed unless the order states otherwise."

*Subdivision (c)*.   Rather than limiting the reach of Rule 41 to counterclaims, crossclaims, and third-party claims, proposed subdivision (c) simply states that this rule "applies similarly to a dismissal of any other type of claim provided for in these rules."   Thus, for example, the proposed rule properly would bring under its ambit a claim by a plaintiff against a third-party defendant. Moreover, because there does not seem to be any reason why the deadline for voluntarily dismissing such other claims should vary from that provided for in subdivision (a), the proposed rule by implication adopts that standard ("before the defendant . . . serves either an answer or a motion for summary judgment") rather than that currently provided for in Rule 41(c) ("before a responsive pleading is served" or "if there is no responsive pleading, before evidence is introduced at a hearing or trial").