Bitcoin Politics July 26, 2018 00:29

**SOURCE:** BLOCKCHAIN + THE LAW
**SOURCE LINK:**
https://blockchainplusthelaw.com/2018/03/07/cftc-proposes-actual-delivery-definition-with-big-implications-for-bitcoin-regulation/

# CFTC Proposes "Actual Delivery" Definition with Big Implications for Bitcoin Regulation

March 7, 2018 / Cheryl I. Aaron

Just before the close of 2017, the Commodity Futures Trade Commission (CFTC) proposed a seemingly esoteric new rule, in which the CFTC attempted to define the term "actual delivery" within the context of retail commodity transactions in virtual currency.  Let's unpack this because while it may seem to be an obscure topic, once final, this rule will tell us quite a bit about the CFTC's jurisdiction over bitcoin and other digital or virtual currencies.

As stated previously on this blog, the CFTC considers virtual currencies to be commodities, much like wheat, gold, and natural gas, meaning that these markets are subject to the agency's anti-fraud / anti-manipulation oversight (but not much else).  The CFTC's *real* regulatory power kicks in with respect to "non-deliverable" derivatives contracts that reference virtual currencies or other commodities (e.g., bitcoin futures, natural gas swaps, etc.).  This means that derivatives market participants are subject to much more onerous regulatory requirements than their commodity trading peers – derivatives regulations include reporting, recordkeeping, and in some cases registering with the CFTC, posting collateral, and complying with certain business conduct standards.

What happens when the lines are blurred, and it is unclear whether a given transaction is a "physical" or "spot" commodity transaction (where the commodity is actually transferred between two counterparties), versus a more highly-regulated "non-deliverable" derivative, in which the transaction is settled in cash based on the change in the value of the reference commodity over time?  This is the question that the CFTC's proposed rule purports to answer, at least in part, with respect to certain virtual currency transactions.

1.

Specifically, the CFTC has authority over "retail commodity transactions," meaning those in which an entity or exchange (i) offers margin trading or otherwise facilitates leveraged, margined
or financed transactions, (ii) typically for speculative purposes, (iii) to a "retail" counterparty – meaning one that lacks the financial standing to be considered an "eligible contract participant" (which is somewhat akin to the SEC's concept of an accredited investor). These retail commodity transactions are excepted from the CFTC's derivatives oversight if the underlying commodity is "actually delivered" to the buyer within 28 days.

So, when would a virtual currency be considered to be "actually delivered" to a buyer under these circumstances, so that it is treated as a spot transaction, rather than a derivative?  The CFTC offered the following guidance:  it would use a "functional approach," looking at the circumstances around how the transaction is marketed, managed and performed, rather than relying solely on contract terms.  And, more precisely, it would consider "actual delivery" accomplished where within 28 days after entering into the transaction:

1. The customer has the ability to take possession and control of the *entire quantity* of the virtual currency, and use it freely; and
2. The seller/ offeror/exchange and any affiliates no longer retain any interest or control over any of the virtual currency.

Effectively, actual delivery will have occurred when the buyer can use the entirety of the purchased virtual currency to immediately purchase goods or services elsewhere, within the 28-day time period.  To provide further clarity, the CFTC also included a number of real-world scenarios in which actual delivery did or did not occur:

*Example 1*.   There is a record on the public distributed ledger network or blockchain showing the transfer of virtual currency, whereby the entire quantity purchased (including any margined or financed portions) is transferred from the seller's digital wallet to the buyer's digital wallet.  ACTUAL DELIVERY.

*Example 2*.  All of the following occur: the seller has delivered the entire purchased quantity of virtual currency into a depository that is acting as agent for the buyer, the seller has transferred title of the virtual currency to the buyer, the buyer has full control over the virtual currency, and there are no liens or other interests in the virtual currency by the seller or its agents.  ACTUAL DELIVERY.

*Example 3*.  The seller or offeror makes a book entry showing that delivery of the virtual currency to the buyer has taken place, potentially even creating an enforceable obligation to deliver the commodity, but neither of the scenarios in Example 1 or Example 2 have transpired.  NOT ACTUAL DELIVERY.

*Example 4.*  The virtual currency transaction is rolled, offset against, netted out or settled in cash or a virtual currency other than the purchased virtual currency. NOT ACTUAL DELIVERY.

Thinking this through – in the realm of virtual currency, 28 days for delivery seems like an eternity.  The CFTC acknowledges this, but notes that it is hamstrung without Congressional action.  In order for a retail commodity transaction to be excepted from regulation as a derivative, actual delivery must take place within that 28 day period *or such longer period* as determined by the CFTC, but no shorter than 28 days.  Expect to see this issue arise again – Congress has an appetite to regulate virtual currencies (though no specific plans on the table just yet), and it may be palatable for both sides of the aisle to shorten the 28-day period for actual delivery to 2 days, as it did for retail foreign currency (FX) transactions in 2008.

One last item worth highlighting:  in defining the scope of its interpretation of "actual delivery," the CFTC clarified that it was interpreting the term "virtual currency" broadly.  The regulator stopped short of defining the term, stating that it didn't want to create any bright lines given the "evolving nature" of virtual currency.  Instead, the CFTC stated that, for the purpose of the proposed rule, virtual currency encompasses "any digital representation of value… that functions as a medium of exchange, and any other digital unit of account that is used as a form of currency."  Such currency may take the form of units, tokens or coins, among other things.

So, what do you think of the CFTC's "functional approach" to actual delivery of virtual currency? Do you have other examples that the regulator should consider when crafting the final rule? How long do you think the actual delivery period should be in spot virtual currency markets? Should entities that offer retail commodity transactions in virtual currency be subject to the CFTC's registration and compliance regime?

This proposed rule is open for comments until March 20, 2018 – soon!  Please reach out to Cheryl I. Aaron or the Michael Best attorney with whom you normally work if you are interested in submitting a comment letter.